IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE S.A, <br><br> Plaintiffs, <br><br> v. <br><br> HTC CORPORATION and HTC AMERICA INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 17-083-LPS-CJB |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER BASED ON IMPROPER VENUE AND CONVENIENCE**

| | |
|---|---|
| OF COUNSEL: <br> Yar R. Chaikovsky <br> Philip Ou <br> Jonas P. Herrell <br> PAUL HASTINGS LLP <br> 1117 S. California Avenue <br> Palo Alto, CA 94304 <br> (650) 320-1832 <br><br> Dated: July 28, 2017 | John W. Shaw (No. 3362) <br> Nathan R. Hoeschen (No. 6232) <br> SHAW KELLER LLP <br> I.M. Pei Building <br> 1105 North Market Street, 12th Floor <br> Wilmington, DE 19801 <br> (302) 298-0700 <br> jshaw@shawkeller.com <br> nhoeschen@shawkeller.com <br> *Attorneys for Defendants* |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A. HTCA is not subject to venue in Delaware ........................................................... 2

        1. HTCA lacks a permanent and continuous presence in Delaware .............. 3

        2. Mere sales or third-party activities are insufficient to create a permanent and continuous presence in Delaware ..................................... 4

        3. The Raytheon four factor test from the Eastern District of Texas is too expansive to survive Federal Circuit's review .................................... 4

        4. HTCA should be dismissed and venue discovery should be denied ......... 6

    B. HTC Corp. should not be subject to venue in Delaware........................................ 6

        1. HTC Corp. has a regular and established place of business in the Western District of Washington -- not in Delaware ................................. 6

    C. HTC Corp. is not subject to personal jurisdiction in Delaware ............................. 7

        1. Plaintiffs reliance on Polar to argue that the "dual jurisdiction theory" is controlling is misguided ............................................................ 7

        2. Supreme Court's recent Bristol-Myers decision reinforces the impropriety of the dual jurisdiction theory approach ................................ 8

        3. Jurisdictional discovery should be denied ................................................. 8

    D. The Western District of Washington is the proper venue for this case ................. 9

        1. If Defendants are not dismissed, the case should nevertheless be transferred to the Western District of Washington under § 1406(a).......... 9

        2. In the alternative, the case should be transferred to the Western District of Washington under § 1404(a) ..................................................... 9

III. Conclusion ....................................................................................................................... 10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Belden Techs., Inc. v. LS Corp.*,
    829 F. Supp. 2d 260 (D. Del. 2010)..................................................................................8

*Bristol-Myers Squibb Co. v. Superior Ct.*,
    137 S. Ct. 1773 (2017).................................................................................................7, 8

*Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*,
    406 U.S. 706 (1972)...................................................................................................1, 6

*Candas v. Agnini*,
    14 F. Supp. 21 (S.D.N.Y. 1936).......................................................................................4

*In re Cordis Corp*,
    769 F.2d 733 .............................................................................................................2, 3, 4

*In re Cray*,
    No. 17-129 (Fed. Cir. July 17, 2017).................................................................................5

*In re Cray*,
    No. 17-129 (Fed. Cir. July 18, 2017).................................................................................5

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).........................................................................................................5

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010)...............................................................................................6

*In re First Solar, Inc. Derivative Litig.*,
    C.A. No. 12-417-GMS-CJB, 2013 WL 817132 (D. Del. Mar. 4, 2013) ..................................9

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*,
    149 F.3d 1382 (Fed. Cir. 1998).........................................................................................7

*Graphics Props. Holdings, Inc. v. Asus Computer Int'l*,
    70 F. Supp. 3d 654 (D. Del. Sept. 29, 2014).....................................................................7

*Hand Held Products, Inc. v. The Code Corp.*,
    No. 2:17-167-RMG, 2017 WL 3085859 (D.S.C. July 18, 2017) .............................................5

*Hemstreet v. Caere Corp.*,
    No. 90 C 377, 1990 WL 77920 (N.D. Ill. June 6, 1990) ........................................................3

*Intellectual Ventures I LLC v. Symantec Corporation et al.*,
 C.A. No. 10-1067-LPS (D. Del. Nov. 29, 2012) ...................................................................10

*Logantree LP v. Garmin Int'l, Inc.*,
 No. SA-17-CA-0098-FB, 2017 WL 2842870 (W.D. Tex. June 22, 2017).............................4

*In re Makowka*,
 754 F.3d 143 (3d Cir. 2014)....................................................................................................7

*Michod v. Walker Magnetics Grp., Inc.*,
 115 F.R.D. 345 (N.D. Ill. 1987)...............................................................................................3

*In re Morgan Stanley*,
 417 F. App'x 947 (Fed. Cir. 2011) ........................................................................................10

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
 C.A. No. 16-194-GMS, 2017 WL 2984072 (D. Del. July 13, 2017)...................................8, 9

*Polar Electro Oy v. Suunto Oy*,
 829 F.3d 1343 (Fed. Cir. 2016).............................................................................................7, 8

*Raytheon Co. v. Cray, Inc.*,
 No. 2:15–CV–01554–JRG, 2017 WL 2813896 (E.D. Tex. June 29, 2017) .........................4, 5

*Round Rock Research LLC v. Asustek Computer Inc.*,
 967 F. Supp. 2d 969 (D. Del. 2013)........................................................................................7

*Schnell v. Peter Eckrich & Sons, Inc.*,
 365 U.S. 260 (1961).................................................................................................................5

*Toys "R" Us, Inc. v. Step Two, S.A.*,
 318 F.3d 446 (3d Cir. 2003)....................................................................................................6

*In re Verizon Bus. Network Servs.*,
 635 F.3d 559 (Fed. Cir. 2011)...............................................................................................10

*W. S. Tyler Co. v Ludlow-Saylor Wire Co.*,
 236 U.S. 723 (1915).................................................................................................................4

*Wilson v. McKinney Mfg. Co.*,
 59 F.2d 332 (9th Cir. 1932) .....................................................................................................3

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................................1, 2, 5

28 U.S.C. § 1404(a) ......................................................................................................2, 9, 10

28 U.S.C. § 1406(a) ................................................................................................................2, 9, 10

**Other Authorities**

Fed. R. Civ. P. 11 ...........................................................................................................................3

I.      INTRODUCTION

Plaintiffs already recognized that venue was not proper in Delaware against HTC America ("HTCA") when it removed its specific venue allegation from its Second Amended Complaint. Now in response to HTC's motion, Plaintiffs contend they had a "non-frivolous basis for venue." D.I. 28 at 13. Not so. The totality of purported support for their claim that venue is proper originates from Plaintiffs' attempts to purchase HTC phones in this district *after* Plaintiffs filed their Second Amended Complaint and *after* HTC filed its motion to dismiss. But even considering this 'support' and Plaintiffs' strained view of 28 U.S.C. § 1400(b)'s "regular and established place of business" prong, venue is still not proper in Delaware against HTCA.

Nor should venue be proper against HTCA's parent, HTC Corp.—a foreign entity that does not make, use, sell, offer for sale, or import any accused HTC products in the United States. Plaintiffs contend that venue is proper in any venue because HTC Corp. is a foreign corporation, relying on the Supreme Court's decision in *Brunette*. But *Brunette* involved a foreign defendant *without* a U.S. presence that would otherwise not be subject to venue *anywhere* under 1400(b)—such is not the case for HTC Corp., which has a regular and established place of business in at least the State of Washington, where its U.S. subsidiary HTCA is both incorporated and headquartered. As such, the policy concerns that have driven courts to exclude aliens from specific venue statutes do not apply to defendants like HTC Corp., whose U.S. subsidiary forms the sole basis for Plaintiffs' claims against either HTC entity. Indeed, Plaintiffs' brief repeatedly references HTC Corp.'s intent to place products into the stream of commerce *through HTCA*, but identifies the allegedly infringing acts (*e.g.*, selling in the U.S.) as performed by HTCA. Plaintiff cannot have it both ways—rely on HTCA's operations in the U.S. as the only basis for filing suit against the parent, HTC Corp., but completely ignore HTCA's residency and presence in Washington to argue that HTC Corp. should be subject to venue in Delaware.

This contradiction is highlighted by Plaintiffs' response to HTCA's arguments in support of transfer under § 1406(a) if both entities are not dismissed. Plaintiffs proffered that if venue is not proper for a "particular HTC defendant" (*i.e.,* HTCA), Plaintiffs will simply proceed against the other (*i.e.,* HTC Corp.) and not re-file against "the dismissed Defendant during the pendency of this action." D.I. 28 at 14-15. But proceeding in Delaware against HTC Corp. *only*, despite notice that HTC Corp. does not make, use, sell, offer for sale, or import any accused HTC products in the U.S., and suggesting that Plaintiffs may proceed in a later action on the identical infringement claims against HTCA, lacks credibility and is disingenuous.

Plaintiffs cannot escape the paramount fact that HTCA is at the crux of Plaintiffs' infringement claims, but cannot be subject to proper venue in Delaware. Analyzed under either HTC's arguments to dismiss the case for lack of venue or personal jurisdiction as to HTC Corp., or the transfer analysis under §§ 1404(a) or 1406(a), the result should be the same—Plaintiffs' case against both HTC entities should be proceeding in the Western District of Washington.

## II.     ARGUMENT

### A.     HTCA is not subject to venue in Delaware

Plaintiffs agree that venue is improper under the "reside" prong of § 1400(b). D.I. 28 at 11. As for the "regular and established place of business" prong, Plaintiffs do not dispute that HTCA does not have any employees, offices or facilities in Delaware. *Id*. However, Plaintiffs contend to have a "non-frivolous basis for venue" based on a strained interpretation of the Federal Circuit's *In re Cordis Corp.* decision, holding that "the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there," 769 F.2d 733, 737 (Fed. Cir. 1985). But Plaintiffs cannot identify even a *single specific "presence"* in Delaware, let alone a permanent and continuous one.

Indeed, prior to and after HTC filed its motion, HTC requested that Plaintiffs explain its Rule 11 basis for filing its Second Amended Complaint against HTCA *after* HTC confirmed (at Plaintiffs' request) that HTC did not have any employees, facilities or offices in Delaware. Ex. F-G. But Plaintiffs repeatedly refused to provide any facts or evidence to support its position, insisting that HTC wait for Plaintiffs' opposition. Ex. F. Now that Plaintiffs have responded, the reason for their refusal is clear—Plaintiffs did not have any, as all of the purported support was manufactured weeks after Plaintiffs filed its Second Amended Complaint and after HTC filed its motion to dismiss. D.I. 29, 29-3-29-9. Plaintiffs could not establish proper venue as to HTCA in its Second Amended Complaint and still fail to do so in their opposition.

### 1.     HTCA lacks a permanent and continuous presence in Delaware

Even in view of the *Cordis* standard, Plaintiffs fail to establish that HTCA has a "permanent and continuous presence" in Delaware. "Courts have consistently held that an alleged patent infringer has a 'regular and established place of business' in a judicial district only if it actually has a place of business there; activities such as the maintenance of independent sales agents or visits by company representatives, and the solicitation of orders are not enough." *Michod v. Walker Magnetics Grp., Inc.*, 115 F.R.D. 345, 347 (N.D. Ill. 1987); *see also Wilson v. McKinney Mfg. Co.*, 59 F.2d 332, 334-35 (9th Cir. 1932) (A corporate defendant must be "carrying on in a continuous manner a *substantial part* of its ordinary business" in that district). HTCA does not meet this threshold.

Plaintiffs rely on cases that purportedly lacked a "physical location," but each features a defendant far more engaged in conducting business in a continuous manner than HTCA. *Compare* HTCA (*no* employees, offices, or facilities in Delaware), with *In re Cordis Corp*, 769 F.2d at 735 (two fulltime sales reps with home offices in the district), *Hemstreet v. Caere Corp.*, 1990 WL 77920, at *4 (N.D. Ill. June 6, 1990) (an office and a district manager in the district),

and *Raytheon Co. v. Cray, Inc.*, 2017 WL 2813896, at *9, 13 (E.D. Tex. June 29, 2017) (a sales executives with a home office and a listed "office" telephone number in the district, and a territory manager residing and conducting sales in the district).

### 2. Mere sales or third-party activities are insufficient to create a permanent and continuous presence in Delaware

Plaintiffs further rely on sales in Delaware of accused HTC products to satisfy the "regular and established place of business" prong. D.I. 29-3 to 29-9. However, Courts have found this insufficient to establish venue. *Candas v. Agnini*, 14 F. Supp. 21, 22 (S.D.N.Y. 1936) ("[A] few cash customers is not enough").

Plaintiffs' reliance on third party activities is similarly insufficient to show a "regular and established place of business." D.I. 29-3 to 29-9. In *W. S. Tyler Co. v Ludlow-Saylor Wire Co.*, the Supreme Court held that paying an agent, also employed by another corporation, to solicit orders to be executed at its home office and sharing expenses with another corporation of an office in the district was insufficient. 236 U.S. 723, 725 (1915). More recently, a Court did not find a "permanent and continuous presence" in Texas, despite the Kansas resident defendant doing business with dealers in Texas which distributed defendant's products. *Logantree LP v. Garmin Int'l, Inc.*, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017). The Court noted it was "well settled that the mere presence of independent sales representatives" was insufficient. *Id.*

### 3. The *Raytheon* four factor test from the Eastern District of Texas is too expansive to survive Federal Circuit's review

Plaintiffs rely heavily on the four-factor test in *Raytheon* in support of their argument that venue can be proper without a physical location in the district, but even *Cordis* is not so expansive. *Cordis* states that the physical presence need not be a "formal office or store"— traditional places of business can be replaced with locations that served the same purpose, such as the address of the secretarial service and employee residences used to store product. *Cordis*,

769 F.2d at 737. According to Judge Gilstrap, "[n]one of these factors should alone be dispositive, and … [c]ourts should endeavor to determine whether a domestic business enterprise seeks to materially further its commercial goals within a specific district through ways and means that are ongoing and continuous." *Raytheon*, 2017 WL 2813896, at *14. Notably, other Courts post-*TC Heartland* have rejected such a broad application. *See, e.g., Hand Held Products, Inc. v. The Code Corp.*, 2017 WL 3085859, at *4 (D.S.C. July 18, 2017) (volume of sales and presence of third-party distributors in the district irrelevant to the § 1400(b) analysis).

The *Raytheon* test is the "liberal" type of construction that the Supreme Court repealed in *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction."). It also contradicts Supreme Court guidance under the similar "continuous and systematic" analysis in *Daimler AG v. Bauman*, 134 S. Ct. 746, 761-762 (2014), which warned of "exorbitant exercises of all-purpose jurisdiction [that] would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render the liable to suit.'"

Cray has since filed a petition for writ of mandamus seeking to reverse this four factor test, which does not comport with the literal statutory language (and congressional intent) and should not survive Federal Circuit review. Petition for Writ of Mandamus at 22, *In re Cray*, No. 17-129 (Fed. Cir. July 17, 2017). Notably, the Federal Circuit requested expedited briefing and on the same day, the district court *sua sponte* stayed the case. Order on Petition, *In re Cray*, No. 17-129 (Fed. Cir. July 18, 2017). Should it survive, venue is still not proper here even under this test. Among other things, Cray had an employee with a home office providing an ongoing and continuous presence in Texas while HTCA has no employees or offices in Delaware.

        **4.     HTCA should be dismissed and venue discovery should be denied**

As shown above, Plaintiffs have failed to even show a "non-frivolous basis for venue," as its bare assertion that HTCA has a "regular and established place of business" is pure conjecture, failing to present a plausible allegation, let alone one with "reasonable particularity." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) ("A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery."); see *also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). Plaintiffs request for venue discovery should be denied.

    **B.     HTC Corp. should not be subject to venue in Delaware**

        **1.     HTC Corp. has a regular and established place of business in the Western District of Washington -- not in Delaware**

HTC Corp. has a "regular and established place of business" in the U.S.—its wholly owned subsidiary, HTCA, who performs the allegedly infringing acts and is headquartered in Washington. Plaintiffs ignore this crucial distinction over the sole foreign defendant in *Brunette*. *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 707 (1972). There, the Supreme Court held that foreign defendants may be sued in any district to avoid "oust[ing] the federal courts of jurisdiction in most cases, because… an alien defendant is by definition is a citizen of no district.'" *Id*. at 709. That concern is inapplicable here, as the Western District of Washington is both proper and the "most appropriate or convenient federal forum." *Id.* at 710.

Plaintiffs nevertheless insist that the venue analysis for HTC Corp. and HTCA should be separated, despite Plaintiffs' reliance entirely on HTCA's operations to form a basis for even including HTC Corp. in this lawsuit. Plaintiffs have not contested that HTC Corp. does not perform any allegedly infringing acts of making, using, selling, offering for sale, or importing the accused HTC products in the U.S. Yet, Plaintiffs' only rebuttal to this Court lacking personal

jurisdiction over HTC Corp. is to point at *HTCA's activities in the U.S.*[1] Plaintiffs cannot have it both ways—relying on HTCA's activities to establish personal jurisdiction over HTC Corp. while ignoring HTCA to claim proper venue for HTC Corp. (in a venue not proper for HTCA). Plaintiffs' interpretation of the interplay between the general and patent venue statutes misreads the statutory language and subverts the rationale in *TC Heartland* and congressional intent.

      **C.**      **HTC Corp. is not subject to personal jurisdiction in Delaware**

            **1.**      **Plaintiffs reliance on *Polar* to argue that the "dual jurisdiction theory" is controlling is misguided**

Plaintiffs heavily rely on *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343 (Fed. Cir. 2016) to argue that the "dual jurisdiction theory" controls. D.I. 3-9. However, the Federal Circuit has cautioned of "substituting – [Federal Circuit's] interpretation of state long-arm statutes for that of the relevant state and federal courts." *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998). As this Court recognized in *Graphics Props. Holdings, Inc. v. Asus Computer Int'l*, the Delaware Supreme Court has not expressly decided the issue. 70 F. Supp. 3d 654 (D. Del. Sept. 29, 2014). It still has not. Thus, "the Court's role here is limited to predict[ing] how that tribunal would rule on this issue of state law." *Id.* (*citing In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014)). In the past, Delaware district courts have upheld and rejected the theory. *Id.* at 662; *see also Round Rock Research LLC v. Asustek Computer Inc.*, 967 F. Supp. 2d 969, 977 (D. Del. 2013) (rejecting the dual jurisdiction theory). If presented the issue, Defendants respectfully submit that the Delaware Supreme Court would find the theory inapplicable, *see infra* II. A.2. *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773 (2017).

---

[1] "HTC Corporation's intent to serve the United States market is established by the fact that it sells its accused products (mobile smartphones) to its whole owned and controlled American subsidiary, HTC America, with the *understanding* and *expectation* that HTC America will, in turn, sell those products in the United States." D.I. 28 at 4 (emphasis in original). This is insufficient to allege infringement against HTC Corporation, but that is a motion for another day.

7

In *Polar*, the court merely found that the district court did not err in its application of this theory. *Polar Electro Oy*, 829 F.3d at 1352. The facts are also distinguishable—finding sufficient contacts because "[Defendant's] actions are purposefully directed to Delaware, indicating an intent and purpose to serve not only the U.S. market generally, but also the Delaware market specifically." *Id*. at 1350. Unlike Plaintiffs' bare allegation that HTC Corp. generally targets the U.S., *Polar*'s holding was based on specific facts, *e.g.*, "purposefully ship[ing] at least ninety-four accused products to Delaware retailers, fully expecting that its products would then be sold in Delaware." *Id*. No such allegations or evidence exist here.

### 2. Supreme Court's recent *Bristol-Myers* decision reinforces the impropriety of the dual jurisdiction theory approach

As the propriety of the "dual jurisdiction theory" remains an open question, the Supreme Court's recent rejection of the California Supreme Court's "sliding scale approach" is instructive. There, the Court criticized the approach for "resembl[ing] a loose and spurious form of general jurisdiction" that is "difficult to square with this Court's precedents." *Bristol-Myers*, 137 S. Ct. at 1781. Similarly, the "dual jurisdiction theory" approach resembles "a loose and spurious form of general jurisdiction" by establishing specific jurisdiction "when a manufacturer has sufficient ***general contacts*** with Delaware and the plaintiffs' claims arise out of those contacts." *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267 (D. Del. 2010) (emphasis added). But the Supreme Court has now made clear that "[f]or specific jurisdiction, ***a defendant's general connections*** with the forum are not enough." *Bristol-Myers.* 137 S. Ct. at 1781 (emphasis added). Under this precedent, the "dual jurisdiction theory" is not a viable theory.

### 3. Jurisdictional discovery should be denied

For similar reasons discussed in II. A. 6 on venue discovery, Plaintiffs' jurisdiction discovery request based on bare allegations should be denied. *Nespresso USA, Inc. v. Ethical*

8

*Coffee Co. SA,* 2017 WL 2984072, at *7 (D. Del. July 13, 2017) ("If jurisdictional discovery were granted on the pleadings and facts advanced by ECC, then any foreign company with a subsidiary in the United States could be forced into discovery when their subsidiary is sued.").

### D. The Western District of Washington is the proper venue for this case

#### 1. If Defendants are not dismissed, the case should nevertheless be transferred to the Western District of Washington under § 1406(a)

Plaintiffs do not contest that § 1406(a) should apply if the Court finds the appropriate venue for HTCA is the Western District of Washington, and not Delaware. D.I. 28 at 14. Plaintiffs' apparent end-run to transfer is its claim that it would not file against HTCA in another venue, and simply proceed against HTC Corp. only in Delaware. *Id.* at 15. If Plaintiffs intended to "proceed solely against the remaining HTC defendant" (HTC Corp.), they should have dismissed the improper defendant before they filed their Second Amended Complaint.[2]

Plaintiffs do not dispute that this action originally could have been brought in the Western District of Washington. Further, Plaintiffs' arguments directed to public and private factors are misplaced here. *In re First Solar, Inc. Derivative Litig.*, 2013 WL 817132, at *12 (D. Del. Mar. 4, 2013) (recommending transfer for improper venue under § 1406(a) without analyzing public and private factors). In the interest of justice, transfer is warranted.

#### 2. In the alternative, the case should be transferred to the Western District of Washington under § 1404(a)

Regardless of the §1406(a) analysis, the Western District of Washington is a far more convenient forum notwithstanding the related cases Plaintiffs heavily rely on. D.I. 28 at 19. Judicial economy concerns cannot control the transfer analysis when many other factors

---

[2] Should the Court permit Plaintiffs to proceed in Delaware against HTC Corp. only simply to avoid a § 1406(a) transfer, the case is ripe for summary judgment of non-infringement as to HTC Corp. because it does not make, use, sell, offer for sale or import any accused HTC phones in the U.S. and is presumably only in this lawsuit due to its corporate relationship with HTCA.

9

demonstrate that another venue is clearly more convenient. *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011) ("The proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation."); *see also In re Verizon Bus. Network Servs.*, 635 F.3d 559, 562 (Fed. Cir. 2011). Moreover, judicial efficiency from the related actions will be diminished as cases are stayed, dismissed or transferred to different forums.[3]

Here, other than their preference, Plaintiffs (all foreign entities) fail to claim that any private interest factor weighs against transfer, while the sole domestic party, HTCA, is in Washington, where most of its employees and documents are located. Gietzen Decl. at ¶¶ 3-5, 9. As for public interest factors, Plaintiffs also do not dispute the local interests for HTCA in the transferee forum. On the other hand, no witness or evidence is located in Delaware. In a similar case with similar facts (no witnesses, evidence or ties between Plaintiff and the forum, a related action not subject to transfer, and a foreign parent and U.S. subsidiary headquartered and incorporated in another venue), the Court noted that "no Delaware defendants … substantially increases the defendants' showing that this case should be transferred … [a]nd among other things, it reduces or arguably eliminates Delaware's local interests." Tr. at 54, *Intellectual Ventures I LLC v. Symantec Corporation et al.*, C.A. No. 10-1067-LPS (D. Del. Nov. 29, 2012), D.I. 423. The *Jumara* factors thus favor transfer or are, at least, neutral. If the case is not dismissed or transferred under § 1406(a), the case should be transferred under § 1404(a).

### III. Conclusion

HTCA and HTC Corp. respectfully request that the Court grant their motion.

---

[3] Seven of the eleven "related actions" involve only a single expired patent, and the defendants intend to file an early § 101 motion and seek a stay. C.A. No. 17-87-LPS-CJB (D.I. 26 at 3). Moreover, the Kyocera defendants have similarly moved to dismiss on venue and personal jurisdiction grounds or to transfer in the alternative. *Id.*

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ John W. Shaw* |
| OF COUNSEL: | John W. Shaw (No. 3362) |
| Yar R. Chaikovsky | Nathan R. Hoeschen (No. 6232) |
| Philip Ou | SHAW KELLER LLP |
| Jonas P. Herrell | I.M. Pei Building |
| PAUL HASTINGS LLP | 1105 North Market Street, 12th Floor |
| 1117 S. California Avenue | Wilmington, DE 19801 |
| Palo Alto, CA 94304 | (302) 298-0700 |
| (650) 320-1832 | jshaw@shawkeller.com |
|  | nhoeschen@shawkeller.com |
| Dated: July 28, 2017 | *Attorneys for Defendants* |

11