IN UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE S.A., <br><br> Plaintiffs, <br><br> v. <br><br> HTC CORPORATION, <br><br> Defendant. | C.A. No. 17-83-LPS-CJB |
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE S.A., <br><br> Plaintiffs, <br><br> v. <br><br> LENOVO HOLDING CO., INC., LENOVO (UNITED STATES) INC., and MOTOROLA MOBILITY LLC, <br><br> Defendants. | C.A. No. 17-84-LPS-CJB |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO SEVER**

OF COUNSEL:
Yar R. Chaikovsky
Philip Ou
Bruce Yen
Radhesh Devendran
PAUL HASTINGS LLP
1117 S. California Ave.
Palo Alto, CA 94304
(650) 320-1800

John W. Shaw (No. 3362)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant HTC Corporation*

<div style="display: flex;">

OF COUNSEL:
Steven D. Moore
KILPATRICK TOWNSEND AND STOCKTON
Two Embarcadero Center Suite 1900
San Francisco, CA 94111
(415 )576-0200

Taylor Higgins Ludlam
KILPATRICK TOWNSEND AND STOCKTON
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1700

Russell A. Korn
Richard W. Goldstucker
Courtney S. Dabbiere
KILPATRICK TOWNSEND AND STOCKTON
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500

Dated: May 14, 2020

</div>

Jack B. Blumenfeld (No. 1014)
Anthony D. Raucci (No. 5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
araucci@mnat.com
*Attorneys for Defendants Lenovo Holding Co., Inc., Lenovo (United States) Inc., and Motorola Mobility LLC*

## TABLE OF CONTENTS

|      |                                                                                      | Page |
|------|--------------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS                                 | 1    |
| II.  | SUMMARY OF ARGUMENT                                                                  | 4    |
| III. | STATEMENT OF FACTS                                                                   | 4    |
| IV.  | ARGUMENT                                                                             | 5    |
|      | A.   Joinder of KPN Is Improper Under Rule 20                                        | 5    |
|      | B.   Severance Would Avoid Prejudice and Safeguard Fundamental Fairness              | 8    |
| V.   | CONCLUSION                                                                           | 12   |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3G Licensing, S.A., et al. v. LG Electronics Inc.*,
   C.A. No. 17-85-LPS, D.I. 190 (D. Del. Feb. 9, 2019) ................................................................5

*3G Licensing, SA v. Blackberry Ltd.*,
   C.A. No. 17-82, D.I. 87 (D. Del. Mar. 22, 2018) ......................................................................1

*Anza Tech., Inc. v. Mushkin, Inc.*,
   934 F.3d 1359 (Fed. Cir. 2019) .................................................................................................6

*British Telecomms. PLC v. IAC/InterActiveCorp.*,
   C.A. No. 18-366-WCB, 2019 U.S. Dist. LEXIS 67998 (D. Del. Apr. 22, 2019) ......................8

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
   896 F. Supp. 505 (D. Md. 1995) ...............................................................................................9

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) .....................................................................................5, 6, 7, 8

*Harris Corp. v. Huawei Device USA, Inc.*,
   C.A. No. 2:18-439-JRG, 2019 WL 8`35570 (E.D. Tex. June 12, 2019) ...................................7

*Nasalok Coating Corp. v. Nylok Corp.*,
   522 F.3d 1320 (Fed. Cir. 2008) .............................................................................................6, 7

*Oasis Research, LLC v. Adrive, LLC*,
   No. 4:10-CV-435, 2011 U.S. Dist. LEXIS 80623 (E.D. Tex. May 23, 2011) ..........................6

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   No. MDL 1014, 1995 WL 428683 (E.D. Pa. July 17, 1995) ..................................................11

*ROY-G-BIV Corp. v. FANUC Ltd.*,
   No. 2:07-CV-418 (DF), 2009 U.S. Dist. LEXIS 37809 (E.D. Tex. Apr. 14,
   2009) .........................................................................................................................................8

*Sporia v. Pa. Greyhound Lines, Inc.*,
   143 F.2d 105 (3d Cir. 1944) ......................................................................................................8

*Viatech Techs. Inc. v. Microsoft Corp.*,
   C.A. No. 14-1226-RGA, D.I. 134 (D. Del. June 6, 2016) ........................................................8

*Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*,
   330 F.R.D. 143 (D. Del. 2019) ..................................................................................................8

**Statutes**

35 U.S.C. § 287 ......................................................................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 20 ........................................................................................................... 4, 5, 6, 11

Fed. R. Civ. P. 21 ............................................................................................................................5

I. **INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiffs initially filed four related actions on January 30, 2017 against different mobile handset manufacturers (17-cv-82, -83, -84, and -85), alleging infringement of two patents assigned to Koninklijke KPN N.V ("KPN") and three patents assigned to 3G Licensing, S.A. ("3G").[1] None of the initial complaints or various amendments thereto (*e.g.,* three in the 17-cv-83 case against HTC, D.I. 1, 11, 20, 75)[2] alleged any relationship between the plaintiffs or the patents that would permit these claims to be joined in a single action. The defendants in these cases—which came to be known as the "Five Patent Cases"—immediately noted this misjoinder in the case management checklist. (D.I. 25 at 2).

At that time, the prejudice of defending such a misjoined action was slight, as all five patents would be litigated according to the same schedule, and the consolidated schedule could provide judicial efficiencies. The issue became less pressing on March 22, 2018, when the Court invalidated one of the two KPN patents—U.S. Patent No. 6,212,662 (the "'662 patent"). *3G Licensing, SA v. Blackberry Ltd.*, C.A. No. 17-82, D.I. 87 (D. Del. Mar. 22, 2018). Then, the issue appeared to be moot altogether when the PTAB invalidated KPN's other patent, U.S. Patent No. 9,014,667, (the "'667 patent") in September 2019 (D.I. 332), effectively removing KPN and its two patents from the Five Patent Cases.

Meanwhile, the litigation of 3G's three patents (the "3G Patents") has progressed according to its scheduled path: the parties briefed claim construction and the Court ruled; the parties completed fact discovery and served final contentions and expert reports; the parties briefed motions for summary judgment and *Daubert,* and the Court heard oral argument on these motions

---

[1] Orange S.A. is the original owner of the 3G Patents and was added as a nominal plaintiff by amendment on April 3, 2017. (D.I. 11).

[2] Unless otherwise noted, all citations to docket entries refer to Case No. 17-83.

on April 17, 2020.  With respect to the 3G Patents, 3G's claims for damages and defendants' defenses, the parties are effectively in a holding pattern until the Court issues rulings on the motions for summary judgment and *Daubert,* with the next deadline in the case (Pre-Trial Order) not until December of this year.  The first trial on the 3G Patents is scheduled for January 11, 2021. (*See* D.I. 208, 331).

Having been out of the case since March 2018, none of this work was done for the '662 patent.  Thus, the misjoinder issue returned to the fore on November 15, 2019, when the Federal Circuit issued a decision finding that the '662 patent was not invalid under § 101 and remanding the case for further proceedings.  (*See* D.I. 336 at Ex. A).  The Court held a status conference on December 9, 2019 to discuss the impact of this decision on the overall case.  (D.I. 342).  At that conference, defendants again raised the issue of KPN's improper joinder in this matter and requested severance of the '662 patent.  (Ex. A at 10:24-12:17) (Tr.).  The Court indicated that it would entertain such a request—specifically, to have KPN's claims relating to the '662 patent tried separately from 3G and its three asserted patents—and this motion followed.  (*Id.* at 15:21-16:4).

As a practical matter, KPN and the '662 patent are effectively severed from 3G and the 3G Patents for at least the next six months.  Given the stage of the cases involving the 3G Patents, the Court entered a schedule specific to the '662 patent to complete claim construction, fact discovery and expert discovery this year (D.I. 345).  The goal was to have the '662 Patent ready for trial at the same time as the 3G Patents, regardless of whether the issues should be tried together or separately.  In effect, KPN would litigate the '662 patent separate from 3G and the 3G Patents

2

until it "catches up" to 3G, as both schedules—per the Court's instruction—have a pre-trial conference in December 2020 to set the first trial in January 2021.[3]

Nothing will be gained from trying the '662 patent with the 3G Patents. There is no connection between the patents. The '662 patent has a different owner and different inventors, and is directed to different technology, which implicates different prior art and requires different proofs of infringement. Accordingly, the work needed for the parties to support their claims and defenses was not completed when the '662 patent claims were stayed in 2018, and discovery relating to the '662 patent is ongoing. And now, as a result of KPN's request to extend discovery deadlines due to the COVID-19 pandemic, the '662 patent is not even expected to be on the same track for a trial in January 2021 as the 3G Patents. The delay in KPN's case should not impact the 3G Patent cases, which have been pending for over three years and require no further discovery or delay. Thus, nothing compels keeping the claims together.

At best, the reward for the parties' extra efforts to keep the '662 patent with the 3G Patents will be a single trial where a jury has to parse claims directed to four esoteric cellular technologies, rather than three. Defendants respectfully submit that this merely invites unnecessary confusion and prejudice that could be avoided if KPN's case is allowed to mature in its own time and be presented to its own jury. Indeed, as discussed below, Plaintiffs have already used the blurring of patents and issues between KPN and 3G to cause confusion. Accordingly, defendants request that

---

[3] Despite KPN's prior request to align the '662 patent with the 3G Patents for trial (and the Court's agreement to do so), that desire no longer appears practical in view of the COVID-19 pandemic—regardless of whether the Court severs the '662 patent for trial. KPN has requested an extension of deadlines by 10 weeks given its inability to conduct source code review during fact discovery. (D.I. 422).

the '662 patent be severed for purposes of trial and keep its own separate schedule, while the pre-trial deadlines for the cases involving the 3G Patents remain aligned and maintained.[4]

## II. SUMMARY OF ARGUMENT

1. Federal Rule of Civil Procedure 20 states that plaintiffs may only be joined if their claims arise from the same transaction, occurrence, or series of transactions or occurrences. For patent cases, this requires a showing that the infringement analysis—the actual comparison of the asserted claims to the accused products—is the same for the joined plaintiffs' claims.

2. The '662 patent is too different from the 3G Patents for KPN to meet this standard. The patents are unrelated, do not share a specification or inventors, and require different proofs of infringement. Joinder is thus improper.

3. The Court also has discretion to sever KPN's claims to avoid prejudice and safeguard fundamental fairness. In what is already a complex case involving three unrelated patents, Defendants will be prejudiced by having another patent, another accused technology, and another party in the trial on the 3G Patents, as doing so will necessarily increase the potential for juror confusion. Further, there will be little or no countervailing efficiency gained from trying these claims together because KPN's '662 patent has so little in common with the 3G Patents. Accordingly, even if the Court finds that joinder is proper here, it should exercise its discretion to sever these claims.

## III. STATEMENT OF FACTS

---

[4] Plaintiffs have curiously requested that the pre-trial deadlines in its case against BlackBerry (17-cv-82) maintain the current schedule, while delaying the pre-trial deadlines against the HTC and Motorola / Lenovo Defendants in an effort to keep the '662 Patent in the same case as the 3G Patents. (*See* D.I. 422 at 10-11). But doing so creates judicial inefficiencies as pre-trial deadlines for the 3G patents should remain under the same schedule for the cases where those patents are asserted (17-cv-82, -83 and -84).

4

KPN owns U.S. Patent Nos. 6,212,662 and 9,014,667. (D.I. 75 at ¶¶ 39, 69). 3G is the assignee of U.S. Patent Nos. 7,933,564, 7,995,091, and 6,856,818. (D.I. 75 at ¶¶ 91, 115, 138).

3G and KPN are entirely separate entities. The Complaint does not allege any corporate relationship between 3G and KPN, nor is one apparent in their respective 7.1 statements. (*See id.*; *see also* D.I. 9). The only implied relationship between any of the companies is through non-party Sisvel UK Limited ("Sisvel"), the parent company of 3G, which was also involved in patent licensing efforts for KPN as part of a patent pool. (*See* D.I. 75 ¶¶ 28, 32-35, 41-42).

Likewise, there is no apparent relationship between KPN's '662 patent and the 3G Patents.[5] They have no familial relationship and they do not share any inventors. And, their titles and Plaintiffs' descriptions of the patents make clear they are directed to entirely separate aspects of cellular technology. For example, the Complaint alleges that the '662 patent and 3G Patents are considered essential to *different* 3G, 4G, and LTE standards.[6] (*See, e.g.*, D.I. 75 ¶¶ 41, 92, 116, and 143).

## IV. ARGUMENT

### A. Joinder of KPN is Improper Under Rule 20

The '662 patent and the 3G Patents are unrelated and directed to different technologies. Because of this, KPN and 3G must offer very different evidence to prove their infringement claims. This lack of factual overlap is fatal to their joinder.

Federal Rule of Civil Procedure 21 allows this Court to sever claims for misjoinder. Joinder is permissible if plaintiffs assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1). For claims to arise from the

---

[5] The '667 Patent was similarly unrelated to both the 3G Patents and the '662 patent.

[6] Plaintiffs no longer contend that any of the patents are standards essential. *See 3G Licensing, S.A., et al. v. LG Electronics Inc.*, C.A. No. 17-85-LPS, D.I. 190 (D. Del. Feb. 9, 2019).

same transaction or occurrence, they must "share an aggregate of operative facts." *See In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012). In the patent context, this requires, at a minimum, that the "accused products or processes are the same in respects relevant to the patent[s]." *See id.* Because the '662 patent and 3G Patents are not related and are directed to different technologies and thus, different aspects of the accused devices, their respective claims do not share any operative facts, let alone "an aggregate." Accordingly, KPN's claims should be severed.

The Federal Circuit has employed numerous formulations to determine whether claims arise out of the same transaction or occurrence—"whether the legal and factual issues . . . are largely the same[,]" "whether substantially the same evidence supports or refutes both [claims,]" "whether there is a logical relationship between the [claims]," whether there is "substantial evidentiary overlap[,]" and whether there is "an aggregate of operative facts." *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1325 (Fed. Cir. 2008) (as to the first three quotes); *In re EMC*, 677 F.3d at 1358 (as to the fourth and fifth quotes).[7] But, in each case, "the question is the extent of factual overlap between what the plaintiff[s] must establish to prove [their claims]." *Nasalok*, 522 F.3d at 1326 (emphasis removed).

The most analogous Federal Circuit case is *In re EMC Corp.*, which dealt with a mirror-image case where one plaintiff brought a single suit against unrelated defendants with different products. 677 F.3d at 1351. The court below had denied a motion to sever, holding that the accused products were "not dramatically different," and thus the claims would likely involve "substantially overlapping questions of law and fact." *Oasis Research, LLC v. Adrive, LLC*, No.

---

[7] These cases address the transaction-or-occurrence test under Rules 13(a) and 20(a)(2), respectively, but both are instructive. *See Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1368-69 (Fed. Cir. 2019) (noting that Rules 13(a) and 20(a) "share the same 'transaction or occurrence' standard" and are thus "particularly instructive"). Neither the Federal Circuit nor any courts in this district have addressed the standard used in Rule 20(a)(1).

6

4:10-CV-435, 2011 U.S. Dist. LEXIS 80623, at *9-10 (E.D. Tex. May 23, 2011). The Federal Circuit found this test insufficient, noting that such a test would be met "simply because the same patent claims are alleged to be infringed." *In re EMC*, 677 F.3d at 1359. Instead, the Federal Circuit developed a two-step inquiry. *Id.* First, the plaintiffs must show that "the accused products or processes are ***the same*** in respects relevant to the patent" such that the substantive patent analysis would be the same for the joined claims. *Id.* (emphasis added). If so, the court then examines various secondary factors, such as the timing of the infringement or the existence of any joint development to determine if there is "an actual link between the facts underlying each claim of infringement," such that they "share an aggregate of operative facts." *Id.* Only then is joinder proper. *Id.*

KPN cannot make these showings. There is no "factual overlap between what [KPN] must establish to prove its claim and what [3G] must establish to prove its []claim[s]." *Nasalok.*, 522 F.3d at 1326 (emphasis removed). Analyzed under the more specific rubric of *EMC*, KPN's claim fails at the first step because the analysis for the '662 patent will not be the same as the analysis for the 3G Patents.[8] This can be readily seen in Paragraphs 50 to 54 of the Complaint, which set forth KPN's allegations that a particular device "meets every element of claims 1-4 of the '662 patent literally or under the doctrine of equivalents," by including an "encoder," a "varying device," and "an interleaver." (D.I. 75 at ¶¶ 49-54). None of these elements appear in the 3G Patents, and there is no allegation in the Complaint, infringement contentions, or expert reports that any evidence KPN might present to prove these allegations would also be used, or even be

---

[8] This is apparent from the fact that there are differences between the sets of products accused of infringing the '662 patent and those accused of infringing each of the 3G Patents. (*See* Ex. B) (*compare* list of accused products against HTC for each of the 3G Patents against those accused of infringing the '662 patent).

7

relevant, to prove infringement of any 3G patent or vice versa.  *See Harris Corp. v. Huawei Device USA, Inc.*, C.A. No. 2:18-439-JRG, 2019 WL 8`35570, at *2 (E.D. Tex. June 12, 2019)  (severing counterclaims that "do not share similar technologies" and noting that "[a] fact-finder's understanding of any one of the Harris Patents will not inform her understanding of the Huawei Patents, and vice-versa").  The same is true on the invalidity side where defendants have served contentions alleging that the '662 patent is invalid in view of numerous prior art references, none of which are asserted against the 3G Patents.  *Compare* Ex. C ('662 patent invalidity contentions) with Exs. D and E (table of contents of invalidity expert reports for 3G Patents).  Thus, KPN cannot show any link between the facts relevant to its claims of infringement of the '662 patent and the facts relevant to 3G's claims of infringement of any of the 3G Patents.

Accordingly, joinder is improper and severance is warranted.

**B.** **Severance Would Avoid Prejudice and Safeguard Fundamental Fairness**

This same lack of factual overlap between the claims supports the grant of a discretionary severance, especially here, where there is risk of jury confusion and prejudice to defendants.

Even if the Court finds that the technical requirements for joinder are met, the Court may still sever these actions if it finds that doing so is "in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness."  *In re EMC Corp.*, 677 F.3d at 1360 (internal quotation marks and citation omitted); *Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 147-148 (D. Del. 2019); *Sporia v. Pa. Greyhound Lines, Inc.*, 143 F.2d 105, 107 (3d Cir. 1944).

Patent cases present unique challenges to jurors, and there is a strong interest in limiting the number of technologies, theories, and parties they are forced to parse.  *See Viatech Techs. Inc. v. Microsoft Corp.*, C.A. No. 14-1226-RGA, D.I. 134 (D. Del. June 6, 2016) (Ex. F) ("patent trials are difficult enough for juries without adding to the degree of difficulty;" "[e]xtra testimony can

8

lead to confusion"). Indeed, courts have frequently recognized that patents related to wholly different technologies will require different proofs and should be tried separately, even if joinder is technically proper. *See British Telecomms. PLC v. IAC/InterActiveCorp.*, C.A. No. 18-366-WCB, 2019 U.S. Dist. LEXIS 67998, at *17-18 (D. Del. Apr. 22, 2019) (severing claim directed to "entirely different [] subject matter" because "the interests in simplification and reducing the risk of confusing the jury provide support for a severance"); *ROY-G-BIV Corp. v. FANUC Ltd.*, No. 2:07-CV-418 (DF), 2009 U.S. Dist. LEXIS 37809, at *4-5 (E.D. Tex. Apr. 14, 2009) (severing counterclaims because they "deal with relatively distinct technology"); *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 507 (D. Md. 1995) ("Such commonality as may exist among the patents is far outweighed by the potential for jury confusion."). Severing the '662 patent, which deals with a distinct technology and requires separate proofs, will support the interests of simplification and reducing the risk of jury confusion in what is already a complex case.

Indeed, that the risk for confusion and resulting prejudice to defendants is substantial is readily apparent. Plaintiffs have already used the misjoinder of KPN and 3G in a single action to cause confusion to its advantage. Last July, HTC filed a discovery letter requesting that KPN make available for deposition in the United States one of its lead negotiators in licensing discussions, Ms. Ilse Janssen. (D.I. 309). In Plaintiffs' responsive letter, Plaintiffs misrepresented (and grossly overstated) the extent to which HTC had been able to take discovery from KPN. (D.I. 311 at 2 ("Further, any attempt to suggest that Plaintiffs have not already provided HTC with every opportunity to obtain the discovery it now claims to seek (emails written by Ilse Janssen) is flatly contradicted by the record in this case. ***Plaintiffs have made five different foreign witnesses available in the United States to testify over the course of eight full days***—days during which

9

HTC could have asked about such information.") (emphasis added)). In denying HTC's motion, the Court's Oral Order relied on this argument. (D.I. 328 ("Requiring Ms. Janssen to sit for a deposition in the U.S. is not the most reasonable exercise of the Court's discretion here, given that she will not be brought to testify at trial, *'Plaintiffs have made five different foreign witnesses available in the United States to testify over the course of eight full days'* (D.I. 311 at 2), and any unique, non-cumulative evidence Ms. Janssen may have can be reasonably obtained through a telephone or video deposition.") (emphasis added)).

However, while "Plaintiffs" (*i.e.,* collectively 3G, Orange S.A. and KPN) made "five different foreign witnesses available in the United States to testify over the course of eight full days," *only one* KPN witness was offered, and only for two days, to cover *all* 30(b)(6) deposition topics in three separate cases. In contrast, Orange S.A. made three witnesses available for one day each, and 3G made one witness available for three days. But, as each of those witnesses were corporate representatives for the other Plaintiff entities, their testimony was not relevant to KPN or KPN's patents.

The risk of confusion and resulting prejudice only increases by asking a jury to parse KPN's claims from 3G's claims, as well as defendants' defenses specific to each plaintiff. While defendants may present some of the same defenses to the KPN claims that they have presented to the 3G claims, the evidence will not be the same. For example, defendants contend that any damages recoverable by 3G should be limited due to a failure to comply with the marking statute. Defendants anticipate the same defense as to KPN, but the relevant evidence (*e.g.,* KPN's licensees, and whether the licensees' products were marked) is different from the evidence regarding 3G's obligations under 35 U.S.C. § 287. Similarly, issues and evidence regarding notice and licensing history, defenses to willful infringement allegations will be different between KPN's

claims for the '662 Patent and 3G's Patents. Thus, there is no compelling reason to keep these unrelated cases, which are already effectively separate, together.

Finally, the anticipated divergence in case schedules for KPN's '662 patent versus the 3G Patents compounds the problem and further supports severance. While the Court had previously entered a schedule that would allow the '662 patent to "catch-up" with the 3G Patents—regardless of severance for trial—KPN has indicated it needs more time to complete discovery for the '662 patent as a result of the COVID-19 pandemic and its inability to review source code from Qualcomm. (D.I. 422). By maintaining joinder of the '662 patent and KPN with the 3G Patents and 3G, defendants will be further prejudiced by delaying adjudication of the 3G Patent claims which are set for trial in January 2021. These cases have been pending for almost four years, and the first trial has already delayed several times at Plaintiffs' request. There is no reason to further delay adjudication of the 3G Patent claims.

Moreover, Plaintiffs have curiously sought to maintain the current pre-trial schedule against BlackBerry in the 17-cv-82 case, which also involves the 3G Patents (but not the '662 Patent). Doing so, and not severing the 3G Patents from the '662 Patent in these cases, will result in two separate pre-trial conferences (one for BlackBerry in December 2020 and one for HTC and Motorola / Lenovo in March 2021) with substantial overlap in issues involving the 3G Patents. The more logical and appropriate course would be to keep the cases involving 3G Patents aligned (17-cv-82, -83 and -84) and the cases involving the '662 Patent aligned (17-cv-83, -84, -85 and -90). Severing the '662 Patent and KPN for trial would accomplish this, and thereby maximize

judicial efficiency and preserve party resources while avoiding unnecessary confusion and prejudice to defendants.

Neither defendants nor the Court should be made to bear the burden of expending additional resources to keep the '662 patent claims and 3G Patents claims together just because these unrelated plaintiffs chose to file their unrelated claims together. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, No. MDL 1014, 1995 WL 428683, at *2 (E.D. Pa. July 17, 1995) ("To simply group the plaintiffs . . . primarily for filing convenience, would not satisfy the terms required in Rule 20 nor the purpose for which Rule 20 seeks to ease the burden of litigation in groups of similarly situated persons."). Any joint trial would essentially involve a mini-trial of the '662 patent intertwined with a trial on the three unrelated 3G Patents, adding only confusion.

## V. **CONCLUSION**

These plaintiffs and their respective asserted patents are too different to be tried in the same case. Moreover, as a result of the COVID-19 pandemic, the parties' and Court's efforts to keep them aligned on the same schedule—regardless of severance—is no longer practical. But pandemic aside, the law and facts support no other result than severing KPN's claims from 3G's claims for trial. Keeping them together only introduces danger of confusion and prejudice to defendants, and is contrary to the Federal Rules of Civil Procedure, Federal Circuit precedent, and the interests of fairness.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Nathan R. Hoeschen* |
| OF COUNSEL: | John W. Shaw (No. 3362) |
| Yar R. Chaikovsky | Nathan R. Hoeschen (No. 6232) |
| Philip Ou | SHAW KELLER LLP |
| Bruce Yen | I.M. Pei Building |
| Radhesh Devendran | 1105 North Market Street, 12th Floor |
| PAUL HASTINGS LLP | Wilmington, DE 19801 |
| 1117 S. California Ave. | (302) 298-0700 |
| Palo Alto, CA 94304 | jshaw@shawkeller.com |
| (650) 320-1800 | nhoeschen@shawkeller.com |
|  | *Attorneys for Defendant HTC Corporation* |
|  | */s/ Anthony D. Raucci* |
| OF COUNSEL: | Jack B. Blumenfeld (No. 1014) |
| Steven D. Moore | Anthony D. Raucci (No. 5948) |
| KILPATRICK TOWNSEND AND STOCKTON | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| Two Embarcadero Center Suite 1900 | 1201 North Market Street |
| San Francisco, CA 94111 | P.O. Box 1347 |
| (415 )576-0200 | Wilmington, DE 19899 |
|  | (302) 658-9200 |
| Taylor Higgins Ludlam | jblumenfeld@mnat.com |
| KILPATRICK TOWNSEND AND STOCKTON | araucci@mnat.com |
| 4208 Six Forks Road, Suite 1400 | *Attorneys for Defendants Lenovo Holding Co.,* |
| Raleigh, NC 27609 | *Inc., Lenovo (United States) Inc., and* |
| (919) 420-1700 | *Motorola Mobility LLC* |
| Russell A. Korn |  |
| Richard W. Goldstucker |  |
| Courtney S. Dabbiere |  |
| KILPATRICK TOWNSEND AND STOCKTON |  |
| 1100 Peachtree Street, Suite 2800 |  |
| Atlanta, GA 30309 |  |
| (404) 815-6500 |  |

Dated: May 14, 2020

13