IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., ORANGE, S.A.,<br><br>Plaintiffs,<br><br>v.<br><br>HTC CORPORATION,<br><br>Defendant. | C.A. No. 17-83-LPS |
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., ORANGE, S.A.,<br><br>Plaintiffs,<br><br>v.<br><br>LENOVO GROUP LTD., LENOVO HOLDING CO., INC, LENOVO (UNITED STATES) INC., and MOTOROLA MOBILITY LLC,<br><br>Defendants. | C.A. No. 17-84-LPS |
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., ORANGE, S.A.,<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS INC., and LG ELECTRONICS, U.S.A., INC.,<br><br>Defendants. | C.A. No. 17-85-LPS |

| | |
|---|---|
| KONINKLIJKE KPN N.V., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    C.A. No. 17-90-LPS |
| | : |
| SIERRA WIRELESS, INC., and | : |
| SIERRA WIRELESS AMERICA, INC., | : |
| | : |
| Defendants. | : |

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE

Lexie G. White and Hunter A. Vance, SUSMAN GODFREY, L.L.P., Houston, TX
Andres C. Healy and Jenna G. Farleigh, SUSMAN GODFREY, L.L.P., Seattle, WA

    Attorneys for Plaintiffs


John W. Shaw and Nathan R. Hoeschen, SHAW KELLER LLP, Wilmington, DE

Yar R. Chaikovsky, Bruce Yen, Alexander H. Lee, and Radhesh Devendran, PAUL HASTINGS LLP, Palo Alto, CA

    Attorneys for Defendant HTC Corporation


Jack B. Blumenfeld and Anthony D. Raucci, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Taylor H. Ludlam, KILPATRICK TOWNSEND AND STOCKTON, Raleigh, NC
Steven D. Moore, KILPATRICK TOWNSEND AND STOCKTON LLP, San Francisco, CA
Russell A. Korn, Richard W. Goldstucker, and Courtney S. Dabbiere, KILPATRICK TOWNSEND AND STOCKTON LLP, Atlanta, GA

    Attorneys for Defendants Lenovo Holding Co., Inc, Lenovo (United States) Inc., and
    Motorola Mobility LLC


Rodger D. Smith, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Ashish Nagdev, SIDLEY AUSTIN LLP, Palo Alto, CA

    Attorneys for Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc.

Jack B. Blumenfeld and Jeremy A. Tigan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Adam Alper and Reza Dokhanchy, KIRKLAND & ELLIS LLP, San Francisco, CA
Michael W. De Vries, Christopher M. Lawless, and JB Schiller, KIRKLAND & ELLIS LLP, Los Angeles, CA

    Attorneys for Defendants Sierra Wireless, Inc. and Sierra Wireless America, Inc.

## **MEMORANDUM OPINION**

September 29, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are the parties' claim construction disputes related to five terms in U.S. Patent No. 6,212,662 (the "'662 patent"). The parties submitted a joint claim construction brief (D.I. 438) ("Br."), a joint exhibit (D.I. 439), and expert declarations (D.I. 440-41).[1] The Court held a claim construction hearing on July 2, 2020, at which both sides presented oral argument.[2] (D.I. 458) ("Tr.")

## I. LEGAL STANDARDS

The ultimate question of the proper construction of a patent is a question of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal citation and quotation marks omitted). "[T]here is no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, the Court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321

---

[1] All references to the docket index are to C.A. No. 17-83.

[2] The parties agree on the following constructions: (1) the portion of the claim 1 preamble reciting "original data provided in blocks with each block having plural bits in a particular ordered sequence" is limiting and (2) "permutation" in claims 1-4 means "reordering of members of a given set." (Br. at 3) The Court adopts these constructions.

1

(internal quotation marks omitted). The patent "specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316.

It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir.

2014) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)) (alteration in original) (internal quotation marks omitted).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

"In some cases . . . the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer

from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999).

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks omitted).

## II.  CONSTRUCTION OF DISPUTED TERMS[3]

---

[3] As Plaintiffs note, the disputed terms were already construed by the United States District Court for the Eastern District of Texas in *Koninklijke KPN N.V. v. Samsung Elecs. Co., Ltd.*, 2016 WL 2610649 (E.D. Tex. May 6, 2016), and Plaintiffs' proposed constructions are consistent with that court's decision. (Br. at 1) This Court views the earlier constructions as persuasive authority, although it is not required to adopt them. *See Traxcell Techs., LLC v. ALE USA Inc.*, 2019 WL 6910429, at *10 (C.D. Cal. July 30, 2019).

In contrast, most of Defendants' arguments are based on the Federal Circuit's decision in *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143 (Fed. Cir. 2019), which the Eastern District of Texas did not have before it at the time it resolved claim construction disputes. Notably, the Federal Circuit's decision was ***not*** a claim construction decision; instead, it was a decision reviewing (and reversing) this Court's finding that the '662 patent was directed to nonpatentable subject matter. *See id.* Defendants divine in the Federal Circuit's analysis certain implicit claim constructions. In the Court's view, the Federal Circuit did not hand down precedential claim constructions which the Court is bound to follow, as that court did not have before it claim construction disputes. Nonetheless, it is important that this Court's resolution of the pending claim construction disputes not be inconsistent with what the Federal Circuit said about the claims (and the Court believes its constructions meet this standard).

4

A.  **"A device for producing error checking based on original data provided in blocks with each block having plural bits in a particular ordered sequence" / "producing error checking"[4]**

| |
|---|
| **Plaintiffs** |
| The portion of the preamble reciting "original data provided in blocks with each block having plural bits in a particular ordered sequence" is limiting. The preamble otherwise is non-limiting and does not require construction. |
| **Defendants** |
| The preamble is limiting, and "producing error checking" should be construed to mean "generating supplementary data for detecting transmission errors." |
| **Court** |
| The portion of the preamble reciting "original data provided in blocks with each block having plural bits in a particular ordered sequence" is limiting. The preamble otherwise is non-limiting and does not require construction. |

Defendants argue that the preamble phrase "a device for producing error checking" is limiting because it contains the only reference to the inventive concept of the '662 patent. (Br. at 4-5) The Court agrees, instead, with Plaintiffs that the inventive concept identified by the Federal Circuit (in reviewing this Court's decision that the '662 patent was not directed to patentable subject matter) was a "non-abstract improvement in an existing technology process" and this limitation captures only the "existing technology process" portion of that inventive concept, not also the "non-abstract improvement." (Br. at 6-7; *see also Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019)) Similarly, the intrinsic evidence cited by Defendants to support their proposal (i.e., "generating supplementary data for detecting transmission errors") relates to the existing process of "checking for errors in data transmission systems," not the claimed improvement. (*See* Tr. at 22-23; *see also* Br. at 6)

Thus, the disputed preamble phrase "only states the intended use of the invention" and is not limiting. *See TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015). Defendants'

---

[4] This term appears in the preamble of claim 1 of the '662 patent.

5

arguments based on the claim language "based on" and antecedent basis are unpersuasive. (*See* Tr. at 24-26)

### B. "generating device configured to generate check data"[5]

| |
|---|
| **Plaintiffs** |
| Not means-plus-function |
| A "device which generates supplementary data for use in checking for errors" |
| *Alternatively*, if the limitation is construed to be a means-plus-function limitation: |
| Function: "generate check data" |
| Structure: Circuitry configured to operate as described at 1:33-36, 1:37-41, 1:60-65, 2:30-34, 3:32-34, and/or 3:59-61, or its equivalent. |
| **Defendants** |
| This limitation should be interpreted as a means-plus-function limitation. |
| Function: "generate check data" |
| Structure: Circuitry, including that disclosed at 6:14-24, configured to perform the algorithm(s) disclosed at 1:37-41, 1:60-67. |
| **Court** |
| Not means-plus-function |
| A "device configured to generate supplementary data for use in checking for errors" |

Because the claim term does not use "means," there is a rebuttable presumption that § 112 ¶ 6 does not apply, and Defendants have not overcome this presumption by showing that the term "fails to recite sufficiently definite structure." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351 (Fed. Cir. 2015). Defendants emphasize that "device" is a nonce word, but the proper test is whether "the term, as the name for structure, has a reasonably well understood meaning in the art." *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007 (Fed. Cir. 2018). The opinions of both sides' experts – Defendants' expert Dr. Wicker and Plaintiffs' expert Dr. Cohen – demonstrate that "generating devices" were known in the art and included devices known as "encoders." (Br. at 10, 16) Likewise, the declaration of Defendants' expert Dr. Kakaes suggests that the invention had a known structural form. (Tr. at 39) Further, contrary to Defendants'

---

[5] This term appears in claim 1 of the '662 patent.

6

argument (Br. at 13), the patentee's decisions to initially draft "means for" limitations and ultimately replace them with "device" terms reflects the patentee's intent that § 112 ¶ 6 should ***not*** apply. (Br. at 16) The Court's conclusion that this term had a reasonably well understood meaning in the art is supported by the Federal Circuit's statement that the '662 patent claims "recite a sufficiently specific implementation . . . of an existing tool (i.e., check data generating device)." *Gemalto*, 942 F.3d at 1151.

The Court adopts Plaintiffs' construction as modified by the Court, without objection from Plaintiffs, to address one of Defendants' criticisms of Plaintiffs' previous proposal. (*See, e.g.*, Tr. at 55-56, 58-59)

### C.     "check data"[6]

| **Plaintiffs** |
|---|
| "supplementary data for use in checking for transmission errors" |
| **Defendants** |
| "supplementary data that is a short-hand representation of the content of the original data for detecting transmission errors" |
| **Court** |
| "supplementary data for use in checking for transmission errors" |

Defendants essentially seek a negative limitation: that "check data" have fewer bits than the original data. (*See* Br. at 24-25, 27-28) Defendants have not identified any "express disclaimer or independent lexicography in the written description" or any other meritorious basis to narrow the scope of the claim term. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322-23 (Fed. Cir. 2003). Additionally, the Court agrees with Plaintiffs that requiring check data to be smaller than the original data would be inconsistent with the purpose of the invention,

---

[6] This term appears in claim 1 of the '662 patent.

7

which was to overcome the problems caused by systems using too few data bits. (Br. at 24; *see also* '662 patent at 1:46-59, 2:19-41)

Defendants rely heavily on the Federal Circuit's statement that "check data effectively serves as a short-hand representation of the content of the original data prior to transmission," but the Federal Circuit was (at least in large part) making an observation about check data in prior art systems and (more importantly) was not construing the term "check data" as used in the '662 patent's claims. *Gemalto*, 942 F.3d at 1146; *see also* Br. at 23. Defendants also point to embodiments disclosed in the patent which may involve check data shorter than the original data, but Plaintiffs do not dispute that such embodiments are within the scope of the claims. Defendants' efforts to limit the claims to such embodiments (including their reliance on the specification's reference to "restricted in length") fail. (*See* Tr. at 82-87)

### D. "modify the permutation in time"[7]

| Plaintiffs |
|---|
| "change the permutation from time to time" |
| **Defendants** |
| "modify the permutation applied to successive data blocks so that the change enables the detection of persistent errors in data transmission" |
| **Court** |
| "change the permutation from time to time" |

Defendants again rely on the Federal Circuit's decision for their proposed construction. (Br. at 30-31, 37-38) In particular, they highlight the following passage:

> According to the '662 patent, prior art error detection systems were unable to reliably detect systematic errors. . . . The '662 patent solves this problem by varying the way check data is generated by varying the permutation applied to different data blocks. Varying the permutation for each data block reduces the chances that the same systematic error will produce the same defective check data across different data blocks.

---

[7] This term appears in claim 2 of the '662 patent.

8

*Gemalto*, 942 F.3d at 1145-46. But, again, the Federal Circuit did not resolve a claim construction dispute and, instead, gave an overview of the pertinent technology.

Moreover, the Court agrees with Plaintiffs that their proposed construction is supported by the specification language that the permutation (1) can "be varied every n bits, where $n \geq 1$" and (2) "can be varied on the basis of one or more parameters of the data packet" to "accomplish a varying, i.e., time-dependent checking function." (Br. at 29, 36)

Plaintiffs are further correct (Br. at 30) that a portion of Defendants' construction – "so that the change enables the detection of persistent errors in data transmission" – would inappropriately narrow the scope of the claim to capturing only the central purpose of the invention. *See Fujinon Corp. v. Motorola, Inc.*, 2009 WL 2920808, at *8 (D. Del. Sept. 11, 2009) ("[T]he relevant legal fact is that the invention claimed in claim 1 need not fulfill every – or even the central – purpose of the inventor's invention.").

## III. CONCLUSION

The Court will construe the disputed terms as explained above. An appropriate Order follows.[8]

---

[8] After the hearing, the parties submitted a letter disputing whether Defendants waived their arguments on five claim terms that Plaintiffs asked the Court to construe as having their plain and ordinary meaning. (D.I. 459) The Court agrees with Defendants that they did not affirmatively waive their arguments on these terms but instead made the strategic choice not to brief them given the page limits set by the Court; the Court further agrees with Defendants that the cases cited by Plaintiffs are distinguishable. (*See id.* at 4-6 & n.3) The parties may (if necessary) raise their additional claim construction disputes as part of their summary judgment or *Daubert* briefing. (*See id.* at 7)

9