**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

3G LICENSING, S.A., KONINKLIJKE KPN
N.V., and ORANGE, S.A.,

                    Plaintiffs,

          v.

HTC CORPORATION,

                  Defendant.

Civil Action No. 17-83-GBW

---

## MEMORANDUM ORDER

Presently before this Court is Defendant HTC Corporation's ("HTC") Renewed Motion to Sever (the "Motion to Sever"), D.I. 623, and Motion to Stay Pending *Ex Parte* Reexamination Proceeding (the "Motion to Stay"), D.I. 625. The Court has reviewed the parties' briefing, D.I. 624, D.I. 627, D.I. 631 (the Motion to Sever briefing); D.I. 626, D.I. 633, D.I. 637, D.I. 640 (the Motion to Stay briefing), and heard oral argument on December 21, 2022. For the reasons below, the Court grants HTC's Motion to Sever, D.I. 623, and denies HTC's Motion to Stay, D.I. 625.

## I.    BACKGROUND[1]

On January 30, 2017, Plaintiffs 3G Licensing, S.A. ("3GL") and Koninklijke KPN N.V. ("KPN") filed related actions against different mobile handset manufacturers, including HTC, alleging infringement of the following five patents: U.S. Patent Nos. 9,014,667 (the "'667 patent"); 6,856,818 (the "'818 patent"); 6,212,662 (the "'662 patent"); 7,933,564 (the "'564 patent"); and

---

[1] The Court writes for the benefit of the parties and assumes their familiarity with this action.

7,995,091 (the "'091 patent"). *See* D.I. 1. Three of the patents (the '818, '564, and '091 patents) are assigned to 3GL (the "3GL patents") and two of the patents (the '667 and '662 patents) are assigned to KPN. D.I. 75 ¶¶ 39, 69, 91, 115, 138.[2]

On March 22, 2018, the Court invalidated the '662 patent under 35 U.S.C. § 101. *See 3G Licensing, SA v. Blackberry Ltd.*, No. 17-82-LPS, D.I. 87 (D. Del. Mar. 22, 2018). This decision was appealed to the Federal Circuit. In September 2019, the PTAB invalidated the '667 patent. D.I. 332 at 1-2. The result of these two decisions effectively removed KPN from the case. Meanwhile, the parties continued litigation of the 3GL patents. On November 15, 2019, the Federal Circuit held the '662 patent was not invalid under § 101 and remanded the case for further proceedings. D.I. 336-1.

## II.   LEGAL STANDARD

### a. Motion to Sever

Federal Rule of Civil Procedure 20(a)(1) provides: "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)-(B). "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

---

[2] On April 3, 2017, Plaintiff Orange S.A. was added as a nominal plaintiff by amendment. D.I. 11. Orange S.A. is the original owner of the 3GL patents.

If plaintiffs are not properly joined under Rule 20(a)(1), a court "may [] sever any claim against a party" under Rule 21. Fed. R. Civ. P. 21. Rule 21 may also be invoked "to prevent prejudice or promote judicial efficiency." *Lopez v. City of Irvington*, No. 05-5323, 2008 WL 565776, at *2 (D.N.J. Feb. 28, 2008) (citations omitted); *see also Sporia v. Pennsylvania Greyhound Lines, Inc.*, 143 F.2d 105 (3d Cir. 1944) (not limiting Rule 21 severance to cases of misjoinder); 4 James Wm. Moore et al., *Moore's Federal Practice* § 21.02(1) (3d ed. 2007) (courts may issue severance orders under Rule 21, even in the absence of misjoinder and non-joinder of parties, "to construct a case for the efficient administration of justice"). "In patent cases, motions to sever are governed by Federal Circuit law because the court's assessment of joinder necessarily requires an analysis of the accused acts of infringement." *Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*, No. 14-1142-GMS, 2015 WL 4624164, at *2 (D. Del. July 31, 2015) (citing *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012)); *see also Vehicle IP, LLC v. AT & T Mobility LLC*, No. 09-1007-LPS, 2016 WL 6404093, at *1 (D. Del. Oct. 20, 2016) (citing *In re EMC Corp.*, 677 F.3d at 1354).

### b. Motion to Stay

A court has discretionary authority to grant a motion to stay. *See Dentsply Int'l Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990). Courts generally consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, C.A. No. 15-1168-LPS, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021) (citing

*Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019)).

## III.  DISCUSSION

### a.  Motion to Sever

The parties dispute whether 3GL and KPN are properly joined under Rule 20(a)(1). For the reasons discussed below, the Court finds the parties are not properly joined under Rule 20(a)(1).

For multiple plaintiffs to be joined in one action, the claims must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). For claims to arise out of the same transaction or occurrence, they must "share an aggregate of operative facts." *In re EMC Corp.*, 677 F.3d at 1359. For patent cases, joinder is proper if: (1) "the accused products or processes are the same in respects relevant to the patent[s]" and (2) there is "an actual link between the facts underlying each claim of infringement." *Id.*[3] "[T]he question is the extent of factual overlap between what the plaintiff[s] *must* establish to prove [their claims]." *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1325 (Fed. Cir. 2008) (emphasis in original).

The Court finds neither element of joinder is met in this case. The 3GL patents and the '662 patent are not related, do not share a specification, and have different owners and different inventors. D.I. 624 at 3. Additionally, 3GL and KPN are separate entities with no corporate

[3] Plaintiffs contend that *In re EMC* is inapposite to this case because it addressed an alleged misjoinder of defendants under Rule 20(a)(2), not an alleged misjoinder of plaintiffs under Rule 20(a)(1). D.I. 627 at 8-9. The Court disagrees. Rules 20(a)(1) and 20(a)(2) are substantively identical, which implies that the same test should apply. *See Yousuf v. Samantar*, 451 F.3d 248, 256 (D.C. Cir. 2006) ("[w]ith respect to the Federal Rules in particular, the Supreme Court has instructed that, except where doing so would 'produce absurd results,' 'words and phrases . . . must be given a consistent usage and be read *in pari materia*[;] . . . to do otherwise would attribute a schizophrenic intent to the drafters." (quoting *Marek v. Chesny*, 473 U.S. 1, 21 (1985))).

relationship. D.I. 624 at 5. Plaintiffs contend that the 3GL patents and the '662 patent all relate "to cellular telecommunications technology." D.I. 627 at 6. The Court finds Plaintiffs are overgeneralizing the similarities of the 3GL patents and the '662 patent. The patents are directed to different and separate aspects of cellular technology. *See e.g.*, D.I. 75-5 (the '818 patent) at Title, Abstract; D.I. 75-3 (the '564 patent) at Title, Abstract; D.I. 75-4 (the '091 patent) at Title, Abstract; D.I. 75-1 (the '662 patent) at Title, Abstract. HTC also notes that the Complaint alleges that the 3GL patents and the '662 patent "are considered essential to different 3G, 4G, and LTE standards," which further supports HTC point that the patents "are directed to separate aspects of cellular technology." D.I. 624 at 5 (citing D.I. 75 ¶¶ 41, 92, 116, 143).

Because the patents are directed to separate aspects of cellular technology, Plaintiffs' infringement analysis will not be the same. For example, Plaintiffs accuse HTC of infringing the '662 patent because its accused devices include an "encoder," a "varying device," and "an interleaver." D.I. 75 ¶¶ 49-54 (citation omitted). None of these terms appear in any of the 3GL patents, "and there is no allegation in the Complaint, infringement contentions, or expert reports that any evidence that KPN might present to prove these allegations would also be used, or even be relevant, to prove infringement of any 3GL patent or vice versa." D.I. 624 at 8. Thus, the Court finds no link between the facts relevant to KPN's claims of infringement of the '662 patent and the facts relevant to 3GL's claims of infringement of the 3GL patents.

Additionally, HTC has served invalidity expert reports alleging the '662 patent is invalid in light of several prior art references, none of which were cited in HTC's invalidity expert reports for the 3GL patents. *Compare* D.I. 624-3 (table of contents of invalidity expert report for the '662 patent) with D.I. 624-4 and 624-5 (table of contents of invalidity expert reports for the 3GL

patents).  HTC also hired different experts to draft its respective invalidity expert reports, which further suggests the patents are substantially different.

Plaintiffs contend the 3GL patents and the '662 patent involve overlapping factual issues. For example, the patents were all part of the "LTE Patent Pool" and Plaintiffs brought this action as a "LTE Pool Enforcement Action" arising out of Section 4.3 of the "LTE/SAE Program Agreement." D.I. 627 at 5 (citing D.I. 628-3, D.I. 628-2 at 191:13-15, D.I. 628-4 at 716-719).  Further, Plaintiffs argue that the 3GL patents and the '662 patent "were available for licensing through [the LTE Patent Pool], *and HTC was engaged in actual negotiations to take a license to the Asserted Patents through that pool.*" D.I. 627 at 5 (emphasis in original).  These negotiations are allegedly related to numerous issues like "notice of infringement, HTC's willfulness in infringing, and the historical backdrop for the appropriate damages." D.I. 627 at 5.

Plaintiffs, however, failed to explain how the shared negotiation history of the 3GL patents and the '662 patent share the factual foundation required by Rule 20. D.I. 627 at 5-7. Additionally, Plaintiffs stated in their Complaint that KPN notified HTC of the '662 patent before HTC joined the LTE Patent Pool and HTC was not notified of the 3GL patents until years later. D.I. 75 ¶¶ 23-35.  Thus, the Court does not see how the "shared negotiation history" of the 3GL patents and the '662 patent "bear directly on core disputed issues related to notice of Defendants' infringement, damages, marking, and willfulness for all of the Asserted Patents." D.I. 627 at 2.  Because the Court finds the 3GL patents and the '662 patent are directed to separate aspects of cellular technology and different aspects of the accused devices, Plaintiffs' respective claims do not share an aggregate of operative facts.

For the reasons stated above, the Court finds Plaintiffs have not met the technical requirements of Rule 20(a)(1). Where plaintiffs "fail[] to satisfy the conditions of permissive joinder under Rule 20(a), a court may 'grant severance or dismissal to the improper party if it will not prejudice any substantial right' to remedy improper joinder pursuant to [Rule 21]." *Tredo v. Ocwen Loan Servicing, LLC*, No. 14-3013 JLL, 2014 WL 5092741, at *3 (D.N.J. Oct. 10, 2014) (quoting *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d. Cir. 1972)). Thus, KPN's claim for infringement of the '662 patent will be severed from 3GL's claim for infringement of the 3GL patents for all purposes including trial.

Plaintiffs also argue that, if the Court finds that "joinder of the '662 Patent do not meet the technical requirements of Rule 20, the Court can (and should) keep the cases consolidated for trial." D.I. 627 at 10. The Federal Circuit has noted that district courts should "keep in mind that even if joinder is not permitted under Rule 20, the district court has considerable discretion to consolidate cases for discovery and for trial under Rule 42 where venue is proper and there is only a common question of law or fact." *In re EMC Corp.*, 677 F.3d at 1360 (quotation omitted); *see also* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1689 (3d ed. 2001) ("[E]ven though claims have been severed under Rule 21 they still may be consolidated for trial under Rule 42(a)"). Rule 42(a) states, in relevant part, "[i]f actions before the court involve a common question of law or fact, the court may" "consolidate the actions[.]" Fed. R. Civ. P. 42(a). Plaintiffs argue that there would be "enormous inefficiency" if the Court splits the 3GL patents and the '662 patent into multiple trials, and a consolidated trial "will save this Court from having to conduct an *additional* trial, thus preserving the time and energy of this Court, the jurors, and the parties." D.I. 627 at 12. HTC responds that the risk of jury confusion is "substantial" if "totally unrelated claims" were presented in the same trial against HTC at the same time. D.I. 631 at 9.

7

The Court agrees with HTC and finds that the '662 patent will be tried in a separate trial to avoid jury confusion. Under Rule 42(b), the Court has authority to "order a separate trial on one or more separate issues, claims, crossclaims, [or] counterclaims." Fed. R. Civ. P. 42(b). The Court may do so for "convenience, to avoid prejudice, or to expedite and economize." *Id.* Additionally, a district court has the inherent power "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "A court's inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provides authority to fashion tools that aid the court in getting on with the business of deciding cases." *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 567 (3d Cir. 1985). While Plaintiffs allege that they will "rely on many of the same *sources* of evidence to prove their '662 patent claims as they relied on to prove their other claims," D.I. 627 at 6, they fail to show how the "same *evidence* supports or refutes both [claims]." *See Nasalok Coating Corp.*, 522 F.3d at 1325 (emphasis added); *see also* D.I. 631 at 8. Further, "patent trials are difficult enough for juries without adding to the degree of difficulty." *Viatech Techs. v. Microsoft Corp.*, No. 14-1226-RGA, D.I. 134, at 1 (D. Del. June 6, 2016). Trying the 3GL patents and the '662 patent together would "involve additional infringement analysis and damages analysis" as discussed above, and "[e]xtra testimony can lead to confusion." *Id.* For at least those reasons, the Court finds a substantial risk of jury confusion if the 3GL patents and the '662 patent were tried together. "Plaintiffs improperly filed two unrelated cases in one complaint—there are two sets of unrelated plaintiffs, asserted two sets of unrelated patents, each having unrelated witnesses and each seeking their own, unrelated claim for damages." D.I. 624 at 1. Thus, the Court finds under Rule 42(b) that the '662 patent will be tried in a separate trial to avoid jury confusion.

For the reasons stated above, pursuant to Federal Rules of Civil Procedure 20, 21, and 42, HTC's Motion to Sever KPN's claims for infringement of the '662 patent for all purposes including trial, D.I. 623, is GRANTED.

### b. Motion to Stay

HTC moves for a partial stay of this litigation pending resolution of an *ex parte* reexamination proceeding concerning the '662 patent. D.I. 625. The Court finds, on balance, the stay factors do not weigh in favor of a stay.

The first factor—whether granting the stay will simplify the issues for trial—neither favors nor disfavors a stay. The *ex parte* reexamination was instituted on July 11, 2022 as to all asserted claims of the '662 patent. D.I. 626 at 1. HTC argues that "a stay is likely to eliminate all of KPN's claims from the case entirely" because approximately 80% of instituted *ex parte* reexaminations result in claims either being cancelled or amended. *Id.* at 4-5 (citing D.I. 626-4, Ex Parte Reexamination Filing Data - September 30, 2020). Plaintiffs argue that HTC's simplification argument is speculative. D.I. 633 at 10-12. Plaintiffs also note that, even when considering the statistics cited by HTC, the United States Patent and Trademark Office ("PTO") has cancelled every challenged claim in only 13.1% of *ex parte* reexaminations. D.I. 633 at 2, 11 (citing D.I. 626-4).

HTC also filed a Notice of Subsequent Authority notifying the Court that the PTO issued a non-final rejection, which found the remaining claims of the '662 patent are invalid as obvious. D.I. 640. The fact that the PTO issued a non-final rejection does not change the Court's analysis. The facts in this action are similar to the facts in *Cronos Technologies, LLC v. Expedia, Inc.*, No. 13-1538-LPS, 2016 WL 1089752, at *1 (D. Del. Mar. 21, 2016). In *Cronos*, the PTO issued a non-final rejection of every asserted claim. *Id.* The court found the first stay factor "neither favors

9

nor disfavors a stay" because "if the PTO does not invalidate all of the asserted claims, significant issues will remain to be resolved, including issues of infringement, as well as invalidity defenses which will not be addressed by the PTO." *Id.* Thus, the Court finds the first stay factor neutral.

The second factor—the status of the litigation—strongly disfavors granting a stay. This case has been pending since January 2017. *See* D.I. 1. The Court and the parties have both invested "substantial resources" in this case. *Personalized User Model, L.L.P. v. Google, Inc.*, No. 9-525-LPS, 2012 WL5379106, at *2 (D. Del. Oct. 31, 2012) (denying motion to stay when fact discovery was completed). Fact and expert discovery have closed, and the Court has resolved all dispositive and *Daubert* motions. Thus, the advanced stage of the case and the significant resources both the parties and the Court have already spent on this case strongly weigh against a stay. *See Cronos*, 2016 WL 1089752, at *2 (explaining that "[g]iven the resources already expended by both sides and the Court in this case, the stage of the case weighs against granting a stay [pending reexamination]" when "expert discovery is complete and last week the parties' filed their case dispositive motions and Daubert motions"); *SoftView LLC v. Apple Inc.*, No. 10-389-LPS, 2012 WL 3061027, at *4 (D. Del. July 26, 2012) (finding second stay factor weighs against a stay where "[s]ubstantial time and resources have been devoted in this case to scheduling and the resolution of discovery disputes, as well as Defendants' motions to sever, stay, and dismiss").

The third factor—whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage—also disfavors a stay. In evaluating undue prejudice and whether a tactical advantage is gained, courts consider (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019). The first two factors weigh in

10

favor of the Court finding a stay would unduly prejudice Plaintiffs and provide a tactical advantage for HTC. HTC waited more than five years to seek an *ex parte* reexamination of the '662 patent. This case was filed on January 30, 2017, and HTC filed its petition for *ex parte* reexamination on April 13, 2022. D.I. 626-1. The Court finds HTC's delay in petitioning for *ex parte* reexamination unduly prejudices Plaintiffs. *See, e.g.*, *SoftView*, 2012 WL 3061027, at *4 (finding undue prejudice where "Apple did not file its request for *inter partes* reexamination until approximately one year after this litigation began."). Further, "[a] request for reexamination made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage." *Belden Techs. Inc. v. Superior Essex Comms. LP*, No. 08-63, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010). The PTO granted HTC's petition on July 11, 2022. D.I. 626-1. HTC waited another four months until it filed its Motion to Stay. D.I. 625.

Thus, because on balance the stay factors weigh against a stay, HTC's Motion to Stay is DENIED.

## IV. CONCLUSION

Therefore, at Wilmington this 4th day of January 2023, **IT IS HEREBY ORDERED** that HTC's Motion to Sever, D.I. 623, is **GRANTED** and HTC's Motion to Stay, D.I. 625, is **DENIED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE