**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A., | C.A. No. 17-cv-83-GBW |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | ███████████████ |
| HTC Corporation, | |
| Defendant. | |

<u>**[PROPOSED] FINAL PRETRIAL ORDER – PATENT**</u>

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure. The parties submit this proposed pretrial order in connection with the trial between plaintiffs 3G Licensing, S.A. ("3G Licensing") and Orange, S.A. ("Orange") (together "Plaintiffs"), and defendant HTC Corporation ("HTC Corp." or "HTC") scheduled for October 10, 2023. D.I. 645.

**Plaintiffs' Counsel:**

| | |
|---|---|
| Brian E. Farnan (Bar No. 4089) Michael J. Farnan (Bar No. 5165) FARNAN LLP 919 N. Market St., 12th Floor Wilmington, DE 19801 Tel: (302) 777-0300 bfarnan@farnanlaw.com mfarnan@farnanlaw.com | Lexie G. White (admitted *pro hac vice*) lwhite@susmangodfrey.com Hunter Vance (admitted *pro hac vice*) hvance@susmangodfrey.com SUSMAN GODFREY, L.L.P. 1000 Louisiana Street, Suite 5100 Houston, Texas 77002 Tel: (713) 651-9366 <br><br> Andres C. Healy (admitted *pro hac vice*) ahealy@susmangodfrey.com SUSMAN GODFREY L.L.P. 1201 Third Avenue, Suite 3800 Seattle, WA 98101-3000 Telephone: (206) 505-3843 |

**HTC Corp.'s Counsel:**

| | |
|---|---|
| John W. Shaw (No. 3362)<br>Karen E. Keller (No. 4489)<br>Nathan R. Hoeschen (No. 6232)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>nhoeschen@shawkeller.com<br>Attorneys for Defendant HTC Corporation | Yar R. Chaikovsky (admitted *pro hac vice*)<br>Philip Ou (admitted *pro hac vice*)<br>Bruce Yen ((admitted *pro hac vice*)<br>Radhesh Devendran ((admitted *pro hac vice*)<br>Shashank Chitti (admitted *pro hac vice*)<br>Jake Gold (admitted *pro hac vice*)<br>WHITE & CASE LLP<br>3000 El Camino Real, 2 Palo Alto Square,<br>Suite 900<br>Palo Alto, CA 94306<br>(650) 213-0300 |

## I.   NATURE OF THE CASE

This is a patent infringement action filed by Plaintiffs 3G Licensing and Orange[1] against

Defendant HTC Corp.[2] Plaintiffs allege that HTC Corp. infringed U.S. Patent Nos. 7,995,091

("'091 Patent") and 6,856,818 ("'818 Patent") (together the "Asserted Patents").[3] Plaintiffs'

---

[1] **[HTC's Position:** Orange is not a proper party to this action under Fed. R. Civ. P. Rule 20 as Plaintiffs admit that Orange has no rights to asserts the Asserted Patents against HTC or rights to recover for any infringement at issue in this case. 3G Licensing "holds the sole right to sue and recover for any and all infringements at issue." D.I. 75 at 115 ('091 Patent), 138 ('818 Patent). Of significant concern, Plaintiffs have refused to disclose whether Orange is even entitled to any portion of any damages that a jury could award in this case. ████████████████████████████
████████████████████████████████████████████████████████ .

**[Plaintiffs' Position:** In the more than 6.5 years that the parties have litigated this case, HTC has never claimed that Orange is "not a proper party to this action." To the extent that HTC's "position" purports to raise any objection, it is improper and long since waived. HTC is also wrong that Orange is not a proper party, including because, as HTC knows, ████████████████████████ ]

[2] Koninklijke KPN N.V. ("KPN") is also a plaintiff in this action. The Court has severed 3G Licensing, S.A.'s and Orange, S.A.'s claims from KPN's claims against HTC Corp, D.I. 641, and the Court has stayed KPN's claims against HTC Corp. in light of the binding agreement reached between KPN and HTC. D.I. 661.

[3] **[Plaintiffs' Position:** Plaintiffs have informed HTC that—per HTC's request that Plaintiffs consider ways to narrow the issues to be submitted to the jury at trial—Plaintiffs are not asserting U.S. Patent No. 7,933,564 ("'564 Patent") at trial. To the extent the Court believes it necessary, Plaintiffs will file a formal notice of dismissal. Further, HTC's assertions below that Plaintiffs'

operative pleading in this case is the December 27, 2017 Third Amended Complaint for Patent

Infringement. D.I. 75.

Plaintiffs allege that HTC Corp. infringes Claims 1–2 and 6–9 of the '091 Patent and

Claims 18–19 and 22–23 of the '818 Patent. Plaintiffs seek compensation under 35 U.S.C. § 284

for infringement. Plaintiffs also seek pre-judgment and post-judgment interest, an award of

enhanced damages in light of HTC's willful infringement, and an award of attorneys' fees and

costs.

---

'564 Patent claims are "frivolous" or that Plaintiffs had "no basis for asserting infringement" are wrong and flatly contrary to the record. Indeed, this Court repeatedly rejected HTC's various attacks on the '564 Patent claims, including denying HTC's indefiniteness motion (D.I. 165 at 24–30), its § 101 motion (June 17, 2019, Hearing Tr. at 214:2–216:4), and its non-infringement motion for summary judgment on Plaintiffs' doctrine of equivalents infringement theory (the very theory HTC now claims is "frivolous") (D.I. 486 at 13–14). As Plaintiffs informed HTC, it has no basis for demanding a royalty-free release for HTC America, especially while simultaneously telling Plaintiffs that HTC reserves the right to seek fees and costs associated with Plaintiffs' assertion of the '564 Patent. In sum, the only thing frivolous here is HTC's contrived complaints about Plaintiffs narrowing their case in good faith *per HTC's request*.]

[**HTC's Position:** HTC agrees that Plaintiffs should dismiss the 564 Patent **with prejudice**; this patent should have been dropped five years ago when HTC began raising its significant concerns that 3GL had no basis for asserting infringement. The Court already granted summary judgement of non-infringement on the apparatus claims in HTC's favor. D.I. 486 at 14-15. For the next three years, Plaintiffs have maintained tenuous assertions of the surviving method claims of the 564 patent, despite no evidence of HTC Corp. using the claimed method in the United States. Indeed, the Court denied summary judgment of non-infringement as to all claims only because of an expert opinion supporting a doctrine of equivalents argument that Plaintiffs no longer are willing to present at trial. *Id.* at 13-14. Although Plaintiffs have finally decided to abandon its claims, HTC has concerns that 3G Licensing declined HTC's request that 3G Licensing grant HTC America, Inc. ("HTCA") a release and covenant not to sue for the '564 Patent. Plaintiffs initially sued both HTC Corp. and HTCA, but dismissed HTC **without prejudice** in December 2017. D.I. 74. Through its pre-trial disclosures, Plaintiffs have made clear they intend to argue that HTC Corp. induces HTCA to infringe the Asserted Patents at trial (*see* D.I. 679 at 28, Proposed Final Jury Instructions). That is, until September 22, 2023 when 3GL informed HTC it intends to drop it's '564 Patent claims, Plaintiffs intended to argue to the jury that HTC Corp. indirectly infringes the '564 Patent by inducing HTCA to directly infringe the '564 Patent. Without a release and covenant not to sue, 3GL could file suit on the same claims against the same products against HTCA tomorrow after HTC Corp. spent five years defending against those frivolous claims up until the eve of trial before this Court.

3

HTC Corp. filed an answer to Plaintiffs' operative complaint on January 19, 2018. D.I. 82. HTC Corp. denied Plaintiffs' allegations that HTC infringed the Asserted Patents, and HTC Corp. asserted a number of defenses against the allegations of infringement, including, among other things, that the Asserted Patents are invalid.

A pretrial conference is scheduled for October 4, 2023, at 3:00 PM. Trial currently is set for five days beginning on October 10, 2023. D.I. 645.

## II.    JURISDICTION

The Court's subject matter jurisdiction is not disputed and is based on 28 U.S.C. §§ 1331 and 1338(a). Personal jurisdiction is not contested for purposes of this action.

## III.   FACTS

### A.    Uncontested Facts

Per agreement of the parties, the facts listed in **Exhibit 1** are not disputed or have been agreed to or stipulated to by the parties. Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury or Court, and will be charged for the time used to do so.

### B.    Contested Facts

#### 1.    Plaintiffs

Plaintiffs' statement of contested facts that remain to be litigated is attached as **Exhibit 2.**

#### 2.    HTC

HTC's statement of contested facts that remain to be litigated is attached as **Exhibit 3.**

* * *

The parties reserve the right to modify or supplement their statements of facts that remain to be litigated to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## IV.   ISSUES OF LAW

Plaintiffs' statement of issues of law that remain to be litigated, with a citation to authorities relied upon is attached as **Exhibit 4**.

HTC's statement of issues of law that remain to be litigated, with a citation to authorities relied upon is attached as **Exhibit 5**.

## V.   PLAINTIFFS' STATEMENT OF INTENDED PROOF

Plaintiffs intend to prove that HTC has infringed Claims 1–2 and 6–9 of the '091 Patent and Claims 18–19 and 22–23 of the '818 Patent by making, using, selling, offering to sell in the United States, and/or importing into the United States the Accused Products. Plaintiffs intend to prove that HTC's infringement was willful.[4]

---

[4] **[Plaintiffs' Position:** Plaintiffs have informed HTC that if the Court grants Plaintiffs' motion in limine excluding HTC's marking argument and evidence, Plaintiffs will not assert Claims 8–9 of the '091 Patent. Further, HTC's position below is simply false. As Plaintiffs have explained at length in their motion *in limine*, ***this Court already resolved HTC's marking defense***—holding that "[t]he Court is not going to permit [HTC's] untimely-produced [marking] evidence to be admitted," D.I. 486 at 17–18, and later confirming its ruling resulted in the "exclusion of the evidence" and thus the "elimination of [the] marking affirmative defense."]

**[HTC's Position:** Plaintiffs offered to drop the asserted method claims of the '091 Patent if HTC agreed to drop its marking defense. HTC declined, as whether 3GL complied with the marking requirements of 35 U.S.C. § 287 is a fundamental issue in this case that should be tried to the jury and otherwise preserved for appeal.  Plaintiffs' incorrect interpretation of an excerpt from the Court's order denying a motion for summary judgment filed by Defendants (not Plaintiffs) is explained the briefing on the motion *in limine*.  Nevertheless, the method claims should be dropped regardless of whether the Court precludes HTC from presenting a marking defense at trial, as there is no evidence of HTC practicing the claimed method in the United States.

5

Plaintiffs intend to prove that damages in the form of a reasonable royalty should be awarded for HTC's infringement and that treble damages should be awarded for HTC's willful infringement.

Plaintiffs intend to prove that they should be awarded their costs and reasonable attorneys' fees under at least 35 U.S.C. § 285. Any reference to an award of costs and attorneys' fees will be made post-trial.

## VI.  HTC'S STATEMENT OF INTENDED PROOF

HTC intends to prove that Claims 1–2 and 6–9 of the '091 Patent and Claims 18–19 and 22–23 of the '818 Patent are invalid.

HTC intends to prove that licensee, ███████ had a duty to mark products that allegedly practice one or more claim of each of the Asserted Patents under Plaintiffs' theory of infringement, but did not, thereby limiting any damages to when 3G Licensing first provided notice of HTC's alleged infringement.

HTC intends to prove that it should be awarded its costs and reasonable attorneys' fees under at least 35 U.S.C. § 285.  Any reference to an award of costs and attorneys' fees will be made post-trial.

## VII.  WITNESSES

Presentation of evidence will follow the burden of proof. Plaintiffs will go first and present their case-in-chief on infringement and damages. HTC will then present its response on infringement and damages, and its case-in-chief on invalidity. Plaintiffs may then present their

rebuttal on damages and infringement, and their response on invalidity. [**HTC's Position**: HTC may then present its rebuttal on invalidity.][5]

The listing of a witness on a party's witness list does not require the party to call that witness to testify and does not imply or establish that the listing party has the power to compel the live testimony of that witness or make that witness available to the opposing party. Any witness not listed will be precluded from testifying, absent good cause shown. Fact witnesses will be sequestered, with the exception of one designated corporate representative from each side who may remain in the courtroom and not otherwise be subject to the foregoing sequestration order.

The parties stipulate that each of the expert witnesses identified below is qualified under the Federal Rules to testify as an expert on the subject matter(s) identified for each expert witness, subject to any prior rulings limiting their testimony. The parties further agree that the Court consider these expert witnesses tendered for their identified subject matter and ask that the Court accept the tenders without further need for qualification. Notwithstanding the foregoing, the parties may present their experts' qualifications to the jury.

### A.    List of Witnesses Plaintiffs Expect to Call

Plaintiffs identify in **Exhibit 6** the names of the witnesses Plaintiffs expect to call to testify at trial.

### B.    List of Witnesses HTC Expects to Call

HTC identifies in **Exhibit 7** the names of the witnesses HTC expects to call to testify at trial.

---

[5] [**HTC's Position:** the Court adopted this presentation of evidence in *CAO Lighting v. GE Lighting, et. al,*, C.A. No. 20-681-MN-GBW, Feb. 2, 2023 Pre-Trial Conference Tr. at 4:20-5:4.]

### C.      Testimony by Deposition

Plaintiffs' designations of deposition testimony that it may introduce at trial, HTC's objections to such designations, HTC's counter-designations, Plaintiffs' objections to HTC's counter-designations, Plaintiffs' counter-counter designations, and HTC's objections to Plaintiffs' counter-counter designations are attached as **Exhibit 8**.

HTC's designations of deposition testimony that it may introduce at trial, Plaintiffs' objections to such designations, Plaintiffs' counter-designations, HTC's objections to Plaintiffs' counter-designations, HTC's counter-counter designations, and Plaintiffs' objections to HTC's counter-counter designations are attached as **Exhibit 9**.

This pretrial order contains the maximum universe of deposition designations, counter-designations, counter-counter designations, and objections to admission of deposition testimony; none of the foregoing may be supplemented without approval of both parties or leave of the Court, on good cause shown, subject to any rulings by the Court following submission of this pretrial order, including the Court's order on motions *in limine*. These designations cover witnesses who will testify via deposition. The parties are not required to designate deposition testimony relied on by an expert and cited in the expert's report or deposition testimony to be used on cross-examination or for impeachment.

### 1.      Procedure for Deposition Testimony Disclosure

By 6:00 p.m. no later than two (2) calendar days before the designations are intended to be used in Court, each party will provide the other with a list of final deposition designations (from the previously designated testimony in the Final Pretrial Order) that it intends to introduce and identify the manner in which the deposition will be used, either by video or reading the transcript into the record. By 6:00 p.m. on the following day, the opposing party will provide its counter-designations and any objections to the other party's designations. The opposing party will also

specify if it intends to play the deposition video of its counter-designations or read the transcript in Court. By 8:00 p.m. on the same day, the original party will provide its objections to the opposing party's counter-designations. By 10:00 p.m. on the same day, the parties will meet and confer concerning objections

If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than 6:00 am on the day the witness is to be called at trial, submit, on behalf of both parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony.

All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

When the witness is called to testify by deposition at trial, the party calling the witness will provide the Court with two copies of the transcript of the final designations and counter-designations that will be read or played. The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

For those depositions that have been recorded by video, a party may introduce the deposition excerpt by video instead of, or in addition to, by transcript. When deposition designation excerpts are introduced, all admissible deposition counter-designation excerpts, whether offered

9

by video or by transcript, will be introduced simultaneously in the sequence in which the testimony was originally given. If a witness's deposition was conducted in a foreign language with translation, only the original question and translated answer (and not the foreign language) will be played to the jury.

The parties agree that exhibit(s) referenced in a designated deposition excerpt may be presented and shown to the jury at the same time that the excerpt is played or read.

To the extent such designations are read or played in open court, each party will be charged for the time taken to read or play its designations, as measured by the proportion of lines of testimony for its designations to the total number of lines of testimony read or by the actual time elapsed on the video recording when played.

The parties agree that the Court should rule at trial on any objections based on lack of completeness and/or lack of inconsistency.

### D.    Objections to Expert Testimony

The parties have submitted motions *in limine* that may affect the scope of expert testimony. The parties agree that the Court should rule at trial on any objections to expert testimony as beyond the scope of prior expert disclosures, and that a failure to object to expert testimony as beyond the scope of prior expert disclosures waives the objection as to that testimony. The time taken to argue and decide such objections will be taken from the time for trial available to either the party making the objection, if the objection is overruled, or the party against whom the objection is made, if the objection is sustained, or as otherwise assigned by the Court.

### E.    Witness Disclosure Procedure

Each party will provide the other a list identifying the specific witnesses that it intends to call on direct, and the order in which live witnesses will be called, by 6:00 p.m. two (2) calendar days before that party begins direct presentation of evidence. Each party will identify which

witnesses will be called live and which will be offered by deposition. Except for good cause shown or by agreement of all parties, a party will be bound to call the live witnesses identified in its list in the order identified, and all witnesses in the manner (i.e., live or by deposition) identified. A party is not required to call witnesses appearing by deposition in the order disclosed, but must follow the procedure agreed in Section VII.C.1. A party may withdraw any witness from its disclosed list before calling that witness, but a party may not add to, or replace witnesses from, its disclosed list after the time for such disclosure, except for good cause shown or by agreement of all parties.

## VIII.   EXHIBITS

### A.      Exhibits

Plaintiffs' list of trial exhibits that they intend to offer at trial, including HTC's objections, is attached as **Exhibit 10**. Plaintiffs reserve the right to rely on additional exhibits solely for impeachment.

HTC's list of trial exhibits that it intends to offer at trial, including Plaintiffs' objections, is attached as **Exhibit 11**. HTC reserves the right to rely on additional exhibits solely for impeachment.

A list of exhibits that are on both parties' respective exhibits lists, including the parties' objections, is attached as **Exhibit 12**.

This pretrial order contains the maximum universe of exhibits to be used by any party (other than solely for impeachment), as well as all objections to the admission of such exhibits, neither of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown, subject to any rulings by the Court following submission of this pretrial order,

including the Court's order on motions *in limine*. Exhibits not listed will not be admitted unless good cause is shown.

On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

Absent agreement of the parties or order of the Court, no exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit. Any exhibit that is used with a witness without a sustained objection to its admissibility will be received into evidence by the operation of the Final Pretrial Order without the need to formally move the exhibit into evidence. Exhibits may not be published, displayed, or otherwise shown to the jury until after any objections have been resolved. Once admitted via one witness, counsel may publish exhibits to the jury.

Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness.

### 1.      Procedure for Trial Exhibit Disclosure

A party will provide exhibits to be used in connection with its direct examination of a non-adverse witness by 6:00 p.m. one day before their intended use, and objections will be provided no later than 8:00 p.m. the night before their intended use. The parties shall then meet and confer as to any objections no later than 10:00 p.m. on the day those objections are provided. If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall e-mail those objections to the Court no later than 6:00 a.m. on the day on which the witness is called. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

### 2.    Stipulations Concerning Trial Exhibits

The parties agree that any description of a document on an exhibit list is provided for convenience only and may not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

A party may not add exhibits to its exhibit list after the date that the Final Pretrial Order is entered by the Court, except for good cause shown or by agreement of all parties. A party may use an exhibit that is listed on the other party's exhibit list, to the same extent as if it were on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted at trial, may be used equally by either party for any proper purpose in accordance with the Federal Rules of Evidence. The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to enter the document into evidence. The listing party need not list objections to the other party's introduction of such exhibits into evidence.

Any trial exhibit, including source code, that was produced in discovery by a party and that on its face appears to have been authored by an employee, officer, or agent of the party producing such document, will be deemed to be a true and correct copy of a document maintained in that party's files as of the date of the party's document collection under Federal Rule of Evidence 901.

### B.    Demonstrative Exhibits

The parties will exchange copies of demonstratives to be used in opening statements by 6:00 p.m. the night before opening statements, and objections will be provided no later than 8:00 p.m. the night before opening statements. The parties will meet and confer regarding any objections by 10:00 p.m. the night before opening statements.

The parties will provide copies of demonstrative exhibits expected to be used during the direct examination of a witness by 6:00 p.m. the night before their intended use, and objections

will be provided no later than 8:00 p.m. the night before their intended use. The parties will meet and confer regarding any objections by 10:00 p.m. the night before their intended use. If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side on a DVD or CD or other format that allows for viewing of the video or animations. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation of it in PDF format or make them available for inspection.

This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross examination, neither of which need be provided to the other side in advance of their use. The parties also are not required to identify demonstrative exhibits previously used with a witness during trial. In addition, blow-ups or highlights of exhibits or testimony are not required to be provided to the other side in advance of their use, whether on direct or cross.

Demonstrative exhibits need not be included in the parties' respective exhibit lists. Reasonable, non-substantive edits or corrections of typographical and similar errors to demonstrative exhibits may be made to such exhibits before use.

If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party must bring its objections to the Court's attention before the opening statement or before the applicable witness being called to the witness stand. Failure to comply with these procedures,

absent and agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

## IX.    BIFURCATED TRIAL

The parties do not desire a bifurcated trial.

## X.    MOTIONS *IN LIMINE*

Plaintiffs' motions *in limine* and all related papers are attached as **Exhibits 13(a) through 13(c)**. HTC's motion *in limine* and all related papers are attached as **Exhibits 14(a).**

## XI.    DISCOVERY

Each party has completed discovery.

## XII.    NUMBER OF JURORS

There shall be eight jurors. The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes. Each side shall be given three peremptory strikes.

## XIII.   LENGTH OF TRIAL

The parties request 24 hours divided equally between the sides for their trial presentation. Time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by the other party, closing and rebuttal arguments, and its argument on any motions for judgment as a matter of law. For any objections made in the presence of the jury, the time taken to argue an objection (including the time for both

sides' arguments on the objection) will be charged to the party that does not prevail on the objection.

The Courtroom Deputy will keep a running total of trial time used by counsel. If presentations exceed the amount of time allotted, the presentations will be terminated.

## XIV.   MOTIONS FOR JUDGMENT AS A MATTER OF LAW

The parties agree that JMOLs should be made orally outside of the jury's presence at the next break after the close of the case-in-chief for the party bearing the burden of proof on the issue. For any renewed JMOL following a jury verdict, the briefing schedule will be set following the conclusion of the jury trial.

## XV.   AMENDMENTS OF THE PLEADINGS

The parties are not seeking any amendments to the pleadings.

## XVI.   ADDITIONAL MATTERS

1.      The parties agree that they will not remove any confidentiality markings from any documents, and the parties jointly request the Court to instruct the jury, the first time a confidential document is shown, that certain documents were marked as such before trial for purposes unrelated to trial and that the jury should give no consideration to such markings; and the parties agree that they should be precluded from any intimation that the marking of materials produced in discovery as "confidential" or "attorneys' eyes only" had any improper purpose.

2.      Depending upon presentations of evidence at trial, the courtroom may need to be closed for certain portions of the certain witnesses' testimony. The parties will notify the Court in advance of any potential testimony.

3.      The parties agree, and are hereby so ordered that they may not:

a.  make any reference to either party's technical tutorial;

b.  offer, or have their experts or other witnesses offer, evidence, testimony, or argument inconsistent with the Court's Order and Memorandum Opinion on claim construction;

c.  argue claim construction to the jury.  For example, neither side will use statements made during an IPR to construe the claims or make any prosecution disclaimer arguments to the jury;

d.  make any arguments or statements that either disparage on the one hand or aggrandize on the other the United States Patent and Trademark Office ("PTO") or the U.S. patent system, including making any arguments or statements on whether the PTO or U.S. patent system are flawed or require reform;

e.  use pejorative references, insults, or personal attacks. For example, name calling, such as trolls, trolling, patent pirates, liars, dishonest, frauds, frivolous or abusive claims or suits, shake downs, extortionists, con artists, untrustworthy, or other similar attacks; this does not preclude calling into questioning the credibility of any witness or piece of evidence;

f.  reference the monetary terms (*i.e.,* the lump sum amount or the effective royalty rate) of a license or settlement agreement, unless the agreement has been relied upon by a party's expert as a comparable license. This does not preclude a party from relying on an agreement as evidence of the applicable form of a reasonable royalty (e.g., a lump-sum payment). To the extent a party seeks to admit into evidence an agreement that has not been relied upon by a party's expert as a comparable license, the monetary terms will be redacted;

g.   reference HTC Corp. as a Chinese company or as having any association or relationship with China in a xenophobic manner, including reference to Taiwan as the Republic of China or ROC. The fact that a witness testified in their deposition in Mandarin may be explained to the jury if the Court believes appropriate and necessary;

h.   to the extent that HTC's financials (e.g., HTC3G00013633) reflect that it sold a particular product to a carrier, HTC will not dispute that the relevant product was certified to operate on the network of that carrier;

i.   consistent with the Court's order of summary judgment in Plaintiffs' favor on HTC's FRAND affirmative defense, HTC may not argue that any of the Asserted Patents is standard-essential and FRAND-encumbered. HTC is not prohibited from introducing FRAND-related evidence to establish a proper damages award. Plaintiffs may not argue or suggest that a Court has found that the asserted patents are not standard-essential and are not FRAND-encumbered, but may argue and reference the fact that the Court found that HTC did not carry its burden to show that the Asserted Patents are subject to a FRAND obligation and entered judgment on HTC's FRAND affirmative defense. To the extent Plaintiffs do so, HTC is entitled to appropriately respond regarding the Court's order, except that HTC may not argue or suggest to the jury that the Court's decision was in any way wrong or inaccurate;

j.   HTC agrees it will not disparage 3G Licensing or its business model, including by referencing 3G Licensing as a "patent troll," "patent assertion entity," "non-practicing entity," or similar terms. HTC may not reference 3G Licensing's or

Sisvel's licensing activities unrelated to the Asserted Patents. HTC may not reference any 3G Licensing or Sisvel litigation activities, except as set forth in either side's expert reports. This does not preclude HTC from establishing the fact of 3G Licensing's business model or otherwise introducing evidence in response to arguments or evidence first introduced by Plaintiffs relating to 3G Licensing or Sisvel litigation activities, but HTC may not continually return to the topic in an attempt to denigrate Plaintiffs through repetition. With respect to the prior sentence, the extent of evidence allowed and whether considered disparaging will be addressed through objections at trial.

4.     The parties have met and conferred and agreed that, to the extent the Court provides Juror Notebooks, the Notebooks should include (1) copies of the patents-in-suit; (2) the Court's and the parties' agreed-upon claim constructions; (3) the Court's preliminary jury instructions; (4) a copy of the sample patent referenced in the Federal Judicial Center patent video; and (5) a notepad for notes. The parties agree that the jurors be permitted to write notes by hand in their provided notebooks during the trial, and that jurors be permitted to bring their provided binders into the deliberation room.

5.     The parties agree that written responses to interrogatories and requests for admission (but not a parties' infringement or invalidity contentions) may be used at trial consistent with the Federal Rules of Civil Procedure and Federal Rule of Evidence even if such responses have not been verified by the responding party.

6.     The parties agree that all rights to appeal the Court's claim constructions and the Court's dispositions of pretrial motions for summary judgment, *Daubert* motions, and motions *in limine* are preserved and do not need to be reasserted at trial to avoid waiver.

7.     [**Plaintiffs' Position**: HTC's below request that the Court now engage in claim construction less than two weeks prior to the start of trial is absurd and just the latest example of HTC's trial-by-ambush approach to this case. Not only has Plaintiffs' infringement position never changed in the more than six years that this case has been pending, but this Court has held a *Markman* hearing and a summary judgment and *Daubert* hearing. At any point during those proceedings, HTC could have raised its claim construction arguments (as it did with other patents, D.I. 486 at 15 (rejecting HTC's summary judgment '818 Patent claim construction argument)). HTC chose not to do so—thus waiving its arguments. *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("The district court found that [the defendant] waived any argument with respect to this term by ***failing to raise it during the claim construction phase. We agree*****.**" (emphasis added)); *GPNE Corp. v. Apple Inc*., 108 F. Supp. 3d 839, 851–52 (N.D. Cal. 2015), *aff'd*, 830 F.3d 1365 (Fed. Cir. 2016) ("The Federal Circuit has held that 'district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims," *O2 Micro*, 521 F.3d at 1362, ***especially where the parties do not raise a dispute until after the Markman stage***.'" (emphasis added)).

8.     Indeed, courts in this District (and others) have repeatedly rejected eleventh hours requests like HTC makes here, which—remarkably—HTC did not raise with Plaintiffs at all until ***this morning*** despite the fact that the parties have been exchanging drafts of this document for over six weeks and had multiple meet and confers in that timeframe. *Deere & Co. v. AGCO Corp*., 2023 WL 2662778, at *19 (D. Del. Mar. 28, 2023) (Connolly, J.) ("Deere's failure to properly preserve its claim construction argument distinguishes this case from *O2 Micro*, where 'the parties disagreed ***during claim construction about***' the scope of a term." (emphasis in original)); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 WL 252045, at *3 (N.D. Cal. Jan. 21, 2014) (citing lengthy

20

Federal Circuit precedent supporting its conclusion that district courts are not "obligated to rule on claim construction arguments presented for the first time in summary judgment briefs" and rejecting claim construction arguments as "untimely").

9.      Further, the Court can and should reject HTC's request for the simple reason that Plaintiffs have no intention of presenting any claim construction argument to the jury. As demonstrated by HTC's own citations, each and every opinion HTC now complains about was stated **in Dr. Madisetti's reply report**, which responds to the claim construction arguments presented by HTC's expert in his non-infringement report. For example, HTC's points to Madisetti Reply Report ¶ 99. But as Dr. Madisetti explained in that same section of his report, he was responding to the opinions of HTC's experts (Dr. Jeffay and Mr. Jones) in which they "treat a 'call' as being synonymous with a 'session'" by explaining that, "**consistent with the industry understanding** [of those terms], one does not need to initiate a new session in order to discontinue one (audio only) call and initiate a second (video) call." Madisetti Reply Report ¶¶ 89, 99. Likewise, in ¶ 142, Dr. Madisetti similarly explained that he was responding to Dr. Jeffay's improper claim construction argument—confirming that, **because he was applying the plain and ordinary meaning** of "initiating," ██████████████████████████████████████████ ████████████████████████████████████████████████████████

10.     Finally, HTC's assertion regarding the "automatic and manual initiation of a second call" is particularly absurd given that HTC argued **during claim construction** that the '091 Patent claims should be construed to require that **the videophone "must initiate the second call** to the remote videophone, not the remote videophone itself, **not something on the network, not something somewhere else**." (June 25, 2018, Markman Tr.) at 117:13–20 (emphasis added). HTC also repeated this understanding in their (rejected) §101 briefing. Unprompted by Plaintiffs, HTC

stated that "[t]he patent attempts to solve a bandwidth problem by providing a software solution *that automates the conventional manual process of terminating and initiating calls*." D.I. 271 (Defs. § 101 Br.) at 6. Indeed, HTC argued that both independent claims required "automatic" operation, arguing that Claim 1 requires a processor configured "*to automatically perform the steps for switching the mode of communication by initiating a new call*," *id*. at 18, and Claim 8 "recites a method for *automatically initiating a second call* upon notice that a first call is being discontinued," *id*. at 16. In sum, HTC cannot manufacture a claim construction dispute by arguing the exact opposite of its *Markman* and § 101 positions less than two weeks before trial.]

11.     [**HTC's Position**: As has become clear from Plaintiffs' motion in *limine* no. 3 (Exhibit 13(c)) and related communications between counsel that followed, there are claim construction disputes for the '091 patent that will need to be resolved by the Court before trial. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd*., 521 F.3d 1351 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."). Plaintiffs have accused HTC of attempting to raise claim construction arguments at trial through reliance on Plaintiffs' IPR statements. While HTC does not intend to use the IPR statements for claim construction at trial, but only for impeachment and rebutting Plaintiffs' expert, Plaintiffs' motion *in limine* highlights that there are claim construction disputes that need to be resolved by the Court. Plaintiffs do not dispute the parties have fundamental claim construction disputes. And as Plaintiffs' own cited case confirms, a litigant does not waive a claim construction argument unless raised after trial. *GPNE Corp. v. Apple Inc*., 830 F.3d 1365, 1372 (Fed. Cir. 2016) (no waiver where formal claim construction request made in second week of trial). These are disputes that were presented as early as summary judgment, but remain unresolved. Dkt. 356 at 6 (arguing claims "do not require automation"—Court did not say whether claims required

automation, but relied on evidence that they do not); Dkt. 397 at 6 (identifying "initiating" dispute as "claim construction argument," and "not a 'dueling expert' situation" – Court did not resolve claim construction dispute but denied motion due to factual dispute); Dkt. 486 at 11 n. 5 (Court noting parties did not make formal claim construction request for "call" while citing evidence demonstrating competing interpretations of "call"). While these issues manifested no later than summary judgment, it has only recently become clear that Plaintiffs intend to make these claim construction arguments at trial through their motion in limine and related emails between the parties. HTC thus makes a formal request for claim construction to resolve these disputes now so that claim construction is not tried to the jury.

12.     It is evident from their efforts to exclude the IPR statements that Plaintiffs intend to use the patent to construe the claims at trial to cover modifying a call where such modification is initiated before the claimed indication is even received, contrary to the plain meaning of the claims.   After Plaintiffs served their motion on September 21, 2023, HTC sought clarification as to what they intended to present at trial to determine if there were live claim construction disputes. Rather than provide a clear answer, Plaintiffs obfuscated with vague references: "[a]s just some examples, see the record excerpts cited in our motion.  See also the MSJ briefing and the Court's resulting orders."

13.     In order to enable their infringement theory, Plaintiffs and their expert Dr. Madisetti are attempting to construe the claim term "call" at trial to mean "a specific communication between two endpoints over a specific configuration of network resources" based on the Figure 4 embodiment of the patent.  Madisetti Reply Report ¶ 99.  Dr. Madisetti similarly is attempting to construe "initiate a second call" to include "any messages necessary to establish [the second] call" based on Figure 1 of the patent.  Madisetti Reply Report ¶ 142 ("As demonstrated above, the '091

Patent expressly contemplates that any messages necessary to establish a call may comprise the initiating of a call.").  Plaintiffs' interpretation contradicts the plain meaning of the claims, which make clear that the second call is a separate call that is not initiated until there is an indication that the first call is being discontinued.

14.      In their motion in *limine*, Plaintiffs also misconstrue the Court's summary judgment order as limiting the claims to require "automatic switching without user intervention."  Exhibit 13(c). But the Court did not find the claims to be so limited.  To the contrary, in denying HTC's motion, the Court relied on an expert's statement that the patent "contemplates ***both*** automatic ***and manual*** initiation of a second call."  Dkt. 486 at 10 (emphasis added).  At most, the Court rejected HTC's argument that the claims are directed to the abstract idea of "***users*** switching between modes of communication."  *Id*. at 9-10.

Thus, the following claim construction disputes remain to be resolved for the '091 patent:

- Whether a "second call" is a "separate communication between mobile stations that is initiated only after receiving the indication to discontinue the first call" (HTC) or a "second specific communication between two endpoints over a specific configuration of network resources" (Plaintiffs);

- Whether "initiating a second call" means "making a second call" (HTC) or whether it comprises "any messages necessary to establish a second call" (Plaintiffs); and

- Whether the claims the claims encompass both manual and automatic initiation of a second call (HTC), or whether they are limited to automatic initiation of a second call without user intervention (Plaintiffs).]


15.      [**Plaintiffs' Position**: Plaintiffs proposed including the identification of Accused Products (as listed below) as Uncontested Facts to efficiently present the issues for trial. The *identification* of Accused Products at issue is not in dispute. HTC has refused but has not explained why. Plaintiffs ask that the Court permit the parties to provide the jury with the following lists of

Accused Products below: **[HTC's Position:** HTC does not believe it is appropriate to include the facts of Plaintiffs' allegations in the Uncontested Facts.  Those are allegations that Plaintiffs need to make and prove at trial.  HTC has made numerous allegations as part of its defenses; the fact that HTC has made such allegations does not warrant them being included in a set of Uncontested Facts that can be read to the jury. Indeed, Plaintiffs rejected HTC's proposal to include factual statements from the pleadings, including statements made by Plaintiffs themselves from their Third Amended Complaint, in the Uncontested Facts.  Plaintiffs must be held to the same rules and standards.]

16.     **[Plaintiffs' Position:** Plaintiffs accuse the following products as infringing the '091 Patent ███████████ :

| Public Facing Product Name |
|---|
| Bolt |
| Bolt |
| Desire 510 |
| Desire 512 |
| Desire 512 |
| Desire 512 |
| Desire 526 (CDMA) |
| Desire 526 (CDMA) |
| Desire 530 |
| Desire 530 |
| Desire 530 |
| Desire 530 |
| Desire 530 |
| Desire 530 |
| Desire 530 |
| Desire 555 |
| Desire 610 |
| Desire 610 |
| Desire 612 |
| Desire 612 |
| Desire 626/626s |
| Desire 626/626s |
| Desire 626/626s |
| Desire 626/626s |
| Desire 626/626s |
| Desire 626/626s |
| Desire 626/626s |
| Desire 626/626s |
| Desire Eye |
| One |
| One (A9) |
| One (A9) |
| One (A9) |
| One (A9) |
| One (A9) |
| One (E8) |



| Public Facing Product Name | |
|---|---|
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) for Windows | |
| One (M8) for Windows | |
| One (M8) for Windows | |
| One (M8) Harman Kardon Edition | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One Mini | |
| One Remix (Mini 2) | |

17.   Plaintiffs accuse the following products as infringing the '091 Patent ███████

███████:

| Public Facing Product Name | |
|---|---|
| 10 | |
| 10 | |
| 10 | |
| 10 | |
| 8X | |

| | |
|---|---|
| 8X | |
| Bolt | |
| Bolt | |
| Desire 526 (CDMA) | |
| Desire 526 (CDMA) | |
| Desire 530 | |
| Desire 530 | |
| Desire 530 | |
| Desire 530 | |
| Desire 530 | |
| Desire 530 | |
| Desire 530 | |
| Desire 555 | |
| Desire 626 | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Droid DNA | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Pixel (ODM) | |
| Google Pixel (ODM) | |
| Google Pixel (ODM) | |
| Google Pixel (ODM) | |
| Google Pixel XL (ODM) | |

| Device | |
|---|---|
| Google Pixel XL (ODM) | |
| Google Pixel XL (ODM) | |
| Google Pixel XL (ODM) | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One (E8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) for Windows | |
| One (M8) for Windows | |
| One (M8) for Windows | |
| One (M8) Harman Kardon Edition | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |



| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| U11 Life | |
| U11 Life | |
| Pixel 2 | |
| Pixel 2 | |

18.  Plaintiffs accuse the following products as infringing the '091 Patent ▮▮▮▮

▮▮▮▮▮ :

| Public Facing Product Name | |
|---|---|
| 10 | |
| 10 | |
| 10 | |
| 10 | |
| 8X | |
| 8X | |
| 8X | |
| 8X | |
| 8X | |
| 8X | |
| 8X | |
| 8X | |
| Bolt | |
| Bolt | |
| Desire 526 (CDMA) | |
| Desire 526 (CDMA) | |
| Desire 530 | |
| Desire 530 | |
| Desire 530 | |
| Desire 530 | |
| Desire 530 | |
| Desire 530 | |

| | |
|---|---|
| Desire 530 | |
| Desire 555 | |
| Desire 626 | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Desire 626/626s | |
| Droid DNA | |
| Droid DNA | |
| Droid Incredible 4G LTE | |
| Droid Incredible 4G LTE | |
| Evo 4G LTE | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Nexus 9 | |
| Google Pixel (ODM) | |
| Google Pixel (ODM) | |
| Google Pixel (ODM) | |
| Google Pixel (ODM) | |
| Google Pixel XL (ODM) | |
| Google Pixel XL (ODM) | |
| Google Pixel XL (ODM) | |
| Google Pixel XL (ODM) | |
| One | |
| One | |
| One | |
| One | |

| | |
|---|---|
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One | |
| One (E8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) | |
| One (M8) for Windows | |
| One (M8) for Windows | |
| One (M8) for Windows | |
| One (M8) Harman Kardon Edition | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One (M9) | |
| One X | |
| One X+ | |
| One X+ | |

| U11 Life | |
|---|---|
| U11 Life | |

19.   Plaintiffs accuse the following products as infringing the '818 Patent under the Verizon theory:

| Public Facing Product Name | |
|---|---|
| 10 | |
| 8X | |
| Desire 526 (CDMA) | |
| Desire 530 | |
| Desire 612 | |
| Desire 626/626s | |
| Droid DNA | |
| One | |
| One (M8) | |
| One (M8) for Windows | |
| One (M9) | |
| One Remix (Mini 2) | |

20.   Plaintiffs accuse the following products as infringing the '818 Patent under the Google Fi theory:

| Public Facing Product Name | |
|---|---|
| Google Pixel XL (ODM) | |
| Google Pixel XL (ODM) | |
| Google Pixel XL (ODM) | |
| Google Pixel XL (ODM) | |
| Google Pixel (ODM) | |
| Google Pixel (ODM) | |
| Google Pixel (ODM) | |
| Google Pixel (ODM) | |
| Google Pixel 2 | |
| Google Pixel 2 | |

]

## XVII.  SETTLEMENT

The parties have engaged in a good faith effort to explore the resolution of the controversy by settlement.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED: _____

_____
UNITED STATES DISTRICT JUDGE


APPROVED AS TO FORM AND
SUBSTANCE:

/s/ Brian E. Farnan_____
ATTORNEY FOR PLAINTIFFS


/s/ Karen E. Keller_____
ATTORNEY FOR DEFENDANT