# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> HTC Corporation, <br><br> Defendant. | C.A. No. 17-cv-83-GBW <br><br> **JURY TRIAL DEMANDED** |

**EXHIBIT 1: UNCONTESTED FACTS**

1.      3G Licensing, S.A. is a corporation that has its headquarters at 6, Avenue Marie-Thérèse, L-2132 Luxembourg.

2.      Orange S.A. (formerly France Telecom S.A.) is a corporation incorporated under the laws of France that has its headquarters at 111 Quai du Président Roosevelt, CS 70222, 92449 Issy Les Moulineaux Cedex, France.

3.      HTC Corporation is a Taiwanese corporation with its principal place of business at 23 Xinghau Road, Taoyuan City, Taoyuan 330, Taiwan

4.      The '818 Patent, entitled "Data Store for Mobile Radio Station," has an effective filing date of at least February 11, 1997, and was issued on February 15, 2005.

5.      The named inventor of the '818 Patent is Peter Ford.

6.      The assignee listed on the face of the '818 Patent is Orange Personal Communications Services Ltd.

7.      Orange Personal Communications Services Ltd. assigned the '818 Patent to France Telecom, S.A. on or about March 23, 2010.

8.      France Telecom, S.A. changed its name to Orange, S.A. on or about effective July 1, 2013.

9.      France Telecom, S.A. assigned the '818 Patent to Orange, S.A. on or about May 28, 2013.

10.     Orange, S.A. assigned the '818 Patent to 3G Licensing, S.A. on or about February 12, 2016.

11.     3G Licensing is the owner by assignment of the '818 Patent and hold the sole right to sue and recover for any and all infringements of the '818 Patent at issue in this case.

12.     The Asserted Claims of the '818 Patent are Claims 18–19 and 22–23.

13.     The '818 Patent expired on January 19, 2018.

14.     The hypothetical negotiation for the '818 Patent would have occurred in March 2013.

15.     The '091 Patent, entitled "Mixed Media Telecommunication Call Manager," has an effective filing date of at least November 1, 2000, and was issued on August 9, 2011.

16.     The named inventor of the '091 Patent is Michael David Stanmore Crook.

17.     The assignee listed on the face of the '091 Patent is France Telecom S.A.

18.     France Telecom, S.A. assigned the '091 Patent to Orange, S.A. on or about May 28, 2013.

19.     Orange, S.A. assigned the'091 Patent to 3G Licensing, S.A. on or about February 12, 2016.

20.     3G Licensing is the owner by assignment of the '091 Patent and hold the sole right to sue and recover for any and all infringements of the '091 Patent at issue in this case.

21.     The Asserted Claims of the '091 Patent are Claims 1–2 and 6–9.

22.     The hypothetical negotiation for the '091 Patent would have occurred in April 2012.

23.     The Court construed the below claim terms as follows:

| Patent / Claims | Claim Term | Court's Construction |
|---|---|---|
| '091 Patent, Claim 1 | the processor further being configured to, in response to the indication, initiate a second call to the remote videophone, the second call not supporting the second media | This element does not need construction under § 112 ¶ 6 |
| '091 Patent, Claims 2, 9 | the release of the first call | the termination of the first call |
| '818 Patent, Claim 18 | predetermined standard | technical specification of GSM 11.11 v.5.4.0 regarding the writing or reading of a data record |
| '818 Patent, Claim 18 | standard subscriber data storage module | removable data store compliant with a technical specification of GSM 11.11 v.5.4.0 regarding the writing or reading of a data record |
| '818 Patent, Claim 18 | modified subscriber data storage module" | standard subscriber data storage module able to retrieve data selectively in accordance with an operational condition of the mobile station |
| '818 Patent, Claim 18 | modified module | modified subscriber data storage module |
| '818 Patent, Claim 18 | wherein the memory holds a plurality of data records correspond to the specific data record and the processor is arranged to select one data record, from the plurality of data records, to access in response to the first memory access message, the selection being performed on the basis of data identifying a current operational condition of the mobile station and independently of the content of the first memory access | Plain meaning |

| | message, the identifying data being held in a further data record in the memory means | |

24. The parties further agreed to the below constructions:

| Patent / Claim | Claim Term | Agreed Construction |
|---|---|---|
| '091 Patent, Claim 1 | A videophone responsive to the discontinuation of an in progress mixed media telecommunications call | the preamble is limiting |
| '091 Patent, Claim 1 | the processor further being configured to, in response to the indication, initiate a second call to the remote videophone | plain meaning |
| '091 Patent, Claims 1–2, 6–9 | first call | in progress mixed media telecommunications call |
| '091 Patent, Claim 8 | A method of responding to the discontinuation of an in progress mixed media telecommunications call by a videophone having a radio frequency interface to a radio frequency telecommunications network | the preamble is limiting |
| '091 Patent, Claim 8 | initiating a second call to the remote videophone, in response to the indication | plain meaning |
| '818 Patent, Claim 18 | A mobile station for use in a mobile communications system, the mobile station complying with a predetermined standard and being adapted, in accordance with the standard, to transmit a first memory access message, identifying a specific data record, in order to access the specific data record on a standard subscriber data storage module complying with the predetermined standard | the preamble is limiting as to "the mobile station complying with a predetermined standard and being adapted, in accordance with the standard, to transmit a first memory access message, identifying a specific data record, in order to access the specific data record on a standard subscriber data storage module complying with the predetermined standard" |
| '818 Patent, Claim 18, 22 | current operational condition of the mobile station | current mode of the mobile station |
| '818 Patent, Claim 18 | independently of the content | without using the content of the |

|  | of the first memory access message | first memory access message for the selection |
|---|---|---|
| '818 Patent, Claim 18 | the identifying data | the data identifying said current operational condition(s) of the mobile station |

25.    The Court has decided that Claim 18 of the '818 Patent does not require that "selecti[ng] a data record" be "in response to the receipt of a memory access message identifying the specific data record."

26.    HTC Corporation does not have a license to practice the '818 Patent or '091 Patent.

27.    The Qualcomm source code files made available for review at the Prosearch facility (identified by the Q1KPNBB882SC Bates prefix) are authentic business records kept in the ordinary course of business.

28.    The Court entered judgment on HTC's FRAND ***affirmative defense*** and ruled that HTC may not argue that any of the asserted patents are standard-essential and FRAND-encumbered (and the Court will not ask the jury to make any finding on this issue).  The Court's ruling does ***not***, however, prohibit HTC from introducing FRAND-related evidence to establish the proper damages award.  Further, the Court's decision does not mean that Plaintiffs have affirmatively proven that the asserted patents are ***not*** standard essential and are ***not*** FRAND-encumbered."

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> HTC Corporation, <br><br> Defendant. | C.A. No. 17-cv-83-GBW <br><br> **JURY TRIAL DEMANDED** |

**EXHIBIT 2: PLAINTIFFS' STATEMENT OF CONTESTED FACTS**

Plaintiffs present the following statement of issues of fact that remain to be litigated.[1] Plaintiffs make this statement based on the current status of the case and Court's rulings to date. Plaintiffs base this statement on the arguments they expect to make to establish infringement and damages for that infringement, as well as their understanding of the arguments that HTC will likely make in an attempt to prove its defenses. To the extent that HTC intends or attempts to introduce different or additional facts, Plaintiffs reserve their right to supplement this statement and contest those facts and to present any and all rebuttal evidence in response to those arguments. Plaintiffs also incorporate by reference their expert reports to identify the issues to be resolved at trial. By providing this statement, Plaintiffs do not concede that all of the recited issues are appropriate for trial and do not waive any objections.

---

[1] To the extent any of the issues of law set forth in Section IV may be considered issues of fact, Plaintiffs incorporate them here by reference. To the extent any issues of fact here may be considered issues of law, Plaintiffs incorporate them into Section IV.

### a.    Infringement

1.      Whether HTC infringes Claims 1–2 and 6–9 of the '091 Patent literally, indirectly, or under the doctrine of equivalents by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States certain "Accused Products" (as identified in Plaintiffs' expert reports).

2.      Whether HTC's infringement of Claims 1–2 and 6–9 of the '091 Patent was willful.

3.      Whether HTC infringes Claims 18–19 and 22–23 of the '818 Patent literally, indirectly, or under the doctrine of equivalents by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States certain "Accused Products" (as identified in Plaintiffs' expert reports).

4.      Whether HTC's infringement of Claims 18–19 and 22–23 of the '818 Patent was willful.

### b.    Validity

5.      Whether HTC has proven that any reference on which it relies is prior art to any of the Asserted Patents.

6.      Whether any alleged prior art reference or product asserted by HTC anticipates any of Claims 1–2 or 6–9 of the '091 Patent.

7.      Whether any alleged prior art reference or combination of references asserted by HTC renders obvious any of Claims 1–2 or 6–9 of the '091 Patent.

8.      The secondary considerations, if any, that support the non-obviousness of the '091 Patent, including any nexus to the Asserted Claims of the '091 Patent.

9.      Whether any alleged prior art reference or product asserted by HTC anticipates any of Claims 18–19 or 22–23 of the '818 Patent.

2

10.     Whether any alleged prior art reference or combination of references asserted by HTC renders obvious any of Claims 18–19 or 22–23 of the '818 Patent.

11.     The secondary considerations, if any, that support the non-obviousness of the '818 Patent, including any nexus to the Asserted Claims of the '818 Patent.

### c.     Damages and Other Relief

12.     The amount of damages to which Plaintiffs are entitled due to HTC's infringement.

13.     The amount of enhanced damages to which Plaintiffs are entitled due to HTC's willful infringement.

14.     The amount of pre-judgment and post-judgment interest to which Plaintiffs are entitled.

15.     Whether Plaintiffs are entitled to their attorneys' fees and costs.

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3G Licensing, S.A., KONINKLIJKE 3G Licensing N.V., and ORANGE S.A, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 17-083-GBW |
| HTC CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |

**EXHIBIT 3: HTC CORPORATION'S STATEMENT OF FACTS
THAT REMAIN TO BE LITIGATED**

1.      Defendant HTC Corporation ("HTC" or "HTC Corp.") hereby provides its Statement of Issues of Fact that Remain to be litigated. HTC asserts that the asserted claims of U.S. Patent Nos. 7,995,091 ("the '091 Patent") and 6,856,818 ("the '818 Patent") (collectively "the Asserted Patents") are not infringed and are invalid.  HTC also asserts that to the extent the asserted claims of the Asserted Patents are infringed and valid, any damages that 3G Licensing is entitled to are limited 3G Licensing based on non-compliance with 35 U.S.C. § 287.  In addition, HTC also seeks its costs pursuant to Federal Rule of Civil Procedure 54(d) and its attorneys' fees pursuant to 35 U.S.C. § 285.

2.      HTC respectfully submits the following Statement of Facts That Remain to Be Litigated based on its current understanding of Plaintiff 3G Licensing S.A.'s ("3G Licensing's") positions. Should the Court determine that any issue identified herein is more appropriately considered an issue of law, HTC incorporates such issues by reference in its Statement of Issues of Law that Remain to Be Litigated (Exhibit 5). Likewise, to the extent that HTC's Statement of Issues of

Law that Remain to Be Litigated contains issues that the Court deems to be issues of fact, those issues are incorporated herein by reference.

3.      By including a fact herein, HTC does not assume the burden of proof or production about that fact. HTC's position is that any arguments 3G Licensing did not properly raise in its expert reports or in its responses to HTC's interrogatories have been waived.  HTC does not address any such arguments but reserve the right to address these to the extent 3G Licensing raises any such issues at trial, and they are allowed by the Court. HTC further reserve the right to address additional issues not set forth herein to the extent they are raised by 3G Licensing at trial and allowed by the Court. HTC reserves the right to supplement or modify this Statement of Issues of Fact That Remain to Be Litigated, including in light of any pretrial or trial rulings from the Court and to address any additional facts 3G Licensing identifies.

## I.      NON-INFRINGEMENT

4.      Whether 3G Licensing has proven that HTC Corp. imported the accused phones into the United States or otherwise sold the accused phones in the United States?

5.      Whether 3G Licensing has proven that HTC Corp. directly infringes such that the accused phones practice, literally or under the doctrine of equivalents, claims 1-2 and 6-9 of the '091 Patent?

6.      Whether 3G Licensing has proven that HTC Corp. directly infringes such that the accused phones practice, literally or under the doctrine of equivalents, claims 18–19 and 22–23 of the '818 Patent?

## II.     INVALIDITY

7.      The scope and content of the prior art asserted against the Asserted Patents.

8.      The differences, if any, between the alleged invention of the Asserted Patents and the asserted prior art.

9.      The secondary considerations, if any, that support the non-obviousness of the Asserted Patents, including any nexus to the Asserted Claims of the Asserted Patents.

10.     Whether HTC has proven that the Asserted Claims of the Asserted Patents are anticipated under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103 in view of the state of the art and one or more prior art references, including:

    a.  Shachar anticipates or renders obvious claims 1-2 and 6-9 of the '091 patent

    b.  Shachar in combination with Nagao renders obvious claims 1-2 and 6-9 of the '091 patent

    c.  Kawan in combination with the GSM 11.11 v.5.4.0 standard renders obvious claims 18-19 and 22-23 of the '818 patent

    d.  Taylor in combination with the GSM 11.11 v.5.4.0 standard renders obvious claims 18-19 and 22-23 of the '818 patent

    e.  The GSM 11.11 v.5.4.0 standard anticipates or renders obvious claims 18-19 and 22-23 of the '818 patent

11.     Whether HTC has proven by clear and convincing evidence that, when taken individually or when taken as an ordered combination, one or more of Claims 18-19 and 22-23 of the '818 Patent involve only technology which a person ordinary skill in the art would have considered to be well-understood, routine, and conventional.

## III.     REMEDIES FOR 3G LICENSING'S CLAIMS (IF THE ASSERTED PATENTS ARE INFRINGED BY HTC AND NOT INVALID)

12.     Whether 3G Licensing has proven that it has complied with 35 U.S.C. § 287.

13.     Whether 3G Licensing has proven that it provided constructive notice to HTC by marking products that practice the Asserted Claims with the Asserted Patents pursuant to 35 U.S.C. § 287.

14.     Whether 3G Licensing has proven that it provided actual notice to HTC by an affirmative communication of a specific charge of the infringement alleged in this case by a specific accused product or device pursuant to 35 U.S.C. § 287.

15.     Whether 3G Licensing has proven by a preponderance of the evidence the reasonably royalty that a patent holder and the infringer would have agreed upon in a hypothetical negotiation.

16.     Whether 3G Licensing is entitled to pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

17.     Whether HTC is entitled to its costs and attorneys' fees pursuant to 35 U.S.C. § 285.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>HTC Corporation,<br><br>                    Defendant. | C.A. No. 17-cv-83-GBW<br><br>**JURY TRIAL DEMANDED** |

**EXHIBIT 4: PLAINTIFFS' STATEMENT OF ISSUES OF LAW**

1

Plaintiffs identify the following issues of law that remain to be litigated, with a citation to authorities relied upon.[1,2] This statement is based on the arguments that Plaintiffs expect to make as well as their understanding of the arguments HTC will likely make in an attempt to prove its defenses. To the extent that HTC intends or attempts to introduce different or additional legal arguments, Plaintiffs reserve the right to supplement this statement, to contest those legal arguments, and to present any and all rebuttal evidence in response to those arguments.

By providing this Statement, Plaintiffs do not concede that all of the recited issues are appropriate for trial. In particular, Plaintiffs do not waive any of their motions *in limine* or motions for judgment as a matter of law, which, if granted, would render some or all of these issues moot.

Plaintiffs object to HTC presenting any affirmative defenses, arguments, or opinions that HTC has not properly preserved in its Answer (D.I. 82), discovery responses, or expert reports. Plaintiffs further object to HTC presenting any affirmative defenses, arguments, or opinions previously precluded by the Court. Plaintiffs reserve the right to raise with the Court other defenses, arguments, or opinions that HTC has not properly preserved and thus waived.

## I.     INFRINGEMENT

### A.     Issues to be Litigated

1.     Whether HTC has infringed Claims 1–2 and 6–9 of the '091 Patent.

2.     Whether HTC has infringed Claims 18–19 and 22–23 of the '818 Patent.

3.     Whether such infringement by HTC was willful.

---

[1] To the extent any of the issues of fact set forth in Section III.B.1 may be considered issues of law, Plaintiffs incorporate them here by reference. To the extent any issues of law here may be considered issues of fact, Plaintiffs incorporate them into Section III.B.1.

[2] These authorities are not exhaustive; Plaintiffs may rely on authority not cited in this statement.

### B.    Legal Authority

Under 35 U.S.C. § 271(a), an accused infringer is liable for direct infringement if, without authorization from the patentee, the accused infringer "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a).

A sale "may occur at multiple locations, including the location of the buyer." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1377 (Fed. Cir. 2016); *see also Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1308-09 (Fed. Cir. 2015) (holding that "a sale can have more than one location," including the "place of inking the legal commitment to buy and sell and [the] place of delivery" or other places where "substantial activities of the sales transactions occurred" (quotation marks omitted)). The location of a sale is not limited to "the place where legal title passe[s]." *Halo*, 831 F.3d at 1377; *see also Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1370-71 (Fed. Cir. 2008) (affirming that sale occurred in United States despite title passing abroad). Instead, analysis of where a "sale" occurs should include consideration of factors including the "places of contracting and performance." *Halo*, 831 F.3d at 1377. It is not correct "that simply because goods were shipped f.o.b., the location of the 'sale' for the purposes of § 271 must be the location from which the goods were shipped." *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010) (quotation omitted).

Plaintiffs bear the burden of proving patent infringement by a preponderance of the evidence. *See Advanced Cardiovascular Sys., Inc. v, Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). Plaintiffs must show that it is more likely than not that HTC infringes the asserted claims of the Asserted Patents. *See Warner-Lambert Co. v. Teva Pharm., USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005).

The infringement analysis involves two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). The first step is to define the disputed the terms of the patent consistent with how those terms would be understood by a person of ordinary skill in the art. *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). This Court construed the disputed claim terms in its September 13, 2018 Memorandum Opinion and Order. D.I. 165, 166. The second step in the infringement analysis is to compare the accused product with the properly construed claims. *Markman*, 52 F.3d at 976.

To prove literal infringement, Plaintiffs must show that the accused product meets each limitation of the asserted claim, as properly construed. *See Demarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when the properly construed claim reads on the accused device exactly." (internal quotation marks omitted)).

To prove infringement by the doctrine of equivalents, Plaintiffs must show that "there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)). To prove equivalence, Plaintiffs must "show[] that the difference between the claimed invention and the accused product [is] insubstantial." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007). "One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Id.*

To prove induced infringement, Plaintiffs must show that "first that there has been direct infringement, and second that [HTC] knowingly induced infringement and possessed specific

intent to encourage another's infringement." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002) (citations omitted); *see* 35 U.S.C. § 271(b).

To prove contributory infringement, Plaintiffs must show that "1) that there is direct infringement, 2) that [HTC] had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *see* 35 U.S.C. § 271(c).

Plaintiffs can prove willful infringement by showing by a preponderance of the evidence that the infringement by HTC involved egregiously culpable behavior, whether intentional, knowing, or with reason to know about the infringement.

Conduct that is "willful, wanton, malicious, bad faith, deliberate, consciously wrongful, or flagrant" may justify the award of enhanced patent damages, in accordance with 35 U.S.C. § 284, of up to three times what the jury awards. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016); *see also, e.g.*, *id.* at 1233 ("Section 284 allows district courts to punish the full range of culpable behavior."); *Varian Medial Sys., Inc. v. Elekta AB*, No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. 2016). "[P]roof that [an accused infringer] acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer'" is sufficient to establish willful infringement. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362-64 (Fed. Cir. 2016) (citing *Halo*, 136 S. Ct. at 1930) (judgment reversed on other grounds). Willful infringement can be established either by direct evidence or by circumstantial evidence. *See, e.g.*, *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244 (Fed. Cir. 2017). Post-suit conduct can serve as a basis for willful infringement. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017).

## II.     INVALIDITY

### A.     Issues to be Litigated

1.      Whether HTC has overcome the statutory presumption that the Asserted Patents are valid and enforceable.

2.      Whether HTC has proven, by clear and convincing evidence, that each reference asserted against the Asserted Patents is "prior art" under 35 U.S.C. §§ 102(a), (b), (e) and/or 103.

3.      Whether HTC has proven, by clear and convincing evidence, that any of the asserted claims of the '091 Patent is invalid as anticipated under 35 U.S.C. § 102.

4.      Whether HTC has proven, by clear and convincing evidence, that any of the asserted claims of the '091 Patent is invalid as obvious under 35 U.S.C. § 103.

5.      Whether HTC has proven, by clear and convincing evidence, that any of the asserted claims of the '818 Patent is invalid as anticipated under 35 U.S.C. § 102.

6.      Whether HTC has proven, by clear and convincing evidence, that any of the asserted claims of the '818 Patent is invalid as obvious under 35 U.S.C. § 103.

7.      Whether HTC has proven, by clear and convincing evidence, that Claims 18–19 and 22–23 of the '818 Patent, when taken individually or as an ordered combination, involve only technology that a person ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the priority date of the '818 Patent.

### B.     Legal Authority

Presumption of Validity and the Burden of Proof: The Asserted Claims are presumed valid. 35 U.S.C. § 282(a). To overcome that presumption of validity, HTC must prove facts supporting a determination of invalidity by "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). "Clear and convincing evidence has been described as evidence which proves in the mind of the trier of fact 'an abiding conviction that the truth of [the] factual

contentions are [sic] highly probable.'" *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991) (alterations in original) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). Further, "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C. § 282(a).

When a reference was considered by the Examiner during prosecution, the party challenging validity "ha[s] the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Shire LLC v. Amneal Pharm., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015); *accord Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348-49 (Fed. Cir. 2004) (holding that "burden of showing invalidity by clear and convincing evidence … is 'especially difficult' when, as is the present case, the infringer attempts to rely on prior art that was before the patent examiner during prosecution").

"[T]he burden of persuasion is and remains always upon the party asserting invalidity." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir. 1984) (citation and emphasis omitted). "It is not necessary that the court hold a patent valid; it is only necessary that it hold that the patent challenger has failed to carry its burden." *Ajinomoto Co. v. Archer- Daniels- Midland Co.*, No. 95-218-SLR, 1996 WL 621830, at *5 (D. Del. Oct. 21, 1996) (citing *Jones v. Hardy*, 727 F.2d 1524, 1529 n.3 (Fed. Cir. 1984)). "[W]here the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden

on the validity issue." *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

Qualification as Prior Art:

The party challenging the validity of a patent bears the burden "by clear and convincing evidence on all issues relating to the status of [a publication or product] as prior art." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996).

To be considered prior art (whether the reference is asserted as anticipatory art under § 102 or as obviousness art under § 103), a reference must have been sufficiently accessible to the public interested in the art before the critical date. *In re Omeprazole Patent Litig. v. Apotex Corp.*, 536 F.3d 1361, 1381 (Fed. Cir. 2008). "For prior art to anticipate because it is 'known,' the knowledge must be publicly accessible." *Minn. Mining & Mfg.*, 303 F.3d at 1306. Likewise, "[f]or purposes of anticipation, a use must be accessible to the public." *Id.*

Under 35 U.S.C. § 102(b) (pre-AIA), a public use or sale (or offer to sell) must occur in the United States at least one year prior to the Asserted Patent's priority date to qualify as prior art. 35 U.S.C. § 102(b). A document or product that does not have a date is not sufficient evidence of a public use or sale that qualifies as prior art. *In re Lister*, 583 F.3d 1307, 1317 (Fed. Cir. 2009).

For purposes of § 102(b), HTC must show that "the subject of the barring activity met each of the limitations of the [Asserted Claims], and thus was an embodiment of the claimed invention"). *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737 (Fed. Cir. 2002). "Although 'public use' for purposes of § 102(b) is defined differently from 'use' for purposes of § 102(a), both require actual use by someone at some point." *Id.* at 1307. To qualify as an offer for sale for purposes of § 102(b), the offer must occur in the United States. *Linear Tech. Corp. v. Micrel, Inc.*,

275 F.3d 1040, 1052 (Fed. Cir. 2001). Further, such communications must rise "to the level of an offer for sale that would form a contract if accepted." *Id.* at 1051–52.

A document "may be deemed a printed publication upon a satisfactory showing that it has been disseminated or otherwise made available to the extent that persons interested and of ordinary skill in the subject matter or art, exercising reasonable diligence can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation." *Mass. Inst. of Tech. v. AB Fortia, et al.*, 774 F.2d 1104, 1109 (Fed. Cir. 1985) (quoting *In re Wyer*, 655 F.2d 221, 226 (CCPA 1981). "The proponent of the publication bar must show that prior to the critical date the reference was sufficiently accessible, at least to the public interested in the art, so that such a one by examining the reference could make the claimed invention without further research or experimentation." *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986).

<u>Anticipation</u>:

35 U.S.C. § 102 provides, in relevant part, that:

> A person shall be entitled to a patent unless - (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

Invalidity for anticipation "requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citations omitted). Anticipation requires that the reference must disclose the invention "without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of

the cited reference." *In re Arkley*, 455 F.2d 586, 587-88 (C.C.P.A 1972) ("Such picking and choosing may be entirely proper in the making of a 103, obviousness rejection, where the applicant must be afforded an opportunity to rebut with objective evidence any inference of obviousness which may arise from the similarity of the subject matter which he claims to the prior art, but it has no place in the making of a 102, anticipation rejection.").

> Obviousness:

35 U.S.C. § 103 provides, in relevant part, that:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

35 U.S.C. § 103(a); *see also Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010).

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406, 127 S. Ct. 1727, 1734 (2007) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966)). Before finding a patent claim as invalid for obviousness, a court must consider all of these factors. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000).

Obviousness determinations proceed in two stages. First, the patent challenger must establish by clear and convincing evidence that the claimed invention would have been prima facie obvious. *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 974–75 (Fed. Cir. 1986). Failure to show

prima facie obviousness means the claims are not invalid for obviousness, ending the inquiry. *Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1345 (Fed. Cir. 2000).

Second, assuming the challenger sets forth clear and convincing evidence of prima facie obviousness, the patentee may come forward with evidence to demonstrate that the invention was not obvious. Prima facie obviousness may be rebutted with objective indicia of nonobviousness ("secondary considerations") such as commercial success, failure of others to solve the problem, copying or other attempts to patent the same invention, satisfaction of a longfelt need by the invention, and acclaim for the invention. Sometimes, objective factors are the most important evidence in evaluating obviousness, and "must" always be considered as part of the original determination of obviousness. *See Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380, 1382–84 (Fed. Cir. 1986), *see also In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998) (recognizing that objective considerations are critical to the obviousness inquiry). Once sufficient rebuttal evidence has been presented, "the prima facie case dissolves, and the decision is made on the entirety of the evidence." *In re Kumar*, 418 F.3d 1361, 1366 (Fed. Cir. 2005). Moreover, when the patentee comes forward with evidence of secondary considerations, the burden of proof that the claims were obvious in light of all the evidence remains on the defendant by clear and convincing evidence. *See Hybritech Inc.*, 802 F.2d at 1375, 1383; *see also In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1078 (Fed. Cir. 2012) (patentee never bears the burden of persuasion with respect to secondary considerations).

"[A] patent composed of several elements is not proved obvious merely by demonstrating that each element was, independently, known in the prior art." *KSR*, 550 U.S. at 418. "Inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known."

*Id.* at 418–19. Where a challenger seeks to invalidate a patent based on obviousness, it must demonstrate "by clear and convincing evidence" that a "skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzapine*, 676 F.3d at 1068–69.

The obviousness analysis takes place at the time of the invention, and focuses on evidence existing before the time of the invention. The use of hindsight is prohibited in the obviousness analysis. *KSR*, 550 U.S. at 421 ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning."); *accord Innogenetics, N. V. v. Abbott Labs.*, 512 F.3d 1363, 1374 n.3 (Fed. Cir. 2008) (hindsight should not be relied upon to post-hoc create a reason for combining references when such reason would not have been known before the claimed invention); *Yamanouchi*, 231 F.3d at 1343 (using "the claimed invention itself as a blueprint for piecing together elements in the prior art to defeat the patentability of the claimed invention" is impermissible hindsight reasoning) (citation omitted).

An obviousness determination requires finding both "that a skilled artisan would have been motivated to combine the teachings of the prior art . . . and that the skilled artisan would have had a reasonable expectation of success in doing so." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359 (Fed. Cir. 2016).

An obviousness determination is made "from the viewpoint of a person of ordinary skill in the field of the invention." *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 956 (Fed. Cir. 1997). The obviousness analysis must avoid using the teachings of the Asserted Patent because "[t]he invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time." *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1138 (Fed.

Cir. 1985). Therefore, "[i]t is critical that the question of obviousness not be viewed in the light of the accomplished result." *BOC Health Care, Inc. v. Nellcor Inc.*, 892 F. Supp. 598, 603 (D. Del. 1995) (internal quotation marks and citation omitted). Evidence must be provided that a "skilled artisan, confronted with the same problems as the inventor and with no knowledge of the claimed invention, would select the elements from the cited prior art references for combination in the manner claimed." *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998).

Validity Under 35 U.S.C. § 101:

35 U.S.C. § 101 provides that:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Section 101 contains an "implicit exception" — "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 216, 134 S. Ct. 2347, 2354, 189 L. Ed. 2d 296 (2014). Courts, however, courts must "tread carefully in construing [§ 101's] exclusionary principle lest it swallow all of patent law," since "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* (alterations and quotation marks omitted).

*Alice* established a two-part test for determining whether a patent claim is directed to unpatentable subject matter under § 101. At Step One, the Court must first determine "whether the claims . . . focus on a specific means or method that improves the relevant technology"—in which case they are not ineligible under § 101—"or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc*., 837 F.3d 1299, 1314 (Fed. Cir. 2016). That the claims merely "involve" or "implicate" some abstract concept does not render them "directed to" an abstract idea. *Id*. Instead, in determining whether a claim is "directed to" something other than an abstract concept,

13

the Federal Circuit looks to whether the claim as a whole discloses a specific improvement to prior systems. *See, e.g.*, *Enfish*, *LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (claims were directed to "a specific improvement to the way computers operate"); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) (claims at issue, though they involved "the generic idea of summarizing information," were "directed to a particular manner of summarizing and presenting information in electronic devices" and therefore "recite a specific improvement over prior systems").

Only if an invention is determined to be directed to an abstract concept under Step One does the Court reach Step Two, where the question is whether the claim limitations nevertheless contain an inventive concept that "involve[s] more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018). "Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Id.* at 1369. Indeed, Step Two is satisfied if individual claim elements or a combination of elements result in a "non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

## III.     DAMAGES

### A.     Issues to be Litigated

1.     Plaintiffs' damages for HTC's infringement of the Asserted Patents, including the dollar amount that will compensate Plaintiffs for the infringement of the Asserted Patents through trial.

2.      Whether Plaintiffs are entitled to an award of prejudgment and post-judgment interest and, if so, the dollar amount of such award.

3.      Whether Plaintiffs are entitled to a finding that this case is exceptional pursuant to 35 U.S.C. § 285 and whether Plaintiffs are entitled to an award of attorneys' fees.

4.      Whether Plaintiffs are entitled to costs and, if so, the dollar amount of such costs.

**B.      Legal Authority**

Reasonable Royalty

Upon a finding of infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. The reasonable royalty may be based on the "supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). "While the Federal Circuit has not prescribed a specific methodology for calculating a reasonable royalty, courts rely upon the fifteen factors set forth in *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.1970)." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, CIV.A. 03-241 JJF, 2004 WL 2213562 (D. Del. Sept. 28, 2004). "[I]n conducting the hypothetical negotiation, the Court is permitted to look to events and facts that occurred after the infringement began." *Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994). "[A] reasonable royalty may permissibly reflect '[t]he fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty.'" *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (quoting *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109–10 (Fed.Cir.1996); *see also TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed.Cir.1986) ("That

15

[the patentee] might have agreed to a lesser royalty is of little relevance, for to look only at that question would be to pretend that the infringement never happened.").

<u>Costs and Interest</u>

Upon a finding of patent infringement, Courts should award the patentee costs and pretrial interest. Federal Rule of Civil Procedure 54 states "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Under 28 U.S.C. § 1920, the prevailing party may recover the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in this case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *See also* D. Del. LR 54.1.

"[P]rejudgment interest shall ordinarily be awarded absent some justification for withholding such an award." *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)). "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment." *Id.* (citing *General Motors*, 461 U.S. at 656).

28 U.S.C. § 1961(a) states that "interest shall be allowed on any money judgment in a civil case recovered in a district court." "Post-judgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999). Post-judgment interest is governed by regional circuit law. *Id.* at 1348. Interest begins to accrue on the date of the entry of judgment. *Loughman*

*v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993). Courts in this district routinely award post-judgment interest in patent infringement cases. *See, e.g.*, *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) (awarding post-judgment interest to patentee for defendant's willful infringement); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) (awarding post-judgment interest for patent infringement).

Enhanced Damages

35 U.S.C. § 284 also provides for enhanced "damages up to three times the amount found or assessed." "When the court considers whether to enhance damages based on willfulness, it turns to the factors set forth in *Read Corporation v. Portec Inc.*, 970 F.2d 816, 826–27 (Fed.Cir.1992), *overruled on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)." *Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 628 (D. Del. 2018), *aff'd* 773 Fed. Appx. 619 (Fed. Cir. 2019). Those factors are "(1) deliberate copying; (2) defendant's investigation and good faith-belief of invalidity or non-infringement; (3) litigation behavior; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of the misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) attempted concealment of the misconduct." *Id.* (citing *Read*, 970 F.2d at 826–27).

Attorneys' Fees

35 U.S.C. § 285 provides for the awarding of "reasonable attorney fees to the prevailing party" when the case is determined to be exceptional. To be a "prevailing party," a party "must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment." *Parallel Iron LLC v. NetApp Inc.*, 2014 WL 4540209, at *3 (D. Del. Sept. 12, 2014). "An exceptional case 'stands out from others with respect to the

substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Intellectual Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1383 (Fed. Cir. 2019) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

### Date on Which Damages Period Commenced[3]

Under 35 U.S.C. § 287(a), "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." A failure to mark limits damages only for the period of noncompliance. *American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993) ("In light of the permissive wording of the present statute, and the policy of encouraging notice by marking, we construe section 287(a) to preclude recovery of damages only for infringement for any time prior to compliance with the marking or actual notice requirements of the statute.").

"[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). To satisfy that burden, an alleged infringer must "produce … admissible evidence that identifies specific products that it believes should have been marked and were sold or offered

---

[3] Plaintiffs include the statement of law here regarding marking solely to respond to HTC's statement. Plaintiffs disagree that marking is an appropriate issue for trial, and Plaintiffs have filed a motion in limine to preclude any marking arguments from HTC.

for sale in the United States." *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 2019 WL 4390573, at *3 (C.D. Cal. June 26, 2019). A patentee is "not required to plead compliance with § 287" before the alleged infringer has met its burden to "come forward with particular unmarked products allegedly triggering §  287." *Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667, 688 (D. Del. 2017) (Stark, J.), *aff'd* 775 Fed. App'x. 674 (Fed. Cir. 2019); *see also In re Mobile Telecomms. Techs., LLC*, 2017 WL 1053099, at *6 (D. Del. Mar. 20, 2017) (Stark, J.). If the alleged infringer meets its burden to identify specific unmarked articles that it believes practice the patented invention, "the patentee bears the burden to prove the products identified do not practice the patented invention." *Arctic Cat*, 876 F.3d at 1368.

Section 287 "permits either constructive notice, which is accomplished by marking the article with the patent number, or actual notice." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001). Notice is an "affirmative communication to the alleged infringer of a specific charge of infringement by a specific accused product or device. *Id.* (alteration adopted).

Notice need not be provided by the patent holder directly. It can be provided by anyone with authority to discuss licensing. *See U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1375 (Fed. Cir. 2007) (finding the notice obligation fulfilled because "Philips International B.V.— the sender of the letter—was the party 'to contact ... about an amicable and early resolution of the potential dispute'" or "to negotiate a valid license"); *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) (holding that letter from patent pool that "disclosed the identity of the patent, the activity that may infringe, and a proposal to abate that infringement" satisfy the notice requirement).

"[A]s long as the communication from the patentee provides sufficient specificity regarding its belief that the recipient may be an infringer, the statutory requirement of actual notice

19

is met." *Id*. at 1346. The patentee need not make an "unqualified charge of infringement." *Id*.; *see also SRI Intern., Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) (holding that "the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise"); *Ralston Purina Co. v. Far–Mar–Co., Inc.,* 772 F.2d 1570, 1577, 227 USPQ 177, 181 (Fed.Cir.1985) ("The offering of a license is actual notice."). A patentee may provide notice for a "a specific product or group of products." *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010); *see also Optis Wireless Tech., LLC v. Huawei Techs. Co. Ltd.*, 2018 WL 3375192, at *7 (E.D. Tex. July 11, 2018) (finding notice letter identifying "the class of devices" can be sufficient).

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3G Licensing, S.A., KONINKLIJKE 3G Licensing N.V., and ORANGE S.A,   ) ) ) | |
| Plaintiffs,   ) ) | |
| v.   ) ) | C.A. No. 17-083-GBW |
| HTC CORPORATION,   ) ) | |
| Defendant.   ) ) | |

**EXHIBIT 5: HTC CORPORATION'S STATEMENT OF ISSUES
OF LAW TO BE LITIGATED**

1.      Defendant HTC Corporation ("HTC" or "HTC Corp.") hereby provides its Statement of

Issues of Law that Remain to be Litigated. HTC asserts that the asserted claims of U.S. Patent

Nos. 6,856,818 ("the '818 Patent") 7,995,091 ("the '091 Patent") and 6,856,818 ("the '818

Patent") (collectively "the Asserted Patents") are not infringed and are invalid.  HTC also asserts

that to the extent the asserted claims of the Asserted Patents are infringed and valid, any damages

that 3G Licensing is entitled to are limited 3G Licensing based on non-compliance with 35

U.S.C. § 287.  In addition, HTC also seeks its costs pursuant to Federal Rule of Civil Procedure

54(d) and its attorneys' fees pursuant to 35 U.S.C. § 285.

2.      HTC's Statement of Issues of Law is based on the arguments it expects to make to

establish invalidity, as well as its understanding of the arguments that 3G Licensing S.A. ("3G

Licensing") is likely to make in attempting to prove infringement and damages.  To the extent

that 3G Licensing intends or attempts to introduce different or additional legal arguments, HTC

reserves the right to supplement this statement and contest those legal arguments, and to present

any and all rebuttal evidence in response to those arguments. Should the Court determine that any issue identified herein is more appropriately considered an issue of fact that remains to be litigated, HTC incorporates such issue by reference into its Statement of Issues of Fact that Remain to Be Litigated (Exhibit 3). Likewise, to the extent that HTC's Statement of Issues of Fact that Remain to Be Litigated contains issues that the Court deems to be issues of law, those issues are incorporated herein by reference.  By providing this statement, HTC does not concede that all of the recited issues are appropriate for trial. In particular, HTC does not waive any of its motions *in limine*, which, if granted, would render some of these issues moot.

## I.  NON-INFRINGEMENT

3.  Whether 3G Licensing can prove by a preponderance of the evidence that HTC Corp. has directly infringed, literally or under the doctrine of equivalents, claims 1-2 and 6-9 of the '091 Patent or claims 18–19 and 22–23 of the '818 Patent (collectively "the Asserted Claims") by making, using, offering to sell, selling or importing into the United States the HTC Accused Products.

### A.  Direct Infringement

4.  Under 35 U.S.C. § 271(a), an accused infringer is liable for direct infringement if, without authorization from the patentee, the accused infringer "makes, uses, offer to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a). 3G Licensing bears the burden of proving infringement by a preponderance of the evidence.  *InTouch Tech., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1338 (Fed. Cir. 2014); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

5.      A "sale" under § 271(a) "consists in the passing of title from the seller to the buyer for a price." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1377-78 (Fed. Cir. 2016); *Semcon IP Inc. v. Mediatek*, No. 2:16-cv-00437, Dkt. No. 569 at 3-4 (E.D. Tex. Mar. 7, 2018) (finding general purchase agreement governing future sales is not itself a sale); *Syngenta Crop Protection, LLC v. Willowood, LLC*, 944 F.3d 1344, 1364-66 (Fed. Cir. 2019) (affirming that substantial evidence supported jury's finding of non-infringement because Defendant sold product outside of the United States and did not import the accused product into the United States).

6.      Mere speculation cannot satisfy the patentee's burden of proof. *See, e.g., Brigham & Women's Hosp., Inc. v. Perrigo Co.*, 761 F. App'x 995, 1003-04 (Fed. Cir. 2019) ("At most, the study suggests that Pepcid Complete® might provide immediate and sustained relief; such speculative data, however, cannot sustain Brigham's burden of proof.").

7.      Infringement must be proven for each accused product. *AFG Indus. Inc. v. Cardinal IG Co., Inc.*, 375 F.3d 1367, 1374 (Fed. Cir. 2004) (remanding and requiring that the district court examine distinct products separately); *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, No. 3:18-CV-00373- BEN-MSB, 2021 WL 981123, at *19 (S.D. Cal. Mar. 16, 2021) (citing *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019)). The patentee bears the burden of proof to show that each accused product infringes. *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1317-18 (Fed. Cir. 2006).

8.      "[A] patent holder may carry its burden of proof by showing that (1) a representative example infringes and (2) every accused model conforms to that representative example." Pulse Elecs., Inc., 2021 WL 981123, at *19. However, the patentee "cannot simply 'assume' that all of [Defendant's] products are like the one [their infringement expert] tested and thereby shift to

[Defendants] the burden to show that is not the case." *L & W, Inc. v. Shertech, Inc*., 471 F.3d at 1317-18.

9.      Though using a representative product can be proper, substantial evidence needs to sufficiently tie infringement to the accused products. *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1350-51 (Fed. Cir. 2010) (holding the panel correctly found that substantial evidence tied the expert testimony on the selected products to all the accused products). Specifically, the patentee needs to establish "that the modeled and non-modeled products operate similarly with respect to the claimed limitation." Id. (noting that the patentee's expert "had offered specific and substantial evidence as to why th[e] accused products not selected by" the expert could "reasonably be expected to behave like the representative accused products").

10.     Where claim language recites capability, as opposed to actual operation, an apparatus that is reasonably capable of performing the claimed functions without significant alterations can infringe those claims." *INVT SPE LLC v. ITC*, 46 F.4th 1361, 1375-76 (Fed. Cir. 2022) (quoting *ParkerVision, Inc. v. Qualcomm Inc.*, 903 F.3d 1354, 1362 (Fed. Cir. 2018)). "[P]roof of reasonable capability of performing claimed functions requires, at least as a general matter, proof that an accused product—when put into operation—in fact executes all of the claimed functions at least some of the time or at least once in the claim-required environment." *Id*. at 1377.

### B.  Literal Infringement

11.     To establish literal infringement, a patentee must prove "each and every limitation set forth in a claim" appears in the accused system or method. *V-Formation, Inc., v. Bennetton Grp. SpA*, 401 F.3d 1307, 1313 (Fed. Cir. 2005); *see also, e.g., DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every

limitation in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'") (citation omitted).

12.     "Each element contained in a patent claim is deemed material to defining the scope of the patented invention." *WarnerJenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29 (1997). "[F]ailure to meet a single limitation is sufficient to negate infringement of the claim." *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed. Cir. 1991); *NOMOS Corp. v. BrainLAB USA, Inc*., 357 F.3d 1364, 1367 n.1 (Fed. Cir. 2004). The absence of even one claim element of an asserted claim precludes literal infringement of that claim. See Kahn v. GMC, 135 F.3d 1472, 1477 (Fed. Cir. 1998). If an accused product does not infringe an independent claim, it also does not infringe any claim depending therefrom. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.").

13.     A product that does not literally infringe may nonetheless be found to infringe "if there is 'equivalence' between the elements of the accused product … and the claimed elements of the patented invention." *Warner-Jenkinson Co.,* 520 U.S. at 17, 21 (*citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 609 (1950)). Equivalency must be determined "'against the context of the patent, the prior art, and the circumstances of the case.'" Id. at 24 (*quoting Graver Tank*, 339 U.S. at 609). A party can show infringement under the doctrine of equivalents if every limitation of the asserted claim, including a limitation's "equivalent," is found in the accused product, "where an 'equivalent' differs from the claimed limitation only insubstantially." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp*., 149 F.3d 1309, 1315 (Fed. Cir. 1998). "Whether a component in the accused subject matter performs substantially the same

function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determination." *Id.* This "function-way-result test compares a limitation of a claim to an element of an accused product, not the entire patent to the entire product." Id. at 1336. However, the "concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims." *See Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335 (Fed. Cir. 2014) (internal quotations and citations omitted).

### C.  Infringement Under the Doctrine of Equivalents

14.     A product that does not literally infringe may nonetheless be found to infringe "if there is 'equivalence' between the elements of the accused product … and the claimed elements of the patented invention." *Warner-Jenkinson Co.,* 520 U.S. at 17, 21 (c*iting Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)). Equivalency must be determined "'against the context of the patent, the prior art, and the circumstances of the case.'" *Id.* at 24 (*quoting Graver Tank*, 339 U.S. at 609). A party can show infringement under the doctrine of equivalents if every limitation of the asserted claim, including a limitation's "equivalent," is found in the accused product, "where an 'equivalent' differs from the claimed limitation only insubstantially." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). "Whether a component in the accused subject matter performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determination." *Id.* This "function-way-result test compares a limitation of a claim to an element of an accused product, not the entire patent to the entire product." Id. at 1336. However, the "concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims." *See Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335 (Fed. Cir. 2014) (internal quotations and citations omitted).

## II.     INVALIDITY

15.     Whether HTC has proven that the Asserted Claims of the Asserted Patents are anticipated under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103 in view of the state of the art and one or more prior art references, including:

    a.   Shachar anticipates or renders obvious claims 1-2 and 6-9 of the '091 patent

    b.   Shachar in combination with Nagao renders obvious claims 1-2 and 6-9 of the '091 patent

    c.   Kawan in combination with the GSM 11.11 v.5.4.0 standard renders obvious claims 18-19 and 22-23 of the '818 patent

    d.   Taylor in combination with the GSM 11.11 v.5.4.0 standard renders obvious claims 18-19 and 22-23 of the '818 patent

    e.   The GSM 11.11 v.5.4.0 standard anticipates or renders obvious claims 18-19 and 22-23 of the '818 patent

16.     Whether HTC has proven by clear and convincing evidence that, when taken individually or when taken as an ordered combination, one or more of Claims 18-19 and 22-23 of the '818 Patent involve only technology which a person ordinary skill in the art would have considered to be well-understood, routine, and conventional.

### A.   Anticipation

17.     Invalidity for anticipation "requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citations omitted). Anticipation requires that the reference must disclose the invention "without any need

for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference."

### B. Obviousness

18.     Obviousness is a question of law that is based on underlying issues of fact. *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 427 (2007).

19.     Under § 282 of the Patent Act, patents are presumed valid and a party challenging the validity of a patent must prove invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *see also Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011). Clear and convincing evidence is evidence that "could place in the ultimate factfinder an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984); *see also Procter & Gamble Co. v. Teva Pharm. USA, Inc*., 566 F.3d 989, 994 (Fed. Cir. 2009).

20.     Once the challenging party "has presented a prima facie case of invalidity, the patentee has the burden of going forward with rebuttal evidence." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir. 2007). If the patentee fails to do so, the patent cannot be found valid. *See, e.g., Ralston Purina Co. v. Far- Mar-Co*., 772 F.2d 1570, 1573 (Fed. Cir. 1985) ("If this burden [of making a prima facie case of invalidity] is met, the party relying on validity is then obligated to come forward with evidence to the contrary.")

21.     "The courts are the final arbiter of patent validity and, although courts may take cognizance of, and benefit from, the proceedings before the patent examiner, the question is ultimately for the courts to decide, without deference to the rulings of the patent examiner." *Quad Envtl. Techs. Corp. v. Union Sanitary Dist*., 946 F.2d 870, 876 (Fed. Cir. 1991). Any relevant evidence, whether or not previously considered by the PTO, can be considered by the

court in determining validity. *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571-72 (Fed. Cir. 1988).

22.     The standard for whether a patent claim is obvious is whether "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

23.     Obviousness is based on four underlying factual determinations: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness. *KSR Int'l Co*, 550 U.S. at 406-07 (*citing Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966).

24.     "Nothing in [35 U.S.C. § 103] or [Federal Circuit] case law requires [a defendant] to prove obviousness by starting with a prior art commercial embodiment and then providing motivation to alter that commercial embodiment." *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 737 (Fed. Cir. 2013). "This is particularly true where, as here, the prior art teaches a range that encompasses both the prior art commercial embodiment and the claimed invention." *Id.*

25.     "[T]he scope of the relevant prior art . . . include[es] that reasonably pertinent to the particular problem with which the inventor was involved." *In re GPAC Inc.,* 57 F.3d 1573, 1577 (Fed. Cir. 1995) (quotation omitted). "A reference is reasonably pertinent if, even though it may be in a different field of endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem." Id. at 1578 (quotation omitted). "If a reference disclosure relates to the same problem as that

9

addressed by the claimed invention, that fact supports use of that reference in an obviousness [finding]." *Id.* (quotation omitted).

26. Obviousness can be established by noting that "there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR Int'l Co.,* 550 U.S. at 420. "In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim." *Id.* at 419. Thus, "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 420.

27. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416. A critical issue is whether the "improvement is more than the predictable use of prior art elements according to their established functions." *Id.* at 417. "Common sense teaches ... that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420; *see also Leapfrog Enters.v. Fisher-Price, Inc.,* 485 F.3d 1157, 1161-1162 (Fed. Cir. 2007).

28. Obviousness is judged from the perspective of a person of ordinary skill in the art at the time the alleged invention was made. *Takeda Chern. Indus. v. Alphapharm Pty., Ltd.,* 492 F.3d 1350, 1355 (Fed. Cir. 2007). A person of ordinary skill is a hypothetical person who is "presumed to be aware of all the pertinent prior art." *Std. Oil Co. v. Am. Cyanamid Co.,* 774 F.2d 448, 454 (Fed. Cir. 1985). In determining the level of ordinary skill in the art, a court should consider the following factors: (1) the types of problems encountered in the art; (2) prior art solutions to those problems; (3) the rapidity with which innovations are made; (4) the

sophistication of the technology involved; and (5) the educational level of active workers in the field. *Daiichi Sankyo Co., Ltd. v. Apotex Inc.,* 501 F.3d 1254, 1256 (Fed. Cir. 2007); *see also U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1564 (Fed. Cir. 1997). "Not all such factors may be present in every case, and one or more . . . may predominate in a particular case." *Envtl. Designs, Ltd. v. Union Oil Co. of Cal.,* 713 F.2d 693, 696-97 (Fed. Cir. 1983)

29.     Obviousness is judged under "an expansive and flexible approach" driven by common sense. *KSR,* 550 U.S. at 415. The Court's obviousness "analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 418. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416.

30.     Where a claim "simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 417 (quotation omitted). In general, a claim is invalid for obviousness if "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention," and "would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.,* 480 F.3d 1348, 1361 (Fed. Cir. 2007)

31.     When "there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *KSR Int'l Co,* 550 U.S. at 421.

32.     Routine experimentation on the part of an artisan does not support nonobviousness. *See Pfizer,* 480 F.3d at 1368 ("The experimentation needed, then, to arrive at the subject matter

claimed in the '303 patent was 'nothing more than routine' application of a well-known problemsolving strategy") (*citing Merck & Co., Inc. v. Biocraft Labs., Inc.,* 874 F.2d 804, 809 (Fed. Cir. 1989))

33.     Although it "can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements," a court "need not seek out precise teachings directed to the specific subject matter of the challenged claim." *KSR Int'l Co*, 550 U.S. at 418. Nor can a court allow its "analysis" to "be confined by" an "overemphasis on the . . . explicit content" of prior art references. *Id.* at 419. Rather, a court must "take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id*. at 418.

34.     Finding a motivation to combine prior art references is not a rigid endeavor. "Far from requiring evidence of an explicit motivation to combine," the Federal Circuit has likewise made clear that "an implicit motivation" is enough. *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.,* 464 F.3d 1356, 1366 (Fed. Cir. 2006) (emphasis removed). The Federal Circuit has "repeatedly held" that a combination may be obvious "even absent any hint of suggestion in the [prior art] references themselves." *Id.* at 1368. A court that requires the prior art "clearly and unequivocally [to] disclose" a "motivation to combine" therefore "err[s] by taking an overly cramped view of what the prior art teaches." *Allergan, Inc. v. Apotex Inc.,* 754 F.3d 952, 963-64 (Fed. Cir. 2014). "[T]here is no requirement that the prior art contain an express suggestion to combine known elements to achieve the claimed invention." *Motorola, Inc. v. Interdigital Tech. Corp.,* 121 F.3d 1461, 1472 (Fed. Cir. 1997).

35.     The subject matter of a patent claim can be proved obvious if there existed at the time of the alleged invention "a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR Int'l Co,* 550 U.S. at 420. If "a person of ordinary skill can

implement a predictable variation" or if "a technique has been used to improve one device[] and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way," Section 103 bars patentability. *Id*. at 417. "[A]ny need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 420. A person of skill in the art's motivation to optimize a piece of prior art or to combine pieces of prior art need not result from explicit teaching within the art but, instead, can result from "[t]he normal desire of scientists or artisans to improve upon what is already generally known" to satisfy the obviousness inquiry. *See In re Peterson,* 315 F.3d 1325, 1330 (Fed. Cir. 2003).

36.     "[T]he expectation of success need only be reasonable, not absolute." *Pfizer,* 480 F.3d at 1364; *see also Medichem, S.A. v. Rolabo, S.L.,* 437 F.3d 1157, 1165 (Fed. Cir. 2006). Obviousness does not require an absolute predictability of success, but rather only "a reasonable expectation of success" in making the invention. *Allergan, Inc. v. Sandoz Inc.,* 726 F.3d 1286, 1292 (Fed. Cir. 2013); *see also In re Merck*, 800 F.2d 1091, 1097 (Fed. Cir. 1986) ("Obviousness does not require absolute predictability. Only a reasonable expectation that the beneficial result will be achieved is necessary to show obviousness.") (citations omitted). Thus, "obviousness cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success." *Pfizer,* 480 F.3d at 1364. Courts have found that a person of ordinary skill is particularly likely to have a reasonable expectation of success when optimizing methods that are already practiced in the prior art. *See, e.g.,* id. at 1371-72.

37.     The question of obviousness requires consideration of objective indicia of nonobviousness. *See KSR,* 550 U.S. at 406 (*quoting Graham,* 383 U.S. at 17-18). "Objective

evidence of nonobviousness can include copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, … skepticism of skilled artisans before the invention" and commercial success. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013); *see also WBIP,* 829 F.3d at 1336.

38.     A "nexus between the merits of the claimed invention and evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision. Put another way, commercial success or other secondary considerations may presumptively be attributed to the patented invention only where the marketed product embodies the claimed features, and is coextensive with them." *Muniauction, Inc. v. Thomason Corp.*, 532 F.3d 1318, 1327-28 (Fed. Cir. 2008) (citations omitted). "Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." *In re Huai-Hung Kao,* 639 F.3d 1057, 1068 (Fed. Cir. 2011) (emphasis omitted); *see also In re GPAC*, 57 F.3d at 1580 ("[F]or objective evidence to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention."). Even "impressive" evidence of secondary considerations is not "entitled to weight" unless "it is relevant to the claims at issue." *In re Paulsen,* 30 F.3d 1475, 1482 (Fed. Cir. 1994). For commercial success, the proponent must offer proof "[that] sales were a direct result of the unique characteristics of the claimed invention." *In re Huang,* 100 F.3d 135, 140 (Fed. Cir. 1996).

39.     Where "the inventions represented no more than 'the predictable use of prior art elements according to their established functions' . . . the secondary considerations are inadequate to

establish nonobviousness as a matter of law." *Wyers,* 616 F.3d at 1246 (*quoting KSR Int'l Co,*

550 U.S. at 417). "[S]econdary considerations of non-obviousness . . . simply cannot overcome a

strong prima facie case of obviousness." *Id.; see also Leapfrog,* 485 F.3d at 1162 ("[G]iven the

strength of the prima facie obviousness showing, the evidence on secondary considerations was

inadequate to overcome a final conclusion [of obviousness].")

### C. Patent Ineligibility

40.    Claims directed to laws of nature, natural phenomena, and abstract ideas are not patent

eligible. *Alice Corp. v. CLS Bank Int'l,* 573 U.S. 208, 216 (2014).  The Supreme Court instructs

courts to distinguish between claims that set forth patent-ineligible subject matter and those that

"integrate the building blocks into something more." Id. at 217.

41.    First, the court "determine[s] whether the claims at issue are directed to a patent

ineligible concept." *Id.* at 218.

42.    Second, if the challenged claims are directed towards a patent-ineligible concept, the

court  then "consider[s] the elements of each claim both individually and 'as an ordered

combination' to  determine whether the additional elements 'transform the nature of the claim'

into a patent eligible  application." *Alice*, 573 U.S. at 217 (*quoting Mayo*, 566 U.S. 66, 78–79

(2012)). This step is satisfied when the claim limitations contain an inventive concept that

"involve[s] more than performance of 'well-understood, routine, [and] conventional activities

previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo*

*Bank, Nat'l Ass'n*, 776 F.3d  1343, 1347–48 (Fed. Cir. 2014) (*quoting Alice*, 573 U.S. at 225).

The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under

§101 is a question of law, like many legal questions, there can be subsidiary fact questions which

must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green*

*Shades Software, Inc.*, 882 F.3d 1121,  1128 (Fed. Cir. 2018). "While patent eligibility is ultimately a question of law . . . [w]hether something is well-understood, routine, and conventional to a skill artisan at the time of the patent is  a factual determination" is a "question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368- 69 (Fed. Cir. 2018); *see also Aatrix Software*, 882 F.3d at 1128 ("Whether the claim elements or the claimed combination are well-understood, routine, [and] conventional is a question of fact.").

### III.    DAMAGES

43.    Whether 3G Licensing proved that it provided actual notice to HTC by an affirmative communication of a specific charge of the infringement by a specific accused product or device pursuant to 35 U.S.C. § 287.

44.    Whether 3G Licensing proved that it provided constructive notice to HTC by marking products that practice the Asserted Claims with the Asserted Patents pursuant to 35 U.S.C. § 287.

45.    Whether 3G Licensing proved that the products identified by HTC as unmarked covered products either: (1) do not practice the claimed invention or (2) were sufficiently marked pursuant to 35 U.S.C. § 287.

46.    Whether 3G Licensing proved that it took reasonable steps to ensure its licensees complied with the marking statute (35 U.S.C. § 287) and whether these licensees did comply with the marking statute.

47.    Whether 3G Licensing has proven that it has complied with 35 U.S.C. § 287.

48.    Whether 3G Licensing has proven by a preponderance of the evidence the reasonably royalty that a patent holder and the infringer would have agreed upon in a hypothetical negotiation.

49.    To recover pre-suit damages, a patentee who makes, offers for sale, or sells patented articles in the United States must show it met the requirements of 35 U.S.C. § 287(a), either by marking its products or by providing actual notice of infringement. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat I*"); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1367 (Fed. Cir. 2017) ("*Arctic Cat II*").

50.    Failure to comply with the marking provision of § 287(a) bars all damages until notice is properly given. S*ee* 35 U.S.C. § 287(a).

### A.  Actual Notice

51.    The notice provision in 35 U.S.C. § 287(a) states that "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was [1] notified of the infringement and [2] continued to infringe thereafter, 35 U.S.C. § 287(a) (emphasis added). By the plain statutory language, the "action for infringement" (where patentee seeks damages) and the "noti[ce] of the infringement" must concern the same infringement. Moreover, "actual notice must be of the infringement, not merely notice of the patent's existence or ownership." *Horatio Washington Depot Techs. LLC v. Tolmar, Inc.*, 2018 WL 5669168, at *2 (Nov. 1, 2018) (internal quotation marks and citations omitted), report and recommendation adopted, 2019 WL 1276028, at *2 (Mar. 20, 2019).

52.    Moreover, the law requires "the affirmative communication of a specific charge of infringement by a specific accused product or device." *Arctic Cat II*, 950 F.3d at 864. This obligation is imposed "on the patentee, and only the patentee is capable of discharging those obligations." *Id*. at 864, 866. Thus, "[t]he correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge of the infringer." *Amsted Indus.*

17

*Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994); *Belden*, 733 F. Supp. 2d 517 at 536–37 ("Mere knowledge [by the alleged infringer] of the patent[] in suit is insufficient to place [the alleged infringer] on [actual] notice.").

**B. Marking**

53.     35 U.S.C. § 287(a) provides that if a product is not marked, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. . . ." *See also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 n. 8 (Fed. Cir. 1995). Specifically, the statute requires that "[p]atentees . . . making [or] offering for sale . . . any patented article . . . give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.,' together with the number of the patent, . . . or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice."  35 U.S.C. § 287(a). "[A] patentee cannot recover damages in the absence of actual notice when it has not marked." *Rite-Hite Corp*., 56 F.3d at 1549 n. 8.

54.     The patent holder "bears the burden of pleading and proving [it] complied with § 287(a)'s marking requirement." *Arctic Cat II*, 876 F.3d at 1366. "[F]ull compliance with the marking statute [i]s not achieved until the patentee 'consistently mark[s] substantially all' of the patented products." *Nike, Inc. v. Wal-Mart Stores, Inc*., 138 F.3d 1437, 1446 (Fed. Cir. 1998); *see also Rosebud LMS, Inc. v. Adobe Sys.*, No. 14-194-SLR, 2015 WL 510256, at *3 n.5 (D. Del. Feb. 5, 2015) ("[C]ompliance with the marking statute requires consistently marking substantially all of the patented products in order to provide constructive notice to the public.").

18

55.     A patentee that makes, offers to sell, or sells within the United States a patented article may recover pre-suit damages only if it properly marked the articles (or any articles it licensed under the patent) as being patented:

> Patentees . . . may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, . . ., or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice.

35 U.S.C. § 287(a). The plain language of Section 287(a) thus requires that the article itself be marked, unless because of "the character of the article" that "can not be done."

56.     Although non-physical characteristics may have a bearing on whether the exception applies, if "the patented article has markings or printing on it, other than the appropriate patent marking, then the alternate form of patent markings on the package is not sufficient compliance with the [marking] statute." *Belden Techs. Inc. v. Superior Essex Commc'ns*, LP, 733 F. Supp. 2d 517, 534 (D. Del. 2010) (emphasis added; internal quotation marks and citation omitted); *see also Zadro Prods., Inc. v. Feit Electric Co.*, Inc., 514 F. Supp. 3d 1209, 1215–17 (C.D. Cal. Jan. 6, 2021) (granting summary judgment for failure to mark product itself as being patented where other writing was included). This is because, when "the public finds markings or writings upon the article itself, the public should be able to rely upon the fact that a patent, if it exists, should also be noted with that writing." *Rutherford v. Trim-Tex, Inc.,* 803 F. Supp. 158, 163 (N.D. Ill. 1992.

57.     "Once an alleged infringer identifies products that it believes are unmarked patented articles subject to the notice requirements of § 287, the patentee bears the burden of proving that the identified products do not practice the claimed invention, or were adequately marked." *Arctic Cat I*, 950 F.3d at 864.  An alleged infringer's identification may be based on a belief that the

product practices the patent under Plaintiff's theory of infringement.  *Arctic Cat I*, 876 F.3d at 1368 ("BRP's expert testified that he 'review[ed] information regarding those models' and believed if BRP's OTAS system practiced the patents, so did Honda's throttle reapplication system in the Aquatrax PWCs.  This was sufficient to satisfy BRPs initial burden of production.")

58.     The patentee must show that "substantially all of [the patented product] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous." *Nike, Inc. v. Wal-Mart Stores, Inc*., 138 F.3d 1437, 1446 (Fed. Cir. 1998).

59.     Once a patentee (or its licensee) is non-compliant with marking, damages is limited to either the period after the marking resumes or after actual notice is given. *Arctic Cat I,* 950 F.3d at 864.

### C. Reasonable Royalty

60.     Upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.

61.     Plaintiffs must prove the amount of damages by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp*., 926 F.2d 1161, 1164 (Fed. Cir. 1991). "When a patentee seeks lost profits as the measure of damages, the patent holder bears the burden of proving the amount of the award." *Promega Corp. v. Life Techs. Corp*., 875 F.3d 651, 660 (Fed. Cir. 2017) (internal citation and quotation omitted).

62.     To properly carry their burden of proving the amount of damages, Plaintiffs must persuade the Court using "reliable" and "legally sufficient evidence regarding an appropriate

reasonable royalty." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010). The claim for damages cannot be speculative—there must be a reasonable certainty as to the amount of damages being claimed. *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1335, 1340 (Fed. Cir. 2009) (vacating and remanding jury award as excessive); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-30 (Fed. Cir. 1996). Plaintiffs "must show [their] damages by evidence." Promega Corp., 875 F.3d at 660. "Damages 'must not be left to conjecture by the jury. They must be proved, and not guessed at.'" Id. (citation omitted).

63.     A damages theory must be based on "sound economic and factual predicates." *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). "Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the state of the statute." *ResQNet*, 594 F.3d at 869. If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded. *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1315 (Fed. Cir. 2011).

64.     "A reasonable royalty is the predominant measure of damages in patent infringement cases." *Uniloc*, 632 F.3d at 1312.

65.     "The methodology of assessing and computing damages under 35 U.S.C. § 284 is within the sound discretion of the district court." *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 798 (Fed. Cir. 1988). Deciding the amount of the reasonable royalty is a question of fact. *See Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995).

66.     One approach for calculating a reasonable royalty is through a hypothetical negotiation analysis. *See Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1579 (Fed. Cir. 1996) ("Lacking evidence of royalties in the marketplace, this court accepts evidence about hypothetical results of hypothetical negotiations between the patentee and infringer (both hypothetically willing) at the

time infringement began."). The aim of the hypothetical negotiation approach is to capture what the infringer, acting as a prudent licensee, would have been willing to pay as a royalty and yet be able to make a reasonable profit, and what amount would have been acceptable to the patent holder, acting as a prudent patentee who was willing to grant a license. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121-22 (S.D.N.Y. 1970). Thus, to determine a reasonable royalty under this approach, a jury must find the royalty that would have been agreed to in a hypothetical negotiation between a willing licensee and willing licensor. *Lucent,* 580 F.3d at 1324-25.

67.    A determination of the reasonable royalty under the hypothetical negotiation approach is usually made by assessing factors such as those set forth in Georgia-Pacific. *Rite-Hite*, 56 F.3d at 1554-55. These factors include:

i)      The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

ii)     The rates paid by the licensee for the use of other patents comparable to the patent in suit.

iii)    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

iv)     The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

v)      The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

vi)     The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

vii)    The duration of the patent and the term of the license.

viii)   The established profitability of the product made under the patent; its commercial success; and its current popularity.

ix)     The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

x)      The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

xi)     The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

xii)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

xiii)   The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

xiv)    The opinion testimony of qualified experts.

xv)     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific*, 318 F. Supp. at 1120.

68.     The Federal Circuit has explained that "[t]he correct determination of [the hypothetical negotiation date] is essential for properly assessing damages." *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003), vacated and remanded on other grounds, 545 U.S. 193 (2005). Generally, "the date of the hypothetical negotiation is the date that the infringement began." *LaserDynamics, Inc. v. Quanta Comput., Inc*., 694 F.3d 51, 75 (Fed. Cir. 2012).

69.     "[T]he patent holder should only be compensated for the approximate incremental benefit derived from his invention." *Ericsson, Inc. v. D-Link Sys., Inc*., 773 F.3d 1201, 1233 (Fed. Cir. 2014). The patent holder must accordingly "give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features…." *VirnetX, Inc. v. Cisco Sys., Inc*., 767 F.3d 1308, 1326 (Fed. Cir. 2014) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). The Federal Circuit has held that "a reasonable royalty analysis requires a court to hypothesize, not to speculate…. [T]the trial court must

carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet,* 594 F.3d at 869; *see also Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC,* 879 F.3d 1332, 1350-51 (Fed. Cir. 2018).

70.     The presence or absence of "non-infringing alternatives" is a "core economic question" in a hypothetical negotiation. *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) ("In hypothetical negotiation terms, the core economic question is what the infringer, in a hypothetical pre-infringement negotiation under hypothetical conditions, would have anticipated the profit-making potential of use of the patented technology to be, compared to using noninfringing alternatives."); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2015) ("[I]f avoiding the patent would be difficult, expensive, and time consuming, the amount the infringer would be willing to pay for a license is likely to be greater").

### D.  Costs, Prejudgment Interest, and Postjudgment Interest

71.     "Unless a federal statute, these rules, or a court order provides otherwise, costs— other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(l). Under 28 U.S.C. § 1920, the prevailing party may recover the following costs: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. 28 U.S.C. § 1920; see also D. Del. L.R. 54.1.

72.     Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "[T]he Supreme Court has held that 'prejudgment interest shall ordinarily be awarded absent some justification for withholding such an award.'" *Nickson Indus., Inc. v. Rol Mfg. Co*., 847 F.2d 795, 800 (Fed. Cir. 1988) (quoting *General Motors Corp. v. Devex Corp*., 461 U.S. 648, 657 (1983)). Prejudgment interest is not a penalty but "serves to make the patent owner whole, for damages properly include the foregone use of money of which the patentee was wrongly deprived." *Sensonics*, 81 F.3d at 1574. Thus, the Supreme Court established "that prejudgment interest is the rule, not the exception." Id. (*citing General Motors Corp*., 461 U.S. at 656–57). "Generally, prejudgment interest should be awarded from the date of infringement to the date of judgment." *Nickson Indus*., 847 F.2d at 800. "Postjudgment interest is awarded on monetary judgments recovered in all civil cases." *Transmatic, Inc. v. Gulton Indus., Inc*., 180 F.3d 1343, 1347 (Fed. Cir. 1999). Postjudgment interest is governed by regional circuit law (id. at 1348), and begins to accrue on the date of the entry of judgment (*Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993)).

### E.  Exceptional Cases Including Attorneys' Fees

73.     Whether 3G Licensing is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

74.     Whether HTC is entitled to their costs and attorneys' fees pursuant to 35 U.S.C. § 285.

75.     Section 285 provides "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[F]or a party to be a prevailing party, that party must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment." *Parallel Iron LLC v. NetApp Inc*., 70 F. Supp. 3d 585, 589 (D. Del. 2014) (Andrews, J.). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering

both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014). Further, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id. In addition, the prevailing party must prove entitlement to attorney fees under § 285 by a preponderance of the evidence. Id. at 1758; *see also Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. CV 11-1175-RGA, 2014 WL 4675002, at *1 (D. Del. Sept. 12, 2014).

EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A., | C.A. No. 17-cv-83-GBW |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| HTC Corporation, | |
| Defendant. | |

**EXHIBIT 6: PLAINTIFFS' WITNESS LIST**

Plaintiffs submit this list of witnesses that Plaintiffs will or may call to testify live or by deposition at trial. Plaintiffs reserve the right to modify or amend this list to the extent necessary to reflect any future rulings by the Court, and to supplement or amend this list to fairly respond to any new issue that HTC may raise. Plaintiffs also reserve the right to call additional witnesses live or by deposition designations (or to offer additional deposition designations from witnesses identified below) in rebuttal to issues raised in HTC's case-in-chief. Plaintiffs further reserve the right to call additional witnesses live or by deposition designation to respond to issues raised after the preparation and submission of this list, including any changes by HTC to its arguments, witness lists, or other positions. Plaintiffs further reserve the right to call any witness live or by deposition designation for purposes of impeachment. Plaintiffs further reserve the right to call additional witnesses live or by deposition designations (or to offer additional deposition designations from witnesses identified herein) to the extent necessary to provide foundational testimony if HTC contests the authenticity or admissibility of any materials to be offered as evidence at trial.

If any witness Plaintiffs intend to call to testify live is unavailable, Plaintiffs reserve the right to offer deposition testimony from such witness. Plaintiffs further reserve the right to

substitute witnesses for the listed witnesses should any listed witness become unavailable for trial.

Plaintiffs further reserve the right to call any witness listed by HTC on its witness list or who otherwise appears for HTC at trial. Plaintiffs further reserve the right to use any deposition designations identified by HTC as either affirmative designations or as counter-designations.

| Witness | Will Call Live | May Call Live | May Call by Deposition |
|---------|----------------|---------------|------------------------|
| 3GL Corporate Representative David Muus (Plaintiffs) | X | | |
| Orange Corporate Representative Lyse Brillouet (Plaintiffs) | X | | |
| Orange Corporate Representative Oliver Thirard (Plaintiffs) | | X | |
| Dr. Vijay Madisetti (Plaintiffs) | X | | |
| Dr. Geoff Cohen (Plaintiffs) | X | | |
| Daniel Lindsay (Plaintiffs) | X | | |
| HTC Corporate Representative Shen Ye (HTC) | X | | |
| Lynn Yu (HTC) | | | X |
| Hsiu-Fen Lai (HTC) | | | X |
| Lawrence Lin (HTC) | | | X |
| Howard Chen (HTC) | | | X |
| Nigel Newby-House (HTC) | | | X |
| Randall Mishler | | | X |

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3G LICENSING, S.A.;<br>KONINKLIJKE KPN N.V.;<br>ORANGE S.A., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 17-cv-00083-GBW |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| HTC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>DEFENDANT HTC CORPORATION'S WITNESS LIST</u>

Defendant HTC Corporation ("HTC Corp." or "HTC") submits this list of witnesses that

HTC will or may call to testify live or by deposition at trial. HTC reserves the right to modify or

amend this list to the extent necessary to reflect any future rulings by the Court, and to supplement

or amend this list to fairly respond to any new issue that Plaintiff 3G Licensing S.A. ("3GL") may

raise. HTC also reserves the right to call additional witnesses live or by deposition designations

(or to offer additional deposition designations from witnesses identified herein) in rebuttal to

issues raised in 3GL's case-in-chief or rebuttal presentations. HTC further reserve the right to call

additional witnesses live or by deposition designation to respond to issues raised after the

preparation and submission of this list, including any changes by 3GL to its arguments, witness

lists, or other positions. HTC further reserve the right to call any witness live or by deposition

designation for purposes of impeachment. HTC further reserve the right to call additional

witnesses live or by deposition designations (or to offer additional deposition designations from

witnesses identified herein) to the extent necessary to provide foundational testimony if 3GL contests the authenticity or admissibility of any materials to be offered as evidence at trial.

If any witness HTC intend to call to testify live is unavailable, HTC reserve the right to offer deposition testimony from such witness. If any of 3GL's expert witnesses is not called live at trial, HTC reserve the right to offer deposition testimony of such witness. HTC further reserve the right to substitute witnesses for the listed witnesses should any listed witness become unavailable for trial. HTC further reserve the right to call any witness listed by Plaintiffs on its witness list or who otherwise appears for Plaintiffs at trial. HTC further reserve the right to use any deposition designations identified by Plaintiffs as either affirmative designations or as counter-designations.

| | WITNESS | WILL CALL LIVE[1] | MAY CALL LIVE | MAY CALL BY DEPOSITION |
|---|---|---|---|---|
| | Shen Ye (HTC) | X | | |
| | Dr. Kevin Jeffay (HTC) | X | | |
| | Nigel Jones (HTC) | X | | |
| | Dr. Stephen Wicker (HTC) | X | | |
| | Dr. Apostolos K. Kakaes (HTC) | X | | |
| | Christopher Bakewell (HTC) | X | | |
| | David Muus (3GL) | | X | |
| | Pierpaolo Carrubba (3GL) | | | X |
| | Marcello Dini (3GL) | | | X |

---

[1] To the extent that a witness is not available to offer live testimony, HTC may present deposition testimony for each such witness, irrespective of whether the witness is designated as may call by deposition.

|  | Lyse Brillouet (Orange) |  | X |  |
|  | Sandrine Millet (Orange) |  |  | X |
|  | Olivier Thirard (Orange) |  | X |  |
|  | Douglas Taylor (Third Party – Prior Art) |  |  | X |
|  | Yi Cheng (Qualcomm) |  |  | X |
|  | Ken McKenzie (Qualcomm) |  |  | X |
|  | Vitaly Drapkin (Qualcomm) |  |  | X |

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

3G LICENSING, S.A.,
KONINKLIJKE KPN N.V., and
ORANGE, S.A.,

                    Plaintiffs,

          v.

HTC Corporation,

                    Defendant.

C.A. No. 17-cv-83-GBW

**JURY TRIAL DEMANDED**

**EXHIBIT 8: PLAINTIFFS' DEPOSITION DESIGNATIONS**

## CODES TO DEFENDANTS' OBJECTIONS TO
## PLAINTIFFS' DEPOSITION DESIGNATIONS

- R = irrelevant (Rules 401-02)
- 403 = prejudicial, confusing, and/or waste of time (Rule 403)
- F = lack of foundation
- LT = improper lay opinion testimony (Rule 701)
- H = hearsay (Rules 802, 805)
- A = unauthenticated (Rule 901)
- V = vague
- BE = best evidence rule (Rule 1002)
- D = duplicative
- I = incomplete designation
- CC = relates to claim construction already decided by the Court
- LC = legal conclusion
- M = mischaracterization
- PK = lack of personal knowledge (Rule 602)
- L = Leading
- Foreign language = requires translation, improper translation, or multiple translations
- Outside the scope = outside the scope of Rule 30(b)(6) topic

**Legend for Plaintiffs' Objections**

| | |
|---|---|
| AA | Asked and answered |
| AQ | Attorney colloquy |
| ARG | Argumentative |
| BE | Best Evidence Rule (Fed. R. Evid. 1002-1007) |
| C | Compound |
| FL | Foreign Language |
| H | Hearsay (Fed. R. Evid. 801-802) |
| IC | Improper Compilation of Unrelated Documents, all objections reserved |
| IH | Improper or Incomplete Hypothetical |
| INC | Incomplete testimony or document |
| IO | Improperly includes objections |
| LC | Legal Conclusion |
| LF | Lack of foundation (Fed. R. Evid. 602, 701) |
| LPK | Lack of personal knowledge |
| MIL | Subject to either (1) in limine issue or (2) in limine agreement between parties |
| MIS | Mischaracterizes/misstates testimony |
| NC | Not a Counter-Designation |
| Not Q/A | Not question or answe401, 402, no designated questions from counsel |
| NR | Non-responsive |
| NT | Not Testimony |
| SCOPE | Outside Scope (of 30(b)(6) topic/cross-examination) |
| V | Vague/ambiguous |
| 401/402 | Fed. R. Evid. 401, 402 (Relevance) |
| 403 | Fed. R. Evid. 403 (Prejudice exceeds probative) |
| 408 | Fed. R. Evid. 408 (Compromise Offers and Negotiations) |
| 602 | Fed. R. Evid. 602 (Lack of Personal Knowledge; Calls for Speculation) |
| 611(b) | Fed. R. Evid. 611(b) (Outside the scope of direct examination) |
| 611(c) | Fed. R. Evid. 611(c) (Leading) |
| 701 | Fed. R. Evid. 701 (Improper opinion by lay witness) |
| 702 | Fed. R. Evid. 702 (Improper opinion by expert) |
| 901 | Fed. R. Evid. 901 (Authenticity) |

| Witness: Lynn Yu | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: March 26, 2019 | | | | | |
| Plaintiffs' Designations | HTC's Objections | HTC's Counter-Designations | Plaintiffs' Objections | Plaintiffs' Counter-Counter Designations | HTC's Objections |
| 8:14 – 10: 3 | | 10:4 – 10:17 | | | |
| 10:22 – 11: 10 | | | | | |
| 11: 13 – 19 | | | | | |
| 11: 21 – 12: 3 | | | | | |
| 17: 25 – 18: 5 | | | | | |
| 41: 17 – 19 | | | | | |
| 51: 21 – 22 | | | | | |
| 51: 25 (Let) – 7 | | | | | |
| 52: 11 (As) – 17 | | | | | |
| 52: 19 – 21 | | | | | |
| 52: 25 –53: 9 | | | | | |
| 53: 14 (As) – 22 | | | | | |
| 53: 25 – 54: 6 | | | | | |
| 54: 12 – 55: 4 | | | | | |
| 55: 9 – 10 | | | | | |
| 55:15 – 24 | | | | | |
| 57:19 – 20 | | | | | |
| 57:23 – 58: 8 | | | | | |
| 59: 16 – 60: 13 | | | | | |
| 60: 21 – 23 | M | | | | |
| 60: 25 (In) – 61: 12 | M | | | | |
| 62: 7 – 8 | | | | | |
| 62: 10 – 18 | | | | | |
| 62: 23 (So) – 25 | | | | | |

| | | | | |
|---|---|---|---|---|
| 64: 2 – 4 | | | | |
| 64: 10 | | | | |
| 64: 14 | | | | |
| 64: 24 – 65: 2 (letter,) | | | | |
| 65: 12 – 13 | | | | |
| 67: 25 – 68: 19 | | | | |
| 68: 22 – 23 | | | | |
| 68: 25 – 70: 8 | | | | |
| 70: 12 – 19 | | | | |
| 70: 21 – 71: 12 | | | | |
| 72: 16 – 18 | | | | |
| 72: 24 | | | | |
| 73: 2 – 17 | 403 | | | |
| 75: 4 – 76: 11 | 403 | | | |
| 76: 22 – 24 | | | | |
| 77: 5 – 17 | | | | |
| 80: 15 – 16 | | | | |
| 80: 19 – 81: 10 | | | | |
| 81: 14 – 82: 11 | | | | |
| 82: 13 – 17 | | | | |
| 86: 24 – 87: 6 | | | | |
| 90: 9 – 24 | | 87:7 – 89:18, 90:3 (According) – 90:8 | | | |
| 95: 12 – 22 | | | | |
| 95: 24 – 96: 3 | | | | |
| 112: 4 – 12 | | | | |
| 113: 22 – 114: 25 | 403 | | | |
| 115: 25 (I'll) – 116: 3 | | | | |

| | | | | |
|---|---|---|---|---|
| 116: 5 – 7 | | | | |
| 116: 12 | | | | |
| 118: 2 – 119: 2 | 403 | | | |
| 122: 13 | | | | |
| 122: 15 – 25 | I | 123:15 – 16 | | |
| 123: 17 – 124: 3 | 403 | | | |

| Witness: Hsiu-Fen Lai | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: March 29, 2019 | | | | | |
| Plaintiffs' Designations | HTC's Objections | HTC's Counter-Designations | Plaintiffs' Objections | Plaintiffs' Counter-Counter Designations | HTC's Objections |
| 5: 24 – 6: 9 | | | | | |
| 6: 13 – 6: 18 | | | | | |
| 7:15 – 20 | | | | | |
| 9: 20 – 25 | | | | | |
| 10: 7 – 12 | | | | | |
| 10: 19 – 24 | | | | | |
| 11: 6 – 7 | | | | | |
| 11:9 – 12 | | | | | |
| 12: 4 – 5 | | | | | |
| 12: 9 | | | | | |
| 17: 9 – 18 | | | | | |
| 25: 12 – 15 | | | | | |
| 27: 20 – 24 | | | | | |
| 28: 2 – 7 | | | | | |
| 28: 22 – 25 | | | | | |
| 29: 3 – 6 | | | | | |
| 29: 10 – 15 | | | | | |
| 30: 15 – 16 | | | | | |
| 30: 20 – 31: 5 | | | | | |
| 31: 8 – 10 | | | | | |
| 31: 12 – 32: 17 | V | | | 7:21–8:16 | |
| 32: 19 | | | | | |
| 35: 3 – 5 | V, M | | | | |
| 35: 8 (It) – 10 | | | | | |
| 35: 12 – 14 | V, M | | | | |

| | | | | |
|---|---|---|---|---|
| 35: 17 (It's) – 36: 11 | Outside the scope | | | |
| 36: 14 (I) – 15 | | | | |
| 36: 17 – 25 | | | | |
| 37: 5 – 20 | | | | |
| 39: 6 – 42: 10 | M | | | |
| 42: 17 | | | | |
| 49: 7 – 20 | | | | |
| 52: 24 – 53: 18 | | | | |
| 54: 17 – 21 | | | | |
| 55: 6 –12 | | | | |
| 62: 20 – 64: 6 | | 67:9-17, 67:20-21, 67:24-68:16 | 611(c) | | |
| 64: 23 – 67: 2 | | | | |
| 68: 17 – 18 | | | | |
| 68: 22 | | | | |
| 69: 4 – 12 | | 69:13-70:7, 70:14-70:21, 71:5-14, 72:2-18 | 611(c) | 70:22–71:4 | |
| 72: 23 – 73: 12 | | | | |
| 73: 23 – 75: 10 | | 75:18-25, 76:3, 76:5-9, 76:12 | | 75:11–13, 75:16 | |
| 76: 14 – 19 | | 76:20-77:6 | | | |
| 77: 7 – 78: 4 | | | | |
| 78: 7 – 79: 3 | | | | |
| 79: 17 – 20 | | 79:21-23 | | | |
| 80: 2 – 12 | | | | |

| Witness: Lawrence Lin | | | | | |
|---|---|---|---|---|---|
| **Date of Deposition: May 2, 2019** | | | | | |
| **Plaintiffs' Designations** | **HTC's Objections** | **HTC's Counter-Designations** | **Plaintiffs' Objections** | **Plaintiffs' Counter-Counter Designations** | **HTC's Objections** |
| 5:15 (Good) – 17 | | | | | |
| 5:21 – 25 | | 6:2-5 | | | |
| 6:17 – 20 | | | | | |
| 9:23 – 10:18 | | | | | |
| 10:19 – 20 | | | | | |
| 11: 4 – 5 | | | | | |
| 11:7 – 10 | | | | | |
| 11:20 – 25 | | | | | |
| 12:3 – 6 | | | | | |
| 12:10 – 13:2 | V, M | | | | |
| 13:17 – 21 | | | | | |
| 14:25 – 15:6 | | | | | |
| 15:8 – 18 | | | | | |
| 15:25 – 16:5 | | | | | |
| 16:21 – 17:5 | | | | | |
| 17:13 – 15 | | | | | |
| 17:19 – 23 | | | | | |
| 18:24– 19:5 | V, M | | | | |
| 20:17 (Does) – 21:24 | V, M | | | | |
| 22:6 – 24:2 | | | | | |
| 24:5 – 11 | | | | | |
| 25:10 – 20 | V, M | | | | |
| 25:24 – 26:4 | | | | | |
| 26:14 – 27:7 | | 26:6-13 | | | |

| | | | | |
|---|---|---|---|---|
| 27:9 (If) – 27:24 | | | | |
| 27:25 (And) – 28:14 | | | | |
| 28:18 – 29:3 | | | | |
| 29:15 (Is) – 31:4 | | | | |
| 31:14 – 19 | | | | |
| 32:22 – 33:10 | | 33:11-19 | | 33:20-34:14 | |
| 36:10 – 20 | | | | |
| 37:5 – 12 | D | | | |
| 37:19 – 38:9 | D | | | |
| 38: 15 (Is) – 23 | D | | | |
| 40:3 (Does) – 13 | | | | |
| 40: 18 – 21 | | | | |
| 40: 23 – 41:6 | | | | |
| 41:19 (Have) – 23 | | | | |
| 42: 15 – 17 | | | | |
| 42: 25 – 43:3 | | | | |
| 43: 9 – 18 | | 43:19-24 | | 43:15-18 | |
| 43:25 – 44:5 | | 44:6-13 | | | |
| 44:22 – 45:23 | | | | |
| 46:7 –20 | | | | |
| 47:3 – 7 | | | | |
| 47:18 – 22 | | 46:21-47:1 | | | |
| 48:3 – 8 | | | | |
| 48:18 – 49:8 | | | | |
| 49:12 – 17 | | 49:18-22 | | 49:23-50-3 | |
| 50:4 – 52:4 | | | | |
| 52:10 – 22 | | 52:23-53:6 | 401, 403, 701 | | |
| 53:7 – 9 | | | | |
| 53:14 – 24 | | | | |

| | | | | |
|---|---|---|---|---|
| 54:5 – 12 | | | | |
| 55:21(Is) – 56:9 | | | | |
| 58:15 (So) – 20 | | 58:3-14 | | 58:21 | |
| 58:22 – 59:6 | | | | |
| 59:16 – 25 | | | | |
| 60:3 – 5 | | | | |
| 60:7 – 17 | | | | |
| 60:23 – 61: 2 | | | | |
| 61:19 – 23 | | | | |
| 62:3 – 6 | | | | |
| 62:11 – 14 | | | | |
| 62:21 – 25 | | | | |
| 63:7 – 18 | | | | |
| 63:22 – 64:10 | | | | |
| 65:11 – 66:2 | | 64:25 (Your)-65:6 | | | |
| 67:9 – 17 | | | | |
| 67:25 – 68:6 | | | | |
| 69:4 – 70:15 | | | | |
| 71:18 – 72:4 | | | | |
| 74:5 – 75:2 | | | | |
| 81:10 – 13 | | | | |
| 81:17 – 19 | | | | |
| 88:23 – 25 | | | | |
| 89:4 – 24 | | | | |
| 90:9 – 24 | D | | | |
| 92:16 – 19 | | | | |
| 92: 21 – 93:2 | | | | |
| 93:16 (If) – 94:3 | | | | |
| 94:18 – 20 | | | | |
| 94:23 – 95:3 | | | | |

| | | | | |
|---|---|---|---|---|
| 95:8 (Mr.) – 16 | | | | |
| 95:18 – 20 | | | | |
| 95:23 (Mr.) – 96:7 | | | | |
| 96:20 – 98:8 | | | | |
| 98:11 – 21 | | | | |
| 99:9 – 12 | | | | |
| 100: 10 – 101:8 | | | | |
| 101:22 – 25 | | | | |
| 102: 10 (do) – 103:8 | | 101:13-21 | | |
| 103:11 – 14 | | | | |
| 103:16 – 104:19 | | | | |
| 104:23 – 105:9 | | | | |
| 105:19 – 106:5 | | | | |
| 107:5 – 7 | | | | |
| 107:10 – 13 | | | | |
| 107:18 – 108:10 | | | | |
| 111:13 – 112:25 | | | | |
| 113:13 (Mr.) – 25 | | | | |
| 114:12 – 19 | | | | |
| 114:20 (if) – 115:11 | | | | |
| 115:14 – 116:9 | | | | |
| 116:23 – 117:5 | | | | |
| 117:6 (Are) – 118:15 | | 119:4-15 | 401, 403, 701 | |
| 118:18 – 20 | | | | |
| 119: 16 – 120:12 | | | | |
| 120:20 – 121:15 | | | | |
| 121:23 – 122:4 | | | | |
| 122:20 – 123:10 | | | | |

| | | | | |
|---|---|---|---|---|
| 125:2 (Several) –24 | | 150:2-18, 151:4 (In)-8, 151:10-14 | 401, 403, 701 | |
| 126:2 – 127:7 | | | | |
| 127:11 – 13 | | | | |
| 127:15 – 20 | | | | |
| 128:9 – 12 | | | | |
| 128:17 – 20 | | | | |
| 131:10 – 13 | | | | |
| 135:12 – 25 | | | | |
| 136:12 – 137:2 | | | | |
| 137:8 – 138:8 | | 149:13-23 | AQ | |
| 141:7 – 14 | | | | |
| 141:17 – 142:24 | | | | |
| 143:11 – 144:12 | | | | |
| 144:22 – 145:5 | | | | |
| 146:9 – 14 | | | | |
| 146:18 – 20 | | 149:4-11 | | |
| 147:6 (Mr.) – 18 | | | | |
| 147:22 – 148:3 | | | | |
| 148:6 (Why) – 11 | | | | |

| Witness: Howard Chen | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: May 3, 2019 | | | | | |
| Plaintiffs' Designations | HTC's Objections | HTC's Counter-Designations | Plaintiffs' Objections | Plaintiffs' Counter-Counter Designations | HTC's Objections |
| 5:17 – 18 | | | | | |
| 6:6 – 9 | | | | | |
| 6:19 – 23 | | | | | |
| 7:2 – 3 | | | | | |
| 7:6 – 9 | | | | | |
| 8:5 – 25 | 403 | 8:5-13 | | | |
| 10:19 – 11:6 | V | | | | |
| 11:14 – 25 | V | | | | |
| 12:16 (And) – 13:19 | | | | | |
| 14:6 – 17 | M, F | 14:6-12, 14:19-21 | | | |
| 15:22 – 16:11 | | | | | |
| 16:13 – 16 | | | | | |
| 16:18 – 23 | | | | | |
| 17: 8 (I) – 15 | LC | | | | |
| 18:5 – 19:3 | V, M | | | | |
| 19:8 –10 | | | | | |
| 19:18 – 19 | | | | | |
| 20:9 – 17 | V | | | | |
| 21:11 – 12 | | | | | |
| 23:13 (Mr.) – 18 | V, Outside the scope | 20:18 - 21-10 | | | |
| 23:24 (In) | I | 20:18 - 21-10 | | | |
| 24:19 – 26:18 | | | | | |
| 27:3 – 28:5 | M | 27:3-17, 27:22-28:5 | | | |

| | | | | | |
|---|---|---|---|---|---|
| 28:12 – 16 | | | | | |
| 29:13 – 17 | | | | | |
| 30:11 – 31:3 | V | | | | |
| 31:5 – 8 | | | | | |
| 31:10 –23 | | | | | |
| 32: 2–6 | | | | | |
| 32:8 – 10 | I | 32:8-14 | | | |
| 32:16 – 33:9 | | | | | |
| 33:21 – 34:6 | M | 33:10-14, 33:21- 25 | | | |
| 34:10 – 18 | | | | | |
| 34: 25 – 35:8 | | 34:15 - 35:8 | | | |
| 36:3 – 6 | M, F | 36:14 – 37:8 | | | |
| 36:9 –12 | | 36:14 – 37:8 | | | |
| 36:14 – 37:8 | | | | | |
| 37:13 – 38:4 | | | | | |
| 38:18 (Mr. ) – 24 | | | | | |
| 39:4 – 18 | M, F | 39:4 – 15 | | | |
| 39: 24 (We) – 25 | | 39:4 – 15 | | | |
| 40:3 – 24 | M, F | 40:3 – 18, 41:17-21 | | | |
| 41:3 – 21 | M, F | 40:3 – 18, 41:17-21 | | | |
| 42:23 – 43:7 | | | | | |
| 44:23 – 45:5 | LT, Outside the scope | | | | |
| 45:8 – 10 | | | | | |

| Witness: Nigel Newby-House | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: May 16, 2019 | | | | | |
| Plaintiffs' Designations | HTC's Objections | HTC's Counter–Designations | Plaintiffs' Objections | Plaintiffs' Counter-Counter Designations | HTC's Objections |
| 6: 11 – 13 | | | | | |
| 6: 23 – 24 | | | | | |
| 9: 9 – 15 | | | | | |
| 10: 25 – 11: 6 | | | | | |
| 14: 17 – 15: 3 | | | | | |
| 15: 5 – 25 | | | | | |
| 16: 7 – 12 | | | | | |
| 16: 15 – 17 | | | | | |
| 19: 22 – 23 | | | | | |
| 20: 6 – 22 | | | | | |
| 32: 2 – 22 | | | | | |
| 40: 22 – 41: 2 | | 40:10-40:21 | | | |
| 47: 21 – 48: 12 | | | | | |
| 49: 14 – 17 | | 49:5-6; 49:8-11 | | | |
| 49: 19 – 21 | | | | | |
| 50: 5 – 12 | | 49:22-50:4 | | | |
| 56: 19 – 23 | | | | | |
| 56: 25 | | 57:3-5, 57:7-8 | | 57:10–24 | |
| 58: 2 – 4 | | | | | |
| 58: 7 – 9 | | | | | |
| 58: 12 – 13 | | | | | |
| 58: 22 | LC | | | | |
| 58: 25 – 59: 2 | | | | | |
| 59: 4 – 6 | | | | | |
| 59: 15 – 18 | V | | | | |

| | | | | |
|---|---|---|---|---|
| 59: 20 | | | | |
| 59: 22 – 60: 4 | 403 | | | |
| 63: 6 – 11 | R | | | |
| 63: 18 – 64: 17 | R | | | |
| 65: 12 – 22 | | | | |
| 71: 20 – 22 | | 71:6-7; 71:10-12 | | 71:14–19 |
| 72: 8 – 9 | LC | | | |
| 72: 12 – 13 | | | | |
| 72: 16 – 73: 15 | D | | | |
| 73: 18 – 74: 4 | D | | | |
| 74: 8 – 14 | D | | | |
| 74: 17 – 19 | | | | |
| 74: 21 – 25 | | | | |
| 75: 5 | | | | |
| 75: 8 – 9 | | | | |
| 75: 21 – 24 | | 75:16-20 | | |
| 76: 2 – 5 | | | | |
| 76: 11 – 16 | | | | |
| 77: 6 – 8 | | | | |
| 77: 12 – 13 | | | | |
| 77: 18 – 78: 9 | M | | | |
| 78: 13 – 14 | | | | |
| 78: 16 – 19 | | | | |
| 78: 21 – 22 | | | | |
| 87: 24 – 88: 9 | | | | |
| 88: 11 – 12 | V, LC | | | |
| 88: 15 – 16 | | | | |
| 88: 18 – 20 | | | | |
| 88: 22 – 89: 2 | | | | |
| 89:5 – 7 | | | | |

| | | | | |
|---|---|---|---|---|
| 89: 9 – 90: 4 | | | | |
| 90: 6 – 9 | | | | |
| 90: 11 – 14 | LC, M | | | |
| 90: 21 – 91: 3 | | | | |
| 91: 5 – 7 | LC, M | | | |
| 91: 11 | | | | |
| 91: 14 – 18 | | | | |
| 91: 20 – 24 | | | | |
| 92: 4 | | | | |
| 92: 6 – 93: 5 | | | | |
| 93: 7 – 8 | | | | |
| 93: 11 | | | | |
| 93: 14 – 16 | | | | |
| 93: 21 – 22 | | | | |
| 93: 24 – 94: 2 | | | | |
| 94: 6 – 7 | | | | |
| 94: 10 – 12 | LC | | | |
| 94: 16 | | | | |
| 94: 19 – 22 | LC | | | |
| 95: 2 | | | | |
| 98: 12 – 99: 9 | LC | | | |
| 99: 13– 14 | | | | |
| 99: 17 – 21 | LC, M | | | |
| 99: 25 – 100: 3 | | | | |
| 100: 16 – 23 | LC | | | |
| 101: 6 – 7 | | | | |
| 101: 21 – 25 | | | | |
| 102: 3 – 15 | LC, M | | | |
| 102: 21 – 104: 7 | LC, M | | | |
| 104: 11 – 12 | | | | |

| | | | | |
|---|---|---|---|---|
| 104: 14 – 16 | | | | |
| 104: 18 – 105: 6 | | | | |
| 108: 25 – 109: 4 | LC, M | | | |
| 109: 6 – 12 | | | | |
| 109: 14 – 21 | | | | |
| 110: 21 – 111: 9 | V, Outside the Scope | | | |
| 111: 13–14 | | | | |
| 111: 16–17 | V | | | |
| 111: 19 – 112: 4 | | | | |
| 117: 22 – 24 | LC | | | |
| 118: 6 – 8 | | | | |
| 118: 12 – 119: 4 | LC | | | |
| 119: 13 – 15 | | | | |
| 119: 19 – 22 | | | | |
| 120: 18 – 121: 15 | | | | |
| 121: 17 – 18 | F, Outside the Scope | | | |
| 121: 21 – 23 | | | | |
| 122: 2 – 123: 9 | LC | | | |
| 123: 12 – 13 | | | | |
| 123: 16 – 18 | M | | | |
| 123: 21 – 22 | | | | |
| 124: 5 – 6 | | | | |
| 124: 12 – 21 | | | | |
| 124: 23 – 125: 4 | LC, M | | | |
| 125: 8 – 9 | | | | |
| 129: 7 – 9 | | 129:10-15 | | |
| 129: 23 – 25 | | | | |
| 130: 3 – 10 | | | | |

| | | | | |
|---|---|---|---|---|
| 130: 13 | | | | |
| 133: 23 – 134: 6 | | | | |
| 136: 13 – 16 | V | | | |
| 136: 18 – 19 | | | | |
| 136: 22 – 23 | | | | |
| 138: 4 – 6 | V | | | |
| 138: 9 | | | | |
| 138: 12 – 19 | | | | |
| 138: 21 – 139:9 | | | | |
| 139: 21 – 140:8 | | | | |
| 140: 10 – 23 | | | | |
| 141: 12 – 22 | | | | |
| 142: 3 – 10 | | | | |
| 143: 5 – 10 | | | | |
| 154: 9 – 10 | | | | |
| 154: 17 – 19 | | | | |
| 155: 20 – 25 | | | | |
| 156: 13 – 17 | LC | | | |
| 156: 21 | | | | |
| 156: 24 – 25 | LC | | | |
| 157: 5 | | | | |
| 157: 23 – 158:23 | LC | | | |
| 159: 3 – 17 | LC | | | |
| 160: 19 – 20 | LC | | | |
| 161: 4 | | | | |
| 161: 25 – 162:3 | | | | |
| 164: 10 – 11 | | | | |
| 164: 14 – 24 | | | | |
| 166: 18 – 19 | V | | | |
| 166: 21 – 167: 2 | | | | |

| | | | | |
|---|---|---|---|---|
| 167: 5 – 13 | | | | |
| 168: 8 – 9 | | | | |
| 168: 16 – 19 | | | | |
| 169: 3 – 5 | | | | |
| 169: 9 – 14 | LC | | | |
| 169: 18 | | | | |
| 169: 21 – 170: 7 | LC, M | | | |
| 170: 11 – 12 | | | | |
| 170: 15 – 21 | | | | |
| 181: 3 – 15 | | | | |
| 181: 22 – 182:8 | LC, M | | | |
| 182: 12 | | | | |
| 189: 20 – 190: 11 | | | | |
| 190: 21– 23 | | | | |
| 190: 25 – 191: 19 | | | | |
| 193: 19 – 21 | LC, M | | | |
| 193: 25 – 194: 2 | | | | |
| 194: 5 – 6 | | | | |
| 194: 12 – 17 | | | | |
| 194: 21 –195: 9 | | | | |
| 195: 20 – 196: 5 | | | | |
| 196: 7 – 10 | LC, M | | | |
| 196: 25 – 197: 2 | | | | |
| 197: 5 – 7 | | | | |
| 197: 20 – 198: 4 | | | | |
| 198: 8 – 16 | | | | |
| 198: 19 – 21 | | | | |
| 198: 23 – 24 | | | | |
| 199: 3 – 4 | | | | |
| 199: 7 – 20 | LC, M | | | |

| | | | | |
|---|---|---|---|---|
| 199: 24 – 200: 3 | LC, M | | | |
| 200: 11 – 12 | | | | |
| 200: 22 – 24 | LC, M | | | |
| 201: 2 – 3 | | | | |
| 201: 6 – 9 | LC, M | | | |
| 201: 13 – 15 | | | | |
| 201: 18 – 202: 8 | LC, M | | | |
| 202: 13 – 25 | | | | |
| 203: 16 – 17 | | | | |
| 203: 19 – 21 | | 203:3; 203:9-13 | | |
| 203: 24 – 25 | | | | |
| 204: 3 – 5 | | 204:21-206:3 | | |
| 207: 9 – 11 | | | | |
| 207: 14 – 16 | | | | |
| 207: 18 – 24 | V | | | |
| 208: 2 – 7 | | | | |
| 217: 4 – 17 | | | | |
| 223: 11 – 17 | | | | |
| 223: 19 – 21 | | | | |
| 223: 23 – 25 | M | | | |
| 224: 4 | | | | |
| 229: 23 – 25 | LC, M | | | |
| 230: 5 – 6 | | | | |
| 245: 15 – 21 | | | | |
| 247: 23 – 248: 6 | V | | | |
| 248: 11 – 13 | | | | |
| 269: 19 – 270: 7 | | | | |
| 270: 24 – 271: 11 | | | | |
| 272: 14 – 273: 2 | V, M | | | |
| 273: 6 –8 | | | | |

| | | | | |
|---|---|---|---|---|
| 273: 18 – 25 | | | | |
| 291: 12 – 13 | | | | |
| 291: 16 – 292: 6 | | | | |
| 292: 8 – 12 | | | | |
| 292: 14 – 22 | | | | |
| 292: 24 – 293: 4 | | | | |
| 348: 11 – 20 | | 348:22-24; 349:2-5; 349:7-9; 349:11-14; 349:16-18; 349:20-22 | V, 611(c) | | |
| 352: 8 – 23 | | | | |
| 353: 6 – 17 | M | 351:14-25 | 611(c) | | |
| 353: 20 – 21 | | | | |
| 353: 23 – 354: 2 | M | | | |
| 354: 6 – 9 | | | | |
| 355: 16 – 356: 2 | I | 355: 16 – 356: 2 | | |
| 356: 6 – 9 | | | | |

| Witness: Randall Mishler | | | | | |
| Date of Deposition: October 17, 2019 | | | | | |
| Plaintiffs' Designations | HTC's Objections | HTC's Counter-Designations | Plaintiffs' Objections | Plaintiffs' Counter-Counter Designations | HTC's Objections |
|---|---|---|---|---|---|
| 8: 12 – 9: 4 | | | | | |
| 10: 13 – 21 | | 10: 2-12 | | | |
| 11: 5 – 11: 25 | | 13:4-11; 13:14-25; 15:13-16:7 | | | |
| 16: 8 – 15 | | 16:16-20; 17:4-8 | | 16:21–17:3 | |
| 19: 8 – 14 | R, 403, Outside the Scope | | | | |
| 21: 3 – 4 | R, 403, Outside the Scope | | | | |
| 21: 6 – 8 | R, 403, Outside the Scope | | | | |
| 21: 11 – 12 | R, 403, Outside the Scope | | | | |
| 21: 15 – 19 | R, 403, Outside the Scope | | | | |
| 21: 22 | | | | | |
| 24: 6 – 8 | | | | | |
| 24: 10 – 25: 2 | | | | | |
| 25: 4 – 7 | | | | | |
| 27: 10 – 17 | LC | | | | |
| 27: 20 – 28: 1 | LC | | | | |
| 28: 4 – 14 | | | | | |
| 28: 16 – 19 | | | | | |
| 28: 21 – 23 | | | | | |
| 28: 25 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 29: 5 – 6 | D | | | | |
| 29: 8 – 12 | | | | | |
| 29: 14 – 16 | | | | | |
| 29: 19 – 25 | | | | | |
| 30: 4 – 7 | | | | | |
| 30: 9 – 14 | | | | | |
| 31: 3 – 17 | LC, D, M, Outside the scope | | | | |
| 31: 21 – 32: 3 | | | | | |
| 32: 6 – 15 | | | | | |
| 32: 17 – 33: 3 | | | | | |
| 33: 5 – 9 | Outside the scope | | | | |
| 33: 12 – 16 | | | | | |
| 33: 19 – 25 | | | | | |
| 34: 3 – 5 | | | | | |
| 34: 8 | | | | | |
| 35: 7 – 8 | Outside the scope | | | | |
| 35: 10 – 21 | | | | | |
| 35: 24 | I | | | | |

# EXHIBIT 9

## 3G LICENSING S.A. and ORANGE S.A. v. HTC CORPORATION
## Case No. 17-cv-83-GBW DED

### DEFENDANT'S DEPOSITION DESIGNATIONS

### Legend for Plaintiffs' Objections

| | |
|---|---|
| AA | Asked and answered |
| AQ | Attorney colloquy |
| ARG | Argumentative |
| BE | Best Evidence Rule (Fed. R. Evid. 1002-1007) |
| C | Compound |
| FL | Foreign Language |
| H | Hearsay (Fed. R. Evid. 801-802) |
| IC | Improper Compilation of Unrelated Documents, all objections reserved |
| IH | Improper or Incomplete Hypothetical |
| INC | Incomplete testimony or document |
| IO | Improperly includes objections |
| LC | Legal Conclusion |
| LF | Lack of foundation (Fed. R. Evid. 602, 701) |
| LPK | Lack of personal knowledge |
| MIL | Subject to either (1) in limine issue or (2) in limine agreement between parties |
| MIS | Mischaracterizes/misstates testimony |
| NC | Not a Counter-Designation |
| Not Q/A | Not question or answe401, 402, no designated questions from counsel |
| NR | Non-responsive |
| NT | Not Testimony |
| SCOPE | Outside Scope (of 30(b)(6) topic/cross-examination) |
| V | Vague/ambiguous |
| 401/402 | Fed. R. Evid. 401, 402 (Relevance) |
| 403 | Fed. R. Evid. 403 (Prejudice exceeds probative) |
| 408 | Fed. R. Evid. 408 (Compromise Offers and Negotiations) |
| 602 | Fed. R. Evid. 602 (Lack of Personal Knowledge; Calls for Speculation) |
| 611(b) | Fed. R. Evid. 611(b) (Outside the scope of direct examination) |
| 611(c) | Fed. R. Evid. 611(c) (Leading) |
| 701 | Fed. R. Evid. 701 (Improper opinion by lay witness) |
| 702 | Fed. R. Evid. 702 (Improper opinion by expert) |
| 901 | Fed. R. Evid. 901 (Authenticity) |

**3G LICENSING S.A. and ORANGE S.A. v. HTC CORPORATION**
**Case No. 17-cv-83-GBW DED**

**DEFENDANT'S DEPOSITION DESIGNATIONS**

**CODES TO DEFENDANTS' OBJECTIONS TO**
**PLAINTIFFS' COUNTER DESIGNATIONS**

- R = irrelevant (Rules 401-02)
- 403 = prejudicial, confusing, and/or waste of time (Rule 403)
- F = lack of foundation
- LT = improper lay opinion testimony (Rule 701)
- H = hearsay (Rules 802, 805)
- A = unauthenticated (Rule 901)
- V = vague
- BE = best evidence rule (Rule 1002)
- D = duplicative
- I = incomplete designation
- CC = relates to claim construction already decided by the Court
- LC = legal conclusion
- M = mischaracterization
- NC = Not a Counter-Designation
- Not Q/A = Not question or answer, 401, 402, no designated questions from counsel
- NR = Not Responsive
- PK = lack of personal knowledge (Rule 602)
- L = Leading
- Foreign language = requires translation, improper translation, or multiple translations
- Outside the scope = outside the scope of Rule 30(b)(6) topic

**3G LICENSING S.A. and ORANGE S.A. v. HTC CORPORATION**
**Case No. 17-cv-83-GBW DED**

**DEFENDANT'S DEPOSITION DESIGNATIONS**

| HTC's Designations | 3G's Objections | 3G's Counter-Designations | HTC's Objections | HTC's Counter-Counter Designations | 3G's Objections |
|---|---|---|---|---|---|
| **Witness: Pierpaolo Carrubba** | | | | | |
| **Date of Deposition: July 25, 2019** | | | | | |
| 7: 3 - 22 | | | | | |
| 9: 8 - 10: 7 | | | | | |
| 10: 14 – 11: 24 | | | | | |
| 12: 10 – 13: 23 | V, C, IO | | | | |
| 14: 6 – 13 | IO, AA | | | | |
| 14: 17 – 19 | | | | | |
| 15: 22 – 16: 4 | | | | | |
| 17: 4 – 12 | | | | | |
| 18: 19 – 21 | | | | | |
| 19: 7 – 15 | | | | | |
| 21: 5 – 18 | | | | | |
| 21: 23 – 22: 10 | INC | 22:11–14 | | | |
| 25: 23 – 26: 5 | 401, 402, 403 | | | | |
| 27: 21 – 28: 11 | 401, 402, 403 | | | | |
| 28: 19 – 24 | 401, 402, 403 | | | | |
| 29: 14 - 21 | 401, 402, 403, INC | 29:2–13 | | | |
| 30: 6 – 14 | 401, 402, 403 | | | | |
| 31: 16 – 32: 5 | 401, 402, 403 | | | | |
| 32: 8 – 11 | 401, 402, 403 | | | | |
| 33: 6 – 11 | 401, 402, 403 | | | | |
| 34: 16 – 22 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 34: 24 – 35: 14 | INC | 35:15–18 | | | |
| 36: 3 – 9 | | | | | |
| 36: 12 – 20 | | | | | |
| 36: 23 – 37: 5 | V, C | | | | |
| 37: 7 – 24 | | | | | |
| 39: 3 – 15 | | | | | |
| 42: 10 - 12 | | | | | |
| 42: 17 - 21 | 401, 402, 403, INC | 42:15–16, 42:22–23 | | | |
| 49: 11 – 22 | 401, 402, 403, V | | | | |
| 54: 14 – 25 | 401, 402, 403 | | | | |
| 55: 3 – 9 | 401, 402, 403, V, C | | | | |
| 55: 11 – 12 | 401, 402, 403, V, C | | | | |
| 58: 3 – 10 | 401, 402, 403 | | | | |
| 59: 8-10 | 401, 402, 403 | | | | |
| 59: 12 – 16 | 401, 402, 403 | | | | |
| 60: 7 – 10 | | | | | |
| 62: 3 – 6 | | | | | |
| 68: 3 - 15 | | | | | |
| 68: 22 -69: 5 | | | | | |
| 73: 5 – 11 | | | | | |
| 73: 24 – 6 | | | | | |
| 75: 19 – 24 | | 74:7–16 | 74:17-75:2 | | |
| 76: 5 – 19 | | | | | |
| 79: 5 – 11 | 401, 402, 403, V | | | | |
| 82: 1 – 6 | 401, 402, 403, LC | | | | |
| 82: 9 – 12 | 401, 402, 403, LC | | | | |
| 82: 18 - 83: 1 | 401, 402, 403, LC | | | | |
| 84: 20 – 24 | | | | | |
| 86: 9 – 10 | | 85:5–7, 85: 12–24 | 85:25-86:4, 86:6, 86:8 | | |

| 86: 18 - 19 | INC | 86:11–18, 86: 20–25 | 87:1-7 | | |
| --- | --- | --- | --- | --- | --- |
| 89: 8 – 19 | | | | | |
| 91: 14 – 17 | 401, 402, 403 | 91:18–92:6 | | | |
| 102: 20 – 103: 4 | 401, 402, 403 | | | | |
| 103: 14 – 19 | | | | | |
| 110: 22 – 111: 4 | | | | | |
| 113: 2 – 113: 9 | 401, 402, 403 | | | | |
| 113: 19 – 114: 2 | 401, 402, 403 | | | | |
| 123: 20 – 124: 17 | 401, 402, 403 | | | | |
| 125: 13 – 20 | | | | | |

| Witness: Marcello Dini | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: July 26, 2019 | | | | | |
| HTC's Designations | 3G's Objections | 3G's Counter-Designations | HTC's Objections | HTC's Counter-Counter Designations | 3G's Objections |
| 9: 20 – 25 | | 8:18–20 | | | |
| 10: 6 – 10 | | | | | |
| 10: 13 – 16 | | | | | |
| 10: 21 – 24 | | | | | |
| 11: 17 – 12: 13 | | 12:14–21 | | | |
| 13: 10 – 14 | | | | | |
| 13: 22 – 25 | LF | 13:15–21, 14:5–25 | | | |
| 17: 2 – 20 | 401, 402, 403 | 17:12–18:10 | | | |
| 18: 11 – 17 | | | | | |
| 20: 2 – 17 | | | | | |
| 22: 16 – 23: 6 | 401, 402, 403, INC | 22:7–17 | I | 22:3-6 | |
| 24: 5 – 14 | 401, 402, 403, INC | 23:18–25, 24:3–4 | | | |
| 24: 25 – 26: 3 | | | | | |
| 27: 13 – 20 | | 27:10–12 | | | |
| 28: 8 - 18 | 401, 402, 403 | 27:21–22, 27:24–28:7 | | | |
| 29: 8 -18 | 401, 402, 403 | | | | |
| 30: 4 – 7 | 401, 402, 403 | | | | |
| 30: 24 – 31: 18 | 401, 402, 403, V | | | | |
| 32: 13 – 33: 1 | | | | | |
| 33: 9 -35: 17 | 401, 402, 403, IO, C | 33:6–8 | | | |
| 35: 20 | INC | 35:18–19 | | | |
| 36: 23 – 37: 15 | | | | | |
| 37: 19 – 38: 9 | | 38:12–14 | | | |

| 38: 18 – 20 | INC | 38:15–17, 38:22–25 | | | |
|---|---|---|---|---|---|
| 39: 1 – 12 | | | | | |
| 39: 25 – 40: 2 | | 40:3–25 | | | |
| 41: 8 – 10 | V | | | | |
| 41: 13 – 16 | INC | 41:12, 41:18–25 | | | |
| 43: 20 – 44: 4 | | | | | |
| 47: 8 – 16 | C, V | | | | |
| 47: 18 – 48: 20 | C, V | | | | |
| 48: 22 – 49: 9 | | 49:13–14 | | | |
| 50: 19 – 51: 1 | | 51:2–20 | | | |
| 52: 20 – 24 | | | | | |
| 58: 15 – 20 | c | | | | |
| 58: 22 – 59: 14 | | | | | |
| 60: 12 – 17 | | 59:15–21, 59:23–60:10 | | | |
| 61: 14 – 21 | C, V, LC | | | | |
| 62: 22 – 63: 16 | | 63:17–23 | | | |
| 66: 10 – 67: 3 | C, V | | | | |
| 67: 10 – 15 | INC | 67:5–9 | | | |
| 67: 11 - 23 | | | | | |
| 68: 5 – 10 | | | | | |
| 68: 18 – 22 | | | | | |
| 70: 3 – 9 | | 70:10–14, 71:15–21 | | | |
| 86: 12 – 23 | 401, 402, 403 | | | | |
| 90: 22 – 91: 22 | | | | | |

| Witness: Lyse Brillouet | | | | | |
|---|---|---|---|---|---|
| **Date of Deposition: March 20, 2019** | | | | | |
| **HTC's Designations** | **3G's Objections** | **3G's Counter-Designations** | **HTC's Objections** | **HTC's Counter-Counter Designations** | **3G's Objections** |
| 14: 23 – 25 | | | | | |
| 16: 7 – 12 | | | | | |
| 16: 21 – 17: 7 | | 16:18–20 | | | |
| 23: 6 – 15 | | 23:1–5 | | | |
| 25: 4 – 10 | INC | 24:9–25:3 | | | |
| 26: 11 – 14 | | 25:22–25 | | | |
| 28: 16 – 29: 9 | 401, 402, 403 | 27:15–28:15 | | | |
| 35: 9 – 15 | LC | | | | |
| 43: 11 – 16 | | | | | |
| 44: 16 – 45: 6 | 401, 402, 403 | | | | |
| 49: 20 – 21 | INC, SCOPE, LC | 48:8–17, 49:14–19 | | | |
| 50: 4 – 8 | SCOPE, LC | | | | |
| 52: 18 – 20 | SCOPE, LC, V, Contention | | | | |
| 52: 22 – 53: 1 | SCOPE, LC, V, Contention | | | | |
| 53: 3 – 4 | SCOPE, LC, V, Contention | | | | |
| 53: 8 – 13 | SCOPE, LC, V, Contention | | | | |
| 55: 14 – 17 | V | 55:18–23 | | | |
| 60: 9 – 16 | | 60:17–23, 60:25–61:1 | | | |
| 61: 18 – 25 | V | | | | |
| 62: 2 – 5 | V | | | | |
| 62: 7 – 8 | V | | | | |

- 8 -

| | | | | | |
|---|---|---|---|---|---|
| 62: 10 – 13 | V, INC | 62:15–18 | R, 403 | 62:17-18 | |
| 63: 20 – 22 | Not Q/A | | | | |
| 64: 3 – 6 | V | | | | |
| 64: 8 – 9 | | | | | |
| 64: 18 – 21 | | 64:13–14, 64:16 | | | |
| 89: 9 – 17 | | 89:18–25 | | | |
| 95: 2 – 6 | V | | | | |
| 95: 22 – 96: 1 | | | | | |
| 96: 3 – 6 | | | | | |
| 125: 15 – 19 | | | | | |
| 139: 21 – 140: 17 | | | | | |
| 142: 3 – 12 | | 141:24–142:2, 142:13–24 | | | |
| 145: 7 – 10 | V, C, LC | | | | |
| 145: 12 | | | | | |
| 151: 7 – 20 | | | | | |
| 153: 2 – 9 | | 152:24–153:1 | | | |
| 155: 10 – 12 | V, C, LC, SCOPE | | | | |
| 155: 17 – 23 | V, C, LC, SCOPE | 156:5–8, 156:10–14 | R, 403 | | |
| 165: 12 – 18 | | 163:2–9, 163:11–21 | | | |
| 172: 3 – 6 | | | | | |
| 176: 2 – 24 | IO, V, LF | | | | |

| Witness: Sandrine Millet | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: March 20, 2019 | | | | | |
| HTC's Designations | 3G's Objections | 3G's Counter-Designations | HTC's Objections | HTC's Counter-Counter Designations | 3G's Objections |
| 12: 12 – 18 | | 12:9–10, 13:2–8 | I, Not Q/A | 12:9-11 | |
| 13: 22 – 14: 2 | | | | | |
| 14: 6 – 14 | | 14:15–15:14 | | | |
| 17: 19 – 18: 1 | | | | | |
| 19: 9 – 22 | | | | | |
| 20: 22 – 24 | | | | | |
| 33: 24 – 34: 9 | | | | | |
| 56: 1 – 16 | | | | | |
| 57: 7 – 10 | 401, 402, 403 | | | | |
| 63: 23 – 64: 18 | | 64:19–24 | | 73:20-22 | NC |
| 70: 9 – 20 | Not Q/A | | | | |
| 72: 23 – 73: 2 | | | | | |
| 79: 3 – 6 | | | | | |
| 86: 2 – 24 | | | | | |
| 87: 12 – 17 | | 88:8–10 | | | |
| 89: 16 – 20 | | 89:21–24 | | | |
| 90: 8 – 16 | H, LC | | | | |
| 90: 19 – 91: 1 | H, LC | | | | |
| 91: 8 – 14 | H, LC | | | | |
| 92: 10 – 15 | H, LC | | | | |
| 92: 24 – 93: 8 | | 92:16–23 | | | |
| 102: 20-24 | | 102:25–103:3 | | | |
| 108: 10 – 14 | | 108:15–19 | | | |
| 112: 13 – 25 | V, C, MIS | 113:1–14 | I | 110:23-25 | Not Q/A, MIL, I |
| 113: 15 – 18 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 113: 25 – 114: 2 | | 114:4–17 | | 114:18-23 | |
| 115: 8 – 16 | | | | | |
| 116: 10 – 14 | | | | | |
| 117: 5 – 9 | | | | | |
| 117: 16 – 17 | | | | | |
| 124: 9 – 12 | | | | | |
| 124: 19 – 125: 2 | INC | 124:16–18 | | | |
| 127: 8 – 15 | | | | | |
| 127: 23 – 24 | SCOPE | | | | |
| 128: 1 – 2 | SCOPE | | | | |
| 146: 22 – 147: 10 | INC, Not Q/A, C, V, IH | | | | |
| 160: 17 – 19 | | | | | |
| 161: 4 – 7 | | 161:8–9 | | | |
| 161: 10 – 14 | IO, SCOPE | | | | |
| 180: 22 – 24 | SCOPE, V, LC | 180:13–21 | | | |
| 181: 2 | SCOPE, V, LC | | | | |
| 181: 4 – 5 | SCOPE, V, LC | | | | |
| 188: 19 – 20 | SCOPE, V, C | | | | |
| 188: 22 -2 3 | SCOPE, V, C | | | | |
| 188: 25 – 189: 8 | SCOPE, V, C | | | | |
| 189: 11 | SCOPE, V, C | | | | |
| 208: 4 – 10 | | | | | |
| 208: 14 – 25 | | | | | |
| 211: 18 – 23 | | | | | |
| 216: 24 – 217: 9 | | 217:2–23 | | | |
| 219: 2 – 11 | | 219:12–220:10 | NR, NT | | |
| 220: 11 – 221 12 | C | | | | |
| 234: 20 – 235: 4 | | | | | |
| 234: 11 – 18 | | 235:19–237:22 | | | |

| 237: 23 – 238: 5 | | | | | |
|---|---|---|---|---|---|
| 245: 9 – 11 | SCOPE, Not Q/A, INC | 244:11–16, 245:13–14 | | 244:21-245:8 | SCOPE |
| 245: 16 – 19 248: 20 – 249: 7 | | 249:8–13 | | | |
| 250: 11 – 14 | | 250:15–252:4 | | | |
| 252: 5 – 9 | | | | | |
| 252: 15 – 18 | | | | | |
| 254: 5 – 16 | C, V | 269:13–270:15, 270:20 ("I)–271:5, 27:7–12 | I, Not Q/A | 275:14-19 | NC, 401/402, 403 |

| Witness: Olivier Thirard | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: May 21, 2019 | | | | | |
| HTC's Designations | 3G's Objections | 3G's Counter-Designations | HTC's Objections | HTC's Counter-Counter Designations | 3G's Objections |
| 11: 13 – 15 | | 11:11-12 | | | |
| 12: 20 – 13: 18 | | 13:19-21 | | | |
| 14: 3 – 9 | | 14:10-13 | | | |
| 14: 20 – 25 | | 15:1-4 | | | |
| 15: 14 – 23 | | | | | |
| 16: 1 – 6 | | | | | |
| 20: 1 – 5 | | 20:18-22 | | | |
| 21: 13 – 17 | INC | 21:4-9 | | | |
| 26: 3 – 13 | | | | | |
| 27: 21 – 28: 2 | | 27:2-3<br>27:5-6<br>27:8-10 | | | |
| 28 10 – 26 | | 28:6-9 | | | |
| 28: 18 – 24 | | | | | |
| 30 : 11 – 13 | 401, 402, 403, MIL, INC | 30:14-16<br>30:19 | | | |
| 30: 21 – 24 | 401, 402, 403, MIL | | | | |
| 31: 14 – 18 | 401, 402, 403, MIL | | | | |
| 31: 21 – 23 | 401, 402, 403, MIL | | | | |
| 31: 25 – 32: 4 | 401, 402, 403, MIL | 32:14-17<br>32:19 | | | |

| | | | | | |
|---|---|---|---|---|---|
| 40: 2 – 6 | 401, 402, 403, MIL | | | | |
| 51: 19 – 22 | | 51:23-25<br>52:2-5<br>52:7-12 | | | |
| 53: 25 – 54: 3 | | | | | |
| 54: 6 – 11 | | | | | |
| 66: 6 – 18 | INC | 64:4-7 | | | |
| 77: 2 – 11 | <br><br>INC | 68:5-7<br>76:25-77:1 | | | |
| 81: 6 – 14 | INC | 80:7-10 | | | |
| 89: 12 – 90: 1 | <br>INC | 88:13-19<br>88:21-23 | | | |
| 90: 5 | | | | | |
| 90: 7 – 12 | | 90:25-91:2<br>91:5<br>91:7-8<br>91:11<br>91:22-92:1<br>92:6-14<br>92:22-93:17 | | 91:13-15, 91:17, 91:19-21 | |
| 114: 14 – 15 | 401, 402, 403, MIL | | | | |
| 114: 17 – 20 | 401, 402, 403, MIL | | | | |
| 114: 22 – 115: 1 | 401, 402, 403, MIL | | | | |
| 115: 3 – 7 | 401, 402, 403, MIL | | | | |
| 115: 9 | 401, 402, 403, MIL | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 116: 22 – 117: 5 | 401, 402, 403, MIL | | | | |
| 132: 3- 6 | 401, 402, 403, MIL | 129:5-17 130:6-8 | R, 403 | | |
| 133: 6 – 8 | | 133:13-16 133:19-134:1 | | | |
| 135: 11 – 14 | | | | | |
| 139: 21 – 140: 12 | 401, 402, 403, MIL, INC | 138:17-20 | | | |
| 143: 5 – 15 | | | | | |
| 145: 11 – 25 | 401, 402, 403, MIL | | | | |
| 147: 10 – 12 | 401, 402, 403, MIL, INC, FL | 146:7-10 147:4-5 147:7 | | | |
| 147: 14 – 148: 3 | 401, 402, 403, MIL, INC, FL | | | | |
| 151: 5 – 15 | 401, 402, 403, MIL, INC, FL | | | | |
| 152: 9 – 15 | 401, 402, 403, MIL, INC, FL | | | | |
| 152: 20 – 153: 2 | 401, 402, 403, MIL, INC, FL | | | | |
| 154: 7 – 9 | 401, 402, 403, MIL | | | | |
| 154: 13 – 155:1 | 401, 402, 403, MIL | | | | |
| 156: 23 – 157: 3 | 401, 402, 403, MIL | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 167: 11 – 12 | 401, 402, 403, MIL | | | | |
| 167: 15 – 17 | 401, 402, 403, MIL | | | | |
| 167: 19 – 23 | 401, 402, 403, MIL | | | | |
| 168: 14 – 17 | | | | | |
| 168: 20 | | | | | |
| 169: 19-21 | 401, 402, 403, MIL | | | | |
| 169: 24 – 170: 4 | 401, 402, 403, MIL | | | | |
| 170: 11 – 13 | 401, 402, 403, MIL | | | | |
| 170: 24 – 25 | 401, 402, 403, MIL | | | | |
| 171: 3 – 4 | 401, 402, 403, MIL | | | | |
| 171: 9 – 12 | 401, 402, 403, MIL | | | | |
| 171: 16 – 23 | 401, 402, 403, MIL | | | | |
| 179: 11 – 13 | 401, 402, 403, MIL | | | | |
| 179: 16 | 401, 402, 403, MIL | | | | |
| 185: 13 – 23 | 401, 402, 403, MIL, SCOPE | 185:25-186:2 186:15-17 | Not Q/A | | |
| 200: 21 – 25 | 401, 402, 403, MIL, INC | 200:1-4 | Not Q/A | | |

| | | | | | |
|---|---|---|---|---|---|
| 201: 3 -4 | 401, 402, 403, MIL | | | | |
| 203: 11 – 16 | | | | | |
| 203: 18- 20 | | | | | |
| 219: 5 – 8 | 401, 402, 403, MIL, INC | 213:14-15 | | | |
| 224: 25 – 225: 19 | 401, 402, 403, MIL | | | | |
| 227: 21 – 23 | 401, 402, 403, MIL | | | | |
| 227: 25 – 228: 5 | 401, 402, 403, MIL | | | | |
| 228: 10 – 13 | 401, 402, 403, MIL | | | | |
| 228: 16 – 25 | 401, 402, 403, MIL | | | | |
| 229: 3 – 5 | 401, 402, 403, MIL | | | | |

| Witness: Douglas Taylor | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: June 24, 2019 | | | | | |
| HTC's Designations | 3G's Objections | 3G's Counter-Designations | HTC's Objections | HTC's Counter-Counter Designations | 3G's Objections |
| 9:24 – 10:01 | | | | | |
| 10:14 – 11:17 | | 11:18-21 | R, 403 | | |
| 12:16-22 | | 12:23-25 | | | |
| 13:13 – 14:05 | | 14:6-8 | | | |
| 14:09-24 | | | I | | |
| 15:06 – 17:19 | | | | | |
| 18:08-24 | | | | | |
| 19:03-23 | | | | | |
| 20:03-12 | | | | | |
| 24:02-03 | | | | | |
| 24:05 – 25:18 | 24:19-25:18 – 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 25:20 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 26:03-10 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 26:16 – 27:25 | 26:16-27:22 - 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 28:03 – 29:06 | | 30:4-6 | | | |
| 30:18-20 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 31:02-21 | | | | | |
| 32:17 – 33:08 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 33:16-17 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 33:22-23 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 34:05-09 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 34:11-12 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 34:14-23 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 34:25 – 35:02 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 35:08-09 | 401, 402, 403, 701, BE, LC, 611(c), INC | 35:10-11 | | | |
| 35:15 – 36:23 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 37:06-10 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 37:13 – 38:02 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 38:04-06 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 38:11-20 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 38:22 – 39:04 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 39:07-15 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 39:18 – 40:06 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 40:08 | 35:8-41:22 - R, 403, LT, BE, LC, L, I (35:10-11) | | | | |
| 40:10-23 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 40:25 – 41:22 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 42:22 – 43:01 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 43:03-09 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 43:11-16 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 43:18 – 44:14 | 401, 402, 403, 701, BE, LC, 611(c), INC | 44:15-16 | | | |
| 44:20 – 45:13 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 45:17-21 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 45:23 – 46:04 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 46:06-09 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 46:23 – 47:10 | | | | | |
| 47:14 – 48:08 | | | | | |
| 48:10-20 | | | | | |
| 48:22-25 | | | | | |
| 49:02-10 | | | | | |
| 49:12-13 | | 49:14 | | | |

| | | | | | |
|---|---|---|---|---|---|
| 49:15-17 | | 49:18 | | | |
| 49:19-22 | | | | | |
| 49:24 – 51:04 | | | | | |
| 51:06-07 | | 51:7-11 | | | |
| 51:12-16 | | | | | |
| 51:18 – 52:07 | | | | | |
| 52:10-25 | | | | | |
| 53:02-08 | | | | | |
| 53:13-21 | 401, 402, 403, 701, BE, LC, 611(c), INC | 53:10-12 | R, 403, NT | | |
| 53:23 – 55:21 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 56:01-18 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 56:20-21 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 56:23 – 57:13 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 57:16 – 58:06 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 58:08-11 | 401, 402, 403, 701, BE, LC, 611(c) | 59:22-24 60:4-15 61:13-23 62:17-19 63:10-15 | R, 403, NT, C, NC | | |

| | | | | | |
|---|---|---|---|---|---|
| | | 64:1-4<br>64:14-65:9<br>66:13-67:3<br>67:5-12<br>67:15-21<br>67:23-68:1<br>68:8-11<br>68:13-17<br>69:13-70:3<br>70:5-16 | | | |
| 72:03 – 73:03 | 401, 402, 403, 701, BE, LC | 71:9-72:2 | | | |
| 73:05 – 74:06 | 401, 402, 403, 701, BE, LC | | | | |
| 74:08-15 | 401, 402, 403, 701, BE, LC | 74:16-18 | R, 403, NC | 74:19-21 | |

| Witness: McKenzie, Ken | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: June 20, 2019 | | | | | |
| HTC's Designations | 3G's Objections | 3G's Counter-Designations | HTC's Objections | HTC's Counter-Counter Designations | 3G's Objections |
| 20:8-16 | INC | 8:14-9:9<br>9:19-20<br>11:3-11<br>11:17-25<br>20:16-21 | | | |
| 22:4-11 | INC | 22:11-25 | | | |
| 23:2-10 | | 33:16-17<br>33:22-34:3<br>34:11<br>35:6-10<br>35:16-20<br>35:25-36:6 | | | |
| 38:8-12 | | 37:6-20<br>38:13-23<br>39:7 (How)-15<br>39:23-40:8 | | | |
| 40:9-18 | | 42:13-17<br>44:8-10<br>48:5-10<br>49:2-12<br>50:13-17<br>50:25-51:1 | NC | | |
| 52:4-22 | | 53:5-20<br>53:23-54:17<br>59:5-8<br>59:13-16<br>60:1-63:4 | | | |

| | | | | | |
|---|---|---|---|---|---|
| 62:10-13 | | 62:14-63:22<br>63:25 (So)-64:4 | | | |
| 65:1-6 | | 65:6-8<br>65:14-16<br>65:21-66:9<br>66:15-24<br>67:18 (If)-68:13<br>69:10-16<br>69:21-72:1<br>72:7-11<br>72:22-73:15<br>74:13-16<br>74:21-75:4<br>75:23-79:2<br>79:8-20<br>79:25<br>80:15-21<br>81:2-16<br>84:9-85:3<br>85:7-10<br>85:15-86:13<br>87:4-14<br>88:15-89:7<br>89:25 (Mr.)-90:9<br>90:14 (So) | | | |
| | INC | 90:19-21 | R, 403, NC | | |
| 93:5-17 | | 90:25-93:4 | | | |
| 94:8 – 97:7 | | 94:2-7<br>103:14-19 | | 101:13-16 | INC (101:13–102:4) |

| Witness: Cheng, Yi | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: June 18, 2019 | | | | | |
| HTC's Designations | 3G's Objections | 3G's Counter-Designations | HTC's Objections | HTC's Counter-Counter Designations | 3G's Objections |
| 10:03-06 | INC | 9:17-20<br>10:6-20 | | | |
| 10:21 – 11:02 | | | | | |
| 11:13-21 | | 11:9-12 | | | |
| 12:08 – 13:05 | | | | | |
| 13:09-15 | | 13:18-22 | | | |
| 16:15 – 17:06 | | 16:5-7 | | | |
| 24:08-13 | | 20:19-21:3<br>24:18-21<br>25:1-4<br>25:7-26:6<br>27:19-28:8<br>28:14-16<br>29:11-25<br>30:2-4<br>30:7-15<br>30:17-20<br>30:23-31:11<br>32:9-18<br>33:15-22<br>34:12-35:8 | | 35:9-11 | |
| 36:20 – 37:02 | | 37:9-17<br>38:1-6<br>38:21-39:11<br>39:24-40:1 | | 37:18-25, 39:14-17 | |

| 40:16 – 41:12 | 401, 402, 403, 701, BE, LC, 611(c) | 40:6-15 41:13-42:3 46:16-24 47:14-24 | NC | | |
|---------------|------------------------------------|--------------------------------------|----|--|--|
| 49:24 – 50:12 | | 51:3-7 | | | |

| Witness: Drapkin, Vitaly | | | | | |
|---|---|---|---|---|---|
| Date of Deposition: June 18, 2019 | | | | | |
| HTC's Designations | 3G's Objections | 3G's Counter-Designations | HTC's Objections | HTC's Counter-Counter Designations | 3G's Objections |
| 10:08-10 | | 9:25-10:2 | | | |
| 12:05-07 | | | | | |
| 12:22-24 | | | | | |
| 13:02-23 | | | | | |
| 14:01-21 | | 14:22-24 | | | |
| 14:25 – 15:14 | | | | | |
| 25:02-05 | | 22:21-23:15 24:7-25 25:18-24 26:4-12 26:25-27:5 | NC | | |
| 28:13 – 29:23 | | 28:2-5 28:9-10 | | | |
| 31:12-22 | | 30:4-6 35:9-21 39:16-40:1 40:13-16 | | | |
| 73:05-10 | | 64:3-8 | NC | | |
| 73:19 – 74:17 | 401, 402, 403, LF | | | | |
| 74:20 – 75:09 | 401, 402, 403, LF | | | | |
| 75:11 – 76:16 | 401, 402, 403, LF | 76:21-24 77:4-5 | | 76:17-20 | |

| Witness: Ketchum, John | | | | | |
| --- | --- | --- | --- | --- | --- |
| Date of Deposition: August 8, 2019 | | | | | |
| HTC's Designations | 3G's Objections | 3G's Counter-Designations | HTC's Objections | HTC's Counter-Counter Designations | 3G's Objections |
| 7:1-3 | | 9:14-10:9 10:23-11:2 | R, 403 | | |
| 11:16-19 | | | | | |
| 13:1-24 | | | | | |
| 14:20-25 | | | | | |
| 19:3-20:19 | | | | | |
| 24:8-14 | 401, 402, 403, 701 | | | | |
| 25:1-2 | 401, 402, 403, 701 | | | | |
| 25:8-13 | 401, 402, 403, 701 | | | | |
| 25:16-17 | 401, 402, 403, 701 | | | | |
| 25:19-20 | 401, 402, 403, 701 | | | | |
| 26:5-8 | 401, 402, 403, 701 | | | | |
| 26:10-15 | 401, 402, 403, 701 | | | | |
| 27:20-22 | 401, 402, 403, 701, INC | 27:12-13 27:15-19 | | | |
| 27:25-28:2 | 401, 402, 403, 701 | | | | |
| 28:6-8 | | | | | |
| 28:10-17 | | | | | |
| 28:19-30:7 | 30:5-7 - 401, 402, 403, 701 | | | | |
| 30:9 | | | | | |
| 30:11-22 | 30:21-31:17 - 401, 402, 403, 701 | | | | |
| 30:25-31:17 | 30:21-31:17 - 401, 402, 403, 701 | | | | |

| 31:21-23 | 31:21-32:7 - 401, 402, 403, 701, 611(c) | | | | |
| 32:3-21 | 31:21-32:7 - 401, 402, 403, 701, 611(c)<br><br>32:8-15 - 401, 402, 403, 701<br><br>32:16-21 - 401, 402, 403, 701, 611(c) | | | | |
| 32:23-33:9 | 401, 402, 403, 701, 611(c) | | | | |
| 33:11-33:25 | 401, 402, 403, 701, 611(c) | | | | |
| 34:2-10 | 401, 402, 403, 701, 611(c) | | | | |
| 34:12-14 | 401, 402, 403, 701, 611(c) | | | | |
| 34:16-22 | 401, 402, 403, 701, 611(c) | | | | |
| 35:1-3 | 401, 402, 403, 701, 611(c) | | | | |
| 35:5-18 | 401, 402, 403, 701, 611(c) | | | | |
| 35:20-36:3 | 401, 402, 403, 701, 611(c) | | | | |

| | | | | |
|---|---|---|---|---|
| 36:5-6 | 401, 402, 403, 701, 611(c) | | | |
| 36:8-13 | 401, 402, 403, 701, 611(c) | | | |
| 36:15-37:2 | 401, 402, 403, 701, 611(c) | | | |
| 37:4-14 | 401, 402, 403, 701, 611(c) | | | |
| 38:24-39:3 | 401, 402, 403, 701, 611(c) | | | |
| 39:5-11 | 401, 402, 403, 701, 611(c) | | | |
| 39:13-15 | 401, 402, 403, 701, 611(c) | | | |
| 39:17-20 | 401, 402, 403, 701, 611(c) | | | |
| 39:22-40:2 | 401, 402, 403, 701, 611(c) | | | |
| 40:4-6 | 401, 402, 403, 701, 611(c) | | | |
| 40:8-10 | 401, 402, 403, 701, 611(c) | | | |
| 40:12-15 | 401, 402, 403, 701, 611(c), INC | 40:17-18 | | |
| 40:19-22 | 401, 402, 403, 701, 611(c) | | | |
| 41:1-2 | 401, 402, 403, 701, 611(c) | | | |
| 41:4-14 | 401, 402, 403, 701, 611(c) | | | |

| 41:16-20 | 401, 402, 403, 701, 611(c) | | | | |
|----------|----------------------------|--|--|--|--|
| 41:22-42:15 | 401, 402, 403, 701, 611(c) | | | | |
| 42:20-25 | 42:20 - 401, 402, 403, 701, 611(c) | | | | |
| 43:11-19 | | | | | |
| 45:2-23 | | | | | |
| 47:9-48:22 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 49:8-15 | 49:14-15 – 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 49:17-24 | 49:17 - 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 50:4-5 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 50:7-20 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 50:22-51:22 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 51:25-52:4 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 52:6-53:11 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 53:16-54:8 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 54:10-55:5 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 55:7-21 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 55:23-56:21 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 56:25-57:16 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 58:1 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 58:3-16 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 58:22-23 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 58:25-60:3 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |

| 60:5-10 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
|---|---|---|---|---|---|
| 60:12-18 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 60:20-61:2 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 61:10-23 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 61:25-62:10 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 62:19-63:3 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 63:5-7 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 63:10-25 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 64:7-15 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |
| 65:3-5 | 401, 402, 403, 701, BE, LC, 611(c) | | | | |

| | | | | |
|---|---|---|---|---|
| 65:11-14 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 65:16 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 66:4-17 | 66:15-17 - 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 66:23-25 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 67:2-4 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 67:6-13 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 67:15-19 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 67:21-25 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 68:2-4 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 68:6-8 | 401, 402, 403, 701, BE, LC, 611(c) | | | |

| | | | | |
|---|---|---|---|---|
| 68:10-14 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 68:16-18 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 68:20-24 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 69:1-5 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 69:7-12 | 401, 402, 403, 701, BE, LC, 611(c) | | | |
| 69:14 | 401, 402, 403, 701, BE, LC, 611(c) | 70:15-22 71:10-14 72:3-9 72:22-73:5 75:12-25 76:11-14 76:16 79:2-12 79:21-25 80:2-3 82:7-9 82:11 82:15-18 82:20-83:1 84:2-5 85:6 (do)-11 85:14-23 | R, 403, NC, V, F | |

| | | | | | |
|---|---|---|---|---|---|
| | | 85:25<br>87:13-17<br>87:19-88:5<br>88:15-23<br>88:25-89:3<br>89:23-25<br>90:2-91:1<br>91:3-6<br>91:8-14<br>91:16-19<br>91:21-24<br>92:1-5<br>92:8-10<br>92:21-24<br>93:3-14<br>93:19-21<br>93:24-94:5<br>94:7-9<br>94:14-20<br>94:22-95:4<br>95:6-14<br>95:16<br>95:19-22<br>95:24-96:2<br>96:3 (I)-11<br>96:15-21<br>97:9 (So)-11<br>97:17-20<br>97:23-98:1<br>98:3-11<br>98:14-17<br>99:25-101:20<br>101:22-23 | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | 101:25-102:5<br>102:7-10<br>102:12-22<br>104:18-105:3<br>105:5-6<br>105:19-22<br>105:24-106:7<br>106:9-15<br>106:17-107:12<br>107:14-19<br>109:4-8<br>109:11-24<br>110:2-12<br>111:15 (your)-21<br>112:1-9<br>112:11-13<br>112:15-113:5<br>113:7-11<br>113:13-16<br>113:18<br>117:5-9<br>117:11 | | | |

# EXHIBIT 10

# EXHIBIT 11

# EXHIBIT 12

# EXHIBIT 13a
# Plaintiffs' MIL No. 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| 3G LICENSING, S.A.,<br>KONINKLIJKE KPN N.V., and<br>ORANGE, S.A.,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>HTC Corporation,<br><br>　　　　　　　　Defendant. | C.A. No. 17-cv-83-GBW<br><br>**JURY TRIAL DEMANDED**<br><br>**UNDER SEAL** |

**EXHIBIT 13(A): PLAINTIFFS' MOTION IN LIMINE TO BAR HTC'S
UNTIMELY MARKING THEORY AND EVIDENCE**

Nearly three years ago, this Court found that HTC failed to meet its initial burden of production under *Arctic Cat* to identify during discovery any "specific products" that HTC believed were unmarked patented articles under 35 U.S.C. § 287. Ex. 1 (2020 Memorandum Op.) (D.I. 486) at 17–18. And the Court unequivocally stated what the consequence of that failure was, holding: "***The Court is not going to permit this untimely-produced evidence to be admitted . . . .***" *Id*. at 17.[1] And while no clarification as to the effect of its decision was needed, the Court provided one anyway. As it explained in denying a reargument motion filed by an HTC co-defendant, defendants' untimely disclosures resulted in the "exclusion of the evidence" and thus ***the "elimination of its marking affirmative defense***." Ex. 2 (2021 Memorandum Order) at 4 & n.2.

Incredibly, HTC is ignoring these rulings and has confirmed that it intends to argue at trial that Plaintiffs' damages are limited under § 287 because of the very allegedly unmarked Apple products ***that the Court said it would not permit HTC to introduce evidence about at trial***. In short, HTC is again demonstrating exactly what this Court chastised HTC for in the lead up to its June 2023 trial with KPN in this matter: HTC's "willingness to flout the discovery rules." Ex. 3 (May 18, 2023 Order) (D.I. 658) at 3–4 (recognizing HTC previously had been "singled out by the Court for belated disclosures" and excluding other evidence that HTC had failed to produce during fact discovery and yet was seeking to rely on). The Court should not permit HTC to do so.

Consistent with its prior orders, the Court should exclude all of HTC's untimely Apple related evidence and bar HTC from arguing that Plaintiffs' damages are limited under § 287.

A.  **The Court Already Excluded HTC's Untimely Apple Evidence and Held That HTC Thus Had Not and Could Not Meet Its Burden of Production Under *Arctic Cat* Such That "Its Marking Affirmative Defense" Had Been "Eliminat[ed]"**

Under *Arctic Cat*, HTC bore an initial burden of production to identify "specific unmarked

---

[1] All emphasis in this brief is added.

1

products" that it "believe[d] required marking." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). To satisfy its burden, HTC was required to come forward ***during fact discovery*** "with ***some amount of admissible evidence***" showing the patentee or a licensee "[1] sold specific unmarked products which [2] the alleged infringer believes practice the patent." *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 2019 WL 4390573, at *3 (C.D. Cal. June 26, 2019) (quoting *Arctic Cat*, 876 F.3d at 1368) (emphasis from the Court).

It is undisputed that HTC failed to meet its burden of production. As this Court observed, HTC "do[es] not challenge Plaintiffs' contention that Defendants 'did not identify ***any*** specific products' until ***after*** fact discovery closed." Ex. 1 (2020 Memorandum Op.) at 17 (emphasis from the Court); *see also* Ex. 4 (Hearing Tr.) at 79:5–7; 99:7–14 (admitting it did not identify specific Apple products during fact discovery). Indeed, HTC admitted that—despite repeat requests from Plaintiffs—HTC did not identify any "specific product" until it served its rebuttal expert reports months *after* the close of fact discovery in October 2019. *See* Ex. 5 (Jeffay Report) at ¶¶ 502–552.

Not only did HTC have no justification for its tardy disclosures, but its delay prejudiced Plaintiffs because, as Plaintiffs explained to the Court, HTC had deprived Plaintiffs of any opportunity to conduct third-party discovery on Apple regarding the operation of the products that HTC later pointed to as patented articles. *See* Ex. 4 (Hearing Tr.) at 89:1–90:15. HTC's unjustified delays thus crippled Plaintiffs' ability to respond to HTC's Apple marking theory.[2]

Recognizing this, the Court did not mince its words as to the result. This Court held that it

---

[2] Indeed, HTC's tactics are even worse because, in the three years since the Court's 2020 Order, HTC never once told Plaintiffs that HTC intended to challenge (or ignore) the Court's ruling despite Plaintiffs stating on the record that, if the Court permitted HTC to maintain its § 287 defense, Plaintiffs "absolutely would request an opportunity to conduct discovery on the Apple iPhone products." Ex. 4 (Hearing Tr.) at 91:21–92:10. "The rules do not countenance [such] trial by ambush." *Freeny v. Fossil Group, Inc.*, No., 2019 WL 8688587, at *3 (E.D. Tex. July 24, 2019).

was "***not going to permit this untimely-produced evidence to be admitted***" and that HTC therefore had not (and could not) meet its burden of production. Ex. 1 (2020 Memorandum Op.) at 17. As the Court explained in a subsequent 2021 order, its 2020 decision resulted in ***the "elimination of its marking affirmative defense***." Ex. 2 (2021 Memorandum Order) at 4 & n.2.

**B. The Court Should Enforce Its Prior Order and Exclude HTC's Untimely Evidence and Bar HTC From Arguing Its § 287 Defense at Trial.**

Despite the Court's express orders, HTC now plans to plow ahead and do just what the Court said it could not: introduce its late-disclosed Apple evidence and argue that Plaintiffs' damages are limited under § 287. In particular, based on its pretrial disclosures, HTC intends to present testimony from its expert regarding how certain models of the Apple iPhone are allegedly unmarked patented articles. *See* Ex. 5 (Jeffay Report) at ¶¶ 502–552. HTC also has listed 55 Apple-related documents cited by its expert that HTC never produced during fact discovery.[3]

This Court already has excluded this ***exact*** "untimely-produced evidence." Ex. 1 (2020 Memorandum Op.) at 17 (referencing Dr. Jeffay's report (Ex. 106) among the HTC "untimely-produced evidence" that will not be admitted). And as this Court already recognized, HTC does not get to pick and choose which of this Court's orders it follows and which it does not. The Court's ruling is the law of the case and, as the Court subsequently confirmed, resulted in ***the "elimination of its marking affirmative defense***." Ex. 2 (2021 Memorandum Order) at 4 & n.2. Accordingly, the Court should enforce its prior order and exclude HTC's untimely marking evidence and bar HTC from asserting its untimely marking defense at trial. *Accord Droplets, Inc. v. Yahoo! Inc.*, 2022 WL 2670188, at *2 (N.D. Cal. Feb. 28, 2022) (barring defendant from presenting evidence or argument about failure to mark where defendant did not meet burden of production).

---

[3] For example, HTC intends to show printouts purportedly showing information about Apple's iPhones. *E.g.*, Ex. 6 (DTX 232). Plaintiffs have objected to these exhibits as "NP" = Not Produced.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A., <br> Plaintiffs, <br><br> v. <br><br> HTC CORPORATION, <br><br> Defendant. | C.A. No. 17-cv-83-GBW <br><br> **JURY TRIAL DEMANDED** <br><br> **FILED UNDER SEAL** |

## <u>DECLARATION OF HUNTER VANCE</u>

I, Hunter Vance, hereby declare and state as follows:

1.      I am over the age of eighteen and, if called as a witness, could competently testify to the matters set forth herein.

2.      I am an attorney at Susman Godfrey, LLP, and counsel to Plaintiffs 3G Licensing, S.A., Koninklijke KPN N.V., and Orange S.A. I am a member in good standing of the State Bar of Texas.

3.      I make this declaration in support of Plaintiffs' Motion in Limine to Bar HTC's Untimely Marking Theory and Evidence.

4.      Attached as **Exhibit 1** is a true and correct copy of excerpts of the Court's September 29, 2020 Memorandum Opinion.

5.      Attached as **Exhibit 2** is a true and correct copy of the Court's February 16, 2021 Memorandum Order.

6.      Attached as **Exhibit 3** is a true and correct copy of excerpts of the Court's May 18, 2023 Order.

7.      Attached as **Exhibit 4** is a true and correct copy of excerpts of the transcript from an April 17, 2020 hearing before this Court.

8.      Attached as **Exhibit 5** is a true and correct copy of excerpts of the October 24, 2019 Expert Report of Kevin Jeffay.

9.      Attached as **Exhibit 6** is a true and correct copy of the document HTC has identified on its exhibit list as DTX232.

10.     The above cited exhibits have been highlighted or otherwise marked for emphasis at my direction.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED in Houston, Texas this 11th day of September, 2023.

                                        */s/ Hunter Vance*
                                        Hunter Vance

# EXHIBIT 1

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| 3G LICENSING, S.A., and<br>ORANGE S.A., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 17-82-LPS |
| | : | |
| BLACKBERRY LIMITED and<br>BLACKBERRY CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM ORDER**

At Wilmington this **16th** day of **February, 2021**:

WHEREAS, on September 29, 2020, the Court issued a Memorandum Opinion (D.I. 323) and Order (D.I. 324) granting in part and denying in part Plaintiffs 3G Licensing, S.A. ("3G") and Orange S.A.'s ("Orange") (collectively, "Plaintiffs") motion for partial summary judgment (D.I. 267) and granting in part and denying in part Defendants BlackBerry Limited and BlackBerry Corporation's (collectively, "BlackBerry") motion for summary judgment (D.I. 272);

WHEREAS, in particular, the Court denied BlackBerry's motion for summary judgment of no pre-suit damages because (among other reasons) BlackBerry's purported evidence that several Apple products were unmarked was not produced in a timely manner (D.I. 323 at 17-18);

WHEREAS, on October 13, 2020, BlackBerry filed a motion for reargument regarding this portion of the summary judgment order and the Court's related exclusion of evidence (*see* D.I. 329);

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, having considered the

1

relevant filings and related materials (*see, e.g.*, D.I. 329, 333), BlackBerry's motion (D.I. 329) is **DENIED**.

1.     "Pursuant to Local Rule 7.1.5, a motion for reconsideration or reargument should be granted only 'sparingly.'" *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 2015 WL 1883960, at *1 (D. Del. Apr. 24, 2015). The decision to grant such a motion lies squarely within the discretion of the district court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990). These types of motions are typically granted only if the Court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. *See Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Brambles*, 735 F. Supp. at 1241. "A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made." *Smith v. Meyers*, 2009 WL 5195928, at *1 (D. Del. Dec. 30, 2009); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993). It is also not an opportunity to "accomplish repetition of arguments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991).

2.     A party may seek reconsideration only if it can show at least one of the following: (i) there has been an intervening change in controlling law; (ii) the availability of new evidence not available when the court made its decision; or (iii) there is a need to correct a clear error of law or fact to prevent manifest injustice. *See Max's Seafood Café by LouAnn, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). In no instance should reconsideration be granted if it would not result in amendment of an order. *See Schering Corp.*, 25 F. Supp. 2d at 295.

3.     BlackBerry contends that the Court committed a clear error that needs to be

2

corrected in order to prevent manifest injustice. (*See* D.I. 329 at 3) Specifically, BlackBerry contends that "the Court misapprehended the evidentiary record with respect to BlackBerry" by failing to recognize that BlackBerry's discovery disclosures with respect to unmarked products were materially different from that of other Defendants[1] – and, purportedly, were sufficient to meet its obligations under *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). (*Id.* at 1-5) The Court disagrees.

4. BlackBerry's May 24, 2019 response to Plaintiffs' marking interrogatory did not identify "specific unmarked products which the alleged infringer believes practice the patent," as *Arctic Cat* requires. 876 F.3d at 1368. Instead, that response merely "identified the Apple License (KPN00103266), which licenses Apple products compliant with WCDMA standards and the deposition of Orange's 30(b)(6) designee regarding the Apple License." (D.I. 329 at 4; *see also* Ex. BQ at 44) Moreover, the May 2019 response was provided on the last day of fact discovery, leaving Plaintiffs with no meaningful opportunity to conduct responsive discovery to attempt to meet their obligation under *Arctic Cat*'s burden shifting framework. Contrary to BlackBerry's suggestion (*see* D.I. 329 at 4), it was not Plaintiffs' burden (at that already late date) to press BlackBerry for more specificity or intuit from a deposition transcript which specific products BlackBerry thought it was disclosing. BlackBerry, as the alleged infringer, bears the initial burden of production, *see Arctic Cat*, 876 F.3d at 1368, and it failed to timely meet that burden. (*See* D.I. 333 at 5) ("[BlackBerry] now has to argue that Plaintiffs should have *inferred* what those specific products were from BlackBerry's reference to the Apple license and Mr. Thirard's testimony. That is not the standard.")

---

[1] "Defendants" are, in addition to BlackBerry, HTC Corporation, Lenovo Holding Co., Inc., Lenovo (United States) Inc., and Motorola Mobility LLC. (D.I. 323 at 1)

5.     Further, as the Court observed in its Opinion, it was not until "*after* fact discovery closed," in a July 2, 2019 supplemental interrogatory response, that BlackBerry identified specific products. (D.I. 323 at 17) (citing Ex. BI at 46)  BlackBerry itself relied on this disclosure in its opening summary judgment brief (D.I. 273 at 31) (citing Ex. BI), and the Court did not overlook it.

6.     Plaintiffs did not "expressly disclaim[] any right to evaluate products BlackBerry identified as unmarked in their response to [the] marking interrogatory." (D.I. 329 at 1-2) Instead, on January 25, 2019, Plaintiffs requested that BlackBerry supplement its interrogatory response prior to any depositions – which BlackBerry agreed to do and then failed to do. (*See* D.I. 333 at 6; D.I. 333 Ex. 1 at 1-2; *see also* Ex. BA at 35)  As Plaintiffs write: "Tellingly, BlackBerry expressed no surprise at this request, *which would have served no purpose if BlackBerry actually thought Plaintiffs had disclaimed [their] right to evaluate such products*." (D.I. 333 at 3)  The record demonstrates Plaintiffs were prepared to attempt to meet their burden under *Arctic Cat* if or when BlackBerry timely met its initial burden, but BlackBerry did not do so in a timely manner.

7.     BlackBerry also faults the Court for not undertaking a *Pennypack* analysis to support its statement that it was "not going to permit this untimely-produced evidence to be admitted." (D.I. 323 at 17; *see also id.* at 18 n.6)  Because BlackBerry failed to meet its burden under the specifically-applicable framework of *Arctic Cat*, it was not necessary to fully explicate a *Pennypack* analysis.  In any event, even after reviewing the parties' now fulsome briefing on the *Pennypack* factors, the Court continues to find these factors further support exclusion of BlackBerry's untimely evidence.[2]

---

[2] While BlackBerry's evidence is important, it was not timely produced, and Plaintiffs would be

8.    Additionally, as the Court further held in the Memorandum Opinion, a reasonable juror could find that the unmarked products do not practice the patents-in-suit because "a reasonable juror could find that Defendants have failed to prove the asserted patents are standard-essential." (D.I. 323 at 18) Nothing in BlackBerry's motion shows clear error in this basis for denying BlackBerry's motion for summary judgment of no damages.

9.    BlackBerry's contention that Plaintiffs failed to plead marking also provides no basis for the relief it seeks, for reasons including that BlackBerry has not shown Plaintiffs failed to meet the applicable pleading requirements. *See Lexos Media IP, LLC v. Jos. A. Bank Clothiers, Inc.*, 2018 WL 2684104, at \*2 (D. Del. June 5, 2018), *report and recommendation adopted*, 2018 WL 4629184 (D. Del. Sept. 27, 2018) ("[I]f certain products are not yet rightly part of the case (because [the defendant] had not yet met its burden of production to specifically identify them), it stands to reason that [the plaintiff] would not have had to plead facts relating to those products.").

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

unfairly prejudiced if BlackBerry were permitted to satisfy its burden of production only after the close of fact discovery, leaving Plaintiffs with no meaningful opportunity to meet their burden. The only way to cure such prejudice would be to reopen discovery, potentially opening the door to more motions practice and another basis to delay trial. The prejudice from exclusion of the evidence (and elimination of its marking affirmative defense) is the result of BlackBerry's own delay, for which there is no persuasive explanation in the record.

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

3G LICENSING, S.A.,
KONINKLIJKE KPN N.V., and
ORANGE, S.A.,

        Plaintiffs,

        v.

HTC CORPORATION,

        Defendant.

C.A. No. 17-83-GBW

## **ORDER**

Having reviewed the Proposed Joint Pretrial Order (D.I. 657) submitted by Plaintiff Koninklijke KPN N.V. ("KPN") and Defendant HTC Corporation ("HTC Corp." or "HTC")[1] regarding the jury trial scheduled to begin on June 5, 2023, **IT IS HEREBY ORDERED** that:

1. With respect to KPN's motion *in limine* No. 1, KPN seeks to "preclude HTC from attempting to show that KPN's subjective beliefs can prove either essentiality or a FRAND encumbrance" by, for example, specifically moving to exclude HTC's expert Dr. Kevin Jeffay's opinions on this issue. D.I. 657-13, Ex. 13(a) at 2-3 (citing D.I. 82 (HTC Answer) at 31); *Id.* at 57 (". . . KPN is seeking to exclude Dr. Jeffay's opinion that 'evidence of essentiality' includes, for example, (1) KPN purportedly 'express[ing] its belief in the essentiality of [U.S. Patent No. 6,212,662 ("the '662 patent")] to a third party, [Jeffay Report] at ¶ 596, and (2) purported KPN 'state[ments]' 'that the '662 patent was essential.' *Id.* at ¶ 595. That section of his report (¶¶ 593–606), along with similar arguments from

---

[1] In light of the Court granting HTC's Motion to Sever (D.I. 641), the Court has scheduled a trial between Plaintiffs 3G Licensing, S.A. and Orange, S.A. and Defendant HTC to begin on October 10, 2023. D.I. 645.

HTC or its witnesses, are flatly inconsistent with this Court's holdings . . ."). This Court held in this case that "essentiality depends on objective findings, i.e., whether practicing the relevant standard *in fact* infringes the asserted patents and whether non-infringing alternatives *in fact* exist." *See* D.I. 486 at 6-7 (Memorandum Opinion) (citing *Intel Corp. v. Future Link Sys., LLC*, 268 F. Supp. 3d 610-12 (D. Del. 2017)).[2] Although HTC marginalizes this Court's Memorandum Opinion as concerning "unrelated patents of 3G Licensing," D.I. 657-13, Ex. 13(a) at 45, it is nevertheless law of the case, and HTC will not be able to carry its burden on whether the '662 patent is actually essential or FRAND-encumbered solely with evidence of KPN's subjective beliefs. KPN, however, does not explain why it did not move to exclude Dr. Jeffay's opinion before the deadline for *Daubert* motions. *See* D.I. 516. And the Court at this stage cannot conclude that the evidence would be inadmissible for any purpose, such as impeachment. Accordingly, KPN's motion *in limine* No. 1 is **DENIED** without prejudice to KPN making appropriate objections at trial.

2. With respect to KPN's motion *in limine* No. 2, KPN seeks to preclude HTC from using documents HTC did not produce during fact discovery including (1) pleadings in an action between KPN and Motorola Mobility purportedly related to HTC's marking defense, and (2) "non-public Qualcomm documents that were obtained by a *different* defendant in a *different* case and that HTC never obtained for use in this case." D.I. 657-14, Ex. 13(b) at 3. Although HTC does not dispute that it never produced these documents to KPN during fact discovery, which is an untimely disclosure under Federal Rule of Civil Procedure 37(c)(1), HTC argues that its failures were harmless. D.I. 657-14, Ex. 13(b) at 249. This

---

[2] This Memorandum Opinion granted summary judgment in favor of Plaintiff on HTC's FRAND affirmative defenses on patents not at issue in the upcoming trial.

Court disagrees. As for the Motorola pleadings, the Court previously denied HTC's motion

for summary judgment of no pre-suit damages noting HTC's failure to disclose those

documents—a failure left uncured until HTC added them to its exhibit list. D.I. 657-14,

Ex. 13(b), Ex. 2 at 23 ("Further, while HTC now asks the Court to take judicial notice of

Motorola Mobility's claim in the related case to having a license from KPN, HTC failed to

provide Plaintiffs timely notice of its intent to rely on the documents from the related case,

and Plaintiffs have not had a fair opportunity to respond to this argument. This is another

reason summary judgment is not appropriate.").[3]  As for the non-public Qualcomm

documents, although HTC told KPN that it "intend[ed] to serve Qualcomm with a

subpoena requesting production of the same documents," HTC does not refute that it did

not do so, and did not disclose to KPN that HTC intended to use the Qualcomm documents

even when pressed—again, waiting until the pretrial exhibit list stage to identify them. D.I.

657-14, Ex. 13(b), Ex. 8 at 5-6, Ex. 9 at 3. The prejudice and surprise to KPN cannot now

be cured. That HTC offers no plausible excuse for its actions—especially after being

previously singled out by the Court for belated disclosures[4]—evinces HTC's willingness

to flout the discovery rules. HTC does not argue that the Motorola or Qualcomm

---

[3] Although HTC accuses KPN of similarly using unproduced deposition testimony (the "Clarke transcript"), KPN represents that it did produce the Clarke transcript to HTC in this action, rendering HTC and KPN's behavior dissimilar. D.I. 657-14, Ex. 13(b) at 263. Even if the Clarke transcript was problematic, KPN has represented it intends to use the Clarke transcript only if the Court permits HTC to use unproduced Motorola document—which this Court will not do. *Id.*

[4] In addition to admonishing HTC at summary judgment, the Court observed HTC's problematic disclosures in denying HTC's motions to strike. D.I. 657-14, Ex. 13(b), Ex. 1 at 6:7-12 ("Often, it appeared to me, that arguably there were new disclosures made by defendants' experts in their report to which plaintiffs chose to fairly respond, which they have a right to do, and plaintiffs probably could have alternatively chosen to throw in motions to strike but they didn't do that.")

documents are critical to its case. And that HTC resorts to blame-shifting is not persuasive. Pursuant to *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904-05 (3d Cir. 1977), KPN's motion *in limine* No. 2 is **GRANTED** and the Motorola pleadings and Qualcomm documents are excluded.

3. With respect to HTC's motion *in limine* No. 1,[5] HTC seeks to preclude KPN from (1) arguing that acts by non-party HTC America ("HTCA") are evidence of infringement by HTC; and (2) referencing HTCA, or HTCA and HTC, collectively as "HTC" in a "a manner that would impute the acts of HTCA on HTC." D.I. 657-15, Ex. 14(a) at 1 n.1. Although KPN dismissed HTCA from this action, if HTC chooses to reintroduce HTCA into this case by arguing that HTCA (not HTC) makes sales to U.S. customers, KPN will be permitted to introduce evidence that HTCA's role is controlled by HTC such that HTC would remain directly liable for those sales. *See Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1378 (Fed. Cir. 2017) (holding that a party can be "liable for infringement under § 271(a) if it acts through an agent . . . or contracts with another to perform one or more" infringing acts); *F45 Training Pty Ltd. v. Body Fit Training USA Inc.*, C.A. No. 20-1194-WCB, 2022 WL 17177621, at *17 (D. Del. Nov. 17, 2022), *dismissed*, No. 2023-1304, 2023 WL 2965590 (Fed. Cir. Apr. 17, 2023) (explaining that a "party can be held liable for direct infringement if that party directs or controls the infringing activity of another"). The parties do not quarrel over differentiating between the HTC and HTCA entities as appropriate. Accordingly, HTC's motion *in limine* No. 1 is **DENIED**.

_____

[5] HTC does not number its motions in *limine*, but included "Defendant HTC Corporation's Motion in Limine to Preclude Argument that Liability of HTC Corporation Can Be Based on the Acts of Non-Party HTC America, Inc." first (as Ex. 14(a)), which the Court construes as motion *in limine* No. 1.

4

EXHIBIT 4

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                  IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

    3G LICENSING, S.A., KONINKLIJKE
 4  KPN N.V., and ORANGE S.A.,         : CIVIL ACTION
                                       :
 5           Plaintiffs,               :
    v                                  :
 6                                     :
    BLACKBERRY LIMITED and             :
 7  BLACKBERRY CORPORATION,            :
                                       :
 8           Defendants.               : NO. 17-82-LPS
    -----------------------------------
 9  3G LICENSING, S.A., KONINKLIJKE
    KPN N.V., and ORANGE S.A.,         : CIVIL ACTION
10                                     :
             Plaintiffs,               :
11  v                                  :
                                       :
12  HTC CORPORATION and                :
    HTC AMERICA INC.,                  :
13                                     :
             Defendants.               : NO. 17-83-LPS
14  -----------------------------------
    3G LICENSING, S.A., KONINKLIJKE
15  KPN N.V., and ORANGE S.A.,         : CIVIL ACTION
                                       :
16           Plaintiffs,               :
    v                                  :
17                                     :
    LENOVO GROUP LTD., LENOVO HOLDING  :
18  CO., INC., LENOVO (UNITED STATES)  :
    INC., and MOTOROLA MOBILITY, LLC,  :
19                                     :
             Defendants.               : NO. 17-84-LPS
20                              - - -

21                      Wilmington, Delaware
                       Friday, April 17, 2020
22                 Telephonic Oral Argument Hearing

23                              - - -

24  BEFORE:      HONORABLE LEONARD P. STARK, Chief Judge

25                              - - -
```

```
 1    APPEARANCES:

 2
              FARNAN, LLP
 3            BY:  BRIAN E. FARNAN, ESQ.

 4                 and

 5            SUSMAN GODFREY, L.L.P.
              BY:  ANDRES C. HEALY, ESQ.
 6                 (Dallas, Texas)

 7                 and

 8            SUSMAN GODFREY, L.L.P.
              BY:  HUNTER VANCE, ESQ.
 9                 (Houston, Texas)

10                 and

11            SUSMAN GODFREY, L.L.P.
              BY:  JENNA G. FARLEIGH, ESQ.
12                 (Seattle, Washington)

13                     Counsel for Plaintiffs

14

15            SHAW KELLER, LLP
              BY:  JOHN W. SHAW, ESQ.
16
                   and
17
              PAUL HASTINGS, LLP
18            BY:  YAR R. CHAIKOVSKY, ESQ.,
                   PHILIP OU, ESQ.,
19                 ALEXANDER LEE, ESQ., and
                   RADESH DEVENDRAN, ESQ.
20                 (Palo Alto, California)

21                     Counsel on behalf of HTC Corporation
                       and HTC America Inc.
22

23

24

25
```

1    *Arctic Cat*, that it requires -- it can't be gamesmanship, a

2    fishing expedition.   There is no fishing expedition here.

3    Everyone well understands the product that Apple makes are

4    iPhones.

5              Now, did we say with specificity the iPhone 3,

6    the iPhone 4 or iPhone 5?  We didn't do that in our

7    interrogatory response.   Now, BlackBerry did that in July

8    in their interrogatory response; and we made that clear in

9    October.   Regardless, the plaintiff was on notice, and they

10   have had notice of specific products under *Arctic Cat,* and

11   the burden has shifted.

12             And, Your Honor --

13             THE COURT:   Mr. Oh.   Yes.   Mr. Ou, can you hear

14   me?   I'm having a little trouble hearing you, and you are

15   speaking a little quickly; so if you could slow down and

16   maybe see if you could be a little closer to the phone

17   perhaps?

18             MR. OU:   Yes, Your Honor.

19             Is this better?

20             THE COURT:   That is, yes.   Thank you.

21             MR. OU:   Okay.   I apologize, Your Honor; and

22   I'll try to slow down.

23             Your Honor, and the issue of timing is

24   particularly suspect in this case because we had a very

25   similar situation come up with regards to the BlackBerry

1                    And Mr. Ou, during the argument today,

2     switched up the theory a little bit and said, okay, well,

3     we're not going to rely on the essentiality argument.

4     Instead, we're going to say it's because you have pointed

5     the carrier documentation in your allegations against us;

6     and, therefore, you know, we can also point to the same

7     carrier documentation in the allegations against Apple or,

8     I'm sorry, to support or contentions with respect to the

9     Apple iPhone products.

10                    But this really just highlights the problem,

11    Your Honor.  By sheer happenstance in this case, we have

12    conducted -- we obviously conducted a great deal of

13    third-party discovery on each of the carriers:  AT&T,

14    T-Mobile, Verizon, U.S. Cellular, Sprint and others.  And

15    frankly by sheer happenstance, during our attempt to negotiate

16    with U.S. Cellular -- well, I should take one step back.

17                    We obtained documents from the carriers.  We

18    also served subpoenas for deposition testimony.  In response

19    to our subpoena for deposition testimony from U.S. Cellular,

20    they provided a declaration outlining the positions.

21                    Again, our effort and our intent was to minimize

22    the burden on these third parties; but by sheer happenstance

23    in that declaration, U.S. Cellular volunteered that the

24    specific '818 related carrier requirements that they had

25    that we're relying on in this case, that Apple was excepted

1    from them.  They didn't apply to Apple.

2            And we haven't had an opportunity to flesh that

3    out with them, because again we had no understanding, we

4    were never told that the iPhone products were going to be

5    at issue during fact discovery.  More importantly, we

6    haven't had an opportunity to flesh that out with the other

7    carriers on which, you know, we're relying on that

8    requirement; and so that is substantial prejudice to us.

9            And we certainly, our position is that because

10   defendants have not set forth a credible basis, one

11   supported by actual admissible evidence to support their

12   assertion, that the burden of production has still not been

13   met even taking into account and accepting the late

14   disclosure; and as a result, that summary judgment should be

15   denied.

16           And I realize we're short on time so I'll

17   certainly speed through a few of these slides.

18           If Your Honor is interested, at slides 102

19   through 104, we walk through what it is defendants have

20   actually cited to support their assertion.

21           Slide 102 sets forth a quote from there brief.

22   They cite to Exhibit I at various paragraphs.

23           Slide 103, we identify what those paragraphs

24   are.  They are from a portion of I believe Dr. Jeffay's

25   report.

```
 1              And if you read that, Dr. Jeffay never says
 2    that the product, the Apple iPhone products comply with the
 3    standard; certainly never says that they comply with the
 4    specific standard provisions to which any of the asserted
 5    patents have or ever have been declared essential.
 6              All he says is that these products were able to
 7    be used on the Verizon LTE network; and then even for that
 8    assertion, he noted and applied, 103, there are two
 9    footnotes.
10              The represented portion of those footnotes are
11    reproduced on slide 104.  And even for those assertions, it
12    was clear from Dr. Jeffay's own report, he is relying on
13    web printouts that he says he obtained from the Wayback
14    Machine.
15              That is not admissible evidence.  It's -- even
16    setting aside the fact that the statements that they point
17    to don't support the fact that these Apple iPhone products
18    practice the patents at all, it is not admissible; and it
19    sort of identifies the issue here, or encapsulate the issue
20    here.
21              It is defendants' burden.  They had a burden to
22    both identify products and identify the basis for their
23    beliefs so we would not undertake an expensive process,
24    bothering third parties and putting burdens on them without
25    a credible basis; and they still haven't identified one; and
```

1    it is for that reason that we think their motion should be

2    denied.  It is for that reason we have not requested it yet,

3    as of yet, for an opportunity to conduct discovery we need

4    on the Apple iPhone products; and that is why we are here

5    and where we are today.

6          I will say this very briefly.  If the Court

7    obviously disagrees, if the Court believes that they have

8    now met their burden of production, we absolutely would

9    request an opportunity to conduct discovery on the Apple

10   iPhone products.

11         Trial is not until -- currently scheduled

12   until January; and we are conducting discovery in the '662

13   matter, although COVID issue is making it difficult.  So

14   we would certainly asking for that opportunity now, the

15   same opportunity that defendants had and received when we

16   produced four discrete documents in July.

17         And I do just have one last point as far as the

18   pure marking issue.  At the most here, that is slide 105,

19   there is dueling evidence and testimony as to whether these

20   products at issue are patented articles.

21         Again, I mentioned defendants' denial that the

22   patents are essential.  That is certainly evidence in our

23   favor.  And there is also the testimony of plaintiffs'

24   expert that the evidence that defendants cites does not

25   show that any of the identified iPhones practice any of

1    It wasn't just the iPhone.  We said various versions of the

2    iPhone during the relevant time period.  I think that is very

3    different, Your Honor, than saying broadly Lenovo phones.

4    Apple makes iPhones, and those are their flagship phones.

5              Unless Your Honor has any questions, we'll rest on

6    the papers on the rest.

7              THE COURT:  Just on that last point.  You said

8    something to the effect of "various versions of the iPhone."

9    Did you identify specific versions of the iPhone?

10             MR. OU:  Your Honor, in our supplemental

11   response, we did not identify the specific versions.  I'm

12   reading, "including various versions of the iPhones during

13   the relevant time period", which would have been the time

14   period that they had a duty to mark, Your Honor.

15             And so we believe that at least as of that,

16   obviously they certainly know what the time period is where

17   they're alleging damages.  We do think that was sufficient

18   notice; and even if it wasn't, Your Honor, you know, they

19   got the notice later, at least as early as July, and then

20   again in our rebuttal expert reports.

21             The last point, I guess, Your Honor, I want

22   to make is that, you know, the defendants didn't -- the

23   plaintiff didn't stop, for example, from producing discovery

24   even during expert discovery.  For example, in their reply

25   expert report, they relied on and discussed a LG license

# EXHIBIT 5

# EXHIBIT 6









Apple iPhone 7 360 degree spin

Apple iPhone 7 - our photos

































# EXHIBIT 13a.1
# Defendant's Opposition to MIL No. 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3G LICENSING, S.A.;<br>KONINKLIJKE KPN N.V.;<br>ORANGE S.A., | ) <br>) <br>) <br>) | |
| Plaintiffs, | ) <br>) | C.A. No. 17-cv-00083-GBW |
| v. | ) <br>) | **JURY TRIAL DEMANDED** |
| HTC CORPORATION, | ) <br>) | |
| Defendant. | ) <br>) | |

**EXHIBIT 13(A): HTC CORPORATION'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE TO BAR HTC'S UNTIMELY MARKING THEORY AND EVIDENCE**

OF COUNSEL:
Yar R. Chaikovsky
Philip Ou
Bruce Yen
Radhesh Devendran
Shashank Chitti
Jake Gold
WHITE & CASE LLP
3000 El Camino Real, 2 Palo Alto Square
Suite 900,
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213 8158
yar.chaikovsky@whitecase.com
Philip.ou@whitecase.com
bruce.yen@whitecase.com
radhesh.devendran@whitecase.com
shashankchitti@whitecase.com
jakegold@whitecase.com

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendant HTC Corporation*

Plaintiffs seek the extreme sanction of excluding HTC's marking defense based on their flawed interpretation of the Court's summary judgment order. D.I. 486 at 17 (Ex. A). But that order **only** denied summary judgment of no pre-suit damages for four different defendants with different facts. Of them, only HTC identified products under *Arctic Cat* **before** the close of fact discovery, but the Court's order did not address HTC's distinction. Nevertheless, the order **did not** affirmatively find that HTC has not yet met its burden of production, or that Plaintiffs were entitled to pre-suit damages, or that HTC's evidence and expert opinions were struck. Indeed, Plaintiffs failed to file any motions on marking. The outcome of denying summary judgment leaves marking for the jury to decide. Any other interpretation would be contrary to law, as nowhere in the patent statute or Federal Circuit precedent requires a defendant to meet its burden of production before the close of fact discovery. But even if it did, whether HTC met this burden by identifying "various version[s] of the iPhone during the relevant time period" is a factual issue the Court did resolve. It would be highly prejudicial to remove this important defense from trial through a motion *in limine*.

"An *in limine* motion is not a proper vehicle for a pdid arty to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, because [t]hat is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008); *Bradley v. Pittsburgh Bd. Of Educ.,* 913 F.2d 1064, 1069-70 (3d. Cir. 1990). Plaintiffs cannot seek summary judgment through its motion. *Minemyer v. B-Roc Representatives, Inc*., 2011 WL 1113146, at *1 (N.D. Ill. Mar. 23, 2011) ("[i]nstead of asking for evidentiary rulings, [defendants] ask for substantive rulings on issues in this case," which "is not a proper motion *in limine* at all, but a summary judgment motion"). Nor should Plaintiffs be permitted to use its motion as an untimely motion to strike the expert opinions of Dr. Jeffay on marking or the evidence he identified in his

report. Ex. G. Plaintiffs never made such a motion. This is not surprising, as Plaintiffs opposed a motion to strike filed by HTC under similar circumstances. D.I. 317; D.I. 329 (denying HTC's motion to strike licenses produced after close of fact discovery); Ex. E (MSJ Hearing Tr.) at 79:23-81:4. Under the same *Pennypack* analysis, the "extreme sanction" of exclusion here is not warranted. *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894 (3d Cir. 1977).

<u>Plaintiffs' Interpretation of the Court's Order is Wrong</u>

Plaintiffs emphasize "[t]he Court is not going to permit this untimely-produced evidence to be admitted…," but omits the rest of the sentence and context of the Court's statement.  The full excerpt is: "The Court is not going to permit this untimely-produced evidence to be admitted, so Defendants cannot be granted summary judgment of no pre-suit damages on this basis.  *See Pavo Sols. LLC v. Kingston Tech. Co., Inc.* 2019 WL 4390573, at *3 (C.D. Cal. June 26, 2019)." Ex. A at 17. Respectfully, denying summary judgment because the Court declined to admit or consider certain evidence does not mean equate to precluding a marking entire defense at trial. The *Pavo* opinion denied summary judgment (as the Court did here), but that Court allowed the defendant to present marking at trial.  *Pavo,* Dkt. 332 at 3 (C.D. Cal. Feb. 19, 2020); Ex. B at 3 (summary judgment order does not operate to bar marking defense at trial).

Plaintiffs also ignore that the Court included an additional paragraph identifying what "a reasonable juror could find" with respect to HTC's marking defense, as an "additional reason, [why] summary judgment is not warranted."  D.I. 486 at 18 (Ex. A). None of this discussion would be relevant or necessary if the Court's order was intended to remove marking completely from the case. Plaintiffs never asked for such relief nor did the Court order such an extreme sanction.

<u>Plaintiffs Improperly Rely on the Court's Order in Another Case Involving Different Facts</u>

- 2 -

As a result, Plaintiffs rely on the Court's order on a motion for reconsideration in a different case, involving a different defendant (Blackberry) and different facts (Ex. C). HTC did not join that motion, nor was the motion filed in HTC's case. Moreover, Blackberry's motion was based on the facts in the its case, which are distinguishable from those of HTC. The Court's order noted that Blackberry's interrogatory response only identified the Apple license and deposition testimony. Accordingly, it was undisputed that Blackberry **did not** identify "specific unmarked products" until *after* the close of fact discovery. Not so for HTC. HTC argued it met its low burden of production *before* the close of fact discovery by identifying "various version[s] of the iPhone during the relevant time period". Ex. D (May 24, 2019 Response); Ex. E at 78:25-79:11. Whether HTC's burden was met was not address by the Court's order. But the Court did not need to in denying summary judgment. The Court explained that a reasonable juror could find that the identified products did not need to be marked; the jury should hear the evidence and decide at trial.

<u>HTC Has Met its Burden and Should Be Permitted to Present its Marking Defense at Trial</u>

While HTC submits it met its burden of production before the close of fact discovery, and no later than Dr. Jeffay's report, it certainly met its burden by the time it filed its motion. Dkt. 356 at 30; *Arctic Cat*, 876 F.3d at 1368. The motion asserted twenty unmarked models of iPhone marketed and sold by Apple since 2007. *Id.* Courts have held that identifying specific unmarked products in a summary judgment motion is sufficient to satisfy the initial low burden under *Arctic Cat*. *Ultravision Techs. v. Govision Llc,* No. 2:18-cv-00100-JRG-RSP, 2021 U.S. Dist. LEXIS 102584 (E.D. Tex. May 23, 2021) (marking permitted at trial after listing unmarked products in summary judgement motion*); Semcon IP Inc. v. Huawei Device USA Inc.*, No. 2:16-cv-00437-JRG-RSP, 2017 U.S. Dist. LEXIS 204266 (E.D. Tex. Dec. 12, 2017); *Biedermann Techs. GmbH KG v. K2M, Inc.*, No. 2:18cv585, 2021 U.S. Dist. LEXIS 258142 (E.D. Va. Oct. 22, 2021).

# EXHIBIT A

# EXHIBIT B

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAVO SOLUTIONS, LLC<br><br>       *Plaintiff*,<br><br>   v.<br><br>KINGSTON TECHNOLOGY<br>COMPANY, INC.,<br><br>      *Defendant*. | Case No. 8:14-cv-01352-JLS-KES<br>Honorable Josephine L. Staton<br><br>**FINAL PRETRIAL CONFERENCE<br>ORDER**<br><br>Jury Trial Date: March 3, 2020, 9:00<br>a.m.<br>Exhibit Conference: February 26, 2020,<br>9:00 a.m. |

Following pretrial proceedings, pursuant to F. R. Civ. P. 16 and L.R. 16, IT IS ORDERED:

1.      The parties are: Plaintiff Pavo Solutions, LLC, and Kingston Technology Company, Inc.  Kingston has been served and each party has appeared. The pleadings are Plaintiff's Complaint for Patent Infringement (Doc. 1), and Kingston's Answer and Affirmative Defenses (Doc. 23).

2.      Federal jurisdiction for this patent infringement action arises under 28 U.S.C. §§ 1331, 1338(a).  Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c), 1400(b).  Kingston is subject to personal jurisdiction in this District, and is accused of committing acts of infringement in this District.

3.      The Court has ordered a 5-day jury trial, scheduled to commence on March 3, 2020.  The trial will be timed, and the parties' time will be divided evenly and tracked by the Court.  The 5-day period includes all aspects of the trial, including voir dire, opening statements, evidence presentation, closing arguments and jury instruction.  The Court reserves the right to allot less time if the parties are not efficient in presenting the case to the jury or the Court determines that this amount of time is not otherwise warranted.

4.      The trial will be by jury.  In light of the Court's order granting Pavo's motion for partial summary judgment (Doc. 97), all non-jury issues have been dismissed.

Per Section III.C, E. of the Court's Civil Trial Order, the Parties have filed (a) their proposed jury instructions (Doc. 295) as required by L.R. 51-1,  (b)  special questions requested to be asked on voir dire (Doc. 284), and (c) special verdict forms (Docs 297, 297-1, 297-1).

Case 1:17-cv-00083-GBW Document 699-1 Filed 10/04/23 Page 280 of 791 PageID #: 17955
Case 8:14-cv-01952-JLS-KES Document 332 Filed 02/19/20 Page 3 of 130 Page ID
#:17602

5.    The following facts are admitted and require no proof:

    a)  The '544 patent was filed on January 17, 2003.

    b)  The '544 patent claims priority to Korean Patent Application No. 20-2002-0016582, filed on May 30, 2002.

    c)  The DT101G2 is a flash memory apparatus.

    d)  The DT101G2 has flash memory.

    e)  The DT101G2 has a main body.

    f)  The DT101G2 includes a memory element.

    g)  The DT101G2 includes a USB terminal.

    h)  The DT101G2 has a USB terminal piece installed at the front end of the DT101G2's case.

    i)  The DT101G2 has a USB terminal piece projecting from the front end of the DT101G2's case.

    j)  There is a hinge protuberance formed on at least one side of the DT101G2 case.

    k)  The DT101G2's cover has an open front end.

    l)  The DT101G2's cover pivots with respect to the DT101G2's main body.

    m) The DT101G2 includes a cover.

    n)  Kingston marketed the DT101G2's swivel design.

    o)  Kingston marketed the DT101G2 as having a swivel design for added functionality.

    p)  On June 27, 2014 IPMedia Holdings, Inc. ("IPMedia") and CATR entered into a License and Settlement Agreement with respect to the '544 patent (the "IPMedia License").

    q)  USB flash drives were sold prior to 2002.

    r)  The Trek Thumbdrive is a USB drive.

    s)  The Trek Thumbdrive has flash memory.

Case 1:17-cv-00083-GBW  Document 699-1  Filed 10/04/23  Page 281 of 791 PageID #: 17956
Case 8:14-cv-01352-JLS-KES  Document 332  Filed 02/19/20  Page 4 of 13  Page ID
#:17603

t)  The M-System's DiskOnKey is a USB drive.

u)  The M-System's DiskOnKey has flash memory.

v)  Kingston filed an inter partes review petition related to the '544 patent on October 24, 2014.

w)  Kingston filed a second inter partes review petition related to the '544 patent on January 14, 2015.

x)  The Kingston DTSE9 USB drive has no cover.

6.     Claims and defenses to be presented at trial:

**Note on Marking Defense**: The Court's Summary Judgement Order (Doc. 199), does not operate to bar Kingston from presenting a defense at trial under the patent marking statute, 35 U.S.C. § 287(a).  In that Order, the Court determined that Kingston had not carried its burden of coming forward with admissible evidence that products produced under a license of the '544 Patent were sold or offered for sale in the United States.  (*See* Summary Judgment Order at 2-6.)  Accordingly, the Court denied Kingston's motion for summary judgment on its affirmative defense of marking, meaning that, at that stage and based on the admissible evidence before it, the Court could not determine as a matter of law that Kingston prevails on the marking defense.  (*Id*. at 6.)  Pavo did not move for summary judgment on Kingston's marking defense and thus, the Court had no occasion to rule definitively on that affirmative defense.

Kingston may raise its affirmative defense of marking at trial, so long as the defense is supported with admissible evidence.  Relatedly, as Kingston disclosed in its initial disclosure that Mr. Ewing would provide testimony in the designated area of "general marketing, promotion and sales of Kingston's flash products," Mr. Ewing may testify on the sale and marking of competing products, which the Court finds subsumed within that designated area.  Any such testimony is subject to objection on grounds ordinarily applicable at trial.

**Plaintiff:**

a)    Pavo plans to pursue the following claims against Kingston:

- Claim 1:  Kingston's DT101G2 directly infringes claims 1, 4, 7, 11-13, and 24 of the '544 patent in violation of 35 U.S.C. §271(a) and 35 U.S.C. §284; and

- Claim 2: Kingston willfully infringes claims 1, 4, 7, 11-13, and 24 of the '544 patent in violation of 35 U.S.C. §271(a) and 35 U.S.C. §284.

b)    The elements required to establish Pavo's claims are:

- Claim 1:  Direct Infringement
  - A patent is literally infringed if all of the limitations of a claim, as construed by the Court, are met by a product that is sold, offered for sale, imported into, or manufactured in the United States.
  - A claim element may be infringed under the doctrine of equivalents if either:
    - a person of ordinary skill in the field would think the difference between the claim limitation and the limitation present in the accused device was not substantial as of the time of the alleged infringement; or
    - the accused structure or element, when compared to an element of a claim, is found to perform substantially the same function in substantially the same way to achieve substantially the same result as does the element in the claim.

○ If infringement is established, Plaintiff is entitled under 35 U.S.C. §284 to no less than a reasonable royalty for each act of infringement.

- Claim 2: Willful infringement

The parties disagree on the elements for establishing willful infringement. What follows is Pavo's understanding of the required elements:

○ A patent is willfully infringed if the infringement was intentional or knowing, *i.e.*, that Kingston undertook its infringing actions despite a risk of infringement that was either known to Kingston or so obvious that it should have been known to Kingston.

○ Factors to consider include but are not limited to:

- whether Kingston had pre-suit knowledge of the patent-in-suit and was aware of its infringement;

- whether Kingston knew or should have known that its conduct involved an unreasonable risk of infringement; and

- whether Kingston had a reasonable basis to believe it did not infringe or had a reasonable defense to infringement.

c) In brief, the key evidence Plaintiff relies on for each of the claims is:

- The '544 patent

- The Accused Device, the DT101G2

- Kingston documents related to the Accused Device, including schematics, datasheets and marketing materials.

- Records of the sales and importation of the Accused Device.

1          •     Kingston Documents related to the cost and profits of the
2                  Accused Device.

3          •     Comparable licenses to the patent-in-suit and related patents, and
4                  documents related thereto.

5          •     Testimony of Pavo's witness Jake Lee, and of Kingston's
6                  witnesses Stephen Chien, Andrew Ewing, Calvin Leong, and
7                  John Terpening.

8          •     Testimony of Pavo's expert witnesses Steven Visser, Miguel
9                  Gomez and Jim Bergman, and of Kingston's expert witnesses
10                David Choi, Lance Rake, Shelly Irvine, and Bruce Voyles.

11        d)    Pavo proposes the following as the elements required for Kingston's
12   defense of marking:

13          •     Failure to Comply with Marking Statute
14             o     To demonstrate non-compliance with 35 U.S.C. § 287(a),
15                   Kingston bears an initial burden of production to articulate
16                   the products it believes are unmarked patented articles
17                   subject to §287, and to produce evidence that the identified
18                   products were sold or offered for sale in the U.S.

19             o     If and only if Kingston carries its burden, the burden then
20                   shifts to the Pavo to show that its predecessor complied
21                   with § 287(a)'s marking requirement.

22

23    **Defendant:**

24        a)    Defendant plans to pursue the following counterclaims and affirmative
25   defenses:

26          •     Invalidity:  Claims 1, 4, 7, 11-13, and 24 of the '544 patent are
27                invalid as obvious under 35 U.S.C. § 103.

28

•     Failure to Comply with Marking Statute: Pavo is not entitled to recover damages due to the failure of its predecessors-in-interest and/or their licensees to mark products made by or for them or sold by or for them, or to otherwise provide notice in accordance with the provisions of 35 U.S.C. § 287(a).

b)     The elements required to establish Defendant's counterclaims and affirmative defenses are:

•     Invalidity

    o     Kingston may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art in the field at the time the invention was made.

•     Failure to Comply with Marking Statute

    o     To demonstrate non-compliance with 35 U.S.C. § 287(a), Kingston bears an initial burden of articulating products made or licensed under the patent.

    o     At this point, the burden shifts to Pavo to plead and prove that its predecessors and/or licensees complied with § 287(a)'s marking requirement.

c)     In brief, the key evidence Defendant may rely on for each counterclaim and affirmative defense is:

•     Invalidity

    o     The '544 patent

    o     The prosecution history of the '544 patent

    o     Gerber PAUL folding knife

    o     Kershaw Rotary Lock knife model 2100

1       ○    Documents relating to prior art USB devices including the

2                 M-Systems DiskOnKey, Trek ThumbDrive, and JMTek

3                 USBDrive

4       ○    U.S. Patent No. 6,522,534 ("Wu")

5       ○    U.S. Patent No. 4,854,045 ("Schaub")

6       ○    U.S. Patent No. 6,648,715 ("Wiens")

7       ○    Korean Utility Model No 20-0271791 ("Park") and the

8                 certified translation thereof

9       ○    Chinese Utility Model No. 2,421,254 ("Lin") and the

10              certified translation thereof

11      ○    U.S. Patent No. 6,464,403 ("Koch")

12      ○    Testimony of Pavo's expert witnesses Steven Visser and

13              Miguel Gomez, and of Kingston's expert witnesses David

14              Choi, Lance Rake, and Bruce Voyles

15      ○    Testimony of Kingston's witnesses Andrew Ewing and

16              John Terpening and Testimony of Pavo's witness

17              Jongkeun Lee

18      ○    Additional technical documentation and witness

19              testimony concerning the state of the art at the time of the

20              alleged invention, rationales for combining the prior art,

21              and secondary considerations of obviousness.

22      •   Failure to Comply with Marking Statute

23      ○    Licenses to the patent-in-suit and related patents, and

24              documents related thereto.

25      ○    Documents related to the Staples Swivel Relay Drives and

26              Hana Micron Axis Swivel Drives.

27      ○    Testimony of Pavo's witness Jongkeun Lee

28

Case 1:17-cv-00083-GBW Document 699-1 Filed 10/04/23 Page 287 of 791 PageID #: 17962
Case 8:14-cv-01352-JLS-KES Document 582 Filed 02/19/20 Page 10 of 189 Page ID
#:17609

○    Testimony of Kingston's witness Andrew Ewing about competing products.

○    Testimony of Pavo's expert witnesses Steven Visser, Miguel Gomez and Jim Bergman, and of Kingston's expert witnesses David Choi, Lance Rake, and Shelly Irvine.

d)  The parties dispute the standard for willful infringement. Kingston asserts the correct standard, in line with Pavo's cited Model Jury instructions and case law, is below:

- A patent is willfully infringed if the infringement was deliberate, wanton, malicious or in bad faith.
- Factors to consider include but are not limited to:
  ○  whether the accused infringer had pre-suit knowledge of the patent-in-suit and was aware of its infringement; and
  ○  whether the accused infringer had a reasonable basis to believe it did not infringe or had a reasonable defense to infringement.
- Evidence that the accused infringer had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness.

*See* Federal Circuit Bar Association Model Patent Jury Instruction 3.10; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).

7.    In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

- Whether at least one claim of the '544 patent is infringed;
- Whether the infringed claim of the '544 patent is valid;

- • Whether the infringed claim of the '544 patent was willfully infringed;

- • Whether Pavo's predecessor-in-interest to the '544 patent and/or their licensees have complied with the marking statute; and,

- • The amount of damages, if any, owed by Kingston to Pavo.

8. All discovery is complete.

9. All disclosures under F. R. Civ. P. 26(a)(3) have been made. The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits to which objections have been noted on the parties' Joint Exhibit List (Doc. 294-1).

10. Witness lists of the parties have been filed with the Court. Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment). Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

- • Russell Chatskis, taken on January 8, 2019

- • Steven Hansen, taken on February 18, 2019

- • Stephen Chien, taken on February 26, 2019

- • Calvin Leong, taken on February 26, 2019

- • Christopher Butler, taken on April 3, 2019

Defendant objects to the presentation of testimony by deposition of the following witnesses:

- • Stephen Chien, taken on February 26, 2019

1           •     Calvin Leong, taken on February 26, 2019

2           •     Steven Hansen, taken on February 18, 2019[1]

4    11.    There are no pending law and motion matters or motions *in limine*.

6    12.    Bifurcation of the following issues for trial is ordered:  None.

7           •     In light of the Court's order granting Pavo's motion for partial summary judgment (Doc. 97), no defenses to be tried to the bench remain.

10          •     However, if the jury finds the patent-in-suit valid and infringed, Pavo will request that the Court award costs, and both pre-verdict and post-verdict interest on any damages award; that the Court order an accounting, if necessary, to determine any infringement not covered by the jury's verdict; that the Court award supplemental damages for any pre-judgment infringement not covered by the jury's verdict; that the Court award injunctive relief in the form of an ongoing royalty, if necessary, to compensate Pavo for any post-judgment infringement.  Pavo will also seek attorneys' fees pursuant to 35 U.S.C. § 285.

20          •     Moreover, if the jury finds Kingston's infringement was willful, Pavo will seek enhanced damages pursuant to 35 U.S.C. § 284.

22          •     If the jury finds the patent-in-suit invalid or not infringed, Kingston will request that the Court award costs, and/or attorneys' fees pursuant to 35 U.S.C. § 285.

---

[1] To the extent that Pavo elects to present the deposition testimony of Mr. Hansen, Kingston reserves the right to ask this witness to appear for live testimony in lieu of designations.

Case 1:17-cv-00083-GBW  Document 699-1  Filed 10/04/22  Page 290 of 791 PageID #: 47965
Case 8:14-cv-01353-JLS-KES  Document 362  Filed 02/19/20  Page 13 of 139  Page ID
#:17612

1        13.   The foregoing admissions having been made by the parties, and the

2    parties having specified the foregoing issues remaining to be litigated, this Final

3    Pretrial Conference Order shall supersede the pleadings and govern the course of the

4    trial of this cause, unless modified to prevent manifest injustice.

5

6    Dated:  February 19, 2020

7

8    _____

9          HONORABLE JOSEPHINE L. STATON
      UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICTOF DELAWARE

| | | |
|---|---|---|
| 3G LICENSING, S.A., and<br>ORANGE S.A., | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 17-82-LPS |
| | : | |
| BLACKBERRY LIMITED and<br>BLACKBERRY CORPORATION, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### <u>MEMORANDUM ORDER</u>

At Wilmington this **16th** day of **February, 2021**:

WHEREAS, on September 29, 2020, the Court issued a Memorandum Opinion (D.I. 323) and Order (D.I. 324) granting in part and denying in part Plaintiffs 3G Licensing, S.A. ("3G") and Orange S.A.'s ("Orange") (collectively, "Plaintiffs") motion for partial summary judgment (D.I. 267) and granting in part and denying in part Defendants BlackBerry Limited and BlackBerry Corporation's (collectively, "BlackBerry") motion for summary judgment (D.I. 272);

WHEREAS, in particular, the Court denied BlackBerry's motion for summary judgment of no pre-suit damages because (among other reasons) BlackBerry's purported evidence that several Apple products were unmarked was not produced in a timely manner (D.I. 323 at 17-18);

WHEREAS, on October 13, 2020, BlackBerry filed a motion for reargument regarding this portion of the summary judgment order and the Court's related exclusion of evidence (*see* D.I. 329);

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, having considered the

1

relevant filings and related materials (*see, e.g.*, D.I. 329, 333), BlackBerry's motion (D.I. 329) is **DENIED**.

1.      "Pursuant to Local Rule 7.1.5, a motion for reconsideration or reargument should be granted only 'sparingly.'" *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 2015 WL 1883960, at *1 (D. Del. Apr. 24, 2015).   The decision to grant such a motion lies squarely within the discretion of the district court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990).   These types of motions are typically granted only if the Court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. *See Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Brambles*, 735 F. Supp. at 1241.   "A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made." *Smith v. Meyers*, 2009 WL 5195928, at *1 (D. Del. Dec. 30, 2009); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).   It is also not an opportunity to "accomplish repetition of arguments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991).

2.      A party may seek reconsideration only if it can show at least one of the following: (i) there has been an intervening change in controlling law; (ii) the availability of new evidence not available when the court made its decision; or (iii) there is a need to correct a clear error of law or fact to prevent manifest injustice. *See Max's Seafood Café by LouAnn, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).   In no instance should reconsideration be granted if it would not result in amendment of an order. *See Schering Corp.*, 25 F. Supp. 2d at 295.

3.      BlackBerry contends that the Court committed a clear error that needs to be

corrected in order to prevent manifest injustice. (*See* D.I. 329 at 3)  Specifically, BlackBerry contends that "the Court misapprehended the evidentiary record with respect to BlackBerry" by failing to recognize that BlackBerry's discovery disclosures with respect to unmarked products were materially different from that of other Defendants[1] – and, purportedly, were sufficient to meet its obligations under *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017).  (*Id.* at 1-5)  The Court disagrees.

       4.     BlackBerry's May 24, 2019 response to Plaintiffs' marking interrogatory did not identify "specific unmarked products which the alleged infringer believes practice the patent," as *Arctic Cat* requires.  876 F.3d at 1368.  Instead, that response merely "identified the Apple License (KPN00103266), which licenses Apple products compliant with WCDMA standards and the deposition of Orange's 30(b)(6) designee regarding the Apple License." (D.I. 329 at 4; *see also* Ex. BQ at 44)  Moreover, the May 2019 response was provided on the last day of fact discovery, leaving Plaintiffs with no meaningful opportunity to conduct responsive discovery to attempt to meet their obligation under *Arctic Cat*'s burden shifting framework.  Contrary to BlackBerry's suggestion (*see* D.I. 329 at 4), it was not Plaintiffs' burden (at that already late date) to press BlackBerry for more specificity or intuit from a deposition transcript which specific products BlackBerry thought it was disclosing.  BlackBerry, as the alleged infringer, *bears the initial burden of production, see Arctic Cat*, 876 F.3d at 1368, and it failed to timely meet that burden.  (*See* D.I. 333 at 5) ("[BlackBerry] now has to argue that Plaintiffs should have *inferred* what those specific products were from BlackBerry's reference to the Apple license and Mr. Thirard's testimony.  That is not the standard.")

---

[1] "Defendants" are, in addition to BlackBerry, HTC Corporation, Lenovo Holding Co., Inc., Lenovo (United States) Inc., and Motorola Mobility LLC.  (D.I. 323 at 1)

5.      Further, as the Court observed in its Opinion, it was not until "*after* fact discovery

closed," in a July 2, 2019 supplemental interrogatory response, that BlackBerry identified

specific products. (D.I. 323 at 17) (citing Ex. BI at 46)  BlackBerry itself relied on this

disclosure in its opening summary judgment brief (D.I. 273 at 31) (citing Ex. BI), and the Court

did not overlook it.

6.      Plaintiffs did not "expressly disclaim[] any right to evaluate products BlackBerry

identified as unmarked in their response to [the] marking interrogatory." (D.I. 329 at 1-2)

Instead, on January 25, 2019, Plaintiffs requested that BlackBerry supplement its interrogatory

response prior to any depositions – which BlackBerry agreed to do and then failed to do. (*See*

D.I. 333 at 6; D.I. 333 Ex. 1 at 1-2; *see also* Ex. BA at 35)  As Plaintiffs write: "Tellingly,

BlackBerry expressed no surprise at this request, *which would have served no purpose if*

*BlackBerry actually thought Plaintiffs had disclaimed [their] right to evaluate such products*."

(D.I. 333 at 3)  The record demonstrates Plaintiffs were prepared to attempt to meet their burden

under *Arctic Cat* if or when BlackBerry timely met its initial burden, but BlackBerry did not do

so in a timely manner.

7.      BlackBerry also faults the Court for not undertaking a *Pennypack* analysis to

support its statement that it was "not going to permit this untimely-produced evidence to be

admitted." (D.I. 323 at 17; *see also id.* at 18 n.6)  Because BlackBerry failed to meet its burden

under the specifically-applicable framework of *Arctic Cat*, it was not necessary to fully explicate

a *Pennypack* analysis.  In any event, even after reviewing the parties' now fulsome briefing on

the *Pennypack* factors, the Court continues to find these factors further support exclusion of

BlackBerry's untimely evidence.[2]

---

[2] While BlackBerry's evidence is important, it was not timely produced, and Plaintiffs would be

8.    Additionally, as the Court further held in the Memorandum Opinion, a reasonable juror could find that the unmarked products do not practice the patents-in-suit because "a reasonable juror could find that Defendants have failed to prove the asserted patents are standard-essential." (D.I. 323 at 18)  Nothing in BlackBerry's motion shows clear error in this basis for denying BlackBerry's motion for summary judgment of no damages.

9.    BlackBerry's contention that Plaintiffs failed to plead marking also provides no basis for the relief it seeks, for reasons including that BlackBerry has not shown Plaintiffs failed to meet the applicable pleading requirements.  *See Lexos Media IP, LLC v. Jos. A. Bank Clothiers, Inc.*, 2018 WL 2684104, at *2 (D. Del. June 5, 2018), *report and recommendation adopted*, 2018 WL 4629184 (D. Del. Sept. 27, 2018) ("[I]f certain products are not yet rightly part of the case (because [the defendant] had not yet met its burden of production to specifically identify them), it stands to reason that [the plaintiff] would not have had to plead facts relating to those products.").

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

unfairly prejudiced if BlackBerry were permitted to satisfy its burden of production only after the close of fact discovery, leaving Plaintiffs with no meaningful opportunity to meet their burden. The only way to cure such prejudice would be to reopen discovery, potentially opening the door to more motions practice and another basis to delay trial.  The prejudice from exclusion of the evidence (and elimination of its marking affirmative defense) is the result of BlackBerry's own delay, for which there is no persuasive explanation in the record.

# EXHIBIT D

# EXHIBIT E

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -
      3G LICENSING, S.A., KONINKLIJKE
 4    KPN N.V., and ORANGE S.A.,          : CIVIL ACTION
                                          :
 5             Plaintiffs,                :
      v                                   :
 6                                        :
      BLACKBERRY LIMITED and              :
 7    BLACKBERRY CORPORATION,             :
                                          :
 8             Defendants.                : NO. 17-82-LPS
      ----------------------------------
 9    3G LICENSING, S.A., KONINKLIJKE
      KPN N.V., and ORANGE S.A.,          : CIVIL ACTION
10                                        :
               Plaintiffs,                :
11    v                                   :
                                          :
12    HTC CORPORATION and                 :
      HTC AMERICA INC.,                   :
13                                        :
               Defendants.                : NO. 17-83-LPS
14    ----------------------------------
      3G LICENSING, S.A., KONINKLIJKE
15    KPN N.V., and ORANGE S.A.,          : CIVIL ACTION
                                          :
16             Plaintiffs,                :
      v                                   :
17                                        :
      LENOVO GROUP LTD., LENOVO HOLDING   :
18    CO., INC., LENOVO (UNITED STATES)   :
      INC., and MOTOROLA MOBILITY, LLC,   :
19                                        :
               Defendants.                : NO. 17-84-LPS
20                              - - -

21                    Wilmington, Delaware
                      Friday, April 17, 2020
22               Telephonic Oral Argument Hearing

23                              - - -

24    BEFORE:      HONORABLE LEONARD P. STARK, Chief Judge

25                              - - -
```

1          MR. OU:  Good afternoon, Your Honor.  This is

2     Philip Ou for HTC.  I'm going to handle the next argument on

3     *Markman*.

4          Your Honor, if you have our slides in front of

5     you, I am starting at slide 12.

6          There is no dispute that Apple is a licensee to

7     use these patents.  We all know that Apple makes handsets.

8          Just like the defendants, they work with

9     carriers who have carrier requirements, just like the

10    handsets.

11         I won't talk about essentiality because the

12    plaintiffs have made very clear they're not trying to prove

13    infringement of essentiality, but they are trying to prove

14    infringement based on carrier requirements, Your Honor; and

15    Apple's products understandably would follow those carrier

16    requirements in the same way the defendants do, Your Honor;

17    but that is not our -- we all know that under *Arctic Cat*

18    there is a low burden that we have, and that is to identify

19    the product; and we did do, that Your Honor.

20         And as a result of that, the burden shifts to

21    the plaintiffs to show that they either complied with the

22    marking statute by marking; and there is no evidence that

23    Apple marked or that the Apple products don't need to be

24    marked because they don't practice.  Well, this notion that

25    the Apples don't practice but we infringe is simply not

1    credible; but, again, that is their burden of proof and they

2    just haven't shown it.

3          Your Honor, if you go to slide 13, I think the

4    issue is more so the plaintiffs complain about timing.  I

5    don't think that they have really said that we haven't met

6    our burden under *Arctic Cat*.  They just don't like the

7    timing, and they claim prejudice.

8          Well, Your Honor, they were on notice; and if

9    you look at slide 13, we have a timeline here.  We noticed

10   their 30(b)(6) deposition in January of 2019; and for

11   Lenovo/HTC set in February.  We had a marking topic.  Orange

12   agreed to provide the marking deponent.

13          Now, the witness that was supposed to handle

14   marking and whether or not Orange had enforced marking, that

15   was Mr. Thirard.  His deposition was actually scheduled for

16   March.  He was postponed to three days before the close of

17   fact discovery, so we didn't get a chance to ask Mr. Thirard

18   about the Apple license and whether they enforce marking

19   until the very end of that discovery.

20          Three days later, we supplemented our discovery

21   responses.

22          HTC pointed out -- pointed to the deposition and

23   said the product that should have been marked were iPhones

24   marked during the time period.

25          Now, the plaintiff has said that, you know,

1      *Arctic Cat*, that it requires -- it can't be gamesmanship, a

2      fishing expedition.  There is no fishing expedition here.

3      Everyone well understands the product that Apple makes are

4      iPhones.

5            Now, did we say with specificity the iPhone 3,

6      the iPhone 4 or iPhone 5?  We didn't do that in our

7      interrogatory response.  Now, BlackBerry did that in July

8      in their interrogatory response; and we made that clear in

9      October.  Regardless, the plaintiff was on notice, and they

10     have had notice of specific products under *Arctic Cat,* and

11     the burden has shifted.

12            And, Your Honor --

13            THE COURT:  Mr. Oh.  Yes.  Mr. Ou, can you hear

14     me?  I'm having a little trouble hearing you, and you are

15     speaking a little quickly; so if you could slow down and

16     maybe see if you could be a little closer to the phone

17     perhaps?

18            MR. OU:  Yes, Your Honor.

19            Is this better?

20            THE COURT:  That is, yes.  Thank you.

21            MR. OU:  Okay.  I apologize, Your Honor; and

22     I'll try to slow down.

23            Your Honor, and the issue of timing is

24     particularly suspect in this case because we had a very

25     similar situation come up with regards to the BlackBerry

1    licenses that plaintiff produced in the COURT that you just

2    heard about.

3           Your Honor, if you remember, the defendants

4    filed a motion to strike, Lenovo and HTC; and, Your Honor,

5    in that scenario, those licenses were produced to us on the

6    day of the opening expert reports.  We never had them in

7    fact discovery.

8           If you see there is a timeline on slide 16.  The

9    plaintiff has those licenses back in November.  And I

10   apologize, Your Honor, there is a typo.  It says November

11   6th, '19.  It should be '18.

12          But as Your Honor knows, we didn't get those

13   licenses until opening expert reports.  You denied our

14   motion to strike because there was no prejudice or the

15   prejudice couldn't be cured and you allowed us to take

16   discovery of BlackBerry to address those in the expert

17   reports.

18          It's a similar issue here, Your Honor.  If the

19   plaintiffs felt that there was some prejudice that they

20   didn't have the opportunity to take discovery from Apple,

21   they had every opportunity to do that.

22          You look at the timeline on slide 17, which is a

23   comparison, we actually -- they were on notice of the

24   marking issues far before we were on notice that were going

25   to rely on these BlackBerry licenses.

1           And, Your Honor, when you look at your order,

2    your oral order on slide 15, one of the primary reasons that

3    you denied our motion was that the defendants seek, was the

4    evidence was important.

5           This evidence is absolutely important here

6    because they had a duty to mark under *Arctic Cat;* and they

7    haven't met there burden to refute that to show that Apple

8    doesn't have a duty to mark, Your Honor; and so because of

9    that, and they failed to do that even until today, summary

10   judgment is appropriate.

11          And I think it is clear, Your Honor, the reason

12   why they haven't sought the discovery; because I can't see

13   how there is a credible way that they can allege that our

14   products infringe but that the iPhones, whatever version, do

15   not practice the patent.  The '091 patent, which is simply

16   the infringement read is downgrading from, you know, a video

17   call to voice only; you know, in this COVID pandemic, I use

18   FaceTime all the time; that happens all the time.  I can't

19   see how they can argue that the Apple products don't

20   practice if the defendants' product do.  So they don't have

21   an interest in trying to seek that discovery because I think

22   it will show that they had a duty to mark.

23          Your Honor, so once marking, once summary

24   judgment is met, the damages clock should start at when

25   there is actual notice, Your Honor.  In our brief, we have

1      shown that that should start at the complaint.  The

2      plaintiffs have pointed to certain notice letters for the

3      reasons stated in our briefs; and you have the letters in

4      front of you, Your Honor.  We think all of those letters are

5      deficient, but I think you can address that.

6                 I'll stop there, Your Honor, if you have any

7      questions.

8                 THE COURT:  No questions at this time.  Thank

9      you.

10                We'll hear from plaintiffs.

11                MR. HEALY:  Thank you, Your Honor.  This is

12     Andre Healy on behalf of the plaintiff.  I want to address

13     both of defendants' marking arguments.

14                I just want to briefly sort of encapsulate what

15     the standard is here.  Slide 9 sets forth the *Arctic Cat*

16     standard.  It is made very clear it is the defendants'

17     burden to -- they have the initial burden of production to

18     identify specific unmarked products that they allege believe

19     practice the patent.  And *Arctic Cat* was very clear that

20     until they meet that burden of production, the patent holder

21     has no obligation.

22                As Mr. Ou mentioned -- this is at slide 90 --

23     *Arctic Cat* also made very clear why this burden of

24     production exists:  to protect the patent holder from

25     large-scale fishing expeditions and gamesmanship.

1    judgment is appropriate, and you can find it here.  Thank

2    you, Your Honor.

3                    THE COURT:  Okay.  Thank you.  I think we got

4    to all but one of the motions you were hoping to argue.  I

5    know it's not as ideal as it would be if we were all in the

6    courtroom together, but you all did a fine job covering a

7    lot of information.

8                    I think I have everything I need for resolving

9    these many motions.  If I do need anything further, I will

10   let you know.

11                   I hope everybody gets to enjoy the weekend; and

12   please stay safe; and thanks again for the argument.  Good-bye.

13                   (Telephonic oral argument hearing ends at 4:42

14   p.m.)

15

16        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

17

18                           /s/ Brian P. Gaffigan
                             Official Court Reporter
19                             U.S. District Court

20

21

22

23

24

25

# EXHIBIT G

# EXHIBIT 13a.2
# Plaintiffs' Reply to
# MIL No. 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| 3G LICENSING, S.A.,<br>KONINKLIJKE KPN N.V., and<br>ORANGE, S.A.,<br><br>                              Plaintiffs,<br><br>                   v.<br><br>HTC Corporation,<br><br>                              Defendant. | C.A. No. 17-cv-83-GBW<br><br>**JURY TRIAL DEMANDED**<br><br>**UNDER SEAL** |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE TO BAR
HTC'S UNTIMELY MARKING THEORY AND EVIDENCE**

This Court expressly held that it "is *not* going permit [Defendants'] untimely-produced evidence to be admitted," Ex. 1 at 17 (emphasis added), and that its decision resulted in the "elimination of its marking affirmative defense." Ex. 2 at 4 & n.2. Those plain facts rebut HTC's false representation that the Court's "order *only* denied summary judgment of no pre-suit damages." Opp. at 1 (emphasis from HTC). HTC next pretends that the Court's express exclusions applied only to its *codefendants* (but somehow not HTC), going so far as claiming that the Court "did not address HTC's distinction." *Id*. That is wrong. The Court specifically identified HTC's rebuttal expert report as part of the "untimely-produced evidence" that it excluded. Ex. 1 at 17.

HTC's opposition next engages in a years-late attack on the Court's orders, arguing that HTC met its burden during fact discovery by referring to "various versions of the iPhone." Opp. at 1. But the Court already rejected that argument—finding (correctly) that HTC "'did not identify *any* specific products' until *after* fact discovery closed" and thus excluding HTC's untimely evidence and theory altogether. Ex. 1 at 17 (emphasis added in original by this Court).

HTC is also wrong that identifying products in expert reports or at summary judgment is enough. Opp. at 3. As this Court did here, the court in *Solas Oled Ltd. v. Samsung Elecs. Co., Ltd.*, found that the defendant had failed to properly disclose specific products during fact discovery and thus held that "*Samsung is precluded from raising a marking defense at trial*." 2022 WL 1912873, at *2–3 (E.D. Tex. May 30, 2022) (emphasis added). Notably, in doing so, the Court expressly distinguished the *Semcon* and *Ultravista* cases HTC now cites as either pre-*Arctic Cat* or not involving prejudice. *Id.* at *2. And here, this Court already found that HTC's untimely disclosures *did* prejudice Plaintiffs. Ex. 1 at 18 n.6. Simply put, by not timely identifying any specific products, HTC completely deprived Plaintiffs of any opportunity to conduct the discovery needed to respond. HTC has no answer for this; it simply ignores such prejudice in its opposition.

# EXHIBIT 13b
# Plaintiffs' MIL No. 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> HTC Corporation, <br><br> Defendant. | C.A. No. 17-cv-83-GBW <br><br> **JURY TRIAL DEMANDED** <br><br> **UNDER SEAL** |

**EXHIBIT 13(B): PLAINTIFFS' MOTION IN LIMINE TO BAR
HTC'S UNTIMELY PRODUCED DOCUMENTS**

In a prior MIL ruling, this Court struck HTC's attempt to rely on documents produced for the first time after fact discovery had closed, noting "[t]he prejudice and surprise to KPN cannot now be cured" and chastising HTC for its apparent "willingness to flout the discovery rules." Ex. 1 (May 18, 2023 Order) at 3–4. Indeed, this Court observed that HTC "previously [had been] singled out by the Court for belated disclosures," including "new disclosures *made by defendants' experts in their report*." *Id*. at 3 & n.4 (emphasis added). Unfortunately, HTC has not learned its lesson.

HTC now is trying (again) to do exactly what this Court said will not be permitted: rely on materials never produced in fact discovery to try to support its positions. Specifically, HTC amended its exhibit list on September 15, 2023 (weeks after the parties' agreed disclosure deadline) to include eight new third-party website printouts (the "Untimely Documents") that HTC had *never before produced*. *See* Exs. 2–9 (Untimely Documents); Ex. 10 (HTC's Sept. 15, 2023 Production Email). Plaintiffs immediately objected and asked HTC to explain. Ex. 11 (Pltf. Sept. 18 Email) at 1. HTC did not deny the documents had never previously been produced but claimed HTC's non-infringement expert had cited them (for the first time) in his rebuttal expert report.

As Plaintiffs told HTC, that was not acceptable. Because HTC never identified or produced these third-party documents during fact discovery, Plaintiffs had no opportunity to do discovery on them. Yet HTC admitted that it now intends to have its expert discuss them as a focal point of HTC's non-infringement position. That is unfair and tremendously prejudicial. Further, with trial set to being in a matter of weeks, "[t]he prejudice and surprise" to Plaintiffs from HTC's ambush "cannot now be cured."[1] Ex. 1 (May 18, 2023 Order) at 3–4. As a result, just as it did before, the

---

[1] In evaluating a failure to disclose, the Court considers "(1) the prejudice or surprise to a party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood of disruption to the trial schedule; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) the importance of the evidence to the party offering it." *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007).

Court should bar HTC from introducing or referencing documents like the Untimely Documents. *See id.*; Fed. R. Civ. P. 37(c)(1); *Schmidt v. Mars, Inc.*, 587 F. App'x 12, 16 (3d Cir. 2014) (affirming district court's exclusion of documents party failed to produce in discovery).

### A. HTC Never Produced the Untimely Documents During Fact Discovery, Despite Plaintiffs Serving Numerous Discovery Requests Directly On Point.

Plaintiffs claim that HTC infringed the '091 Patent by making, selling, using, and/or importing "videophone[s]" capable of certain actions (or practicing related methods). Whether the Accused Products can perform video calls is a key factual issue. Accordingly, Plaintiffs served requests at the beginning of discovery asking HTC to produce "[a]ny document describing the capability and/or operation of any telecommunication device made, used, offered for sale, and/or sold by You … ***to conduct video and/or mixed media calls***." Ex. 12 (RFP No. 22). HTC agreed to do so, *id.*, yet produced basically ***nothing*** supporting its non-infringement position.

Instead, months after fact discovery had closed, HTC ambushed Plaintiffs with a rebuttal report in which its expert cited the Untimely Documents to argue that the Accused Products are ***not*** capable of conducting video calls. *See* Ex. 13 (Jeffay Rebuttal) at ¶¶ 256–263. Notably, each of the Untimely Documents is a third-party website printout that HTC's expert says shows that the Accused Products do not ███████████████████████████ *Id.* At a minimum then, even ignoring the other issues with such evidence (hearsay, authenticity, etc.), each was plainly responsive to RFP 22 and should have been produced by HTC during fact discovery.

And this is no technical violation. HTC's late disclosure is especially prejudicial because HTC has long known that Plaintiffs '091 infringement proofs ████████████████████ ████████████████████████████████████████████████ ████████████████████ *See, e.g.*, Ex. 14 (Plaintiffs' Infringement Contentions) at 2–3. And as numerous HTC corporate representatives confirmed, ████████████████████



Plaintiffs relied on HTC's representations and its failure to produce ███ in conducting their discovery and building their case (including in conducting discovery from some of the third parties whose websites HTC now is trying to cite).

## B. The Court Should Exclude HTC's Untimely Documents.

Only one result is appropriate here: exclusion. Certainly, Plaintiffs have been prejudiced by HTC's late disclosure, which precluded any opportunity to conduct responsive discovery. *See Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005) (excluding evidence where plaintiff had no opportunity to conduct rebuttal discovery without "disrupt[ing] the trial process").

And HTC has no excuse for its late disclosures. During the parties' meet and confer, HTC argue it was *entitled* to have its expert ambush Plaintiffs with new evidence and Plaintiffs should have filed their motion sooner if they had a problem with HTC doing so. HTC is wrong. The law is clear and, as this Court said in its May 18 Order, "that HTC resorts to blame-shifting is not persuasive." Ex. 1 (May 18, 2023 Order) at 4. The Court should exclude the Untimely Documents.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| 3G LICENSING, S.A.,<br>KONINKLIJKE KPN N.V., and<br>ORANGE, S.A.,<br><div align="right">Plaintiffs,</div><br>v.<br><br>HTC CORPORATION,<br><div align="right">Defendant.</div> | C.A. No. 17-cv-83-GBW<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL** |

<u>**DECLARATION OF HUNTER VANCE**</u>

I, Hunter Vance, hereby declare and state as follows:

1.      I am over the age of eighteen and, if called as a witness, could competently testify to the matters set forth herein.

2.      I am an attorney at Susman Godfrey, LLP, and counsel to Plaintiffs 3G Licensing, S.A., Koninklijke KPN N.V., and Orange S.A. I am a member in good standing of the State Bar of Texas.

3.      I make this declaration in support of Plaintiffs' Motion in Limine to Bar HTC's Untimely Produced Documents.

4.      Attached as **Exhibit 1** is a true and correct copy of excerpts of the Court's May 18, 2023 Order.

5.      Attached as **Exhibits 2–9** are, respectively, true and correct copies of the documents HTC has identified on its exhibit list as DTX 284–DTX 291.

6.      Attached as **Exhibit 10** is a true and correct copy of a September 15, 2023, email from Daniel Trevino.

1

7.      Attached as **Exhibit 11** is a true and correct copy of a September 18, 2023, email from Hunter Vance.

8.      Attached as **Exhibit 12** is a true and correct copy of excerpts of HTC's Responses and Objections to Plaintiffs' First Set of Common Requests for Production.

9.      Attached as **Exhibit 13** is a true and correct copy of excerpts of the October 24, 2019, Expert Report Regarding Non-Infringement of the '818, '091, and '564 Patents by Prof. Kevin Jeffay, Ph.D.

10.     Attached as **Exhibit 14** is a true and correct copy of excerpts of the March 25, 2019, First Disclosure of Final Infringement Contentions By Plaintiffs 3G Licensing, S.A., Koninklijke KPN N.V., and Orange S.A.

11.     Attached as **Exhibit 15** is a true and correct copy of excerpts of the transcript of the May 3, 2019, deposition of Howard Chen.

12.     Attached as **Exhibit 16** is a true and correct copy of excerpts of Defendant HTC Corporation's First Supplemental Responses and Objections To Plaintiff's Fifth Set Of Common Interrogatories (Nos. 23-24).

13.     The above cited exhibits have been highlighted or otherwise marked for emphasis at my direction.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED in Houston, Texas this 21ˢᵗ day of September, 2023.

                                        */s/ Hunter Vance*
                                        Hunter Vance

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

3G LICENSING, S.A.,
KONINKLIJKE KPN N.V., and
ORANGE, S.A.,

        Plaintiffs,

v.

HTC CORPORATION,

        Defendant.

C.A. No. 17-83-GBW

## **ORDER**

Having reviewed the Proposed Joint Pretrial Order (D.I. 657) submitted by Plaintiff Koninklijke KPN N.V. ("KPN") and Defendant HTC Corporation ("HTC Corp." or "HTC")[1] regarding the jury trial scheduled to begin on June 5, 2023, **IT IS HEREBY ORDERED** that:

1. With respect to KPN's motion *in limine* No. 1, KPN seeks to "preclude HTC from attempting to show that KPN's subjective beliefs can prove either essentiality or a FRAND encumbrance" by, for example, specifically moving to exclude HTC's expert Dr. Kevin Jeffay's opinions on this issue. D.I. 657-13, Ex. 13(a) at 2-3 (citing D.I. 82 (HTC Answer) at 31); *Id.* at 57 (". . . KPN is seeking to exclude Dr. Jeffay's opinion that 'evidence of essentiality' includes, for example, (1) KPN purportedly 'express[ing] its belief in the essentiality of [U.S. Patent No. 6,212,662 ("the '662 patent")] to a third party, [Jeffay Report] at ¶ 596, and (2) purported KPN 'state[ments]' 'that the '662 patent was essential.' *Id.* at ¶ 595. That section of his report (¶¶ 593–606), along with similar arguments from

---

[1] In light of the Court granting HTC's Motion to Sever (D.I. 641), the Court has scheduled a trial between Plaintiffs 3G Licensing, S.A. and Orange, S.A. and Defendant HTC to begin on October 10, 2023. D.I. 645.

1

HTC or its witnesses, are flatly inconsistent with this Court's holdings . . ."). This Court held in this case that "essentiality depends on objective findings, i.e., whether practicing the relevant standard *in fact* infringes the asserted patents and whether non-infringing alternatives *in fact* exist." *See* D.I. 486 at 6-7 (Memorandum Opinion) (citing *Intel Corp. v. Future Link Sys., LLC*, 268 F. Supp. 3d 610-12 (D. Del. 2017)).[2] Although HTC marginalizes this Court's Memorandum Opinion as concerning "unrelated patents of 3G Licensing," D.I. 657-13, Ex. 13(a) at 45, it is nevertheless law of the case, and HTC will not be able to carry its burden on whether the '662 patent is actually essential or FRAND-encumbered solely with evidence of KPN's subjective beliefs. KPN, however, does not explain why it did not move to exclude Dr. Jeffay's opinion before the deadline for *Daubert* motions. *See* D.I. 516. And the Court at this stage cannot conclude that the evidence would be inadmissible for any purpose, such as impeachment. Accordingly, KPN's motion *in limine* No. 1 is **DENIED** without prejudice to KPN making appropriate objections at trial.

2. With respect to KPN's motion *in limine* No. 2, KPN seeks to preclude HTC from using documents HTC did not produce during fact discovery including (1) pleadings in an action between KPN and Motorola Mobility purportedly related to HTC's marking defense, and (2) "non-public Qualcomm documents that were obtained by a *different* defendant in a *different* case and that HTC never obtained for use in this case." D.I. 657-14, Ex. 13(b) at 3. Although HTC does not dispute that it never produced these documents to KPN during fact discovery, which is an untimely disclosure under Federal Rule of Civil Procedure 37(c)(1), HTC argues that its failures were harmless. D.I. 657-14, Ex. 13(b) at 249. This

---

[2] This Memorandum Opinion granted summary judgment in favor of Plaintiff on HTC's FRAND affirmative defenses on patents not at issue in the upcoming trial.

Court disagrees. As for the Motorola pleadings, the Court previously denied HTC's motion for summary judgment of no pre-suit damages noting HTC's failure to disclose those documents—a failure left uncured until HTC added them to its exhibit list. D.I. 657-14, Ex. 13(b), Ex. 2 at 23 ("Further, while HTC now asks the Court to take judicial notice of Motorola Mobility's claim in the related case to having a license from KPN, HTC failed to provide Plaintiffs timely notice of its intent to rely on the documents from the related case, and Plaintiffs have not had a fair opportunity to respond to this argument. This is another reason summary judgment is not appropriate.").[3]  As for the non-public Qualcomm documents, although HTC told KPN that it "intend[ed] to serve Qualcomm with a subpoena requesting production of the same documents," HTC does not refute that it did not do so, and did not disclose to KPN that HTC intended to use the Qualcomm documents even when pressed—again, waiting until the pretrial exhibit list stage to identify them. D.I. 657-14, Ex. 13(b), Ex. 8 at 5-6, Ex. 9 at 3. The prejudice and surprise to KPN cannot now be cured. That HTC offers no plausible excuse for its actions—especially after being previously singled out by the Court for belated disclosures[4]—evinces HTC's willingness to flout the discovery rules. HTC does not argue that the Motorola or Qualcomm

___

[3] Although HTC accuses KPN of similarly using unproduced deposition testimony (the "Clarke transcript"), KPN represents that it did produce the Clarke transcript to HTC in this action, rendering HTC and KPN's behavior dissimilar. D.I. 657-14, Ex. 13(b) at 263. Even if the Clarke transcript was problematic, KPN has represented it intends to use the Clarke transcript only if the Court permits HTC to use unproduced Motorola document—which this Court will not do. *Id.*

[4] In addition to admonishing HTC at summary judgment, the Court observed HTC's problematic disclosures in denying HTC's motions to strike. D.I. 657-14, Ex. 13(b), Ex. 1 at 6:7-12 ("Often, it appeared to me, that arguably there were new disclosures made by defendants' experts in their report to which plaintiffs chose to fairly respond, which they have a right to do, and plaintiffs probably could have alternatively chosen to throw in motions to strike but they didn't do that.")

3

documents are critical to its case. And that HTC resorts to blame-shifting is not persuasive. Pursuant to *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904-05 (3d Cir. 1977), KPN's motion *in limine* No. 2 is **GRANTED** and the Motorola pleadings and Qualcomm documents are excluded.

3.  With respect to HTC's motion *in limine* No. 1,[5] HTC seeks to preclude KPN from (1) arguing that acts by non-party HTC America ("HTCA") are evidence of infringement by HTC; and (2) referencing HTCA, or HTCA and HTC, collectively as "HTC" in a "a manner that would impute the acts of HTCA on HTC." D.I. 657-15, Ex. 14(a) at 1 n.1. Although KPN dismissed HTCA from this action, if HTC chooses to reintroduce HTCA into this case by arguing that HTCA (not HTC) makes sales to U.S. customers, KPN will be permitted to introduce evidence that HTCA's role is controlled by HTC such that HTC would remain directly liable for those sales. *See Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1378 (Fed. Cir. 2017) (holding that a party can be "liable for infringement under § 271(a) if it acts through an agent . . . or contracts with another to perform one or more" infringing acts); *F45 Training Pty Ltd. v. Body Fit Training USA Inc.*, C.A. No. 20-1194-WCB, 2022 WL 17177621, at *17 (D. Del. Nov. 17, 2022), *dismissed*, No. 2023-1304, 2023 WL 2965590 (Fed. Cir. Apr. 17, 2023) (explaining that a "party can be held liable for direct infringement if that party directs or controls the infringing activity of another"). The parties do not quarrel over differentiating between the HTC and HTCA entities as appropriate. Accordingly, HTC's motion *in limine* No. 1 is **DENIED**.

---

[5] HTC does not number its motions in *limine*, but included "Defendant HTC Corporation's Motion in Limine to Preclude Argument that Liability of HTC Corporation Can Be Based on the Acts of Non-Party HTC America, Inc." first (as Ex. 14(a)), which the Court construes as motion *in limine* No. 1.

# EXHIBIT 2

Support

HTC U11 life ∨

# Tech specs: HTC U11 life

Learn about the key features and specifications of the HTC U11 life.

**On this page:**

- Key features
- Specs

## Key features

- Edge Sense - Squeeze to launch any apps and perform actions within an app.
- Google Assistant and Amazon Alexa - Find a restaurant, order food, get directions, and so much more.
- HTC USONIC - HTC USonic earbuds map your inner ear with an advanced sonar-like technology and then creates a sound profile personalized to you.
- Water and Dust Resistance IP67Specs.

- **Battery**
  - Usage time: 13-17 hours
  - Standby time: 672 hours
  - Battery size/type: 2600 mAh
  - Wireless charging type: N/A
- **Keyboard**
  - Touch screen with on-screen keyboard

- **Anti-theft**
  - Yes
- **Advanced messaging**
  - Yes
- **Device Unlock App**

 Message us on My T-Mobile

HTC3G00447054

- **Memory**

    - 3 GB RAM, 32 GB ROM

    - Supports up to 2 TB microSDXC™ card

- **Operating System**

    - Android™ 7.1.1 with HTC Sense™

- **Processor**

    - Qualcomm® Snapdragon™ 630, Octa-core

- **Emergency Alerts (WEA)**

    - See T-Mobile.com/WEA

- **SIM card**

    - Nano SIM

- **System Manager (Carrier IQ)**

    - Yes

- **T-Mobile Video Calling**

    - No

# Connectivity

- Wi-Fi 802.11 a/b/g/n
- Wi-Fi web browsing
- Wi-Fi sharing
- Wi-Fi Calling 2.0
- NFC

- USB 2.0 Type C
- Bluetooth® 5.0
- Chrome
- Tethering APN

# Network

- **4G LTE**

    - 3, 7, 20, 1, 13, 5

- **4G (HSPA+)**

    - 2, 4, 12

- **3G / 4G (HSPA / UMTS / HSPA+)**

    - B5/B4/B2/B1

- **2G (GSM, GPRS, and EDGE)**

    - 850/900/1800/1900

- **HD Voice Capable**

    - Yes

- **VoLTE Capable**

    - Yes

# Camera

- 16 MP (rear facing)
- 16 MP (front facing)

- Face detection
- Message us on My T-Mobile

HTC3G00447055

- Flash
- Auto focus

- Video recording

# Multimedia

- Stereo audio (with headset)
- Audio support: MP3, AAC, AAC+, eAAC, WMA, MPEG4, WAV, MIDI
- Image support: GIF87A, GIF87A, PNG

- Video support: 3GP, MP4, AVI, WMV
- HAC support: M1, M2, M3, M4, T3



Was this helpful?

Yes

No



Share this page



Ask a question.

Search the community

Need more help? Ask our Community

Message us on My T-Mobile

HTC3G00447056

## Manage your T-Mobile account
Use the T-Mobile App or your My T-Mobile account



## Contact us
We're here to help

OTHER T-MOBILE SITES ⌄

POPULAR TASKS ⌄

BUSINESS ⌄

FEATURED SERVICES ⌄

© 2002-2019 T-MOBILE USA, INC.

    Español

Message us on My T-Mobile

**HTC3G00447057**

ABOUT

INVESTOR RELATIONS

PRESS

CAREERS

DEUTSCHE TELEKOM

PUERTO RICO

PRIVACY POLICY

PRIVACY & SECURITY RESOURCES

CONSUMER INFORMATION

PUBLIC SAFETY/911

TERMS & CONDITIONS

TERMS OF USE

ACCESSIBILITY

OPEN INTERNET

Message us on My T-Mobile

HTC3G00447058

# EXHIBIT 3

Support

HTC One (M8)  ∨

# Tech specs: HTC One M8

Learn about the key features and specifications of the HTC One (M8).

**On this page:**

- Key features
- Specs

## Key features

- HTC BlinkFeed™ — Live home screen
- HTC Zoe™ — Your gallery brought to life
- HTC BoomSound™ — Dual frontal stereo speakers
- HTC Sense 6.0

## Specs

- **Battery**
    - Usage time: 20 hours
    - Standby time: 496 hours
    - Embedded rechargeable Li-polymer battery
- **Keyboard**
    - Touch screen with on-screen keyboard

- **Anti-theft**
    - No
- **Advanced messaging**
    - No
- **Device Unlock App**
    - Message us on My T-Mobile

HTC3G00447059

Support

HTC One (M8)

storage (card not included)

- **Operating System**

  - Android 5.0.1

- **Processor**

  - Qualcomm Snapdragon™ 801, quad-core
    CPUs

- **System Manager (Carrier IQ)**

  - Yes

- **T-Mobile Video Calling**

  - No

# Connectivity

- Wi-Fi 802.11 a/b/g/n/ac
- Wi-Fi web browsing
- Wi-Fi sharing
- Wi-Fi Calling 2.0
- NFC

- USB 2.0
- Bluetooth® 4.0
- Android browser
- Tethering APN
- USB Type microUSB 2.0

# Network

- **4G LTE**

  - 1,4,5,17

- **4G (HSPA+)**

  - 1,4,5,17

- **3G / 4G (HSPA / UMTS / HSPA+)**

  - 850 / 900 / 1700 / 1900

- **2G (GSM, GPRS, and EDGE)**

  - 850 / 900 / 1800 / 1900

- **HD Voice Capable**

  - No

- **VoLTE Capable**

  - No

# Camera

- Primary camera: HTC UltraPixel™ camera ,
  BSI sensor, pixel size 2.0 um, sensor size 1/3",
  f/2.0, 28mm lens

- Flash
- Auto Focus
- Face D

Message us on My T-Mobile

HTC3G00447060

## Support

HTC One (M8) ⌄

- ... recording with HDR video
- Secondary camera: capture depth information
- Digital zoom

# Multimedia

- Stereo audio (with headset)
- HTC BoomSound™ Dual frontal stereo speakers with built-in amplifiers
- HTC Sense Voice
- Audio supported formats:
- Playback: .aac, .amr, .ogg, .m4a, .mid, .mp3, .wav, .wma (Windows Media Audio 10)

- Recording: .aac
- Video supported formats:
- Playback:.3gp, .3g2, .mp4, .wmv (Windows Media Video 10), .avi (MP4 ASP and MP3)
- Recording: .mp4
- HAC support: M3, T4

---

Was this helpful?

Yes

No

---

Share this page

Message us on My T-Mobile

HTC3G00447061

Support

HTC One (M8) ⌄

## Ask a question.

Search the community

Need more help? Ask our Community

## Manage your T-Mobile account
Use the T-Mobile App or your My T-Mobile account



## Contact us
We're here to help

OTHER T-MOBILE SITES ⌄

POPULAR TASKS ⌄

BUSINESS ⌄

FEATURED SERVICES ⌄

© 2002-2019 T-MOBILE USA, INC.

Message us on My T-Mobile

HTC3G00447062

Support

HTC One (M8)  ∨

PRESS

CAREERS

DEUTSCHE TELEKOM

PUERTO RICO

CONSUMER INFORMATION

PUBLIC SAFETY/911

TERMS & CONDITIONS

TERMS OF USE

ACCESSIBILITY

OPEN INTERNET

Message us on My T-Mobile

HTC3G00447063

# EXHIBIT 4

Support

HTC One M8 for Windows

# Tech specs: HTC One M8 for Windows

Learn about the key features and specifications of the HTC One M8 for Windows.

**On this page:**

- Key features
- Specs

## Key features

- Nokia Services Catalog
- Windows Phone 8.1
- Cortana personal digital assistant
- Live tiles

## Specs

| Specs | |
|---|---|
| **• Battery** | **• Operating System** |
| ○ Usage time: 11 hours | ○ Windows Phone 8.1 |
| ○ Standby time: 260 hours | **• Processor** |

💬 Message us on My T-Mobile

HTC3G00447064

## Support

HTC One M8 for Windows

- **Memory**
  - 2 GB RAM, 32 GB ROM
  - Supports up to 64 GB MicroSD card
- **Network**
  - 2G/3G/4G/LTE Capable
  - GSM/GPRS/EDGE: 850/900/1800/1900 MHz
  - 850/AWS/1900/2100 MHz with HSPA+ up to 42 Mbps
  - 700/AWS MHz (Band 4 and 17)

- **Emergency Alerts (WEA)**
  - See T-Mobile.com/WEA
- **HD Voice Capable**
  - Yes
- **VoLTE Capable**
  - No
- **Anti-theft**
  - No

### Connectivity

- Wi-Fi 802.11 b/g/n/ac (2.4 GHz)
- Wi-Fi web browsing
- Wi-Fi sharing

- Micro USB
- Bluetooth® 4.0
- Infrared
- T-Mobile Video Calling: No
- Advanced messaging: No

### Web

- Internet Explorer Mobile 10
- HTML 5.0, XHTML 1.2
- CSS 1.0/2.1 (Partial)/ 3.0 (Partial)

- RTP/RTSP

### Camera

- 4 MP Duo camera (rear facing)
- 5 MP (front facing)
- Digital zoom
- Flash

- Auto focus
- Face detection
- Multiple shooting modes
- Video recording

### Multimedia

💬 Message us on My T-Mobile

HTC3G00447065

Support

HTC One M8 for Windows ∨

Was this helpful?

Yes

No

Share this page



Ask a question.

Search the community

Need more help? Ask our Community

Manage your T-Mobile account

Use the T-Mobile App or your My T-Mobile ac    💬 Message us on My T-Mobile

HTC3G00447066

Support

HTC One M8 for Windows

## Contact us
We're here to help

| OTHER T-MOBILE SITES | ∨ |
| --- | --- |

| POPULAR TASKS | ∨ |
| --- | --- |

| BUSINESS | ∨ |
| --- | --- |

| FEATURED SERVICES | ∨ |
| --- | --- |

© 2002-2019 T-MOBILE USA, INC.

    Español

ABOUT

INVESTOR RELATIONS

PRESS

CAREERS

DEUTSCHE TELEKOM

PUERTO RICO

PRIVACY POLICY

PRIVACY & SECURITY RESOURCES

CONSUMER INFORMATION

PUBLIC SAFETY/911

TERMS & CONDITIONS

TERMS OF USE

ACCESSIBILITY

OPEN INTERNET



HTC3G00447067

# EXHIBIT 5

Support

HTC One M9  ⌄

# Tech specs: HTC One M9

Learn about the key features and specifications of the HTC One M9.

**On this page:**

- Key features
- Specs

## Key features

- 5" Full HD (1920X1080) screen
- 20 MP main camera
- All-metal body with dual-tone finish
- HTC BoomSound with Dolby Audio

## Specs

- **Battery**
  - Usage time: 20 hours
  - Standby time: 325 hours
  - Battery size/type: 2840 mAh
- **Keyboard**
  - Touch screen with on-screen keyboard
- **Memory**

- **Anti-theft**
  - No
- **Advanced messaging**
  - No
- **Device Unlock App**

 Message us on My T-Mobile

HTC3G00447068

## Support

HTC One M9  ˅

- **Processor**
    - MSM8994 2.0/1.5GHz Octa-Core Snapdragon

- **System Manager (Carrier IQ)**
    - Yes
- **T-Mobile Video Calling**
    - No

# Connectivity

- Wi-Fi 802.11 a/b/g/n/ac
- Wi-Fi web browsing
- Wi-Fi sharing
- Wi-Fi Calling 2.0
- NFC

- USB 2.0
- Bluetooth® 4.0
- Android Chrome browser
- Tethering APN
- USB Type microUSB 2.0

# Network

- **4G LTE**
    - 2, 4, 5, 7, 12, 13, 17
- **4G (HSPA+)**
    - 2, 4, 12
- **3G / 4G (HSPA / UMTS / HSPA+)**
    - B5/B4/B2/B1
- **2G (GSM, GPRS, and EDGE)**
    - 850/900/1800/1900

- **HD Voice Capable**
    - Yes
- **VoLTE Capable**
    - No

# Camera

- 20 MP (rear facing)
- 4 MP (front facing)

- Auto focus
- Face detection
- Multiple shooting modes

Message us on My T-Mobile

HTC3G00447069

## Support

HTC One M9 ⌄

- Stereo audio (with headset)
- Audio support: MP3, AAC, WMA, MPEG4, WAV, MIDI, AMR, OGG, M4A
- Image support: GIF87A, GIF87A, PNG

- Video support: 3GP, 3G2, MP4, AVI, WMV
- HAC support: M4, T4

### Was this helpful?

Yes

No

Share this page

   



### Ask a question.

Search the community

### Need more help? Ask our Community

Message us on My T-Mobile

HTC3G00447070

## Support

HTC One M9  ⌄

### Manage your T-Mobile account
Use the T-Mobile App or your My T-Mobile account



### Contact us
We're here to help

| | |
|---|---|
| **OTHER T-MOBILE SITES** | ⌄ |
| **POPULAR TASKS** | ⌄ |
| **BUSINESS** | ⌄ |
| **FEATURED SERVICES** | ⌄ |

© 2002-2019 T-MOBILE USA, INC.

    Español

Message us on My T-Mobile

HTC3G00447071

## Support

HTC One M9  ∨

| | |
|---|---|
| CAREERS | PUBLIC SAFETY/911 |
| DEUTSCHE TELEKOM | TERMS & CONDITIONS |
| PUERTO RICO | TERMS OF USE |
| | ACCESSIBILITY |
| | OPEN INTERNET |

💬 Message us on My T-Mobile

HTC3G00447072

# EXHIBIT 6

Support

HTC One LTE (M7)  –

# Tech specs: HTC One M7

Learn about the key features and specifications of the HTC One LTE.

**On this page:**

- Key features
- Specs

## Key features

- HTC BlinkFeed™ — Live home screen
- HTC Zoe™ — Your gallery brought to life
- HTC BoomSound™ — Dual frontal stereo speakers
- HTC Sense 6.0

## Specs

- **Battery**
  - Usage time: 20 hours
  - Standby time: 496 hours
  - Battery size/type: 2600 mAh
  - Embedded rechargeable Li-polymer battery
- **Keyboard**
  - Touch screen with on-screen keyboard

- **Anti-theft**
  - No
- **Advanced messaging**
  - No
- **Device Unlock App**


Message us on My T-Mobile

HTC3G00447073

## Support

HTC One LTE (M7) —

- Android 4.4.2 KitKat with HTC Sense™
- **Processor**
  - Qualcomm Snapdragon™ 801, quad-core CPU

- **System Manager (Carrier IQ)**
  - Yes
- **T-Mobile Video Calling**
  - No

# Connectivity

- Wi-Fi 802.11 a/b/g/n/ac
- Wi-Fi web browsing
- Wi-Fi sharing
- Wi-Fi Calling 2.0
- NFC

- USB 2.0
- Bluetooth® 4.0
- Android browser
- Tethering APN
- USB Type microUSB 2.0

# Network

- **4G LTE**
  - 1,2,4,5,17
- **4G (HSPA+)**
  - 1,2,4,5,17
- **3G / 4G (HSPA / UMTS / HSPA+)**
  - 850 / 900 / 1700 / 1900
- **2G (GSM, GPRS, and EDGE)**
  - 850 / 900 / 1800 / 1900

- **HD Voice Capable**
  - No
- **VoLTE Capable**
  - No

# Camera

- Dual 4 MP (rear facing)
- 5 MP (front facing)

- Auto focus
- Face detection
- Multiple shooting modes
- Message us on My T-Mobile

HTC3G00447074

## Support

HTC One LTE (M7)  ⌄

- Stereo audio (with headset)
- Audio support: MP3, AAC, WMA, MPEG4, WAV, MIDI, M4A, OGG, AMR
- Image support: GIF87A, GIF87A, PNG

- Video support: 3GP, 3G2, MP4, AVI, WMV
- HAC support: M3, T4



Was this helpful?

Yes

No

Share this page

   



Ask a question.

Search the community

Need more help? Ask our Community

Message us on My T-Mobile

HTC3G00447075

Support

HTC One LTE (M7)  ⌄

## Manage your T-Mobile account
Use the T-Mobile App or your My T-Mobile account



### Contact us
We're here to help

| OTHER T-MOBILE SITES | ⌄ |
|---|---|

| POPULAR TASKS | ⌄ |
|---|---|

| BUSINESS | ⌄ |
|---|---|

| FEATURED SERVICES | ⌄ |
|---|---|

© 2002-2019 T-MOBILE USA, INC.

     Español

💬 Message us on My T-Mobile

HTC3G00447076

Support

HTC One LTE (M7) –

CAREERS

DEUTSCHE TELEKOM

PUERTO RICO

PUBLIC SAFETY/911

TERMS & CONDITIONS

TERMS OF USE

ACCESSIBILITY

OPEN INTERNET

Message us on My T-Mobile

HTC3G00447077

# EXHIBIT 7



BEST PRODUCTS⌄  REVIEWS⌄  NEWS⌄  VIDEO⌄  HOW TO⌄  SMART HOME⌄  CARS⌄  DEALS⌄  ⊕  Q  

MOBILE

# Verizon set to launch voice-over-LTE service nationwide

The VoLTE network, which will provide high-definition voice service and a new Skype-like video chat service, will debut for consumers in the coming weeks.

BY MARGUERITE REARDON ♡ | AUGUST 26, 2014 5:00 AM PDT

f  🐦  F  ⑤  💬28

Verizon Wireless customers will soon be able to experience clearer and crisper phone calls and a Skype-like video chat service, the company said Tuesday.

Verizon is preparing the nationwide launch of its voice over LTE service in the coming weeks, which will enable these new services, executives from the company said. As part of the launch, Verizon customers will get access to a new high-definition voice service, which greatly improves the quality of the sound of a voice call. Customers will also be able to make or accept video phone calls from their device without launching an app to do so.

"Once you experience the HD quality voice,



HTC3G00447078

you don't want to go back," Greg Dial, executive director of mobile services for Verizon, said in a pre-

Verizon Wireless is launching a new video chat service enabled by its new Voice over LTE service.
Verizon Wireless

briefing and demonstration of the new service with reporters. "The tight integration of the video calling feature is also significant. You can launch it right from the dialer. There's no opening a separate app."

Dial explained the video calling capability is built into the service. Verizon will not charge extra for the video chat service, which looks very similar to Apple's FaceTime app, or the HD-quality voice service. HD voice calls will continue to count as regular voice calls over Verizon service plans. For instance, customers who pay for a set amount of voice minutes will still count the VoLTE calls against that allotment. And customers on a share plan will be able to make unlimited voice calls using the voice-over-LTE service just as they would using the traditional phone service.

The video calls will be counted as data. This means that calls made using the video chat feature will count against a customer's data package.

The actual date for the launch of the service as well as the devices that will initially support it have not yet been announced. But Mike Haberman, vice president for the network for Verizon Wireless, said subscribers should stay tuned for more details on the timing of the launch as well as on which devices will initially get the service.

Ad


Adding the voice-over-LTE service, or VoLTE as it's known, will require an over-the-air software update to devices. Haberman and Dial demonstrated the high-definition voice calls and the video chat service on an LG G2. Still, the executives would not comment specifically on which devices will get the software first.

The move to VoLTE is one that every major carrier is working toward. AT&T and T-Mobile have already announced their own VoLTE services. AT&T's service is available in a few select markets. T-Mobile offers its service nationwide. Verizon also plans a nationwide launch.

## How does it work?

Today, Verizon and other wireless providers transmit voice calls over the traditional circuit-switched networks, and subscribers use the newer IP-based 4G LTE network to access the Internet and other "data" services. The VoLTE, service enables wireless operators to use the data network to transmit voice services in the same way they transmit data. And in so doing, the companies are able to offer high quality voice calls, as well as services that look more like what so-called "over-the-top" Internet app developers have offered over the open Internet.

Treating voice like a data service on the 4G data network makes wireless providers' networks operationally more efficient. One source of efficiency is that the transition away from circuit-switched technology to

HTC3G00447079

VoLTE will allow them to reuse older spectrum initially allocated for circuit-switched voice service. Once that spectrum is freed up, the companies can use it to deploy more high-speed data services. This increase in capacity ultimately allows for faster service for subscribers.

video-calling-2.png

Subscribers will be able to switch back and forth between a video call and a voice-only call on their handsets using the new VoLTE service from Verizon Wireless.

Verizon Wireless

For consumers, as mentioned earlier, the two main benefits of the technology are improved voice quality, known as HD voice, and the ability to offer other "embedded" services, such as the video chat service that Verizon is launching.

"The difference between a voice call made over VoLTE and one using the traditional CDMA network is like the difference between talking through a tin can connected with string and a full symphony in CD quality," said Roger Entner, lead analyst at Recon Analytics. "It's night and day."

Entner explained that the noise-cancelling properties for VoLTE are "spectacular." And he added, "You no longer hear the cars racing by when you're talking on a busy street."

## The limitations

But the service isn't without a few catches. For one, the video chat feature and the HD voice will only work when calls are placed between two Verizon customers if each subscriber has a VoLTE-capable phone, and if they are within Verizon's LTE network footprint. As the name of the service suggests, the calls are placed over the 4G LTE network rather than the traditional CDMA network.

Currently, VoLTE calls cannot be made between different wireless operator networks. So even if a Verizon VoLTE-capable device is calling an AT&T VoLTE device, for now the two devices will not be able to use the technology for the call. Instead, the call will revert to the older circuit-switched technology.

The other caveat is that Verizon customers must have the VoLTE capability activated on their devices. Verizon is giving subscribers the option to use VoLTE or not and the service can be switched on and off in the device settings just like the option to use Wi-Fi or not.

Haberman said that the company is offering the choice, despite the fact that the voice quality is superior to traditional circuit-switched calling, because the company recognizes that not every customer may be willing to try it.

"We strongly believe that some people will be ready for the transition," Haberman said. "But we wanted to make sure that people who feel their current voice service is sufficient won't have to change."

HTC3G00447080

While there is some truth to this reasoning, the real reason may have more to do with the fact that VoLTE is still an emerging technology. It is completely different from the technology used in the traditional voice network. And as the service is rolled out, there are likely to be glitches and hiccups, which could disrupt phone calls. Haberman acknowledged this as a potential issue and said that indeed that is one reason why using the service is optional for customers.

"CDMA has been around for 17 years," he said. "It's very predictable."

He added, "There can be cases, like in your home, where the VoLTE experience may not quite be the same as you were getting with CDMA. VoLTE uses different antennas. It's a totally different technology."

## VoLTE is the future

Still, VoLTE is the future of voice communications on all wireless networks, whether wireless customers want it or not. In fact, there have been rumors that Apple may include the feature in the upcoming iOS 8 launch for the iPhone 6.

Once Verizon and other carriers get more experience in real-world deployments, they will refine the technology. And they will eventually make the service interoperable, so that someday every wireless call will sound crystal clear.

For now, the carriers, including Verizon will be busy deploying the service with as little disruption as they can muster. Most experts agree that the HD voice enabled by VoLTE will offer a noticeable difference in terms of the quality of the voice call and that consumers will appreciate it. But few think it will be a top differentiator in terms of choosing a service provider.

"Consumers will appreciate the improved voice calls," said Ross Rubin, principal analyst at Reticle Research. "But is it something they will value beyond faster data? Probably not."

**SHARE YOUR VOICE**

**TAGS**

Mobile     Verizon

 28 COMMENTS

✓ **Next Article:** iPhone 11, Pro and Max: Every spec you need to know ✓

HTC3G00447081

# The best antivirus protection of 2019

Your PC needs protection against malware, and free antivirus software may be enough. Here's what to get for Windows 10, and what's worth paying extra for.

Protect yourself!



Download the CNET app    About CNET    Sitemap    Privacy Policy    Ad Choice    Terms of Use    Mobile User Agreement    Help Center    Licensing

© CBS INTERACTIVE INC.
All Rights Reserved.

AFFILIATE DISCLOSURE
CNET may get a commission from retail offers.

TOP BRANDS

HTC3G00447082

# EXHIBIT 8





NEWS

# Announcing T-Mobile Video Calling

September 02, 2015

**Neville Ray, Chief Technology Officer**

Being the Un-carrier™ means never settling for the status quo. And that's as true for our technology as it is for our industry-rocking Un-carrier benefits. We now reach over 290 million people with America's fastest 4G LTE network. And we're working relentlessly to extend the benefits of our Data Strong™ network and roll out more groundbreaking features to Un-carrier customers.

Last year, we were first to roll out nationwide Voice over LTE (VoLTE), and I promised more rich communications services to come. Then, last month, we gave messaging a massive upgrade and brought SMS and MMS into the mobile Internet age with T-Mobile Advanced Messaging (https://newsroom.t-mobile.com/issues-insights-blog/advanced-messaging-blog.htm). Today, we're doing the same for phone calls with the launch of **T-Mobile Video Calling.**

Of course, there are apps that do video calling. But this isn't another app. T-Mobile Video Calling represents a huge step forward in how Americans make mobile phone calls.

First, T-Mobile Video Calling works right out-of-the-box from your smartphone's dialer. There's no need to search out, download, configure and register additional apps.

And, as you'd expect from the Un-carrier, T-Mobile Video Calling couldn't be simpler to use. Place and receive calls as you normally would—simply choose either the video call button or voice call button. Really. It's that easy.

On devices with T-Mobile Video Calling, small camera icons appear next to contacts with devices able to receive video calls. If the person you're calling can't take video calls, the video call icon is greyed out. We're working with others so you can eventually enjoy built-in video calling across wireless networks.

You can make T-Mobile Video Calls to and from capable devices on any available LTE connection – using data straight from your high-speed data bucket – as well as over Wi-Fi. Like HD Voice calls, T-Mobile Video Calling moves seamlessly between LTE and Wi-Fi. And, if you move off LTE or Wi-Fi to a slower connection, your video call seamlessly switches over to a voice call. If you move back to LTE or Wi-Fi, switch it back to video with a single tap.

⌄

HTC3G00447083

Samsung Galaxy S6 edge+ and Samsung Galaxy Note 5 now have T-Mobile Video Calling available through simple software updates, while the Galaxy S6 and Galaxy S6 edge updates will be available next week. (To update your Samsung device with Video Calling, go to Settings > "About Device" > "Software Update".) By the end of the year, you'll be able to make video calls on three more of our Video Calling-enabled devices, for a total of seven.

This is just the latest example of how the Un-carrier's driving change in wireless. We were first to offer an Android phone and Wi-Fi Calling, first with HD Voice on both LTE and Wi-Fi, first with nationwide VoLTE calling and next-gen Wi-Fi Calling. Last month, we became the first and only in the U.S. to offer Advanced Messaging, upgrading regular SMS with real-time chat and the ability to share photos and videos up to 10MB right out of the box. And today, T-Mobile Video Calling marks the next stage in the evolution of our IP technology and Data Strong network.

It's all part of our total commitment to delivering a next-gen wireless experience to a new generation of wireless customers.

# *Dialer:choose voice or video call*



# *Incoming:slide for voice or video call*

HTC3G00447084



# Call in-progress:option to switch to video



## Connect with us

f (https://www.facebook.com/TMobile)  ▶ (https://www.youtube.com/user/TMobile/custom)  ◎ (https://www.instagram.com/tmobile/)  in

(https://www.linkedin.com/company/t-mobile/)  🐦 (https://twitter.com/TMobile)

Connect with T-Mobile

◎(https://www.instagram.com/tmobile/)   f (https://www.facebook.com/TMobile)   🐦(https://twitter.com/TMobile)   ▶(https://www.youtube.com/tmobile)

English (https://www.t-mobile.com/about-us)   Español (//es.t-mobile.com)

Contact us

+

HTC3G00447085

Support +

T-Mobile for Business +

Ŧ (https://www.t-mobile.com)

(https://www.instagram.com/tmobile/)　f (https://www.facebook.com/TMobile)　(https://twitter.com/TMobile)　(https://www.youtube.com/user/TMobile/custom)

Copyright ©2002-2019 T-Mobile USA, Inc.

ABOUT (https://www.t-mobile.com/about-us)　INVESTOR RELATIONS (//investor.t-mobile.com/investors/default.aspx)　PRESS (https://www.t-mobile.com/news)

CAREERS (https://www.t-mobile.com/careers)　DEUTSCHE TELEKOM (//www.telekom.com/en)　PUERTO RICO (//www.t-mobilepr.com)

PRIVACY POLICY (https://www.t-mobile.com/responsibility/privacy/privacy-policy)　PRIVACY-BASED ADS (https://www.t-mobile.com/responsibility/privacy/privacy-choice/ad-options )

PRIVACY CENTER (https://www.t-mobile.com/responsibility/privacy)　CONSUMER INFORMATION (https://www.t-mobile.com/responsibility/consumer-info )

PUBLIC SAFETY/911 (https://www.t-mobile.com/responsibility/consumer-info/safety/9-1-1)　TERMS & CONDITIONS (https://www.t-mobile.com/responsibility/legal/terms-and-conditions)

TERMS OF USE (https://www.t-mobile.com/responsibility/consumer-info/policies/terms-of-use)　ACCESSIBILITY (https://www.t-mobile.com/responsibility/consumer-info/accessibility-policy)

OPEN INTERNET (https://www.t-mobile.com/responsibility/consumer-info/policies/internet-service)

HTC3G00447086

# EXHIBIT 9

November 20, 2015

share 🐦 f in 📷

# AT&T Launches Video Calling and Advanced Messaging



Starting today, any of our eligible customers with capable devices will be able to start using Advanced Messaging and Video Call. These new services are part of our Rich Communication Services (RCS) platform, which also includes Voice over LTE (VoLTE), HD Voice, Wi-Fi Calling and NumberSync.

With these features, we're leading the way to provide our customers the most complete suite of smart network services. Innovations like this can change the way you stay in touch and get business done.

HTC3G00447087

Advanced Messaging lets you send larger files (up to 10 MB) by text. You know when your message is delivered, when it's read and when the other person is typing their reply. To use this service, you and the person you're messaging must be AT&T postpaid wireless customers with capable devices and within AT&T's coverage area.

Currently, this service is available on the Samsung Galaxy S 5 mini and Samsung Galaxy S 6 Active. With Advanced Messaging, your wireless rate plan's SMS and MMS rates apply but each text or file is counted and billed separately. Both Advanced Messaging and Video Call will be available via a software update. You'll receive a notification to download the update on your device.

We're also launching AT&T Video Call. It lets you make and receive HD Voice calls combined with real-time video. There is no app to download, no separate account to configure, and no username to create.

To use Video Call, you and the person you're calling will need to be AT&T postpaid wireless customers in an AT&T HD Voice coverage area and have a Video Call-capable device. To start, we're launching Video Call on the Samsung Galaxy S 6 Active and will be expanding to other devices soon.

You can easily switch between an HD Voice call and a Video Call from the call screen – and even add another person to the video call.

Video Calls use both voice and data, which is billed separately under your existing wireless rate plan. To start a Video Call, you need to be connected to the AT&T mobile network in an AT&T HD Voice coverage area.

The heart of AT&T is all about closing distances, making it easier to communicate – whether you're near or far apart. Video Call is a simple concept that can make a big difference in the quality of your communications, no matter if you use it to keep up with your family in another state or work with colleagues on a project. Advanced Messaging gives you that "real-time" feedback and confirmation that your message was read or received and lets you know the other person is writing back.

For more information on these services visit
http://www.att.com/advancedmessaging and http://www.att.com/videocall.

HTC3G00447088

*1* **Advanced Messaging**: **Charges:** *Your wireless rate plan's SMS/MMS rates apply*. **Each text/file attachment counts and is charged as a separate SMS/MMS.** *This may impact Capped Messaging plans or Pay-Per-Use customers.* **Incompatible Services/Features**: *Advanced Messaging requires an account that is set up for HD Voice. HD Voice is incompatible with AT&T Smart Limits, Office Direct & OfficeReach. Visit att.com/hdvoice for more information. Advanced Messaging also will not work if messaging or data has been blocked on your line. Device selection is limited at this time. For additional Advanced Messaging details, see http://www.att.com/advancedmessaging.*

*2* **AT&T Video Call**: *Not available in all areas.* **Usage and Charges:** *Each Video Call uses both voice and data (unless on Wi-Fi). The voice portion counts towards voice minutes and video portion counts as data usage under your existing wireless rate plan.* **Requirements:** *Device selection is limited at this time. Unless disabled, Video Call capability is displayed to other AT&T Video Call-capable customers.* **Wi-Fi:** *Once started or received on the mobile network, Video Calls automatically switch to Wi-Fi if your device accesses an available Wi-Fi Internet connection. An AT&T wireless network connection is still required even while on Wi-Fi. Voice and data charges do not apply to Video Call over Wi-Fi. If you move in or out of Wi-Fi coverage while using Video Call, your call will disconnect unless you have AT&T HD Voice coverage.* **Incompatible Services and Features:** *AT&T Video Call requires an account that is set up for HD Voice. HD Voice is incompatible with AT&T Smart Limits, Office Direct and OfficeReach. Visit att.com/hdvoice for more information. For more details on AT&T Video Call, see http://www.att.com/videocall,*

# Search News

Search News       🔍

# Recent News

## **AT&T Provides Update to Shareholders**

John Stephens, AT&T's Chief Financial Officer, spoke today at the Communications & Entertainment conference in Los Angeles where he discussed the company's plans for the remainder of 2019 and into 2020. Learn more.

**Read More →**

## **FirstNet Helps Coordinate Hurricane Response**

FirstNet supported federal, state and local agencies in coordinating storm response and recovery by staged network assets for quick deployment

HTC3G00447089

**Read More →**

## AT&T to Webcast Presentation by Randall Stephenson at Goldman Sachs Conference on September 17

AT&T chairman and CEO's keynote will be available for replay at AT&T Investor Relations.

**Read More →**



## Samsung Galaxy Note10 and Galaxy Note10+ Coming to AT&T

Read More →

HTC3G00447090



## AT&T to Add Second Samsung Smartphone to Mobile 5G Portfolio in 2019

Read More →

HTC3G00447091



## AT&T to Offer More Mobile 5G Devices

**Read More →**

Privacy Policy      Terms of Use      Accessibility      Contact Us

© 2019 AT&T Intellectual Property. All rights reserved.

HTC3G00447092

EXHIBIT 10

| From: | Treviño, C. Daniel |
|---|---|
| To: | Hunter Vance; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Lexie White; Andres Healy; Joanna Stanley |
| Cc: | W&C 3G/KPN v. HTC; Ou, Philip; Chaikovsky, Yar; Nathan R. Hoeschen; John Shaw; SKparalegals@shawkeller.com |
| Subject: | 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits |
| Date: | Friday, September 15, 2023 4:52:11 PM |
| Attachments: | 2023-09-15 HTC Supplemental Trial Exhibit List.pdf |
| | 2023-09-15 HTC Supplemental Trial Exhibit List.XLSX |

EXTERNAL Email

Counsel,

Attached for service is HTC Corporation's supplemental trial exhibit list.  Exhibit nos. 269-305 are new additions.

Linked below are compressed files containing production volumes HTC3G051 & 52 and a PDF/XLS set of the new trial exhibits.

https://amsfs.whitecase.com/ngdox/workspaces/9d1a79a7-63a3-450f-96ea-bd07330ff2f6/99f98e1a-6e20-4ab4-a934-165f217d7012

Please advise if you have any issues accessing the link.

Sincerely,

C. Daniel Treviño

**C. Daniel Treviño** | Senior Paralegal
**T** +1 650 213 0328   **E** daniel.trevino@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

===================================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

===================================================================================

EXHIBIT 11

**Hunter Vance**

| | |
|---|---|
| **From:** | Hunter Vance |
| **Sent:** | Monday, September 18, 2023 5:20 PM |
| **To:** | Ou, Philip |
| **Cc:** | W&C 3G/KPN v. HTC; Chaikovsky, Yar; Nathan R. Hoeschen; John Shaw; SKparalegals@shawkeller.com; Treviño, C. Daniel; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Lexie White; Andres Healy; Joanna Stanley |
| **Subject:** | RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits |
| **Attachments:** | 2023-09-18 HTC Supplemental Trial Exhibit List w_ objs.XLSX |

Phil,

See Plaintiffs' objections to the new exhibits on HTC's list from last Friday.

In particular, note that we have objected to DTX 284-291, which appear to be various third-party website printouts that HTC never produced during the fact discovery period (and indeed that HTC only just produced last Friday, nearly 4.5 years after the fact discovery period closed.) It appears that HTC now intends to have its expert rely on these undisclosed, untimely documents to make noninfringement arguments regarding the alleged operation of the Accused Products.

That is improper and prejudices Plaintiffs given that we never had any opportunity to conduct responsive discovery regarding these third-party printouts. For example, HTC lists what it purports to be printouts from T-Mobile's website (DTX 284-288, 290). Plaintiffs have had no opportunity to conduct discovery on T-Mobile regarding these documents— this is even worse because both parties *did* subpoena T-Mobile during fact discovery, along with other carriers, yet HTC waited until long *after* discovery closed to produce these untimely, unauthenticated website printouts.

Please confirm by tomorrow at **12PM EST** whether HTC will withdraw those exhibits. To the extent HTC refuses, Plaintiffs will file a motion in limine to exclude HTC's untimely documents. If so, here's our proposed briefing schedule. It is necessarily compressed given that HTC waited until just last Friday (after the opening MIL deadline) to produce and list these documents.

- Plaintiffs serve opening MIL by 9/22 at 6PM EST
- HTC serves response by 9/25 at 6PM EST
- Plaintiffs serve reply by 9/27 at 4PM EST (to incorporate into 5PM EST Pretrial Order filing.)

Best,

**Hunter Vance**| **Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

---

**From:** Treviño, C. Daniel <daniel.trevino@whitecase.com>
**Sent:** Friday, September 15, 2023 4:49 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Ou, Philip <philip.ou@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com
**Subject:** 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

<mark>EXTERNAL Email</mark>
Counsel,

Attached for service is HTC Corporation's supplemental trial exhibit list.  Exhibit nos. 269-305 are new additions.

Linked below are compressed files containing production volumes HTC3G051 & 52 and a PDF/XLS set of the new trial exhibits.

https://amsfs.whitecase.com/ngdox/workspaces/9d1a79a7-63a3-450f-96ea-bd07330ff2f6/99f98e1a-6e20-4ab4-a934-165f217d7012

Please advise if you have any issues accessing the link.

Sincerely,

C. Daniel Treviño

**C. Daniel Treviño**  |  Senior Paralegal
**T**  +1 650 213 0328    **E**  daniel.trevino@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

============================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


============================================================================

# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V. and ORANGE S.A., | C.A. No. 17-083-LPS-CJB |
| Plaintiffs, | |
| v. | |
| HTC CORPORATION, and HTC AMERICA INC., | |
| Defendants. | |

## HTC CORPORATION AND HTC AMERICA, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF COMMON REQUESTS FOR PRODUCTION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants HTC Corporation and HTC America, Inc. (collectively "HTC") hereby submit the following responses and objections to Plaintiffs' First Set of Common Requests for Production.

## GENERAL OBJECTIONS

1. HTC makes the objections and responses herein based on its interpretation and understanding of Plaintiffs' First Set of Common Requests for Production and based on its current knowledge, understanding, and belief as to the facts and information available to it as of the date of the responses.  Discovery is in its early stages and is ongoing.  Consequently, HTC continues to investigate the facts relating to this action.  Accordingly, these responses are given without prejudice to HTC's right to use or rely on at any time, including trial, subsequently discovered information omitted from these responses by inadvertence or mistake.

2. These responses shall not constitute an admission by HTC that any of the Requests for Production, any of the responses, or any documents identified in connection

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Subject to, and without waiving its objections, HTC responds as follows:  HTC will produce non-privileged responsive documents to the extent such documents exist and are located after a reasonable search.

**REQUEST NO. 22:**

Any document describing the capability and/or operation of any telecommunication device made, used, offered for sale, and/or sold by You, and/or imported by You, from August 9, 2011, to present that were and/or are capable of utilizing and/or making use of a United States LTE and/or UMTS telecommunications network to send and/or receive data and/or other information, including to conduct video and/or mixed media calls, and further are capable of discontinuing such calls and initiating a voice call.

**RESPONSE TO REQUEST NO. 22:**

In addition to and without limiting the foregoing General Objections and Objections to Instructions and Definitions, HTC objects to this Request as overly broad, unduly burdensome, and not relevant to any party's claims or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Subject to, and without waiving its objections, HTC responds as follows:  HTC will produce non-privileged responsive documents to the extent such documents exist and are located after a reasonable search.

**REQUEST NO. 23:**

Any document describing the capability and/or operation of any telecommunication device made, used, offered for sale, and/or sold by You, and/or imported by You, from January 31, 2011, to present that were and/or are capable of utilizing and/or making use of a United States cellular telecommunications network to send and/or receive data and/or other information, including messages and/or requests, and also are capable of utilizing a Universal Subscriber Identity Module (USIM) and/or a Universal Integrated Circuit Card (UICC).

**RESPONSE TO REQUEST NO. 23:**

In addition to and without limiting the foregoing General Objections and Objections to Instructions and Definitions, HTC objects to this Request as overly broad, unduly burdensome, and not relevant to any party's claims or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Subject to, and without waiving its objections, HTC responds as follows:  HTC will produce non-privileged responsive documents to the extent such documents exist and are located after a reasonable search.

and not relevant to any party's claims or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Subject to, and without waiving its objections, HTC responds as follows:  HTC will produce non-privileged responsive documents to the extent such documents exist and are located after a reasonable search.

SHAW KELLER LLP

DATED:  October 2, 2017          By:  */s/ Philip Ou*
                                        John W. Shaw (No. 3362)
                                        I.M. Pei Building
                                        1105 North Market Street, 12th floor
                                        Wilmington, DE 19801

                                        OF COUNSEL:

                                        Yar R. Chaikovsky (admitted Pro Hac
                                        Vice)
                                        Philip Ou (admitted Pro Hac Vice)
                                        Jonas Herrell (admitted Pro Hac Vice)
                                        PAUL HASTINGS LLP
                                        1117 S. California Avenue
                                        Palo Alto, CA 94304
                                        Telephone:  (650) 320-1800
                                        Facsimile:  (650) 320-1900

                                        Attorneys for Defendants
                                        HTC CORPORATION and HTC
                                        AMERICA, INC.

EXHIBIT 13

EXHIBIT 14

EXHIBIT 15

EXHIBIT 16

# EXHIBIT 13b.1
# Defendant's Opposition to MIL No. 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3G LICENSING, S.A.; | ) | |
| KONINKLIJKE KPN N.V.; | ) | |
| ORANGE S.A., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 17-cv-00083-GBW |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| HTC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT HTC CORPORATION'S OPPOSITION TO PLAINTIFFS' EXHIBIT 13(B) MOTION IN LIMINE**

OF COUNSEL:
Yar R. Chaikovsky
Philip Ou
Bruce Yen
Radhesh Devendran
Shashank Chitti
Jake Gold
WHITE & CASE LLP
3000 El Camino Real, 2 Palo Alto Square
Suite 900,
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213 8158
yar.chaikovsky@whitecase.com
Philip.ou@whitecase.com
bruce.yen@whitecase.com
radhesh.devendran@whitecase.com
shashankchitti@whitecase.com
jakegold@whitecase.com

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendant HTC Corporation*

Just three weeks before trial, Plaintiffs seek the extreme sanction of excluding public third-party webpages they have had in their possession for over four years.  Shockingly enough, one of the exhibits Plaintiffs seek to exclude is an exhibit from ***their own*** exhibit list that they used during a deposition in May 2019. *Compare* Ex. 8 *with* Ex. A (PX-376). Clearly, Plaintiffs had access to these public webpages during fact discovery. And the webpages at issue were cited by HTC's expert Dr. Jeffay in his rebuttal report served over four years ago that made clear HTC and its expert would rely on such evidence for non-infringement. Moreover, HTC's 30(b)(6) witness told Plaintiffs during fact discovery ████████████████████████████ ████████████████████████████████████. And Plaintiffs produced carrier webpages just a month ago, and included them in their own exhibit list.

Plaintiffs never sought to depose Dr. Jeffay or to exclude his opinions relying on such webpages. Instead, they waited in silence for four years until the eve of trial to seek exclusion of such evidence. The *Pennypack* factors do not support such an "extreme sanction." Plaintiffs admit the webpages they seek to exclude are relevant to a key factual issue. And there is no prejudice. Plaintiffs' expert considered these exhibits and responded to Dr. Jeffay's opinions. Plaintiffs also had four years to request leave for additional discovery, but did not. Thus, any prejudice raised now is self-inflicted. To the contrary, when HTC timely sought to exclude confidential licenses Plaintiffs had in their possession for nearly a year before producing with their expert reports, the Court said such concerns were more properly addressed through "cross-examination and presentation of competing evidence at trial." D.I. 329. The same should apply here, or otherwise those licenses should also be excluded.  *See* Exhibit 14(a) (HTC's Contingent Motion *in Limine* No. 1). Plaintiffs should not be rewarded for lying in wait for over four years.

**A.      Plaintiffs' Have Been Aware of HTC's Intent to Rely on The Webpage Exhibits for Over Four Years**

This case concerns video calling ████████████████████████████

████████████████  As Plaintiffs admit, "[w]hether the Accused Products can perform video calls is a key factual issue." Mot. at 2. When asked how to determine whether an accused product supports video calling, HTC's 30(b)(6) witness Lawrence Lin testified that ████████████████

███████████████████████████. Ex. B (Lin Tr.) at 116:5-22.  In preparing his opinions, Dr. Jeffay identified ██████████████████████████████████



Ex. C (Jeffay Rebuttal) ¶ 256. Plaintiffs never objected to these webpages, nor did they move to strike them or exclude Dr. Jeffay's opinions. To the contrary, one of the exhibits Plaintiffs now seek to exclude has been on their own exhibit list for over a month, and was used by Plaintiffs during the deposition of another HTC witness, Nigel Newby-House. *Compare* Ex. 8 *with* Ex. A. And Plaintiffs' expert responded to the webpages. Ex. D (Madisetti Reply Report) ¶ 66. It is unsurprising Plaintiffs did not previously object given they produced dozens of documents totaling thousands of pages just last month that they included in their exhibit list, including carrier webpages just like the ones they are now trying to exclude.  Ex. E (PX-346); Ex. F (Index). In fact, for the KPN trial, counsel asked HTC to drop its objections to late produced documents because they were publicly available documents identified in expert reports, and HTC

obliged. Ex. G. Plaintiffs' request to now exclude the same type of evidence is puzzling.

Plaintiffs contend ***third-party*** webpages should have been produced in response to their RFP 22 and ROG 24. They were not in HTC's possession, custody, or control, but were identified by HTC's expert when responding to Dr. Madisetti's infringement report.

Plaintiffs also complain that HTC did not produce any ███████████████ ████████████████████████████████████████████████ █████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ The exhibits Plaintiffs seek to exclude confirm that several accused products did not support video calling at all.

Mr. Lin also explained that ██████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████ And three of the exhibits Plaintiffs seek to exclude establish that T-Mobile, AT&T, and Verizon's networks did not support video calling until years after the alleged date of first infringement.  Ex. 7; Ex. 8; Ex. 9.  One of those (Ex. 9) is on Plaintiffs' own exhibit list.  And these exhibits are corroborated by ████████████████████████████ ██████████████████ Ex. C ¶ 261 (citing Min Lu and Karl Corona declarations). Thus, their admission into evidence would not prejudice Plaintiffs, who have had over four years to develop a response to the exhibits and whose expert did in fact provide rebuttal opinions.

# EXHIBIT A

# EXHIBIT B

# EXHIBIT C

# EXHIBIT D

# EXHIBIT E

🔒 PageVault

| | |
|---|---|
| Document title: | Verizon VoIP Voice Quality Service Level Agreement |
| Capture URL: | https://www.verizon.com/business/terms/us/products/advantage/voicequality/ |
| Page loaded at (UTC): | Thu, 10 Aug 2023 14:24:57 GMT |
| Capture timestamp (UTC): | Thu, 10 Aug 2023 14:25:35 GMT |
| Capture tool: | 10.27.0 |
| Collection server IP: | 3.90.170.83 |
| Browser engine: | Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/108.0.5359.215 Safari/537.36 |
| Operating system: | Windows_NT (Node 16.17.1) |
| PDF length: | 3 |
| Capture ID: | s2fiMeoi6Wejeg7SRRiKhA |
| User: | sg-jstanley |

PDF REFERENCE #:     pZpSNat2qjhqYVpEDdESdW

KPN00417170

Case 1:17-cv-00083-GBW   Document 699-1   Filed 10/04/23   Page 464 of 791 PageID #: 40139

Home / Terms and Conditions / United States / Products and Services / Verizon Voice over IP (VoIP) SLA / Verizon VoIP Voice Quality Service Level Agreement                    Contact Us

# Verizon VoIP Voice Quality Service Level Agreement

Terms and Conditions

Acceptable Use Policy

Asia-Pacific

Canada

Europe, Middle East, and Africa

Latin America

United States

Online Privacy Policy

Products and Services

Verizon Cloud Terms and Conditions

Data Center Colocation

IP Application Hosting

IP VPN Services

Internet Dial

Internet DSL and Internet Cable Services

Internet

Managed Network Services SLA

Verizon Voice over IP (VoIP) SLA

Private IP Service Level Agreement

Satellite Services

Security Services

Terremark Terms and Conditions

Web Center SLA

Verizon IP Contact Center (IPCC) SLA

Global Data Link Service

Digital Millennium Copyright Act (DMCA)

Asia Pacific Service Agreement

Product & Supply Agreement

Global Latency and Packet Delivery SLA

Monthly IP Latency Data

Interconnection Policy for Internet Networks

Internet Abuse Compliance Process

Latency Statistics

Verizon Voice over IP Service – Service Level Agreement

Verizon VoIP is the industry's only true converged voice and data network solution serving both enterprise and small business markets. It is designed with the highest reliability, security and quality standards available.

Verizon offers the following performance Service Level Agreements (SLAs) covering Jitter, Mean Opinion Score (MOS), Network Availability and Time To Repair.

## What are our targets?

Verizon VoIP Service Level Agreements (SLAs) guarantee

Jitter figures of:

> The VoIP Jitter SLA provides that Verizon's contiguous U.S. and Canada Internet Network (as defined in the Guide) monthly jitter performance will not exceed 1.0 millisecond. Performance is measured by periodically collecting data across the contiguous U.S. and Canada Internet Network, from which a monthly average is derived

Mean Opinion Score of:

> Mean Opinion Score is a measure (score) of the audio fidelity, or clarity, of a voice call. It is a statistical measurement that predicts how the average user would perceive the clarity of each call. The VoIP MOS SLA provides that Verizon U.S. and Canada Internet Network MOS performance will not drop below 4.0 where MOS is calculated using the standards-based E-model (ITU-T G.107). Performance is measured by collecting data across the contiguous U.S. and Canada Internet Network, from which a monthly average is derived.

Verizon reserves the right to amend any applicable SLA from time to time effective upon posting of the revised SLA where the SLA is set out or other notice to Customer of the change, provided that in the event of any amendment resulting in a material reduction of the SLAs service levels or credits, Customer may terminate Services without early termination liability (except for payment of all charges up to the effective date of the termination of any such Services) by providing Verizon at least 30 days written notice of termination during the 30 days following posting of such amendment.

View MOS and Jitter statistics

Feedback

**Products, Solutions & Deals**    **About Verizon**    **Manage My Account Online**    **Contact Us**

Products    About Us    Log In/Manage My Account    Contact Us

Plans    Our Company    About My Business    Contact Sales

- Monthly IP Latency Data
- Interconnection Policy for Internet Networks
- Internet Abuse Compliance Process
- Latency Statistics
- Verizon Voice over IP Service – Service Level Agreement

**Products, Solutions & Deals**

Products

Plans

Solutions

Verizon Business Deals

Wireless Devices

Why Verizon

**About Verizon**

About Us

Our Company

Corporate Responsibility

Verizon Foundation

Careers

News

Investors

Site Map

**Manage My Account Online**

Log In/Manage My Account

About My Business

**Follow**

**Contact Us**

Contact Us

Contact Sales

Request a Store Appointment

Contact Wireless Support

Fios Order Status

Contact FiOS, Internet and Phone Service Support

Contact Enterprise Support

Find a Verizon Store

Co-Browse

Real Estate Inquiry Form

**Programs**

Wholesale

Partner Program

Systems Integrator Partners

Technology Partners

For Property Managers

Device Trade-in Program

Wireless Return Policy

Executive Briefing Program

Refer a Business

**Resources**

Business Resources & Insights

Report a Security Vulnerability

WEA Compatibility

Service Guide

Customer Enablement Tools

Recall

Accessibility

**Quick Tasks for Enterprise**

Add to Your Services

Change a Service

Create a Billing Inquiry

Create a Repair Ticket

Disconnect a Service

Move a Service

Check Billing Inquiry Status

Check Repair Ticket Status

Cookies Settings

**Opt In**

Sign up for email alerts

Feedback

verizon✓

Terms & Conditions    Privacy Policy    California Privacy Notice    Your Privacy Choices

Accessibility    About Our Ads    Open Internet    Analytics

© 2023 Verizon

# EXHIBIT F

**3GL Document Production on August 16, 2023**

| BegBates | EndBates | Filename | Volume |
|----------|----------|----------|--------|
| KPN00416191 | KPN00416207 | 3G TR 23.972 V3.0.0.pdf | KPN060 |
| KPN00416208 | KPN00416213 | 3GPP TS 31.101 v4.2.1.pdf | KPN060 |
| KPN00416214 | KPN00416222 | Modelling Radio Admission Control.pdf | KPN060 |
| KPN00416223 | KPN00416232 | Volte wtih SRVCC.pdf | KPN060 |
| KPN00416233 | KPN00416244 | Performance Characterization and Call Reliability.pdf | KPN060 |
| KPN00416245 | KPN00416696 | 3GPP TS 24.301 v13.6.1.pdf | KPN060 |
| KPN00416697 | KPN00416742 | 3GPP TS 36.306.pdf | KPN060 |
| KPN00416743 | KPN00416783 | 3GPP TS 23.401 v0.4.1.pdf | KPN060 |
| KPN00416784 | KPN00417035 | KPN Integrated Annual Report, 2018.pdf | KPN060 |
| KPN00417036 | KPN00417052 | ISDN - It Still Does Something.pdf | KPN060 |
| KPN00417053 | KPN00417061 | ISDN.pdf | KPN060 |
| KPN00417062 | KPN00417065 | A little history abut ISDN.pdf | KPN060 |
| KPN00417066 | KPN00417080 | How to save on Verizon's new no-contract plans.pdf | KPN060 |
| KPN00417081 | KPN00417082 | Sisvel Mobile Communication Program - 3G.pdf | KPN060 |
| KPN00417083 | KPN00417084 | Sisvel Mobile Communication Program - LTE.pdf | KPN060 |
| KPN00417085 | KPN00417112 | Voice & Video over Mobile IP Networks.pdf | KPN060 |
| KPN00417113 | KPN00417132 | A Transport Layer Technology for Improving QoS.pdf | KPN060 |

| KPN00417133 | KPN00417151 | Enhancements to ECRTP with Applications to Robust Header Compression.pdf | KPN060 |
|---|---|---|---|
| KPN00417152 | KPN00417156 | Google Fi is set to gain.pdf | KPN060 |
| KPN00417157 | KPN00417160 | The-Global-ESIM-Market.pdf | KPN060 |
| KPN00417161 | KPN00417164 | How-toAdvanced-Calling.pdf | KPN060 |
| KPN00417165 | KPN00417169 | Mobile App Usage.pdf | KPN060 |
| KPN00417170 | KPN00417172 | httpswww.verizon.combusinesstermsusproductsadvantagevoicequality.pdf | KPN060 |
| KPN00417173 | KPN00417177 | expandedramblings.com_2023-08-10-14-26-29.pdf | KPN060 |
| KPN00417178 | KPN00417198 | S13430960-www.bankmycell.com_2023-08-10-14-36-10.pdf | KPN060 |
| KPN00417199 | KPN00417202 | S13430975-httpswww.htc.comussupporthtc-10-verizonhowtoadvanced-calling.html.pdf | KPN060 |
| KPN00417203 | KPN00417466 | 3GPP TS 23.060 V10.3.0 (2011-03).doc | KPN060 |
| KPN00417467 | KPN00417467 | NOFILENAME010.vsd | KPN060 |
| KPN00417468 | KPN00417468 | NOFILENAME025.vsd | KPN060 |
| KPN00417469 | KPN00417469 | NOFILENAME264.vsd | KPN060 |
| KPN00417470 | KPN00417543 | 3GPP TS 23.003 V10.3.0 (2011-09).doc | KPN060 |
| KPN00417544 | KPN00417544 | NOFILENAME022.vsd | KPN060 |
| KPN00417545 | KPN00417545 | NOFILENAME024.vsd | KPN060 |
| KPN00417546 | KPN00417546 | NOFILENAME033.vsd | KPN060 |
| KPN00417547 | KPN00417547 | NOFILENAME035.vsd | KPN060 |

| KPN00417548 | KPN00418158 | 3GPP TS 24.008 V10.3.0 (2011-06).doc | KPN060 |
|---|---|---|---|
| KPN00418159 | KPN00418159 | NOFILENAME003.vsd | KPN060 |
| KPN00418160 | KPN00418160 | NOFILENAME027.vsd | KPN060 |
| KPN00418161 | KPN00418161 | NOFILENAME030.vsd | KPN060 |
| KPN00418162 | KPN00418164 | ~$PP TS 23.060 V10.3.0 (2011-03).doc | KPN060 |
| KPN00418165 | KPN00418167 | ~$PP TS 23.003 V10.3.0 (2011-09).doc | KPN060 |
| KPN00418168 | KPN00418170 | ~$PP TS 24.008 V10.3.0 (2011-06).doc | KPN060 |
| KPN00418171 | KPN00418178 | 2013 IEEE article Performance of CS Fallback from LTE to UMTS.pdf | KPN061 |
| KPN00418179 | KPN00418188 | Towards Ubiquitous Massive Accesses in 3GPP M2M.pdf | KPN061 |

# EXHIBIT G

# EXHIBIT H

EXHIBIT 13b.2
Plaintiffs' Reply to
MIL No. 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

3G LICENSING, S.A.,
KONINKLIJKE KPN N.V., and
ORANGE, S.A.,

                    Plaintiffs,

          v.

HTC Corporation,

                    Defendant.

C.A. No. 17-cv-83-GBW

**JURY TRIAL DEMANDED**

**UNDER SEAL**

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE TO BAR
HTC'S UNTIMELY PRODUCED DOCUMENTS**

HTC does not dispute that the Untimely Documents are responsive to Plaintiffs' discovery requests; nor does HTC dispute that ***HTC did not produce them during discovery***. Instead, HTC argues it was not required to produce them because they are "third-party webpages" that an HTC witness referenced during his deposition. That is absurd. Frankly, if Mr. Lin was referring to such materials (which Plaintiffs doubt), that only underscores the problem here: HTC knew it intended to rely on such materials and sandbagged Plaintiffs by not timely producing them.

Also wrong is HTC's suggestion that Plaintiffs were not prejudiced by such late disclosure or waited too long to object. Plaintiffs' expert explained that the fact that the documents were "obtained outside the discovery process" handicapped his ability to respond—stating: "[w]ithout more information ... it is impossible to tell" what they were saying. Ex. 17 (Madisetti Reply) at ¶¶ 64–66. And Plaintiffs moved to exclude such evidence at their earliest opportunity: within days of HTC producing such material and identifying them as exhibits. Ex. 10–11. Similarly disingenuous is HTC's claim that Plaintiffs' use of one of those exhibits during a ***marketing*** deposition somehow excuses HTC's failure to produce them during discovery or identify them in response to Plaintiffs' on-point interrogatory.

Finally, also wrong is HTC's claim that Plaintiffs recently produced documents "just like" the Untimely Documents. To be clear, Plaintiffs produced *background* expert materials. ***HTC did the same***, and Plaintiffs have *not* objected to such HTC materials. But there is a tremendous difference between such background materials (which Plaintiffs have no issue dropping from their list) and the ***core non-infringement proofs*** HTC now is trying to sneak into the trial.

In sum, this Court has noted "HTC's willingness to flout the discovery rules" and struck its late evidence, explaining "[t]he prejudice and surprise … cannot now be cured." Ex. 1 (May 18, 2023 Order) at 3–4. The same is true here. The Court thus should strike HTC's late evidence.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A., <br><br>          Plaintiffs, <br><br>      v. <br><br> HTC CORPORATION, <br><br>          Defendant. | C.A. No. 17-cv-83-GBW <br><br> **JURY TRIAL DEMANDED** <br><br> **FILED UNDER SEAL** |

## <u>DECLARATION OF HUNTER VANCE</u>

I, Hunter Vance, hereby declare and state as follows:

1.    I am over the age of eighteen and, if called as a witness, could competently testify to the matters set forth herein.

2.    I am an attorney at Susman Godfrey, LLP, and counsel to Plaintiffs 3G Licensing, S.A., Koninklijke KPN N.V., and Orange S.A. I am a member in good standing of the State Bar of Texas.

3.    I make this declaration in support of Plaintiffs' Reply in Support of Plaintiffs' Motion in Limine to Bar HTC's Untimely Produced Documents.

4.    Attached as **Exhibit 17** is a true and correct copy of excerpts of the Reply Expert Report if Vijay Madisetti on Infringement.

5.    The above cited exhibits have been highlighted or otherwise marked for emphasis at my direction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED in Houston, Texas this 27th day of September, 2023.

*/s/ Hunter Vance*
Hunter Vance

# EXHIBIT 17

# EXHIBIT 13c
# Plaintiffs' MIL No. 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

3G LICENSING, S.A.,
KONINKLIJKE KPN N.V., and
ORANGE, S.A.,

                    Plaintiffs,

          v.

HTC Corporation,

                    Defendant.

C.A. No. 17-cv-83-GBW

**JURY TRIAL DEMANDED**

**UNDER SEAL**

**EXHIBIT 13(C): PLAINTIFFS' MOTION IN LIMINE TO BAR HTC FROM MAKING
IMPROPER CLAIM CONSTRUCTION ARGUMENTS
BASED ON STATEMENTS IN IPR**

Yet again, HTC is attempting to skirt the rules to support its non-infringement positions with improper evidence and arguments. This time, HTC amended its exhibit list weeks after the parties' agreed deadline to identify exhibits to include two Patent Owner Preliminary Responses ("POPRs"). Ex. 1 (HTC Sept. 15, 2023 Email) at 1 (adding DTX 277); Ex. 2 (HTC Sept. 19, 2023 Email) at 1 (adding DTX 308). This alarmed Plaintiffs.

HTC had previously relied on the exact same POPR documents to argue to the Court that Plaintiffs had made various disclaimers, arguing the '091 Patent should be construed to "not require automatic switching without user intervention" and that HTC was entitled to summary judgment as a result. Ex. 3 (Defs' MSJ Br.) at 1. And critically, this Court **rejected** those disclaimer and claim-construction arguments and denied HTC's motion. Ex. 4 (MSJ Op.) at 9–10 (rejecting argument that the claims "do not require automation"). Plaintiffs thus understood that HTC appreciated that its claim construction arguments had been considered and rejected and the matter had been put to rest—a fact confirmed by the absence of those documents on HTC's exhibit list.

So when both documents suddenly reappeared on HTC's list weeks after the deadline (and, not coincidentally, **after** the parties' agreed deadline to serve opening MILs), Plaintiffs immediately objected and asked HTC to confirm that it was not intending to use those documents to re-argue its rejected disclaimer arguments (or any other claim construction arguments) to the jury. Ex. 5 (Pltf. Sept. 19, 2023 Email) at 1. HTC refused. At the ensuing meet and confer, HTC refused to commit to not use its two newly identified documents to re-assert the very claim construction arguments this Court already rejected. Concerned, Plaintiffs pressed HTC to confirm it did not intend to make claim construction and prosecution history arguments to the jury in general. Again, HTC refused, confirming it intends to make exactly such arguments.

The Court should prohibit HTC from doing so. First, the Federal Circuit has squarely held

that "it is improper to argue claim construction to the jury" as HTC apparently intends to do. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009). Second—and worse—this Court **already rejected** HTC's primary POPR-based disclaimer argument. Ex. 4 (MSJ Op.) at 9–10. Accordingly, HTC plainly cannot now re-argue its rejected claim construction positions to the jury.

### A. It Is Improper for HTC to Argue to the Jury That Statements from the Prosecution History Limit the Scope of the Patent's Claims.

As HTC effectively confirmed, it plans to have its expert point to POPR statements to argue to the jury that the patent's claims should be understood and construed in various ways, including to argue that "[t]he '091 patent does not describe automatically initiating a second less media intensive call in response to a call being dropped by the network without any human intervention…" Ex. 6 (Jeffay Rebuttal) at ¶ 247; *see also id.* at ¶¶ 236–246 (extensively citing prosecution history as purported support). HTC's expert similarly plans to argue—again, based on the POPR—that "the claims exclude … in-call modifications." *Id.* at ¶ 234; *see also id.* at ¶¶ 232–235 (again extensively citing prosecution history as purported support).[1]

None of this is proper. These are fundamental claim-construction arguments. Indeed, as Defendants acknowledged in their motion for summary judgment, "[t]he Court deferred ruling on [an earlier Rule 12(c) motion attacking the '091 Patent under § 101] **due to a claim construction dispute as to whether the claims require automatically switching between modes of communication**." Ex. 3 (Defs' MSJ Br.) at 1 n.2.[2]

And the Federal Circuit has squarely held that "it is improper to argue claim construction

---

[1] HTC's expert fails to even mention that the patent owner *withdrew* the original POPR specifically because it was concerned that the POPR could be misconstrued as describing the claims. *See* Ex. 7 (Notice of Withdrawal). Nor does its expert mention that the PTAB *expunged* the amended POPR, such that it is *not* a part of the prosecution history. Ex. 8 (PTAB Order).

[2] All emphasis in this motion is added.

to the jury." *Cordis*, 561 F.3d at 1337. Indeed, *Cordis* is directly on point with the facts of this case. There the defendant's expert—like HTC's expert does here—wanted to "use the prosecution history of the [patent at issue] to show that [the patent owner] had admitted that stents whose thicknesses were within a particular numerical range were not 'thin-walled.'" *Id*. The Federal Circuit rejected that attempt. It held that such testimony would be "improper" because, "[i]n effect, [the defendant] sought to argue claim construction to the jury." *Id*.

This Court recently reached the same conclusion. It held in *CAO Lighting, Inc. v. Gen. Elec. Co*. that an expert's "reliance on the specification and the prosecution history of the [patent at issue] to support his noninfringement opinions amounts to arguing claim construction" ***and thus excluded such testimony***. 2023 WL 1930354, at *6 (D. Del. Jan. 30, 2023) (Williams, J.).

For these reasons alone, this Court should prohibit HTC from arguing that any statements in the POPRs limit or define the claims of the '091 Patent.

### B. This Court *Already* Rejected HTC's "Automation" Claim Construction Argument.

The simple fact that HTC aims to argue claim construction to the jury is more than sufficient to prohibit such testimony. But HTC's plan is even more improper here because this Court *already* rejected HTC's "automation" argument based on the POPRs. Specifically, relying on statements from the POPRs, HTC argued that the claims should be construed to "not require automatic switching without user intervention." Ex. 3 (Defs' MSJ Br.) at 1, 5, 7.

This Court squarely rejected HTC's argument, including because "***Defendants' own expert*** [had] testified that the '091 patent 'contemplates both automatic and manual initiation of a second call.'" Ex. 4 (MSJ Op.) at 9–10. HTC cannot now ignore the Court's prior order and re-urge its rejected claim construction to the jury to argue noninfringement. This Court's order is law of the case, which "limits relitigation of an issue once it has been decided." *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002).

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A., <br><br>           Plaintiffs, <br><br>     v. <br><br> HTC CORPORATION, <br><br>           Defendant. | C.A. No. 17-cv-83-GBW <br><br> **JURY TRIAL DEMANDED** <br><br> **FILED UNDER SEAL** |

## DECLARATION OF HUNTER VANCE

I, Hunter Vance, hereby declare and state as follows:

1.     I am over the age of eighteen and, if called as a witness, could competently testify to the matters set forth herein.

2.     I am an attorney at Susman Godfrey, LLP, and counsel to Plaintiffs 3G Licensing, S.A., Koninklijke KPN N.V., and Orange S.A. I am a member in good standing of the State Bar of Texas.

3.     I make this declaration in support of Plaintiffs' Motion in Limine to Bar HTC From Making Improper Claim Construction Arguments Based on Statements in IPR.

4.     Attached as **Exhibit 1** is a true and correct copy of a September 15, 2023, email from Daniel Treviño.

5.     Attached as **Exhibit 2** is a true and correct copy of a September 19, 2023, email from Daniel Treviño.

6.     Attached as **Exhibit 3** is a true and correct copy of excerpts of the Opening Brief in Support of Defendants' Motion for Summary Judgment.

7.      Attached as **Exhibit 4** is a true and correct copy of excerpts of this Court's September 29, 2020, Memorandum Opinion.

8.      Attached as **Exhibit 5** is a true and correct copy of a September 19, 2023, email from Andres Healy.

9.      Attached as **Exhibit 6** is a true and correct copy of excerpts of the October 24, 2019, Expert Report Regarding Non-Infringement of the '818, '091, and '564 Patents by Prof. Kevin Jeffay, Ph.D.

10.      Attached as **Exhibit 7** is a true and correct copy of the July 26, 2018, Patent Owner 3G Licensing S.A.'s Notice of Withdrawal of Patent Owner's Preliminary Response and Supporting Declaration in IPR2018-00559.

11.      Attached as **Exhibit 8** is a true and correct copy of a June 27, 2018, Order from the PTAB in IPR2018-00559.

12.      The above cited exhibits have been highlighted or otherwise marked for emphasis at my direction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED in Houston, Texas this 21st day of September, 2023.

_/s/ Hunter Vance_
Hunter Vance

# EXHIBIT 1

## Hunter Vance

| | |
|---|---|
| **From:** | Treviño, C. Daniel <daniel.trevino@whitecase.com> |
| **Sent:** | Friday, September 15, 2023 4:49 PM |
| **To:** | Hunter Vance; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Lexie White; Andres Healy; Joanna Stanley |
| **Cc:** | W&C 3G/KPN v. HTC; Ou, Philip; Chaikovsky, Yar; Nathan R. Hoeschen; John Shaw; SKparalegals@shawkeller.com |
| **Subject:** | 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits |
| **Attachments:** | 2023-09-15 HTC Supplemental Trial Exhibit List.pdf; 2023-09-15 HTC Supplemental Trial Exhibit List.XLSX |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

EXTERNAL Email

Counsel,

Attached for service is HTC Corporation's supplemental trial exhibit list.  Exhibit nos. 269-305 are new additions.

Linked below are compressed files containing production volumes HTC3G051 & 52 and a PDF/XLS set of the new trial exhibits.

https://amsfs.whitecase.com/ngdox/workspaces/9d1a79a7-63a3-450f-96ea-bd07330ff2f6/99f98e1a-6e20-4ab4-a934-165f217d7012

Please advise if you have any issues accessing the link.

Sincerely,

C. Daniel Treviño

**C. Daniel Treviño**  |  Senior Paralegal
**T** +1 650 213 0328    **E** daniel.trevino@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

=======================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

=======================================================================

# EXHIBIT 2

## Hunter Vance

| | |
|---|---|
| **From:** | Treviño, C. Daniel <daniel.trevino@whitecase.com> |
| **Sent:** | Tuesday, September 19, 2023 5:30 PM |
| **To:** | Hunter Vance; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Lexie White; Andres Healy; Joanna Stanley |
| **Cc:** | W&C 3G/KPN v. HTC; Ou, Philip; Chaikovsky, Yar; Nathan R. Hoeschen; John Shaw; SKparalegals@shawkeller.com |
| **Subject:** | 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits |
| **Attachments:** | 2023-09-19 HTC Supplemental Trial Exhibit List.pdf; 2023-09-19 HTC Supplemental Trial Exhibit List.XLSX |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

EXTERNAL Email

Counsel,

Attached for service is HTC Corporation's supplemental trial exhibit list.  Exhibit nos. 306-309 are new additions.

The new trial exhibits are available for download here.

Please advise if you have any issues accessing the link.

Sincerely,

C. Daniel Treviño

**C. Daniel Treviño** | Senior Paralegal
**T** +1 650 213 0328   **E** daniel.trevino@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

===========================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

===========================================================================

# EXHIBIT 3

EXHIBIT 4

# EXHIBIT 5

| | |
|---|---|
| **From:** | Andres Healy |
| **To:** | Hunter Vance; Ou, Philip |
| **Cc:** | W&C 3G/KPN v. HTC; Chaikovsky, Yar; Nathan R. Hoeschen; John Shaw; SKparalegals@shawkeller.com; Treviño, C. Daniel; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Lexie White; Joanna Stanley; Andres Healy |
| **Subject:** | RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits |
| **Date:** | Tuesday, September 19, 2023 10:25:25 AM |

Phil,

We also request to meet and confer regarding HTC's newly disclosed DTX277 exhibit. As you know, HTC sought to rely on that exhibit in support of its 101 motion directed to the 091 patent, which the Court subsequently resolved in Plaintiffs' favor. Further, any attempt to make a prosecution history or disclaimer argument to the jury would be improper. As such, so that we can evaluate whether a MIL is necessary, please explain how HTC intends to use such exhibit.

**Andres C. Healy | Susman Godfrey LLP**

206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON • LOS ANGELES • SEATTLE • NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

**From:** Hunter Vance <HVance@susmangodfrey.com>
**Sent:** Monday, September 18, 2023 3:20 PM
**To:** Ou, Philip <philip.ou@whitecase.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

Phil,

See Plaintiffs' objections to the new exhibits on HTC's list from last Friday.

In particular, note that we have objected to DTX 284-291, which appear to be various third-party website printouts that HTC never produced during the fact discovery period (and indeed that HTC only just produced last Friday, nearly

4.5 years after the fact discovery period closed.) It appears that HTC now intends to have its expert rely on these undisclosed, untimely documents to make noninfringement arguments regarding the alleged operation of the Accused Products.

That is improper and prejudices Plaintiffs given that we never had any opportunity to conduct responsive discovery regarding these third-party printouts. For example, HTC lists what it purports to be printouts from T-Mobile's website (DTX 284-288, 290). Plaintiffs have had no opportunity to conduct discovery on T-Mobile regarding these documents— this is even worse because both parties *did* subpoena T-Mobile during fact discovery, along with other carriers, yet HTC waited until long *after* discovery closed to produce these untimely, unauthenticated website printouts.

Please confirm by tomorrow at **12PM EST** whether HTC will withdraw those exhibits. To the extent HTC refuses, Plaintiffs will file a motion in limine to exclude HTC's untimely documents. If so, here's our proposed briefing schedule. It is necessarily compressed given that HTC waited until just last Friday (after the opening MIL deadline) to produce and list these documents.

- Plaintiffs serve opening MIL by 9/22 at 6PM EST
- HTC serves response by 9/25 at 6PM EST
- Plaintiffs serve reply by 9/27 at 4PM EST (to incorporate into 5PM EST Pretrial Order filing.)

Best,

**Hunter Vance| Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

---

**From:** Treviño, C. Daniel <daniel.trevino@whitecase.com>
**Sent:** Friday, September 15, 2023 4:49 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Ou, Philip <philip.ou@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com

**Subject:** 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

<mark>EXTERNAL Email</mark>

Counsel,

Attached for service is HTC Corporation's supplemental trial exhibit list.  Exhibit nos. 269-305 are new additions.

Linked below are compressed files containing production volumes HTC3G051 & 52 and a PDF/XLS set of the new trial exhibits.

https://amsfs.whitecase.com/ngdox/workspaces/9d1a79a7-63a3-450f-96ea-bd07330ff2f6/99f98e1a-6e20-4ab4-a934-165f217d7012

Please advise if you have any issues accessing the link.

Sincerely,

C. Daniel Treviño

**C. Daniel Treviño**  |  Senior Paralegal
**T**  +1 650 213 0328    **E**  daniel.trevino@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

========================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

========================================================================

EXHIBIT 6

# EXHIBIT 7

IPR2018-00559
U.S. Pat. No. 7,995,091

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

LG ELECTRONICS, INC.,
Petitioner,

v.

3G LICENSING S.A.,
*Patent Owner*

_____

Case IPR2018-00559
Patent No. 7,995,091

_____

**PATENT OWNER 3G LICENSING S.A.'S
NOTICE OF WITHDRAWAL OF
PATENT OWNER'S PRELIMINARY RESPONSE
AND SUPPORTING DECLARATION**



Based on the Board's direction and guidance during the July 18, 2018 and July 25, 2018 teleconferences, Patent Owner 3G Licensing S.A. respectfully submits this notice of withdrawal of Patent Owner's Preliminary Response (Paper No. 6) and the supporting Declaration of Regis J. "Bud" Bates (Paper No. 2001), each filed on May 15, 2018, and requests that the Board accept in their stead Patent Owner's election to waive such response pursuant to 37 C.F.R. § 42.107(b). Counsel for Patent Owner conferred with counsel for Petitioner regarding this notice and was informed that Petitioner has no objection.  The Board directed Patent Owner to file this notice as a separate paper during the July 25, 2018 teleconference.

Good cause supports Patent Owner's request.  Patent Owner submitted its original Preliminary Response and supporting Declaration on May 15, 2018. Patent Owner later submitted an amended Preliminary Response (Paper No. 7) and supporting Declaration (Paper No. 2001)—explaining during the July 18, 2018 teleconference that it did so to clarify and narrow its positions and that Patent Owner intended to rely only on the positions set forth in such amended materials. The Board expunged the amended Preliminary Response and supporting Declaration and denied Patent Owner's request for leave to re-file those papers, but suggested that Patent Owner could withdraw its Preliminary Response and supporting Declaration instead.  (*See, e.g.*, Exhibit No. 3002 at 16:11-22.)

Accordingly, Patent Owner withdraws its Preliminary Response (Paper No. 6) and supporting Declaration of Regis J. "Bud" Bates (Paper No. 2001).  Patent Owner further asks the Board to accept this notice as setting forth Patent Owner's election to waive Patent Owner's right to Preliminary Response pursuant to 37 C.F.R. § 42.107(b).

Dated: July 26, 2018

DEVLIN LAW FIRM LLC

/s/ *Timothy Devlin*
Timothy Devlin
Registration No. 41,706
1306 N. Broom Street, First Floor
Wilmington, DE  19806
(302) 449-9010
tdevlin@devlinlawfirm.com
*Attorney for Patent Owner*

# EXHIBIT 13c.1
# Defendant's Opposition to MIL No. 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3G LICENSING, S.A.; | ) | |
| KONINKLIJKE KPN N.V.; | ) | |
| ORANGE S.A., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 17-cv-00083-GBW |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| HTC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT HTC CORPORATION'S OPPOSITION TO PLAINTIFFS' EXHIBIT 13(C) MOTION IN LIMINE REGARDING IPR STATEMENTS**

OF COUNSEL:
Yar R. Chaikovsky
Philip Ou
Bruce Yen
Radhesh Devendran
Shashank Chitti
Jake Gold
WHITE & CASE LLP
3000 El Camino Real, 2 Palo Alto Square
Suite 900,
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213 8158
yar.chaikovsky@whitecase.com
Philip.ou@whitecase.com
bruce.yen@whitecase.com
radhesh.devendran@whitecase.com
shashankchitti@whitecase.com
jakegold@whitecase.com

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendant HTC Corporation*

On the eve of trial, Plaintiffs seek to exclude their prior inconsistent statements, despite HTC disclosing over four years ago how it intends to use them.  Plaintiffs stated in IPR that the same feature they allege infringes the '091 patent (in-call modification to downgrade a call from video to voice-only) does **not** meet the claims.  To be clear, HTC will not use this to argue claim construction or prosecution disclaimer to the jury.[1]  Rather, such statements reflect an application of the plain meaning of the claims to the same technology at issue here and are necessary to impeach Plaintiffs' witnesses and to rebut their infringement expert, Dr. Vijay Madisetti.

Plaintiffs' MIL seeks to obfuscate that it is **Plaintiffs and Dr. Madisetti** who will improperly construe "call" at trial: "a person of ordinary skill in the art would interpret a 'call' within the context of the '091 Patent to refer to a specific communication between two endpoints **over a specific configuration of network resources**."[2]  Ex. B (Madisetti Reply Report) ¶ 99 (emphasis added).  That claim construction should be excluded, not the IPR statements.  If not excluded, that is another reason why the IPR statements are needed to rebut such improper claim construction.  Confirming their probative value and the lack of prejudice, the IPR statements are consistent with all of the evidence, including Plaintiffs' validity expert Dr. Geoff Cohen's opinions ("the claim limitations explicitly require separate calls, and 'in-call modification' cannot meet those requirements"), with the singular exclusion of Dr. Madisetti's rebuttable, impeachable, and unsupported opinions.  Ex. C (Cohen Rebuttal Report) ¶ 505.  There is no prejudice to Plaintiffs, whereas it is paramount the jury be allowed to hear that 1) Plaintiffs are

---

[1] The Court did not reject HTC's argument that the claims do not require automation.  To the contrary, in denying HTC's motion, the Court relied on an expert's statement that the patent "contemplates **both** automatic **and manual** initiation of a second call." Dkt. 486 at 10 (emphasis added).  At most, the Court rejected HTC's argument that the claims are directed to the abstract idea of "users switching between modes of communication."  *Id*. at 9-10.

[2] Dr. Madisetti also intends to improperly construe "initiate a second call." Ex. B ¶ 138 ("As explained, the '091 Patent demonstrates that initiating a call can include answering a call.").

taking inconsistent positions, and 2) Dr. Madisetti sits on an island by himself with his opinions.

### A.   IPR Evidence May Be Used at Trial (*e.g.*, to Rebut Plaintiffs' Expert), Including for Impeachment

HTC seeks to use these IPR statements for impeachment and as an opposing party statement to rebut Plaintiffs' expert, not for claim construction.[3]  This District has allowed such use of IPR statements at trial.  *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, No. CV 16-284-LPS, 2019 WL 77046, at *1 (D. Del. Jan. 2, 2019) (Stark, J.) ("However, evidence that has been developed in an IPR or other litigation—including testimonial as well as documentary evidence—may be used at trial . . . ."); *Purewick Corp. v. Sage Prods., LLC*, No. CV 19-1508-MN, Dkt. at 2 n.3 (Noreika, J.) ("With this decision, however, the Court is not prohibiting Defendant from relying on specific statements made by Plaintiff or its experts in the PTAB to impeach contrary statements made during the trial."); *Pac. Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*, No. CV 17-1353-LPS-CJB, 2020 WL 954938, at *2 (D. Del. Feb. 27, 2020) (Stark, J.).  As in *Siemens*, HTC agrees to use the IPR statements without referencing the IPR itself beyond generically referring to "another matter" and agrees to redact the exhibits to remove references to the IPR.  "With these protections, the probative value of the evidence is not substantially outweighed by the risk of jury confusion, unfair prejudice, or waste of time." *Siemens*, 2019 WL 77046, at *1.  The cases Plaintiffs cite are inapposite because HTC will not be using the IPR statements to argue claim construction to the jury.

### B.   The Prior Inconsistent IPR Statements Are Relevant For Impeachment and to Rebut Plaintiffs' Expert

In distinguishing prior art that "discloses only an ***in-call modification*** technique from voice to video (and vice versa)," Plaintiffs said "[i]n-call modification is inconsistent with the

---

[3] While the PTAB allowed Plaintiffs to withdraw their statements from consideration, it refused to expunge them from the record.  Such statements are admissible.  F.R.E. 801(d)(2).

'091 patent invention . . . at least because the ongoing call is never discontinued, only upgraded or downgraded to a different bitrate to suit the requirements of the call." Ex. A (Plaintiffs' IPR Statements) at 40-41 (emphasis in original). In other words, in-call modification "would result in there being only a single call" and "there would not exist a first and second call" as required by the claims. *Id.* at 51. But for infringement, Plaintiffs (through Dr. Madisetti) now argue that such in-call downgrading ***does*** initiate a "second call." And Dr. Madisetti intends to impermissibly construe the term "call" at trial in support. Ex. B ¶ 99. HTC's expert Dr. Kevin Jeffay explained how the IPR statements contradict Plaintiffs' infringement theories. Ex. D (Jeffay Rebuttal Report) ¶ 297 ("***Plaintiffs' infringement theories even contradict*** statements made by the patent owner, Plaintiff 3G Licensing . . . .") (emphasis added). He did not use the IPR statements for claim construction, but supported his opinions with source code, carrier documents, and deposition testimony, including testimony from a Qualcomm engineer who said

████████████████████████████████████████████████ *Id.* ¶ 320. Plaintiffs

chose not to depose Dr. Jeffay, nor did they file a *Daubert* motion by the January 2020 deadline.

HTC also cited these specific IPR statements in its motion for summary judgment of ***non-infringement***—not § 101. Dkt. 356 at 9 (cited as Ex. G). There, when it suited them, Plaintiffs acknowledged such evidence was not being used for claim construction, but instead created "***disputed issues of material fact that the jury will need to resolve***." Dkt. 384 at 12 (emphasis added). The Court agreed. Dkt. 486 at 10. In doing so, the Court noted that "[t]he parties did not ask the Court to construe the term 'call,'" confirming the IPR document was not being used for claim construction. *Id.* at 11 n.5. On the eve of trial, Plaintiffs want to vitiate this evidence by disingenuously arguing it now relates to claim construction instead of non-infringement. This last-minute tactic to exclude evidence harmful to Plaintiffs' case should be seen for what it is.

# EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

LG ELECTRONICS INC.,
*Petitioner*

v.

3G LICENSING S.A.,
*Patent Owner*

———————————

Case IPR2018-00559
Patent No. 7,995,091

———————————

## PATENT OWNER'S PRELIMINARY RESPONSE

Under 35 U.S.C. § 42.107

Mail Stop PATENT BOARD
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
*Submitted Electronically via PTAB E2E*

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................1

II.  APPLICABLE LEGAL PRINCIPLES..............................................4

III.  TECHNOLOGY BACKGROUND....................................................6

IV.  THE '091 PATENT ...........................................................................6

  A.  Brief Description of the '091 Patent Disclosure......................6

  B.  Prosecution History of the '091 Patent.................................13

  C.  Person of Ordinary Skill in the Art.......................................15

  D.  Overview of Cited Prior Art .................................................15

    1.  *Ericsson* ......................................................................15

    2.  *3GPP-972* ....................................................................21

    3.  *Priestman* ...................................................................23

    4.  *3GPP-135* ....................................................................24

V.  THE PETITION SHOULD BE REJECTED BECAUSE AT LEAST THREE
OF THE FOUR REFERENCES CITED ARE NOT PRIOR ART PRINTED
PUBLICATIONS ...............................................................................25

VI.  THE PETITION SHOULD BE REJECTED UNDER §  314(A) BECAUSE
PETITIONER IS UNLIKELY TO PREVAIL WITH RESPECT TO ANY
CHALLENGED CLAIM .....................................................................30

  A.  Ground 1 of the Petition Fails: Claims 1-4 and 6-11 Are Not Obvious in
View of *Ericsson*, *3GPP-972,* and *Priestman* ......................................31

    1.  The Asserted References Fail to Teach or Suggest the Elements
"responsive/responding to the discontinuation of an in progress
mixed media telecommunications call" and "receive/receiving
an indication . . . the first call is being discontinued" in
Independent Claims 1 and 8............................................31

    2.  The Asserted References Fail to Teach or Suggest the Elements
"transmit/transmitting . . . at least a first and second media . . .

during a first call" and "the second call not supporting the second media" in Independent Claims 1 and 8 .............................42

3.     Petitioner Provides No Evidence of a Rational Underpinning for a POSITA to Combine the References *Ericsson*, *3GPP-972*, and *Priestman* ......................................................................................45

4.     The Asserted Ground 1 References Do Not Render Obvious Any of the Dependent Claims of the '091 Patent .........................55

B.   Ground 2 of the Petition Fails: Claims 5 and 12 Are Not Obvious in View of *Ericsson, 3GPP-972, Priestman*, and *3GPP-135* ...................55

1.     *3GPP-135* Cannot, and Is Not Asserted to, Cure the Deficiencies of *Ericsson, 3GPP-972, Priestman* ...........................55

2.     The Claim Element "place/placing the first call on hold" Is Not Met in *3GPP-135* ........................................................................56

VII.   CONCLUSION .................................................................................58

ii

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Ancestry.Com DNA, LLC v. DNA Genotek Inc.*,
    IPR2016-01152, Paper 11 (PTAB Nov. 23, 2016) ...................................... 48, 54

*Apple Inc. v. Contentguard Holdings, Inc.*,
    IPR2015-00442, Paper 9 (PTAB July 13, 2015) ................................................4, 5

*Black & Decker, Inc. v. Positec USA, Inc.*,
    646 Fed. Appx. 1019 (Fed. Cir. 2016) ........................................................ 48, 49

*Costco Wholesale Corp. v. Robert Bosch LLC*,
    IPR2016-00035, Paper 23 (PTAB Aug. 12, 2016 ) .............................................49

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009) ..........................................................................50

*Fedex Corp. v. Intellectual Ventures II LLC*,
    IPR2017-00750, Paper 7 (PTAB July 12, 2017) ................................................50

*Galderma Labs., L.P. v. Tolmar, Inc.*,
    737 F.3d 731 (Fed. Cir. 2013) ...........................................................................50

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966) .................................................................................................4

*Hydrodynamic Indus. Co v. Green Max Distribs.*,
    21 F. Supp. 3d 1074 (C.D. Cal. 2014) ................................................................47

*In re Am. Acad. of Sci. Tech Ctr.*,
    367 F.3d 1359 (Fed. Cir. 2004) ..........................................................................54

*In re Arkley*,
    455 F.2d 586 (C.C.P.A. 1972) ............................................................................34

*In re Magnum Oil Tools Int'l.*,
    829 F.3d 1364 (Fed. Cir. 2016) ................................................................. 4, 5, 54

*In re NTP, Inc.*,
    654 F.3d 1279 (Fed. Cir. 2011) ....................................................................5, 53

*In re Omeprazole Patent Litig. v. Apotex Corp.*,
    536 F.3d 1361 (Fed. Cir. 2008) ..............................................................5

*InTouch Techs., Inc. v. VGo Communs., Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014) ..............................................................5

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007).......................................................... 5, 45, 53, 54

*Microsoft Corp. v. Enfish, LLC*,
    662 Fed. Appx. 981 (Fed. Cir. 2016)....................................................47

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008) ............................................................34

*Ortho-McNeil Pharm. v. Mylan Labs*,
    520 F.3d 1358 (Fed. Cir. 2008) .......................................................5, 53

*Ossia, Inc. v. Energous Corp.*,
    PGR2016-00023, Paper 20 (PTAB Nov. 29, 2016) .............................48

*P&G v. Teva Pharms. USA, Inc.*,
    566 F.3d 989 (Fed. Cir. 2009) ...............................................................5

*SAS Institute Inc. v. Iancu*,
    2018 WL 1914661 (Apr. 24, 2018) ...................................................1, 4

*Seabery N. Am. Inc. v. Lincoln Global, Inc.*,
    IPR2016-00905, Paper 12 (PTAB Nov. 3, 2016)..................................48

*Seabery N. Am., Inc. v. Lincoln, Global, Inc.*,
    IPR2016-00904, Paper 12 (PTAB Nov. 3, 2016)..................................49

*SRI Int'l. Inc. v. Internet Sec. Sys., Inc.*,
    511 F.3d 1186 (Fed. Cir. 2008). ...........................................................26

*TriVascular, Inc. v. Samuels*,
    812 F.3d 1056 (Fed. Cir. 2016) ............................................................53

*Unified Patents Inc. v. C-Cation Techs., LLC*,
    IPR2015-01045, 2015 WL 5921227 (P.T.A.B. Oct. 7, 2015)................4

*Unigene Labs., Inc. v. Apotex, Inc.*,
    655 F.3d 1352 (Fed. Cir. 2011) .......................................................4, 54

**Statutes**

35 U.S.C. § 102 ........................................................................................ 25, 26

35 U.S.C. § 103 ...............................................................................................4

35 U.S.C. § 314 ................................................................................... 1, 4, 30

**Rules**

37 C.F.R. § 42.107 ..........................................................................................1

37 C.F.R. § 42.65 ..........................................................................................54

37 C.F.R. §42.108 .......................................................................................1, 4

MPEP § 2143.03 ..........................................................................................50

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| Ex. 2001 | Declaration of Mr. Bates ("Bates Decl.") |
| Ex. 2002 | Curriculum Vitae of Mr. Bates |

Through the undersigned Counsel, Patent Owner, 3G Licensing S.A., submits the following Patent Owner Preliminary Response pursuant to 37 C.F.R. § 42.107 (a).  *See also* 37 C.F.R. § 42.107(b).

## I.   INTRODUCTION

Petitioner LG Electronics Inc. ("Petitioner" or "LG") asks this Board to institute an *inter partes* review of U.S. Patent No. 7,995,091 (the "'091 patent").

The Board should dismiss the IPR Petition and decline to institute a trial in this case.  Petitioner has not met its burden to show a reasonable likelihood that any of the challenged claims of the '091 patent will be found unpatentable, as required by 35 U.S.C. § 314(a) and 37 C.F.R. § 42.108(c).  *See SAS Institute Inc. v. Iancu*, 2018 WL 1914661 (Apr. 24, 2018).

As an initial matter, at least the *Ericsson*, *3GPP-972*, and *3GPP-135* references relied on by Petitioner do not qualify as prior art printed publications under § 102, because there is no actual evidence that these particular references were publicly available and accessible to a person of ordinary skill in the art at that time.  In fact, the closest Federal Circuit case law holds otherwise.

As to Ground 1, Petitioner's § 103 obviousness arguments based on the combination of *Ericsson* in view of *3GPP-972* and *Priestman* fail.  The primary reference *Ericsson* asserted by Petitioner fails to disclose a videophone "responsive to the discontinuation of an in progress mixed media telecommunication call" or "a

1

processor configured to receive an indication that the transmission of data to remote videophone in the first call is being discontinued," as recited in independent claims 1 and 8.  Rather, *Ericsson* teaches only that two individual users must first agree verbally to switch, then manually initiate a request for modification.

It thus comes as no surprise that Petitioner asserts no anticipation argument, based on *Ericsson* or any other reference.  The secondary references, *3GPP-972* and *Priestman*, similarly fail to disclose any of those limitations.  Instead, as set forth below, the secondary references do not cure the deficiencies of *Ericsson*, but instead leave gaps in the collective disclosure that fail to show each element of independent claims 1 and 8.

Petitioner asserts that it would have been obvious to a POSITA to combine the three references to satisfy the claim limitations, but does not provide sufficient motivations to combine them.  On the contrary, the references themselves establish that one of ordinary skill in the art would not look to combine them as asserted by Petitioner.  The references teach away from the proposed combination, and combining them would create redundancies and inconsistencies in the various features.

Specifically, the combination would teach away from each other and from the claims of the '091 patent.  *Ericsson* was focused on improving an existing embodiment that was complex to standardize and difficult to implement, but that

same embodiment is now proposed as the basis for combining with *3GPP-972*. The proposed combination not only undermines the goals of *Ericsson*, but teaches away from the '091 patent's approach of using two separate calls of different bandwidths to seamlessly switch from voice to video calling and vice versa.

Petitioner likewise has failed to meet its burden as to Ground 2, which is alleged obviousness of claims 5 and 12 over *Ericsson* in view of *3GPP-972*, *Priestman* and further in view of *3GPP-135*.  Because Petitioner fails to show independent claims 1 and 8 obvious, any subsequent combinations with *3GPP-135* to show the presence of additional dependent elements are meaningless.  *3GPP-135* undisputedly lacks any disclosure of a videophone configured to place a first call on hold in response to receiving the indication of discontinuation.  In fact *3GPP-135* discloses only a terminal but not the type or capabilities of a terminal, and does not disclose any type of videophone.  It thus fails to cure any deficiencies of the other references with respect to independent claims 1 and 8.

For these reasons, the Petition should be denied.

It is noted that Patentee here does not point out every deficiency of the Petition, but instead reserves the right to make additional arguments and provide additional evidentiary support if required later.  Based only on the Petition's failures set forth below, however, Patentee respectfully submits that the Petition should be denied in its entirety.

3

## II.    APPLICABLE LEGAL PRINCIPLES

"[T]he decision whether to institute an *inter partes* review is discretionary." *Unified Patents Inc. v. C-Cation Techs., LLC*, IPR2015-01045, Paper 15 at 3 (PTAB Oct. 7, 2015) (citing 37 C.F.R. § 42.108 (a)). Petitioner has the burden to show that it is likely to prevail as to at least one claim of the '091 patent.  35 U.S.C. § 314; *SAS Institute Inc. v. Iancu*, 2018 WL 1914661 (Apr. 24, 2018).

Both of Petitioner's Grounds rely on obviousness combinations.  To make a prima facie showing of obviousness under 35 U.S.C. § 103, the Petition must, among other requirements, fulfill the requirements set forth in *Graham v. John Deere Co.*, 383 U.S. 1 (1966), including demonstrating that the cited references, in combination, disclose each element of a challenged claim.  *In re Magnum Oil Tools Int'l.*, 829 F.3d 1364, 1376 (Fed. Cir. 2016); *see also Apple Inc. v. Contentguard Holdings, Inc*., IPR2015-00442, Paper 9 at 12-13 (PTAB July 13, 2015).

Petitioner also has the burden to show there would have been some motivation to combine the asserted prior art, and that the proposed combination would render the patented claims obvious.  "Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination."  *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011) (internal citation omitted); *see also In re*

*Magnum Oil Tools Int'l.*, 829 F.3d at 1376.  Even if individual modifications or choices were obvious, a petition must explain why making all of the changes at once would be obvious.  *Apple Inc. v. Contentguard*, Paper 9 at 16-17 ("[T]he mere fact that individual changes might have been obvious does not make doing all of the changes at once obvious.").

The lack of a technological obstacle to combining references, in and of itself, does not justify a finding of obviousness.  *See In re Omeprazole Patent Litig. v. Apotex Corp.*, 536 F.3d 1361, 1380-81 (Fed. Cir. 2008).  A reason for combining disparate prior art references is critical and should be made explicit.  *InTouch Techs., Inc. v. VGo Communs., Inc.*, 751 F.3d 1327, 1351 (Fed. Cir. 2014) (internal citation omitted).

Hindsight analysis is inappropriate; obviousness must be measured "*at the time the invention was made*."  *Ortho-McNeil Pharm. v. Mylan Labs*, 520 F.3d 1358, 1364 (Fed. Cir. 2008) (emphasis in original).  A petition must demonstrate a rationale to combine prior art references without relying on the patent disclosure itself.  *Apple Inc. v. Contentguard*, Paper 9 at 15, 17; *see also P&G v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 995 (Fed. Cir. 2009).  The Petitioner must not use the patent as a roadmap.  *In re NTP, Inc.*, 654 F.3d 1279, 1299 (Fed. Cir. 2011) (internal citation omitted); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).

## III.    TECHNOLOGY BACKGROUND

The '091 patent describes the state of the art at the time of invention as comprising videophones, video conferencing systems, and mixed media data transmission/communication systems.  According to the Background of the Invention, a problem with mixed media transmissions was that their bandwidth requirements often exceeded the capabilities of the communications networks. (Ex. 1001 at 1:29-35.)  As a result, mobile phones were not typically capable of handling video calls.  In order for users on a voice call to begin communicating via video, then, they were required to end the voice connection and initiate a second call over another device or network capable of handling video.  (Bates Decl. at ¶ 32.)

As the '091 patent clarifies, while hardware-based solutions thus existed to address the bandwidth problem, they would need extensive improvements to the existing infrastructure.  The '091 patent set out to solve the bandwidth problem in software by teaching a method and apparatus for setting up and handling mixed-media calls over substantially existing network infrastructures.  (Ex. 1001 at 1:57-61; Bates Decl. at ¶ 32.)

## IV.    THE '091 PATENT

### A.    Brief Description of the '091 Patent Disclosure

The '091 patent discloses a method for transferring communication between communication channels of differing bandwidth.  (Ex. 1001, Abstract.)  The

method comprises establishing a data communication on one channel having one bandwidth and on a second channel in response to a trigger indicating changes in the data to be communicated.  Specifically, the second channel has a bandwidth providing resources different from the first channel bandwidth.  When a first call involving mixed media formats on one channel is discontinued, the patent teaches responding to the discontinuation by initiating a second call that is less bandwidth-intensive and supports only one media format.  (*Id.*)

The '091 patent teaches an exemplary method of setting up a mixed media telecommunications call, for instance, voice and video, between two video-equipped mobile phones.  The video portion of the call may comprise live video, or pre-stored static, or dynamic video.  (*Id.* at 2:8-19.)  Such a videophone comprises a processor, read only memory (ROM), random access memory (RAM), a camera interface with a video codec, a power module to control power to the phone, a display interface, a display with a touch sensitive screen which displays a user interface, an audio interface, and a radio frequency (RF) interface. (*Id.* at 3:3-4:17.)

The '091 patent explains that this video-equipped mobile device would communicate via two types of channels: dedicated channels allocated to the particular device, and common channels shared by several mobile devices in idle mode.  (*Id*. at 5:22-25.)  Examples of dedicated channels are a traffic channel (TCH) carrying traffic data and signaling data (via a Slow Associated Control

Channel SACCH).  (*Id*. at 5:26-31.)  The traffic data portion of the traffic channel may contain other handshaking signals related to call establishment progress, authentication information, or signaling to initiate a handover.  (5:40-44.)  The common channels may carry yet other signaling information, such as to signify to the mobile device that it is to switch to a dedicated data communication mode.  (*Id*. at 5:50-54.)

The '091 patent relies as its backdrop on the H323, H324, and H340 protocols for multimedia data transmission.  (*Id*. at 7:32-45.)  According to the H323 protocol standard, a mix of audio, video, data, and control signals can be transmitted simultaneously, although at varying bitrates in each direction, using different encoding and decoding algorithms for different types of media.  The standards referenced include call control functions related to signaling, and other signals and commands corresponding to the content of logical channels.  (*Id*. at 7:40-45.)

The overall method is depicted by Figs. 1 and 2, reproduced below:



**Ex. 1001, Fig. 1 (annotated)**

9

The '091 patent in exemplary Fig. 1 teaches that two users, User A (the "Calling Mobile") and User B (the "Called Mobile"), may switch from an ongoing voice call to a video call seamlessly in the following manner.  User 1 first initiates a voice call (Call 1) to User B.  User A selects a soft key to switch to video.  Either side may, during the call, elect to switch to video mode.  (*Id*. at 7:53-56.)  User A's mobile phone puts Call 1 on hold and initiates a new data call (Call 2) to User B.  User B is presented with the option to consent to the incoming video call.  If User B consents, User B's phone places the existing voice call (Call 1) on hold and answers the video call (Call 2).  After the two phones complete the appropriate synchronization of the data channel to carry video, Call 1 is released by the called party and the users continue their video conversation on Call 2.  (*Id*. at 7:52-8:3; Bates Decl. at ¶ 39.)

The '091 patent further describes the reverse sequence, switching from video to voice mode, as shown in exemplary Fig. 2 reproduced below.



**Ex. 1001 Fig. 2**

During a video call (Call 3) between User A and User B, either user may elect to revert to a voice call.  If User A (the caller) selects voice mode, User A's mobile phone releases the video call (Call 3) and makes a new voice call (Call 4). (Ex. 1001 at 8:13-15.)  Alternatively, the patent suggests that User B may choose to switch from a video to a voice call.  (*Id*. at 8:16-20.)

The '091 patent further teaches that either user may initiate a video call or revert to a voice call during the transmission of a video call.  In a described embodiment for instance, either user may press a softkey 50, as shown in Fig. 5,

11

reproduced below, to initiate a video call.  The audio call in progress is put on hold

while the video call is initiated.  (*Id*. at 9:4-9.)



**Fig 5**

Similarly, the '091 patent teaches that either user may press softkey 50

during a video call to either place the video call on hold, switch to a still image, or

revert back to a voice call.  (*Id*. at 9:61-62; Fig. 6.)  When switching from voice to

video, the ongoing call is put on hold while a second call is initiated on a higher

bitrate channel that supports video communication.  When switching from video to

voice, however, the video call is released immediately and a new voice call is

placed. (*Id*. at 8:13-17; Bates Decl. at ¶ 43.)

The '091 patent enables the proliferation of mixed-media calls between

users through a single videophone (or smart phone with video capability).  Callers

12

using any of a number of mixed voice and video communication apps are no longer required to actively disconnect the ongoing call to switch to another mode, either voice to mixed voice-video, or vice versa.  Instead, a simple press of a software button on the user interface of the phone switches communication mode. (*See* Ex. 1001 Figs. 5-11 (showing various user interface options for switching call mode).)

### B.    Prosecution History of the '091 Patent

In a Non-Final Rejection dated August 12, 2010, the U.S. Patent and Trademark Office (USPTO) rejected claims 1-3, 5-6, 8-9, and 10-13 of the application that led to the '091 patent, as obvious over U.S. Pat. No. 5,909,239 ("Lee") in view of U.S. Pat. No. 6,148,072 ("Huang").  The Examiner found that

> Lee discloses a videophone responsive to the discontinuation of an in progress telecommunications call, the videophone comprising: transmitter (reads on communication interface (10, fig. 2) to transmit data carrying at least a first and second media to a remote telephone during a first call, and a processor (100, fig. 2) configured to receive an indication that the transmission of data to the remote videophone in the first call is being discontinued, the processor further being configured to, in response to indication, initiate communication supporting a second media (col. 1 lines 18-22; col. 4, line 65 - col. 5, line 38; col. 6, line 60 - col. 7, line 30).
>
>                                           . . .
>
> Lee discloses a method of responding to the discontinuation of an in progress mixed media telecommunications call comprising: transmitting data carrying at least first and second media to a remote videophone during a first call, receiving an indication that the transmission of data to the remote videophone in the first call is being discontinued, and initiating a second communication to the remote videophone, in response to an indication, the second call not

supporting mixed media (figs. 1-2, 6-8; col. 1 lines 18-22; col. 4, line 65 - col. 5, line 38; col. 6, line 60 - col. 7, line 30).

(Ex. 1002 at 9-10.)

The Examiner also found that while Lee does not disclose initiating a second call not supporting the second media, Huang teaches this limitation. (Ex. 1002 at 9.) Furthermore, while Lee does not disclose a videophone configured to initiate the release of the first call in response to an indication, Huang purportedly teaches this limitation as well.

In an amendment and response dated January 12, 2011, the Applicant responded that Huang fails to teach the "initiate a second call to the remote videophone, the second call not supporting the second media" limitation of the claims. Specifically, the Applicant argued that Huang describes creating a second digital link for transferring video, but the second digital call supports the same media (voice and video) as the first call, thus fails to disclose the "second call not supporting the second media" limitation. (Ex. 1002 at 3-4.)

The Applicant further argued that the combination of Lee and Huang would be improper because Lee is directed to a renegotiation of the type of data being transferred during a single call, while the claims recite the initiation of a second call. Modifying Lee in view of Huang would require a fundamental change in its operation. Second, a skilled person would not have been motivated to combine Lee with Huang as Huang is directed to stepping up from voice to video, not

14

stepping down as the claims require.  Also, Lee already teaches the ability to change communication modes during a call, further undermining a motivation to combine.

No further Office Action or Rejection followed and the claims of the '091 patent were found allowable on March 15, 2011.

### C.     Person of Ordinary Skill in the Art

Patent Owner agrees with Petitioner that a person of ordinary skill in the art ("POSITA") for this patent would have had a Bachelor's degree in Electrical Engineering, Computer Engineering, or Computer Science, and at least 3 years of experience working in the field of wireless communications, or equivalent post graduate academic experience.  (Bates Decl. at ¶ 30.)

### D.     Overview of Cited Prior Art

#### 1.     *Ericsson*

Tdoc N1-99637, In-Call Modification Procedures ("*Ericsson*") (Ex. 1004) is a working group paper that deals with the issue of whether an H.324M multimedia channel may be modified to allow for an initial audio channel followed by an increase in bandwidth to cope with a video channel.  (Ex. 1004 at 1.)  *Ericsson* then discusses the hurdles to implementing such an increase in bandwidth while a call is in progress (also known as "in-call modification").  *Ericsson* is, furthermore, directed to a digital circuit that can support both voice and video, just like the

Huang reference that the applicant distinguished during prosecution of the '091 patent.  (Bates Decl. at ¶ 49.)

By way of background, *Ericsson* explains that the H.324M is comprised of an adaptive multirate (AMR) audio codec, a video codec H.263, and uses H.223 Annex B.  H.223 in turn is comprised of the AMR codec, H.263 codec, a data channel, and an H.245 control channel.  (*See, e.g.*, Ex. 1011 at Fig. 1, reproduced below.)



The H.245 control channel transmits signaling and control information between end points and enables the devices to exchange control and handshaking information necessary for the communication to begin over a channel.  (Bates Decl. at ¶ 51.)  H.245 includes a Flow Control Indication between terminals to determine which is the master and which is the slave, swaps information about the

capabilities of the two end points, opens the logical channels, and other information.  (*Id*. at ¶ 51.)

*Ericsson* proposes three alternatives to improve H.324 efficiency: (1) "Disconnect and connect;" (2) "Connect and disconnect;" and (3) "In-call modification."  (Ex. 1004 at 2-4.)

According to the first alternative—"**Disconnect and connect**"—users on both sides of a first voice-only call would "negotiate verbally" over the audio channel that "something needs to be changed e.g. that a logical video signal should be added."  (*Id*. at 2.)  The call would be disconnected and a second call set up with a bandwidth sufficient to transmit audio over an audio channel and video over a video channel.  (*Id*. at 2.)

The second alternative—"**Connect and disconnect**"—proposes using Multicall to set up a second call with an appropriate bandwidth prior to the first (voice-only) call being disconnected.  (*Id.* at 2; Bates Decl. at ¶ 54.)

*Ericsson* explains that this "Connect and disconnect" scenario functions as follows for two users, User A and User B, once User A consults verbally with User B and adds a video channel.  (Bates Decl. at  ¶ 55.)

(i) User A's mobile device (Terminal A) indicates to User B's mobile (Terminal B) via H.245 inband control signaling that it will be able to receive an increased bit rate;

(ii)  multimedia applications in both terminals request the call control application to modify the bit rate;

(iii) a second call is set up supporting the required higher bandwidth and the multimedia applications are notified;

(iv) when synchronization for the second call is ready, Terminal B can verify that it actually will transfer on the new bit rate by sending a Flow Control Indication;

(v) the first call is disconnected; and

(vi) an H.263 video channel is opened for subsequent video communication between Terminals A and B.  (*Id*. at 2-4.)

The flow is indicated in Fig. 2 of *Ericsson*, reproduced below, with annotations denoting each of the above steps:



***Ericsson* at Fig. 2 (annotated)**

The third alternative proposed by *Ericsson*—"**In-call modification**"—works by changing the bit rate dynamically during an ongoing call, through the use of H.245 Flow Control signals. In-call modification, in theory, allows terminals in an ongoing call to signal to each other to change the bitrate. (Bates Decl. at ¶ 57.)

Using the H.324 protocol, the terminals would use the H.245 control channel to perform the handshaking with each other.  When handshaking is complete, H.324 opens logical channels for the two devices to communicate over different media. (*Id*. at ¶ 57.)  However, *Ericsson* acknowledges that there was no means, in the existing communications technology, to signal from Terminal A to Terminal B that the bit rate needs to be changed.  (Ex. 1004 at 4.)

Ericsson* recommends adopting alternative 1 ("Disconnect and connect") for "simplicity," or alternative 2 ("Connect and disconnect").  (*Id.* at 5.)  However, *Ericsson* recommends against adopting alternative 3 ("In-call modification") as the "appropriate tools" were not yet available and due to the limited time frame for standardization.  (*Id*.)  Following conference presentation, it was determined that all three alternatives proposed by *Ericsson* suffered from flaws, and thus ***none of them were recommended for adoption***:

> Both option one (Disconnect and connect) and two (Connect and disconnect) suffers from the fact that there is a short first and a long second call, also reflected in CDR. As to the CDR, currently there is no mechanism to connect those two calls for charging purposes.
>
> The contributor proposes to implement option 2 (Connect and disconnect)  The problem is that calls needed to be correlated securely which is nearly impossible using current techniques (Ian Park). In-call modification is proposed only for later UMTS phases.
>
> In Edgar Lycksell's opinion neither option 2, nor option 3 needs standardisation.

(Ex. 1015 at 7.)

### 2.    *3GPP-972*

3G TR ab.cde v0.0.2 ("*3GPP-972*") (Ex. 1005) is a technical specification

titled "Multimedia Telephony."  The cover page of *3GPP-972* contains the

following disclaimer: "The present document has not been subject to any approval

process by the 3GPP Organisational Partners and shall not be implemented.  This

Specification is provided for future development work within 3GPP only."  (*Id*. at

1.)

The document sets forth "requirements and working assumptions for

multimedia" for a targeted future revision to the UMTS and GSM standards.  (*Id*.

at 4.)  In relevant part, *3GPP-972* sets forth the following requirements:

- Speech fallback, i.e., if setup of a multimedia call fails, the call will be set up

  as a speech call.  (*Id*. at 5.)

- In-call modification of call type from speech call to multimedia and vice

  versa during the call, using an "outband" or "inband" approach.  Under the

  outband approach, when a user wants to switch to H.324, an in-call

  modification message from the originating terminal would change the mode

  of the call from speech to H.324.  (*Id*. at 12.)  On the other hand, under the

  inband approach, 13 different ways of achieving this switch were known,

although *3GPP-972* notes that further study was required to select the best option.  (*Id*. at 13.)

*3GPP-972* further explains that the proposed application should have "the flexibility to operate within a range of bitrates," with the possibility of "advanced fallback" to provide "in-call upgrade or downgrade."  (*Id*. at 6.)  The stated benefits of *3GPP-972*, therefore, are that users can obtain "sophisticated in-call upgrade or downgrade . . . , depending on the resource availability and end users' intention."  (*Id*. at 6.)

Fig. 5 of *3GPP-972*, reproduced below, is representative of the in-call modification techniques discussed throughout the reference.  However, Fig. 5 shows a mobile device talking from a mobile system to a fixed line Public Switched Telephone Network (PSTN) and/or a digital dial-up telephone/data network (ISDN), not a call between two mobile videophones.  (Bates Decl. at ¶ 62.)



**Figure 5: Mobile to N-ISDN general 3G-324M (H.324/I) call setup procedure**

Moreover, as with *Ericsson*, *3GPP-972* acknowledges that there was no feasible signaling solution at the time for the user rate renegotiation procedure it recommended.  (*Id*. at 5.)

### 3. *Priestman*

PCT Application No. WO 99/59312 to *Priestman* ("*Priestman*") (Ex. 1007) is directed to a mobile videophone capable of transmitting and receiving information in mobile telecommunications systems.  *Priestman* discloses that one configuration of its mobile device allows it to be used as a portable video conferencing device for multiple parties to a call.  (Ex. 1007, Abstract.)  *Priestman* discloses a schematic block diagram of the main functional elements of its device, all of which are standard.  (*Id.* at 7-10.)

### 4. *3GPP-135*

3G TS 22.135 V3.0.0 ("*3GPP-135*") is a technical specification related to

Multicall and describes multicall scenarios and requirements for UMTS phase 1

release '99.  (Ex. 1006 at 6.)  *3GPP-135* describes multicall service scenarios for

when the maximum number of total circuit-switched (CS) calls has been reached.

The standard shall be able to support up to 7 simultaneous CS calls, $N_{CS}$.  (*Id.* at 9.)

In that case, an additional terminating (incoming) call will only be indicated to the

user if the user does not have call waiting capability.  If the number of total calls

has not been reached and a terminating call is indicated, the user may react by (i)

accepting the terminating call by allocating a new bearer for the terminating call or

reusing an established bearer (for instance, by releasing existing calls or putting a

voice call on hold); (ii) rejecting the terminating call; or (iii) ignoring the incoming

call.  (*Id*. at 7-8.)  Fig. 1 of *3GPP-135*, reproduced below, is representative:



**Figure 1: Multicall concept**

*3GPP-135* clarifies that while a user may put one of the calls on hold, only

speech calls can be put on hold.  (*Id*. at 13; Bates Decl. at ¶ 66.)

Case 1:17-cv-00083-GBW   Document 699-1   Filed 10/04/23   Page 582 of 791 PageID #: 48257

## V.   THE PETITION SHOULD BE REJECTED BECAUSE AT LEAST THREE OF THE FOUR REFERENCES CITED ARE NOT PRIOR ART PRINTED PUBLICATIONS

The arguments presented by Petitioner rely in large part on 3rd Generation Partnership Project (3GPP) technical papers allegedly "disseminated without constraint to interested members of the public" at 3GPP meetings in 1999.  (Pet. at 3-5) (citing Exs. 1004, 1005, 1006, 1009.)  But ***Petitioner has not established that these documents were publicly accessible***, and thus were "printed publications" within the meaning of 35 U.S.C. § 102.

According to Petitioner's declarant, Friedhelm Rodermund, these documents are "draft technical specifications, proposals, reports, and other temporary documents to be discussed or considered in relation to 3GPP's telecommunications activities," or "Tdocs."  (Ex. 1009 at ¶ 13.)  Mr. Rodermund further asserted that final versions of technical specifications were also available.  (*Id.* at ¶ 13.)

Mr. Rodermund asserts that these documents were disseminated on a public FTP server.  "At least as early as December 1998, 3GPP's ftp server was freely accessible to the general public with no login, password, or membership requirement."  (*Id*. at ¶ 16.)  Further, he states that 3GPP notified participants at 3GPP meetings "as soon as new or additional documents had been uploaded to 3GPP's ftp server.  Thus, not only did the general public have access to the documents on the ftp server, but some of the most interested members of the public

– those working to develop standards for cellular telecommunication – were personally informed of their availability by email." (*Id*. at ¶ 17.)

However, their mere presence on an FTP server and notice to select interested parties is not enough to establish that they are "printed publications" under § 102. The Federal Circuit considered a similar case, in which materials were posted on a public FTP site for publication review, and interested individuals were directed to the document by email. Those materials were held ***not to be per se publicly available*** within the meaning of 35 U.S.C. § 102. *SRI Int'l. Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1195-97 (Fed. Cir. 2008).

Specifically, *SRI Int'l* concerned a draft paper, the "Live Traffic Paper," that was submitted to a conference after a call for papers. *Id.* at 1190. The paper was posted on an FTP site at a specific FTP address, ftp.csl.sri.com/pub/emerald/ndss98.ps, as noted in an email to a conference organizer. *Id.* at 1190. On several occasions, the author directed people to a subdirectory of this FTP site in order to find other papers related to the same project. *Id.* at 1191. The district court held that the Live Traffic Paper, as posted on the FTP site, was anticipating as a printed publication. *Id.* at 1192.

The Federal Circuit, however, reversed, finding that there was insufficient evidence in the record to show that the Live Traffic Paper was publicly accessible and thus a printed publication. *Id.* at 1195.

The record on summary judgment does not show that an anonymous user skilled in the art in 1997 would have gained access to the FTP server and would have freely navigated through the directory structure to find the Live Traffic paper. To the contrary, the paper's author, Mr. Porras, thought it necessary to provide Dr. Bishop with the full FTP address for the file. Surely Dr. Bishop, the Program Chair for SNDSS, would have qualified as one of ordinary skill in the art in 1997. Yet, despite his knowledge of the field, FTP servers, and the paper, Dr. Bishop apparently would not have found the reference without Mr. Porras's precise directions. It is doubtful that anyone outside the review committee looking for papers submitted to the Internet Society's Symposium would search a subfolder of an SRI FTP server. These are separate entities. It is also doubtful that anyone outside the review committee would have been aware of the paper or looked for it at all in early August 1997.

*Id.* at 1196-97.

As in *SRI Int'l*, there is no indication in the Petition or supporting Declarations that a POSITA would have had any awareness of the *Ericsson*, *3GPP-972*, or *3GPP-135* references in 1999 if that person was not a member of a 3GPP working group. Mr. Rodermund does not provide any evidence regarding email notifications for when each particular reference was uploaded to the 3GPP server, how each reference was publicized to the reviewers (and if so, whether it was necessary to provide a direct link to the paper, rather than trust that any of those individuals would find it on their own without guidance from the authors), any evidence regarding any motivation for a reasonably skilled person exercising reasonable diligence to search for those documents on the server absent a direct link to them, or any evidence that the FTP site was indexed in a manner

comprehensible to visitors at the time of the alleged publication and posted with meaningful file names.

Indeed, Mr. Rodermund has provided zero evidence, other than a conclusory statement, of any of these references being available to or viewed by the general public.  This was precisely the kind of factor the *SRI* court evaluated in finding that the documents were not per se available under § 102.  *See id.* at 1197 ("While actual retrieval of a publication is not a requirement for public accessibility, this record does not evince that the Live Traffic paper was accessible to anyone other than the peer-review committee, thus ***further suggesting an absence of actual public accessibility.***" (emphasis added)).

Petitioner's assertion that *Ericsson*, *3GPP-972*, and *3GPP-135* were sufficiently accessible to a POSITA exercising diligence is belied by its own expert, Mr. Bishop.  Mr. Bishop describes at length all of his qualifications that qualified him as an expert around 1999, including, for instance, his participation in various 3G and wireless standards-setting committees and other bodies.  (Ex. 1003 at ¶¶ 12-15.)

However, he provides no evidence that as an expert (far more qualified than a POSITA), he received any of the aforementioned email notifications from the 3GPP FTP server, or was otherwise able to search for and locate any of these

references on his own.  Indeed, he has not provided any information as to how or whether he ever came across these references.

Patent Owner's declarant, Mr. Bates, has been working in the field of wireless communications and standards and has been following developments in the 3GPP since 1992.  (Bates Decl. at ¶ 71.)  Even though Mr. Bates was at least a POSITA around 1999 and exercised reasonable diligence in keeping up to date with 3GPP papers and standards, he never became aware of any of the *Ericsson*, *3GPP-972*, or *3GPP-135* references until his involvement with this Petition.  (Bates Decl. at ¶ 73.)

Even now, as Mr. Bates testifies, the FTP server cited by Mr. Rodermund consists of a massive file structure with dozens of folders and subfolders corresponding to each topic and conference.  (Bates Decl. at ¶ 74.)  **Mr. Bates's search for any of the Ericsson, 3GPP-972, or 3GPP-135 references, using the information provided by Mr. Rodermund, was unsuccessful.**  (Bates Decl. at ¶ 75.)  There is thus no actual evidence that these particular references were made accessible to a person of ordinary skill at the time of the invention, even one exercising reasonable diligence.

In fact, as Mr. Rodermund acknowledges, only 100 of the largest companies, including Samsung, Sony, Nokia, and Bosch, were generally privy to materials reviewed by 3GPP working groups and discussed at conferences, or notified of any

new materials uploaded to the FTP server.  (Ex. 1009 at ¶ 17.)  The cost to an

individual consultant to become even an associate member of these working

groups was thousands of dollars annually.  (Bates Decl. at ¶ 72.)  Indeed, the large

companies that participated in such conferences and document reviews often did so

because they were designing and developing new products that were going to

influence the specifications and standards.  (*Id*. at ¶ 72.)

Without any evidence of actual public availability of any of its asserted

references, including evidence of accessibility by a reasonably diligent individual

POSITA, Petitioner cannot demonstrate that the *Ericsson*, *3GPP-972*, and *3GPP-135* references were actually available as printed publications before the priority

date of the '091 patent, November 1, 2000.  Thus, Petitioner has not established a

reasonable likelihood that these references are available to be cited as prior art for

any of the grounds asserted in the Petition.

For this reason alone, the Petition should be rejected.

## VI.   THE PETITION SHOULD BE REJECTED UNDER § 314(A) BECAUSE PETITIONER IS UNLIKELY TO PREVAIL WITH RESPECT TO ANY CHALLENGED CLAIM

The Board should decline review under 35 U.S.C. § 314(a) because as set

forth in more detail below, there is no likelihood that Petitioner will prevail with

respect to any challenged claim.

**A.      Ground 1 of the Petition Fails: Claims 1-4 and 6-11 Are Not Obvious in View of *Ericsson*, *3GPP-972,* and *Priestman***

**1.      The Asserted References Fail to Teach or Suggest the Elements "responsive/responding to the discontinuation of an in progress mixed media telecommunications call" and "receive/receiving an indication . . . the first call is being discontinued" in Independent Claims 1 and 8**

The asserted references, *Ericsson*, *3GPP-972,* and *Priestman* fail to disclose the elements "responsive/responding to the discontinuation of an in progress mixed media telecommunications call" and "receive/receiving an indication . . . the first call is being discontinued," as recited in independent claims 1 and 8 of the '091 patent.

**a.      The Claim Elements "responsive/responding to the discontinuation of an in progress mixed media telecommunications call" and "receive/receiving an indication . . . the first call is being discontinued" Are Not Met in *Ericsson***

Petitioner fails to prove that the related elements of "responsive/responding to the discontinuation of an in progress mixed media telecommunications call" and "responsive/responding an indication . . . that the transmission of data to the remote videophone in the first call is being discontinued" are met in *Ericsson*.

As described above, *Ericsson* discloses three mutually exclusive scenarios for improving H.324 efficiency to facilitate mixed-media communications: (1) Disconnect and connect; (2) Connect and disconnect; and (3) In-call modification.

(Ex. 1004 at 2; Bates Decl. at ¶ 79.)  None of these scenarios teaches the recited features, as discussed in turn below.

The *"Disconnect and connect" scenario* does not disclose a videophone "*responsive* to the discontinuation of an in progress *mixed media* telecommunications call." *Ericsson* only teaches that in this scenario, users negotiate *verbally* over the H.324M audio channel of an ongoing voice call.  (Ex. 1004 at 2.)  The call in progress is disconnected and a second call to support mixed media transmission is then set up.  (*Id*. at 2.)  This disclosure in *Ericsson* is thus contrary to that in the '091 patent specification and claims, which require a response to a discontinuation of a first mixed-media call.  (Bates Decl. at ¶ 80.)

Moreover, a "verbal" negotiation between users is not the type of "indication" of a discontinuation of a mixed-media call claimed by the '091 patent. Petitioner's hypothetical does not support its argument that either side could have issued a verbal notification to switch from a video call to a voice call.  (*See* Pet. at 29-30.)  In Petitioner's hypothetical where User B provides a verbal indication over the audio channel that a video channel should be added, the verbal negotiation would then have to be acted on by User A in, for instance, disconnecting the call.[1] Until User A affirmatively acts on the message received verbally from User B, the

_____

[1] Petitioner refers to "Terminal B" in its hypothetical as providing the indication. However, this is absurd.  A "terminal" (mobile device) cannot provide a "verbal" indication on its own; rather, it would have to be the user (User B) who communicates verbally.

videophone in claim 1 is not "responsive to" anything it receives.  (Bates Decl. at ¶ 81.)

Petitioner and its declarant attempt to sidestep this issue by contending that because the '091 patent is "not explicit as to the type of indication required," a POSITA "would have understood that the claimed indication may be generated, for example, by the user to initiate a second call to a remote videophone."  (Pet. at 35-36; Ex. 1003 at ¶ 67.)  This assertion is flatly incorrect.  On the contrary, as described in Section IV.A above, the '091 patent discloses at least one such indication of discontinuation of a mixed media call, pressing a softkey to either place the video call on hold, switch to a still image, or revert back to a voice call.  (Ex. 1001 at 9:4-9; Fig. 6.)  In fact, a significant portion of the disclosure of the '091 patent relates to user interface options to allow the parties a "high degree of control . . . in negotiating the videophone call."  (Ex. 1001 at 11:24-26.)  None of these options include a simple verbal indication of any modifications.  (Bates Decl. at ¶ 82.)

In the *"Connect and disconnect" scenario*, the same device (say, Terminal A) that initiated the first voice call with Terminal B subsequently initiates a second mixed-media call *prior to* disconnecting the first call.  (Ex. 1004 at 2-3.)  Neither Terminal A nor Terminal B is, thus, "*responsive* to" an indication that the first call has been disconnected.  Rather, as *Ericsson* clarifies, the caller (Terminal A)

33

indicates via in-band signaling to Terminal B that it will initiate a second call.

After Terminal B has acknowledged the control signal, Terminal A initiates the

relevant handshaking procedure before the users begin to communicate via video.

(Bates Decl. at ¶ 83.)

This disclosure in *Ericsson* is intended to provide a seamless switch between

different bitrates required for audio and video using Multicall. (Bates Decl. at ¶

84.) Indeed, the Petition provides no support for its assertion that "[a]n H.263

video channel is opened" *in response to* "Terminal A or Terminal B

disconnect[ing] a call on the H.324M AMR audio channel," thereby ignoring

entirely the temporal requirement of the claim. (Pet. at 17.)

Petitioner further asserts that the relevant indication is a "H.245 signalled

indication" (Ex. 1004 at 2), where Terminal A indicates to Terminal B that it will

be able to receive the increased bit rate. (Pet. at 29.) This argument too is

unavailing, for the simple reason that the cited disclosure relates to the "Connect

and disconnect" scenario of *Ericsson*, not "Disconnect and connect." These

scenarios are mutually exclusive and cannot be mixed and matched. *See Net

MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008) ("[I]t is not

enough that the prior art reference . . . includes multiple, distinct teachings that the

artisan might somehow combine to achieve the claimed invention."); *In re Arkley*,

455 F.2d 586, 587 (C.C.P.A. 1972) ("[T]he [prior art] reference must clearly and

34

unequivocally disclose the claimed [invention] or direct those skilled in the art to the [invention] without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference."). Accordingly, the relevant indication here is *not* that the call is being discontinued, it is a negotiation between users to switch to a video call *prior to* disconnecting the first voice call.  (Bates Decl. at ¶ 85.)

Petitioner's comparison between Fig. 2 of *Ericsson* and Fig. 2 of the '091 patent (Pet. at 36-37) fails to support its argument that the Connect and disconnect scenario in *Ericsson* discloses a videophone "responsive to" an "indication" that a mixed-media call is being discontinued.  Petitioner's argument falls short in at least six different ways.  (Bates Decl. at ¶ 86.)

First, Fig. 2 of *Ericsson* (Multicall) starts with the fact that a connection is already in place between Terminals A and B.  Assuming User A wishes to add an H.324M logical channel after verbally consulting with User B, the following sequence of steps denotes how a new video call is established:

- Terminal A first sends a control message to Terminal B over a multiplexed signaling channel indicating that it will be able to receive the increased bit rate of 64 Kbps as the whole multiplexed channel. This H.245 control message is swapping information with Terminal B

about its capabilities, which does not occur in the CS connection

taught by the '091 patent.  (Bates Decl. at ¶ 87.)

- Terminals A and B request the call control application (H.245) to

  *modify* the bit rate to increase the channel size to a 64 Kbps capacity.

  (Bates Decl. at ¶ 87.)

In contrast, Figure 2 of the '091 patent does not teach any such H.245

signaling.  (Bates Decl. at ¶ 88.)   Rather, it shows only that Terminal A requests

that a new call be set up, and only after the setup is complete Terminal B responds

by accepting or rejecting the second call.  (Bates Decl. at ¶ 88.)

*Ericsson*, thus, describes that the first call is disconnected before the video

connection is actually completed, unlike the '091 patent specification where the

video is confirmed and synched before the first call is disconnected.  (Bates Decl.

at ¶ 89.)  By utilizing H.223 and H.245, *Ericsson* describes that the actual video

connection is carried over a digital circuit, whereas Figure 2 of  '091 patent, on

which Petitioner seeks to rely, teaches using a circuit-switched (CS) dial up

modem call.  (Bates Decl. at ¶ 89.)  Thus to the extent Petitioner's Figure to Figure

comparison is even relevant, it undermines rather than supports Petitioner's

argument.

Second, in Figs. 1 and 2 of the '091 patent, Terminal A was the initiator of

the first and second calls, whereas in the disclosure of *Ericsson*, Users A and B

must both take action before the call switch occurs.  This limitation is noted in *Ericsson*: "This is a more advanced alternative with no impact on the radio and core network but require that all H.324M multimedia terminals need to as well to support multicall to provide seamless bandwidth modification."  (Ex. 1004 at 2.) Accordingly, Fig. 2 in *Ericsson* does not disclose the simplified request and setup procedure taught by the '091 patent.  Indeed, there is no disclosure that the '091 patent requires H.324 and multicall to provide a seamless modification of the call. (Bates Decl. at ¶ 90.)

Third, there is no teaching in the '091 patent that the channel speed (bitrate) is being modified; instead, the patent teaches setting up an entirely new channel. (Bates Decl. at ¶ 91.)

Fourth, the *Ericsson* procedure uses AAL2, which is an Asynchronous Transfer Mode (ATM) service that provides variable bit rate services for voice and video, and requires that ATM is in place for video.  The '091 patent, on the other hand, teaches using a circuit-switched fixed-bitrate connection, not a variable rate packet-switched connection.  (Bates Decl. at ¶ 92.)

Fifth, Petitioner's comparison between Fig. 2 of *Ericsson* and Fig. 2 of the '091 patent mischaracterizes the '091 patent specification.  Petitioner's annotations to the figures establish that *Ericsson* describes a second call is initiated *prior to* the first call being discontinued.  Fig. 2 of the '091 patent, on the other hand,  shows

the first call being "discontinued" and an acknowledgement of the "discontinuation" being received by the calling terminal, in response to which the second call is initiated.  (Bates Decl. at ¶ 93.)

Sixth (and last), Petitioner's implicit argument—that a verbal negotiation can be used just as easily with *Ericsson*'s "Connect and disconnect" scenario—fails for the following reasons.  Petitioner suggests that Terminal B provide both a notification to Terminal A to add a video channel and a subsequent "indication" to Terminal A that it can receive the increased bit rate.  Indeed, Fig. 2 of *Ericsson* shows that the user *providing* the initial notification to add a video channel be the *same* user that subsequently indicates that it will be able to receive the increased bit rate, and *initiate* the second call.  (Ex. 1004 at 3) (*see* Steps 1 and 4-17.)  This sequence is, however, contrary to the '091 patent's requirement that a videophone that *receives* the indication (of a discontinuation) be the side that initiates the second call.  Petitioner's declarant asserts, without any support, that the indication from Terminal B in *Ericsson* could equally "be used to inspire" initiation of the second call in Terminal A.  (Ex. 1003 at ¶ 57.)  But this is contrary to the entirety of the two patent descriptions, as set forth above.  (Bates Decl. at ¶ 94.)

Petitioner then appears to make an alternative argument, i.e., that the handshaking signal in Step 21 of *Ericsson* (Ex. 1004 at 3) is the claimed "indication" that "the first call is being discontinued."  (Pet. at 31.)  Here, too,

Petitioner is wrong.  The in-band Flow Control Indication in Step 21, conveying that Terminal B "actually will transfer the multiplex on the new bit rate," is issued *after* a second call (initiated by Terminal A) is connected and is part of the "disconnect" phase of the "Connect and disconnect" scenario.  (See Steps 4-17 ("A second call is set up with 64 kbit/s as the bearer bit rate."))  (Bates Decl. at ¶ 95.)

This citation also runs counter to Petitioner's own hypothetical.  (*See* Pet. at 29-30.)  In the hypothetical, User B issues a verbal notification of a change in the call and issues an initial indication that it can receive the increased bit rate (see Step 1).  Following Petitioner's hypothetical, it would necessarily follow that Terminal A, not Terminal B, would issue the Flow Control Indication in Step 21. (Bates Decl. at ¶ 96.)

Lastly, the ***"in-call modification" scenario*** in *Ericsson* contains no disclosure of a videophone receiving an "indication" that "the first call is being discontinued" or being "responsive to the discontinuation of" an in-progress call. Nor does this scenario describe initiating a second call to the remote videophone in response to such an indication.  (See Pet. at 33.)  As discussed, the in-call modification alternative in *Ericsson* describes a means of improving efficiency in a H.324 channel while maintaining the call in progress, and does not describe either a "second" call or a "first call" being "discontinued."  *Ericsson* describes, for instance, that this alternative may enable "bit rate modification in the future."  (Ex.

1004 at 4.)  Fig. 3 of *Ericsson* confirms this point, as nowhere in Fig. 3 is there an indication of a first call being discontinued and a second call being initiated. (Bates Decl. at ¶ 97.)

In summary, not only does Petitioner errantly seek to combine disclosures from mutually exclusive portions of *Ericsson*, the cited disclosures nevertheless fail to disclose the "responsive/responding to the discontinuation of an in progress mixed media telecommunications call" and "receive/receiving an indication . . . the first call is being discontinued" elements as recited in independent claims 1 and 8 of the '091 patent.

   **b.**   **The Claim Elements "responsive/responding to the discontinuation of an in progress mixed media telecommunications call" and "receive/receiving an indication . . . the first call is being discontinued" Are Not Met in *3GPP-972***

Petitioner fails to prove that the elements "responsive/responding to the discontinuation of an in progress mixed media telecommunications call" and "receive/receiving an indication . . . that the transmission of data to the remote videophone in the first call is being discontinued" are disclosed in *3GPP-972*.

As described above, *3GPP-972* discloses only an ***in-call modification*** technique from voice to video (and vice versa).  (Ex. 1005 at 5.)  In-call modification is inconsistent with the '091 patent invention, and specifically the recited limitations that the videophone be "responsive to the discontinuation" of an

40

ongoing call and "receive an indication [that] the first call is being discontinued," at least because the ongoing call is never discontinued, only upgraded or downgraded to a different bitrate to suit the requirements of the call.  (*See* Ex. 1005 at 6, 10; Fig. 5; Bates Decl. at ¶ 100.)

        **c.**      **The Claim Elements "responsive/responding to the discontinuation of an in progress mixed media telecommunications call" and "receive/receiving an indication . . . the first call is being discontinued" Are Not Met in *Priestman***

Petitioner fails to prove that the elements "responsive/responding to the discontinuation of an in progress mixed media telecommunications call" and "receive/receiving an indication . . . that the transmission of data to the remote videophone in the first call is being discontinued" are disclosed in *Priestman*.

*Priestman* discloses merely a videophone, but contains no disclosure as to how or what the videophone would do in response to a discontinuation of an in progress mixed media call.  While Petitioner points to some supposed similarities between the '091 specification and *Priestman* in the context of the components of a videophone, that is a non-sequitur.  The inventors of the '091 patent admitted that each of those components was "individually known."  (Ex. 1001 at 3:2-3.)  Merely highlighting that a block diagram of a videophone was known is irrelevant to any argument that the recited claim limitations of the '091 patent are disclosed in *Priestman*.

2. **The Asserted References Fail to Teach or Suggest the Elements "transmit/transmitting . . . at least a first and second media . . . during a first call" and "the second call not supporting the second media" in Independent Claims 1 and 8**

The asserted references, *Ericsson*, *3GPP-972*, and *Priestman* fail to disclose the related elements "transmit/transmitting . . . at least a first and second media . . . during a first call" and "the second call not supporting the second media," as recited in independent claims 1 and 8 of the '091 patent.

a. **The Claim Elements "transmit/transmitting . . . at least a first and second media . . . during a first call" and "the second call not supporting the second media" Are Not Met in *Ericsson***

Petitioner concedes that *Ericsson* does not disclose these limitations.  (*See* Pet. at 23, 33.)  To the extent *Ericsson* even discloses a first and a second call, it only teaches switching from a first voice call to a second mixed-media or video call.  Accordingly, to the extent it is found that the mixed-media call in *Ericsson* is a "second" call, it is this *second* call that transmits "first and second media," not the *first* (voice) call, which does not support video.  (Bates Decl. at ¶ 104.)

b. **The Claim Elements "transmit/transmitting . . . at least a first and second media . . . during a first call" and "the second call not supporting the second media" Are Not Met in *3GPP-972***

*3GPP-972* does not disclose these limitations.  As an initial matter, *3GPP-972* teaches only in-call modification of an ongoing call to switch from voice to

42

video, or vice versa, and does not teach a "first" or "second" call.  (Bates Decl. at ¶ 106.)

Petitioner refers to Fig. 5 of *3GPP-972* (Ex. 1005 at 10), which purportedly illustrates "speech fallback, i.e., if setup of the multimedia call fails the call will be set up as a speech call."  (*Id.* at 5.)  However, Petitioner cannot pinpoint to any relevant portions of the description of "speech fallback" in *3GPP-972* that it contends correspond to the "first" media and the "second" media.  Petitioner's omission undercuts its claim that *3GPP-972* discloses either of these elements. (Bates Decl. at ¶ 107.)

Moreover, the claims of the '091 patent require that both the "first and second media" be transmitted during the same call (the "first call").  However, the "speech fallback" disclosure and Fig. 5 of *3GPP-972* teach that only if "setup of the multimedia call *fails*, the call will be set up as a speech call." (emphasis added.) In other words, there is never a *first* call that carries two types of media.  *3GPP-972* merely teaches that when a call will not support multimedia, the call setup reverts to a modem speed and carries voice on a carrier switched (CS) channel, not High Speed Circuit Switched Data (HSCSD).  (Bates Decl. at ¶ 108.)

Indeed, because a voice call according to the disclosure of Multicall in *3GPP-972* uses only one GSM timeslot (unlike four timeslots used by HSCSD), the disclosure in *3GPP-972* does not teach a call that carries two different types of

media.  (Bates Decl. at ¶ 109.)  A mere reference to "64 or 56 kbit/s" does not by itself show the presence of two types of media.

Petitioner asserts that "[a] POSITA would have understood" that to be the case (Pet. at 25), but does not provide any support for its assertion, other than a conclusory statement from its declarant.  (Ex. 1003 ¶ 53.) Petitioner and its declarant are wrong. *3GPP-972* actually teaches that 64 and 56 kbps are both DS-1 speeds based on Unrestricted Data Indication (UDI) or Restricted Data Indication (RDI), respectively.  (Ex. 1005 at 10; Bates Decl. at ¶ 110).  Accordingly, they are not typical speeds used in a dial up circuit for a voice call.  In fact, *3GPP-972* only teaches a digital circuit that will operate at 56 Kbps (RDI) or 64 Kbps (UDI).

> **c.** **The Claim Elements "transmit/transmitting . . . at least a first and second media . . . during a first call" and "the second call not supporting the second media" Are Not Met in *Priestman***

Petitioner fails to prove that the elements "transmit/transmitting . . . at least a first and second media . . . during a first call" and "the second call not supporting the second media" are met in *Priestman*.

*Priestman* discloses merely a videophone, but contains no disclosure as to how or what types of media the videophone would transmit during a "first" or "second" call.  While Petitioner points to some supposed similarities between the '091 specification and *Priestman* in the context of the components of a videophone, that is a non-sequitur.  The inventors of the '091 patent admitted that

each of those components was "individually known." (Ex. 1001 at 3:2-3.) Merely highlighting that a block diagram of a videophone was well known is irrelevant to any argument that the claim limitations of the '091 patent are present in *Priestman*. (Bates Decl. at ¶ 112.)

As set forth above, the references of Count 1 in combination fail to disclose multiple elements of claims 1 and 8. The failure with respect to each element of claim 1 or claim 8 is, by itself, reason to deny the Petition.

> **3.** **Petitioner Provides No Evidence of a Rational Underpinning for a POSITA to Combine the References *Ericsson*, *3GPP-972*, and *Priestman***

A POSITA would also not be motivated to combine the references of Count 1. For an obviousness analysis, "it can be important to identify a *reason* that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR*, 550 U.S. at 418. Here there would be no reason that would have prompted a POSITA to combine the *Ericsson*, *3GPP-972*, and *Priestman* references in connection with these claim limitations.

First, the disclosures of *3GPP-972* and *Priestman* do not overcome the absence of the elements "responsive/responding to the discontinuation of an in progress mixed media telecommunications call," "receive/receiving an indication . . . the first call is being discontinued," "transmit/transmitting . . . at least a first and

second media . . . during a first call," and "the second call not supporting the second media" within *Ericsson*.  (*See supra* Sections VI.A.1-2, Bates Decl. at ¶ 114.)  Consequently, the lack of the claimed elements in any of the asserted references teach away from any combination of *Ericsson* with *3GPP-972* or *Priestman.* (Bates Decl. at ¶ 114.)

Second, the subject matter of the primary reference *Ericsson* is considerably different from the other two asserted references.  (Bates Decl. at ¶ 115.)  For instance, *Ericsson* is directed to improving the efficiency of a H.324M multimedia channel to allow for the addition of video and proposes three mutually exclusive alternatives: (1) "Disconnect and connect;" (2) "Connect and disconnect;" and (3) "In-call modification."  (Ex. 1004 at 2-4; Bates Decl. at ¶ 115.)

In comparison, *3GPP-972* is directed to Multimedia Telephony broadly and, in relevant part, to in-call modification of call type from speech call to multimedia and vice versa during the call, using an "outband" or "inband" approach.  (Ex. 1005 at 5, 12; Bates Decl. at ¶ 116.)

*Priestman* is directed to a mobile videophone capable of transmitting and receiving information in mobile telecommunications systems, but does not include any disclosure as to how the videophone would perform call setup and switching between voice and mixed media calls.  (Ex. 1007, Abstract; Bates Decl. at ¶ 117.)

Consequently, it would not have been obvious to a POSITA to combine *3GPP-972* and *Priestman* with *Ericsson* because the subject matter of these three references are directed towards different objects entirely.  (Bates Decl. at ¶ 118.) In fact, as Mr. Bates testifies, it would not have been obvious to even an expert, such as himself, with a higher level of expertise, to combine the asserted references—much less to a POSITA.  (*Id.*)

Indeed, it is not sufficient for references to be analogous art or disclose generally similar technology to support an obviousness combination.  *See, e.g.*, *Microsoft Corp. v. Enfish, LLC*, 662 Fed. Appx. 981, 989-90 (Fed. Cir. 2016) (stating that obviousness combinations cannot be made simply by showing that references are within the same field); *Hydrodynamic Indus. Co v. Green Max Distribs.*, 21 F. Supp. 3d 1074, 1079-80 (C.D. Cal. 2014) (holding an obviousness allegation insufficient under *KSR* because the defendant presented no evidence of why a POSITA would have had the reason, suggestion, or motivation to combine three prior art references; no evidence regarding how a POSITA would view the differences between the references and the patent claims; and no evidence of the types of problems encountered in the field that would lead a POSITA to make the combinations).

Within the past year alone, the Board has routinely denied institution when a petitioner simply relies on the fact that the prior art references are analogous art or

in the same field to support the proposed combination or modification of the prior art.  *See, e.g.*, O*ssia, Inc. v. Energous Corp.*, PGR2016-00023, Paper 20 at 27 (PTAB Nov. 29, 2016) ("The fact that two references disclose similar technology is not sufficient to demonstrate a reason why an ordinarily skilled artisan would have combined them."); *Ancestry.Com DNA, LLC v. DNA Genotek Inc*., IPR2016-01152, Paper 11 at 9 (PTAB Nov. 23, 2016) ("The mere fact that both Birnboim and O'Donovan are in the same field of endeavor falls short of an adequate rationale.  The same field of endeavor analysis is merely the jumping-off point in reaching the determination of whether a claimed invention is obvious."); *Seabery N. Am. Inc. v. Lincoln Global, Inc*., IPR2016-00905, Paper 12 at 13 (PTAB Nov. 3, 2016) ("Merely asserting that Wahi is analogous art to the challenged patent, however, does not provide any articulated reason with a rational underpinning to combine Wahi's teachings with those of Herbst.").

Likewise, it is insufficient to find obviousness on the basis of what a POSITA "would have known" or "could have" done to meet the limitation.  *Black & Decker, Inc. v. Positec USA, Inc.*, 646 Fed. Appx. 1019, 1027 (Fed. Cir. 2016) (nonprecentential) (reversing a PTAB obviousness finding in an IPR where the PTAB concluded that it would have been obvious to modify the prior art to meet the limitation of the challenged claim based on "what one of skill in the art 'would have known' or 'could have' done to meet the limitation.").  In *Black & Decker*,

48

the Federal Circuit clarified that, rather than alleging that a person of ordinary skill in the art "could" have modified the prior art, the petitioner must provide evidence that a person of ordinary skill "would" have made the modification. *Id.*

Following that decision, the Board denied institution of several petitions asserting that the prior art could have been modified to meet the claimed limitation without providing any evidence that it would have been obvious to do so. *See, e.g.*, *Seabery N. Am., Inc. v. Lincoln, Global, Inc.*, IPR2016-00904, Paper 12 at 11 (PTAB Nov. 3, 2016) (denying institution on obviousness grounds when neither petitioner nor its expert "addresses what a person of ordinary skill in the art would have done, only what they could have done."); *Costco Wholesale Corp. v. Robert Bosch LLC*, IPR2016-00035, Paper 23 at 8 (PTAB Aug. 12, 2016 ) ("[A]n understanding that something 'could be applied to the problem at hand' does not establish that it would have been obvious to do so at the time the '926 invention was made.") (internal citation omitted).

The Petition here exhibits the same shortcomings. Neither Petitioner nor its expert offer any meaningful rationale for why a POSITA would have made the alleged combination of *Ericsson*, *3GPP-972*, and *Priestman*, beyond the same sort of platitudes the Federal Circuit and Board have found to be insufficient. For example, there is no analysis of why a POSITA would "have been motivated to combine *Ericsson* with *3GPP-972* to combine *3GPP-972*'s ability to switch from a

video call to an audio call and *Ericsson*'s ability to perform such a switch in a seamless fashion."  (Pet. at 39; Bates Decl. at ¶ 119.)  Petitioner's conclusory statement is insufficient to meet its burden.

In fact, the proposed combination of *Ericsson* and *3GPP-972* teaches away from each other and from the '091 claim limitations of, at least, a first and second call, discontinuation of a first call, and initiation of a second call.  Obviousness may be defeated if the prior art indicates that the invention would not have worked for its intended purpose or otherwise teaches away from the invention.  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009).  A reference teaches away "when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken" in the claim.  *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 738 (Fed. Cir. 2013); MPEP § 2143.03(VI) ("A prior art reference must be considered in its entirety, i.e., as a whole, including portions that would lead away from the claimed invention."); *see also Fedex Corp. v. Intellectual Ventures II LLC*, IPR2017-00750, Paper 7 at 21 (PTAB July 12, 2017) ("A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant.").

The proposed combination here suffers from this exact shortcoming. *Ericsson* states that the problem it was trying to solve was that in-call modification was complex to standardize, difficult to implement, and hard to understand for users. Consistent with its goals, *Ericsson* teaches two separate alternatives to in-call modification—"Disconnect and connect" and "Connect and disconnect"—with in-call modification itself remaining as a third option to consider improving on. (Ex. 1004 at 2-4; Bates Decl. at ¶ 121.)

It is this third option that is addressed in *3GPP-972* and that Petitioner uses as its motivation to combine the two references. However, incorporating the symmetrical voice-video switching disclosure from *3GPP-972* into the in-call modification disclosure in *Ericsson* would result in there being only a single call that is subsequently upgraded or downgraded in its bitrate. Accordingly, the proposed combination would teach away from the claims of the '091 patent because there would not exist a first and second call, or a videophone responsive to discontinuation of a first call. (*See supra* Section VI.A.1; Bates Decl. at ¶ 122.)

The motivation to combine *Ericsson* with *3GPP-972* is further undermined by the fact that the working groups reviewing both papers expressed misgivings about the feasibility of their solutions. For instance, not only does the *Ericsson* paper itself recommend against adopting alternative 3 (in-call modification) (Ex.

51

1004 at 4), but following conference presentation, it was determined that all three alternatives suffered from flaws.  (Ex. 1015 at 7.)

Similarly, *3GPP-972* indicates, in the same section cited by Petitioner, that "some functionality may not be feasible to support."  (Ex. 1005 at 5.)  *3GPP-972* goes on to admit that "current standards do not allow indication of H.324 call and rate adaptation at the same time."  (*Id*. at 6.)  Indeed, the disclosures cited by Petitioner—outband and inband approaches for switching between voice and video (and vice versa)—were all "proposed, but not yet agreed," as "further study" was required.  (*Id*. at 12-13.)  Similarly, the target release for the "fallback to speech" option, while considered an "integral service to be provided to the end-user," was still open at the time *3GPP-972* was distributed.  (*Id*. at 7 n.2.)

A POSITA looking for ways to improve H.324 efficiency would, therefore, not be motivated to pick from disclosures of two references that were each far from final and adopted.  With several competing alternatives for each of the many issues faced by 3G adopters during the 1999 timeframe, no POSITA would likely have started from the "Connect and disconnect" or "Disconnect and connect" scenarios, added the capability to switch bidirectionally between video and voice calling, and implemented all of this functionality in a videophone similar to that disclosed in *Priestman*, particularly when the former two references were nothing more than ideas for consideration at conferences.  (Bates Decl. at ¶ 125.)

52

Likewise, the cited paragraphs of the Bishop Decl. (Ex. 1003) appear to merely repeat Petitioner's assertions that "[a] POSITA would understand that because *Ericsson* does not explicitly discuss an example where a video call is switched to a voice call, a POSITA would have been motivated to turn to *3GPP-972*, which demonstrates that it was well-known to switch from a video (multimedia) call to a voice call." (Ex. 1003 at ¶ 44.) However, the Bishop Decl. provides no further elaboration or citation to evidence. (Bates Decl. at ¶ 126.)

Petitioner's argument is also driven by improper hindsight. (Bates Decl. at ¶ 127.) Hindsight analysis is inappropriate; obviousness must be measured "*at the time the invention was made*." *Ortho-McNeil Pharm. v. Mylan Labs*, 520 F.3d 1358, 1364 (Fed. Cir. 2008) (emphasis in original). The Petitioner must not use the patent as a roadmap. *In re NTP, Inc.*, 654 F.3d 1279, 1299 (Fed. Cir. 2011) (internal citation omitted); *see also KSR*, 550 U.S. at 421. "Although the *KSR* test is flexible, the Board 'must still be careful not to allow hindsight reconstruction of references . . . without any explanation as to *how* or *why* the references would be combined to produce the claimed invention.'" *TriVascular, Inc. v. Samuels*, 812 F.3d 1056, 1066 (Fed. Cir. 2016) (internal citation omitted) (emphasis in original).

Further, assertions of obviousness "cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *KSR*, 550 U.S. at

53

418 (internal citation omitted); *see also In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d at 1380. "[O]bviousness requires the additional showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention." *Unigene Labs.*, 655 F.3d at 1360.

Here, Petitioner's conclusory statements are nothing more than a restatement of basic tests identified by the Supreme Court for determining whether an invention would have been obvious. *See KSR*, 550 U.S. at 417. General principles on what may constitute a supporting rationale cannot substitute for specific application of those principles to the facts. *See Ancestry.Com DNA, LLC v. DNA Genotek Inc.*, IPR2016-01152, Paper 11 at 10-11 (PTAB Nov. 23, 2016). Likewise, the Bishop Decl. provides no further elaboration or citation to evidence. (Bates Decl. at ¶ 127.) His testimony contains no supporting facts or data. (*Id.*) Rather, his testimony is no more than the vague assertions of the Petition.

Such conclusory, unsupported assertions by Petitioner's expert can be and should be disregarded. *See In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1368 (Fed. Cir. 2004) ("[T]he Board is entitled to weigh the declarations and conclude that the lack of factual corroboration warrants discounting the opinions expressed in the declarations."); *see also* 37 C.F.R. § 42.65(a) ("Expert testimony that does

not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight.").

### 4. The Asserted Ground 1 References Do Not Render Obvious Any of the Dependent Claims of the '091 Patent

*Ericsson*, *3GPP-972*, and *Priestman* do not render any of the dependent claims 2, 3, 4, 6, or 7 obvious, because (at a minimum) they depend from independent claim 1, which is not rendered obvious, for all the reasons set forth above in Sections VI.A.1-3.  Because independent claim 1 is not obvious, each dependent claim is likewise not obvious.

*Ericsson*, *3GPP-972*, and *Priestman* do not render any of the dependent claims 9, 10, or 11 obvious, because (at a minimum) they depend from independent claim 8, which is not rendered obvious, for all the reasons set forth above in Sections VI.A.1-3.   Because independent claim 8 is not obvious, each dependent claim is likewise not obvious.

### B. Ground 2 of the Petition Fails: Claims 5 and 12 Are Not Obvious in View of *Ericsson, 3GPP-972, Priestman*, and *3GPP-135*

#### 1. *3GPP-135* Cannot, and Is Not Asserted to, Cure the Deficiencies of *Ericsson, 3GPP-972, Priestman*

Challenged claims 5 and 12 cannot be found obvious on the stated grounds over *Ericsson* in view of *3GPP-972*, *Priestman*, and in further view of *3GPP-135*.

Dependent claims 5 and 12 depend from independent claims 1 and 8, respectively.  Petitioner relies only on *Ericsson*, *3GPP-972*, and *Priestman* for

obviousness of claims 1 and 8.  However, as discussed above in Section VI.A.1-2, *Ericsson*, *3GPP-972*, and *Priestman* fail to disclose at least the following limitations recited and claimed in independent claims 1 and 8: "responsive/responding to the discontinuation of an in progress mixed media telecommunications call"; "receive/receiving an indication . . . the first call is being discontinued"; "transmit/transmitting . . . at least a first and second media . . . during a first call"; and "the second call not supporting the second media." Moreover, a POSITA would not have combined the asserted references.  (*See supra* Section VI.A.3.)

That failure is not cured by *3GPP-135*.  Petitioner never even asserts that *3GPP-135* shows the elements of independent claims 1 and 8.  In fact, *3GPP-135* is silent on many if not all features described and claimed in independent claims 1 and 8.  (Bates Decl. at ¶ 132.)  Thus, *3GPP-135* cannot, and is not asserted to, cure the deficiencies of *Ericsson*, *3GPP-972*, and *Priestman*.  Accordingly, dependent claims 5 and 12 are not rendered obvious.

### 2. The Claim Element "place/placing the first call on hold" Is Not Met in *3GPP-135*

*3GPP-135* also does not disclose the limitation "place/placing the first call on hold in response to receiving the indication" of claims 5 and 12.

Petitioner asserts that *3GPP-135* discloses placing the first call in *Ericsson* on hold while the second call is connected.  (Pet. at 50.)  However, *3GPP-135*

discloses that a call is placed on hold if a new call is received from a *third* party,

not when a second call is initiated between the two parties already on a first call.

For instance, *3GPP-135* states, in the context of multicall:

> If the maximum number to total CS call has been reached an additional terminating call (Ncs+1) will be only indicated to the user if the user have the SS Call Waiting active.
>
> . . .
>
> If the Ncs is not been reached and a terminating call is indicated to the user she may reacted in the following way:
>> a)  accepting the terminating call
>> - the user/user applications shall have the possibility to allocate a new bearer for the terminating call
>> - the user/user applications shall have the possibility to reuse/share an already established bearer (e.g. release existing calls or put an speech on hold and accept the terminating call.

(Ex. 1006 at 7-8.)



**Figure 1: Multicall concept**

As shown in Fig. 1 of *3GPP-135*, reproduced above, multicall in the context

of *3GPP-135* relates to a call received from a *third* party while two users are

already on a call.  (Bates Decl. at ¶ 135.)  *3GPP-135* thus contains no disclosure of

an ongoing call between two users being put on hold or, in response to a

discontinuation of the call, initiating a second call between the same two users over a different type of channel. (Bates Decl. at ¶ 135.)  Furthermore, *3GPP-135* explicitly clarifies that only a speech call can be put on hold, thus, an ongoing video (data) call cannot be put on hold to switch to a voice call.  (Ex. 1006 at 13; Bates Decl. at ¶ 136.)

Accordingly, the combination of *Ericsson*, *3GPP-972*, *Priestman*, and *3GPP-135* does not render claims 5 and 12 obvious.

## VII.   CONCLUSION

For the foregoing reasons, the Petition to institute *inter partes* review of any claim of the '091 patent should be denied.


Dated: May 15, 2018                      DEVLIN LAW FIRM LLC

                                         /s/ *Timothy Devlin*
                                         Timothy Devlin
                                         Registration No. 41,706
                                         1306 N. Broom Street, First Floor
                                         Wilmington, DE  19806
                                         (302)-449-9010
                                         tdevlin@devlinlawfirm.com
                                         *Attorney for Patent Owner*

58

## CERTIFICATE OF WORD COUNT

Pursuant to 37 C.F.R. § 42.24(d), the undersigned certifies that there are [12,559] words in this paper, excluding any table of contents, table of authorities, mandatory notices under 37 C.F.R. § 42.8, certificate of word count, certificate of service, or appendix of exhibits.  This certification relies on the word count of the world-processing system used to prepare this paper.

Respectfully submitted,

/s/ *Timothy Devlin*

Timothy Devlin
Registration No. 41,706
DEVLIN LAW FIRM LLC
1306 N. Broom Street, First Floor
Wilmington, DE  19806
(302)-449-9010
tdevlin@devlinlawfirm.com
*Attorney for Patent Owner*

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2018, I caused a true and correct copy of the

foregoing materials to be served via the Patent Office electronic filing system, and

electronic service via email to the following attorneys of record pursuant to

Petitioner's consent.

| LEAD COUNSEL | BACKUP COUNSEL |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>T: 202-783-5070<br>F: 877-769-7945<br><br>Email: IPR19688-0153IP1@fr.com | Jeremy Monaldo, Reg. No. 58,680<br>Hyun Jin In, Reg. No. 70,014<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>T: 202-783-5070<br>F: 877-769-7945<br><br>Email: PTABInbound@fr.com |

Respectfully submitted,

/s/ *Timothy Devlin*
Timothy Devlin
Registration No. 41,706
DEVLIN LAW FIRM LLC
1306 N. Broom Street, First Floor
Wilmington, DE  19806
(302)-449-9010
tdevlin@devlinlawfirm.com
*Attorney for Patent Owner*

60

# EXHIBIT B

# EXHIBIT C

# EXHIBIT D

# EXHIBIT 13c.2
# Plaintiffs' Reply to MIL No. 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

3G LICENSING, S.A.,
KONINKLIJKE KPN N.V., and
ORANGE, S.A.,

               Plaintiffs,

      v.

HTC Corporation,

            Defendant.

C.A. No. 17-cv-83-GBW

**JURY TRIAL DEMANDED**

**UNDER SEAL**

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE TO BAR HTC FROM
MAKING IMPROPER CLAIM CONSTRUCTION ARGUMENTS
BASED ON STATEMENTS IN IPR**

The Federal Circuit has squarely held that "us[ing] the prosecution history" to argue to a jury that a patentee has "admitted" positions about claim scope *is "improper" claim construction that must be excluded*. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009). This Court held the same in *CAO Lighting, Inc. v. Gen. Elec. Co.*, 2023 WL 1930354, at *6 (D. Del. Jan. 30, 2023) (Williams, J.). HTC has no answer for these controlling cases.

Instead, HTC tries to distract from them by claiming Plaintiffs' technical expert (Dr. Madisetti) also intends to offer improper claim construction testimony.[1] Not so. As HTC concedes, the Court did not construe the term "call." Dr. Madisetti thus can explain his understanding of the *plain and ordinary meaning* of that term without (unlike HTC) citing prosecution history evidence. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 WL 660857, at *3–4 (N.D. Cal. Feb. 20, 2014) (holding same, citing *Cordis*). HTC also ignores that it had Plaintiffs' POPR statements before claim construction and thus could have raised its prosecution-history arguments then. D.I. 140 at 18. HTC also could have asked the Court to consider such arguments at summary judgment (which is why Plaintiffs did not move to preclude them at *Daubert*). HTC chose not to—waiving them.[2]

In sum, HTC's opposition confirms it plans to do what the law forbids: tell the jury the "IPR statements contradict Plaintiffs' infringement theories." It should not be permitted to do so.

---

[1] Also false is HTC's claim that Plaintiffs "confirmed" HTC was not making claim construction arguments. HTC Opp. at 3. Plaintiffs said that HTC's non-infringement **argument** (not its POPR based arguments) presented issues of material fact. D.I. 384 at 12–21.

[2] *E.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, 2020 WL 5106845, at *4 (N.D. Cal. Aug. 31, 2020) (striking expert's testimony—explaining the defendant was "obligated to present this question of claim scope during claim construction" and could not do so as part of "infringement analysis" to jury); *Mobile Equity Corp. v. Walmart Inc.*, 2022 WL 19917854, at *2 (E.D. Tex. Sept. 23, 2022) (striking testimony that infringement opinions were "inconsistent" with "positions taken … during prosecution"); *Ziilabs Inc., Ltd. v. Samsung Elecs. Co. Ltd.*, 2015 WL 8274055, at *2 (E.D. Tex. Dec. 8, 2015) (striking testimony because an expert "cannot rely on statements in the prosecution history to limit the ordinary meaning of the term"). The cases HTC cites on page 2 of its opposition do not hold any differently. **None** involved an attempt like HTC's here to use prosecution history to argue *claim scope* to the jury, which the Federal Circuit has held is improper.

1

# EXHIBIT 14a
# Defendant's MIL No. 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3G LICENSING, S.A.; | ) | |
| KONINKLIJKE KPN N.V.; | ) | |
| ORANGE S.A., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 17-cv-00083-GBW |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| HTC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT 14(A): HTC CORPORATION'S CONTINGENT MOTION *IN LIMINE* NO. 1 TO BAR PLAINTIFFS' UNTIMELY DAMAGES EVIDENCE**

OF COUNSEL:
Yar R. Chaikovsky
Philip Ou
Bruce Yen
Radhesh Devendran
Shashank Chitti
Jake Gold
WHITE & CASE LLP
3000 El Camino Real, 2 Palo Alto Square
Suite 900,
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213 8158
yar.chaikovsky@whitecase.com
Philip.ou@whitecase.com
bruce.yen@whitecase.com
radhesh.devendran@whitecase.com
shashankchitti@whitecase.com
jakegold@whitecase.com

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendant HTC Corporation*

HTC brings this contingent motion *in limine* to guard against the highly prejudicial and imbalanced result 3GL seeks to achieve through its approach to the timing of disclosures and objections in this case. Through the six-and-a-half years of litigation, Plaintiffs have, on numerous occasions, disclosed untimely new theories and evidence. Where Plaintiffs' conduct has prejudiced HTC, it has diligently moved to strike those untimely disclosures, and each time, Plaintiffs have sought cover under the *Pennypack* factors: no bad faith, the disclosures are important, and there is plenty of time to cure the prejudice. And each time, the Court has declined to issue the "extreme sanction" of precluding Plaintiffs' untimely disclosures.

While HTC was diligent—out or concern of waiver—in raising these types of issues with the Court, Plaintiffs apparently had a different strategy: wait until the eve of trial to ask the Court to exclude HTC's evidence now that the alleged prejudice cannot be cured with trial weeks away. Plaintiffs should not be rewarded for this tactical ambush. Through this contingent motion, HTC respectfully requests that the Court hold Plaintiffs to the same rules. If HTC cannot rely on, *e.g.,* evidence identified for the first time in an expert report, nor should Plaintiffs be allowed to do so.

### A. HTC Diligently Objected to Plaintiffs' Untimely Evidence Produced After Fact Discovery, But the Court Declined the Extreme Sanction of Excluding Evidence

Fact discovery for 3GL's patents closed on May 24, 2019. As detailed in HTC's motion to strike BlackBerry licenses, Plaintiffs produced five licenses between BlackBerry and various third parties on July 17, 2019, the morning their opening damages expert report was due. D.I. 317. HTC moved to strike, noting that the licenses had been in Plaintiffs' possession since November 2018, were produced nearly two months after the close of fact discovery, and that their late production prejudiced HTC. *Id.* In response, Plaintiffs argued both sides produced documents late: "*since fact discovery closed,* Defendants have continued to produce discovery" and "intend to rely on these post-fact-discovery depositions and productions." D.I. 320 at 1. The Court evaluated the

*Pennypack* factors and denied the motion, further noting that "many of Defendants' concerns are more properly raise in a Daubert motion or (likely even more properly) through cross-examination and presentation of competing evidence at trial." D.I. 329. As a result of HTC's (not Plaintiffs') diligence in raising the untimely disclosures, the Court excused Plaintiffs' untimely evidence.

### B. Plaintiffs Waited Four Years to Object and Now Seeks to Capitalize on its Own Decision to Delay by Arguing Uncurable Prejudice

Fast forward four years later and on the eve of trial, 3GL is now making the same arguments HTC unsuccessfully made about the BlackBerry licenses to exclude importance expert opinions and evidence of HTC that Plaintiffs could have moved to strike, but chose not to. *See* 3GL's MIL Nos. 1 and 2. Plaintiffs' decision to not file motions to strike at the time were well-reasoned—how could Plaintiffs reasonably argue that evidence first disclosed in an expert report should be struck when Plaintiffs just convinced the Court to allow Plaintiffs to do the same?

Indeed, in addressing later-filed motions to strike expert opinions, the Court observed how both sides have continued to revise, supplement and narrow their disclosures and evidence, which was appropriate given the complexity of many moving parts in this case:

> "Often, it appeared to me, that arguably there were new disclosures made by defendants' experts in their report to which plaintiffs chose to fairly respond, which they have a right to do, and plaintiffs probably could have alternatively chosen to throw in motions to strike but they didn't do that. Instead, they, in part, recognizing I think, the complexity of the many moving parts in this case, did their best to respond and defendants then largely have responded.
>
> It seems to me you all have, over time, disclosed more and more of your case to one another and hopefully you'll be ultimately narrowing disputes as we get to trial, but at least you're disclosing things, you know, as time goes on, but more importantly, not in a way that I think plaintiffs are clearly at fault for or have crossed any lines that would warrant the extreme sanctions that the defendants are seeking of striking."

Ex. A (April 5, 2021 Hr'g. Tr.) at 6:7-23.

This procedural history and the Court's prior unwillingness to grant the "extreme sanction" of excluding critical evidence cannot be reconciled with 3GL's motions *in limine*. Those motions

seek to exclude important expert opinions and evidence that were disclosed to 3GL more than four years ago. 3GL never moved to strike nor did HTC ever withdraw these opinions or evidence. 3GL could have sought additional discovery, including from third parties to respond, but chose not to. 3GL did not even bother to depose HTC's expert about the opinions and evidence it now wants to exclude.  3GL's claims of "surprise" is not credible, but if true, of its own making.

Instead, 3GL waited in silence for four years until the eve of trial to argue that HTC's expert opinions and evidence—all of which were disclosed in 2019—should be excluded from the upcoming trial.  Specifically, 3GL seeks to exclude: (1) HTC's May 24, 2019 identification of the "various version[s] of the iPhone during the relevant time period" to meet its burden of production for its marking defense, despite being made ***before*** the close of fact discovery; (2) the expert opinions of Dr. Kevin Jeffay identifying specific iPhones and explaining why if HTC infringes, those iPhones should have been marked (but were not); and (3) publicly available website printouts identified by Dr. Jeffay in support of his non-infringement opinions that respond to 3GL's infringement report. 3GL cannot provide any reasonably explanation for why, over the past four years, it did not move to strike, move for summary judgment, seek additional discovery or even depose Dr. Jeffay. Its own delay cannot now be used as a sword to argue that allowing these opinions and evidence would be highly prejudicial, but that is exactly what 3GL has done.

### C. The Court Should Hold Plaintiffs to the Same Rules and Deny its MILs

To the extent the Court issues the "extreme sanction" of excluding HTC's opinions and evidence the subject of 3GL's motions *in limine* on the basis that it was not disclosed before the close of fact discovery, HTC respectfully submits that the same should apply to 3GL and its untimely evidence, including the BlackBerry licenses. Otherwise, HTC will be unfairly penalized for diligently raising the disclosures with the Court and mitigating prejudice while Plaintiffs are rewarded for sitting on its hands to manufacture prejudice. This cannot be the proper result.

- 3 -

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                               - - -

 4   3G LICENSING, S.A., KONINKLIJKE
     KPN N.V., and ORANGE S.A.,           : CIVIL ACTION
 5                                         :
                 Plaintiffs,               :
 6   v                                     :
                                           :
 7   HTC CORPORATION and                   :
     HTC AMERICA INC.,                     :
 8                                         :
                 Defendants.               : NO. 17-83-LPS
 9   ----------------------------------
     3G LICENSING, S.A., KONINKLIJKE
10   KPN N.V., and ORANGE S.A.,           : CIVIL ACTION
                                           :
11               Plaintiffs,               :
     v                                     :
12                                         :
     LG ELECTRONICS INC., LG              :
13   ELECTRONICS U.S.A., INC. and LG      :
     ELECTRONICS MOBILECOMM U.S.A., INC., :
14                                         :
                 Defendants.               : NO. 17-85-LPS
15
                                 - - -
16
                         Wilmington, Delaware
17                       Monday, April 5, 2021
                         Telephonic Oral Argument
18
                                 - - -
19
     BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge
20
                                 - - -
21   APPEARANCES:

22
                     FARNAN, LLP
23                   BY:  BRIAN E. FARNAN, ESQ.

24                       and

25
                              Brian Gaffigan
                              Official Court Reporter
```

```
1    APPEARANCES:   (Continued)

2
                    SUSMAN GODFREY, L.L.P.
3                   BY:  ANDRES C. HEALY, ESQ.
                         (Dallas, Texas)
4
                         and
5
                    SUSMAN GODFREY, L.L.P.
6                   BY:  HUNTER VANCE, ESQ.
                         (Houston, Texas)
7
                              Counsel for Plaintiffs
8

9                   SHAW KELLER, LLP
                    BY:  JOHN W. SHAW, ESQ.
10
                         and
11
                    PAUL HASTINGS, LLP
12                  BY:  PHILIP OU, ESQ.,
                         YAR R. CHAIKOVSKY, ESQ., and
13                       RADHESH DEVENDRAN, ESQ.
                         (Palo Alto, California)
14
                              Counsel on behalf of HTC Corporation
15                            and HTC America Inc.

16
                    MORRIS NICHOLS ARSHT & TUNNELL, LLP
17                  BY:  RODGER D. SMITH, II, ESQ.

18                       and

19                  BAKER BOTTS, LLP
                    BY:  PETER H. KANG, ESQ.
20                       (Palo Alto, California)

21                       and

22                  BAKER BOTTS, LLP
                    BY:  HARRISON RICH, ESQ.
23                       (Dallas, Texas)

24                            Counsel for LG Electronics Inc.,
                              LG Electronics U.S.A., Inc., and,
25                            LG Electronics MobileComm U.S.A., Inc.
```

```
 1                         - oOo -

 2               P R O C E E D I N G S

 3               (REPORTER'S NOTE:  The following telephonic oral

 4    argument was held remotely, beginning at 12:38 p.m.)

 5               THE COURT:  Good afternoon, everybody.  This is

 6    Judge Stark.

 7               Who is there for the plaintiffs, please?

 8               MR. FARNAN:  Good afternoon, Your Honor.  Brian

 9    Farnan on behalf of the plaintiffs.  With me is Andre Healy

10    and Hunter Vance from Susman Godfrey.

11               THE COURT:  Okay.  Thank you.

12               MR. HEALY:  Good afternoon, Your Honor.

13               THE COURT:  Good afternoon.

14               Who is there for the HTC parties?

15               MR. SHAW:  Good afternoon, Your Honor.  It's

16    John Shaw for the HTC parties.  Joining me are Yar

17    Chaikovsky, Philip Ou, and Radhesh Devendran from Paul

18    Hastings.

19               THE COURT:  Okay.  Good afternoon to all of you.

20               And who is there for the LG parties, please?

21               MR. SMITH:  Good afternoon, Your Honor.  It's

22    Rodger Smith at Morris Nichols.  I'm joined by my co-counsel

23    from Baker Botts, Peter Kang and Harrison Rich.

24               THE COURT:  Okay.  Good afternoon to you.

25               Is there anybody else here who wants to make an
```

1     appearance?

2               (Pause.)

3               THE COURT:  Okay.  Thank you.

4               So let me note for the record, and for my

5     court reporter, we're here on two related cases, 3G

6     Licensing SA, et al. versus HTC Corporation.  It's Civil

7     Action No.  17-83-LPS-CJB, and the same plaintiffs versus LG

8     Electronics, Inc., et al., Civil Action No. 17-85-LPS-CJB.

9               And while there are four motions, all motions of

10    the defendants that are set today for argument, I've done a

11    lot of work to get ready for today as it appears all of you

12    have.  And I should note that I did receive earlier today

13    your lengthy slide decks.

14              We are only going to have arguments about one of

15    the four motions.  That's the motion about the foreign law

16    issue.

17              Having carefully reviewed, of course, everything

18    that you've submitted in connection with all four motions, I

19    am able to rule on the three motions to strike.  There are

20    three different, although somewhat related, motions to

21    strike that the defendants have filed, largely making very

22    similar argument.

23              And for the reasons I'm going to explain, I have

24    decided to deny all three of the motions to strike.  And we

25    will not be having argument on them.

1        Let me give you my reasoning on that, and then

2    we will spend our remaining time on the foreign law issue.

3        At a high level, it seemed to me that the

4    defendants are advocating the view that the plaintiffs in

5    these cases have serially and repeatedly violated both the

6    letter and the spirit of the scheduling orders in my case

7    management procedures and the governing legal frameworks,

8    the Federal Rules of Civil Procedure, and case law such as

9    *Pennypack*.

10        I, of course, carefully considered what are very

11    serious charges by the defendants, and I have ultimately

12    found, based on my careful review of the materials

13    submitted, that the defendants have simply failed to prove

14    their charges and failed to prove that that is really what

15    is going on here.

16        Instead, it seems to me that these are very

17    complicated cases involving complex technology.

18        It seems that the plaintiffs tried to flag a

19    lot of the issues that have now become problematic in the

20    defendants' view by serving interrogatories, including,

21    especially, Interrogatory No. 17, I think it's 17 in both of

22    these cases, but the one seeking the defendants' disclosure

23    of their noninfringement contentions, and the defendants

24    chose not to provide particularly fulsome responses to that

25    and other interrogatories.

1          And a lot of what the defendants are arguing

2     in the motions today is that the plaintiffs somehow should

3     be faulted for the timing of certain theories that they

4     have disclosed, but I have failed to see how plaintiffs

5     could have been expected to respond sooner to theories that

6     defendants did not disclose sooner.

7          Often, it appeared to me, that arguably there

8     were new disclosures made by defendants' experts in their

9     report to which plaintiffs chose to fairly respond, which

10    they have a right to do, and plaintiffs probably could have

11    alternatively chosen to throw in motions to strike but they

12    didn't do that.  Instead, they, in part, recognizing, I

13    think, the complexity of the many moving parts in this case,

14    did their best to respond and defendants then largely have

15    responded.

16         It seems to me you all have, over time,

17    disclosed more and more of your case to one another and

18    hopefully you'll be ultimately narrowing disputes as we get

19    to trial, but at least you're disclosing things, you know,

20    as time goes on, but most importantly, not in a way that I

21    think plaintiffs are clearly at fault for or have crossed

22    any lines that would warrant the extreme sanctions that the

23    defendants are seeking of striking.

24         I also have to say that a lot of what the

25    defendants are arguing in their motions to strike seems to

1    me to be premature effort to get me to decide the merits of

2    highly disputed, highly complex factual issues.  That's just

3    a couple of examples in, I'll give you the 17-83 docket

4    numbers, but 17-83 D.I. 563 on 1.  There is a whole

5    paragraph that the defendants have near the beginning of

6    their letter which goes to the debate at issue of, you know,

7    whether the CRC and parity check data theories are new.

8              It's highly disputable, it seems to me, whether

9    the issue -- that is, the issue of whether KPN has shifted

10   to a new theory or not -- whether what Dr. Madisetti

11   discloses on a certain day is materially different and

12   outside the scope and surprising that the defendants or has,

13   in fairness, already been disclosed and should not be any

14   surprise to defendants.  That, itself, is a very disputed

15   question to which there is not a clear and obvious answer in

16   a way that would warrant the, again, the extreme sanction of

17   striking.

18             A similar example, 17-83, D.I. 564 at 1.  The

19   second full paragraph there is all merits argument which

20   are not in this case persuasive as a basis for the relief

21   defendants are seeking.

22             So those are general comments that apply to all

23   three of the motions to strike that I'm denying.  Let me

24   give you a little bit of specifics on each of the three

25   motions.

1          First, the defendants have moved to strike what

2     they contend are untimely expert opinions.  This is the

3     one that relates to purportedly new validity opinions given

4     by KPN's expert, Dr. Madisetti in his deposition as he

5     allegedly did not mention in his rebuttal report.

6          The opinions relate to the B bit or two-thirds

7     or 2/3 bits embodiment in the Barbulescu prior art that

8     defendants' expert had explained in his opening validity

9     report that, in the defendant's expert's view, rendered

10     claim 3 of the '662 patent obvious.

11          The motion to strike Dr. Madisetti's response

12     is denied.  The defendants have not persuaded me that

13     Dr. Madisetti truly offered a new opinion in the deposition.

14     It seems, instead, that defendants really are just splitting

15     hairs here.

16          But even if I'm wrong about that, at a minimum,

17     it seems clear to me, at least, that a reasonable

18     fact-finder taking the evidence in a light most favorable to

19     plaintiffs could find that Dr. Madisetti's deposition

20     testimony is entirely consistent with and, in fact --

21          A RECORDED VOICE:  Joining the meeting.

22          THE COURT:  -- within the opinions he disclosed

23     in his rebuttal, in his rebuttal report.

24          Given my conclusion on that, I need not address

25     the *Pennypack* Factors.

1          Then I'll move on to the next of the defendants'

2    motion to strike, which is also denied.  This one is directed

3    to purportedly untimely literal infringement theories.

4          Here, on this one, the defendants have failed to

5    persuade me that Dr. Madisetti's opinions that they seek to

6    strike are actually new, or at least that they are actually

7    new in any respect that would warrant them being stricken.

8          New Theory No. 1 that defendants point to is

9    that in his reply report, Dr. Madisetti opined that cyclic

10   redundancy check, or CRC, data in the claims check data and

11   that is capable of being used to check for errors, that this

12   is a new, a new theory of Dr. Madisetti.

13         But I agree, instead, with plaintiffs, that

14   Dr. Madisetti only asserted the argument about CRC data to

15   rebut the plaintiffs' expert, Dr. Jeffay's, opinion that

16   checking for transmission errors requires detecting them.

17         Dr. Madisetti is, in the challenged opinion,

18   explaining that even under what he views as defendants'

19   incorrect premise, the products still infringed.

20         New Theory No. 2, according to defendants, is

21   that during his deposition, Dr. Madisetti opined that the

22   receivers in the accused devices perform a type of error

23   checking by locally calculating the parity of the non-check

24   data and comparing it with that of the check data.

25         Here, again, I'm in agreement with the

1   plaintiffs; that to the extent Dr. Madisetti provided

2   additional receiver-related information, it was only to

3   rebut a new argument from Dr. Jeffay who argues that parity

4   here differs in some way from its ordinary meaning.

5           Dr. Madisetti had discussed parity in his

6   earlier report.

7           To the extent that either of these opinions is

8   fairly viewed as new, I find that it is a proper response to

9   new opinions disclosed for the first time in Dr. Jeffay's

10  rebuttal report.

11          Further, on this one, I have considered the

12  *Pennypack* Factors, and they weigh against exclusion,

13  especially considering defendants to respond more fully

14  to plaintiffs' Interrogatory 17, which, again, sought

15  noninfringement positions which defendants didn't really

16  provide.

17          And notably, in the letters, the many letters I

18  reviewed for today, and most personally the reply letters, I

19  don't see an argument from defendants that they did actually

20  fully and fulsomely replied to Interrogatory No. 17 in a way

21  that would have put the plaintiffs on the notice that the

22  plaintiffs sought of what noninfringement position

23  defendants were going to take.

24          On *Pennypack*, I don't see any improper expansion

25  of the case here.  I'm not persuaded that this is surprising

1    or severely prejudicial to defendants, as they argue.  It's

2    clearly important evidence.  There is no trial date set.

3    There is no evidence to me of any bad faith or willful

4    violation of a rule, so all of that supports my decision to

5    deny the defendants' motion.

6              To the extent defendants are trying to raise a

7    whole other motion to strike in footnote 2 of their opening

8    letter on this motion, at 17-83, D.I. 537 at 3, note 2, it

9    is going to be the rare motion one can prevail on when you

10   raise it in a footnote and address only a total of, as far

11   as I can tell, two footnotes to it.

12             But in any event, it's denied as well and

13   including for all the reasons I've denied what I take to be

14   the main part of that motion.

15             On the motions to strike, the third and final

16   one was the untimely Doctrine of Equivalents theories that

17   defendants, by this motion, move to strike is untimely two

18   purportedly new DOE infringement theories raised for the

19   first time in Dr. Madisetti's reply report.

20             Basically, the defendants ask me to apply the

21   reasoning that I followed recently in striking DOE's

22   theories in an entirely different case, *Arendi vs. Motorola*,

23   Civil Action No. 12-1601.  I think I had a decision on that

24   case in late January.

25             There are some similarities with *Arendi*.  It's

1    true that plaintiffs failed to affirmatively disclose

2    substance of their DOE theories before the reply expert

3    report here as in *Arendi*.

4            And here, *Arendi* asserts their expert, in

5    finally coming forward with more detail, DOE theory, was

6    responding to purportedly new claim construction arguments

7    that defendants raised for the first time in their rebuttal

8    expert report.  But notwithstanding those similarities, I

9    think there is some important differences here.

10           Here, unlike in *Arendi*, it's clear to me that

11   plaintiffs have always made it known that they were pursuing

12   Doctrine of Equivalents and never did anything to abandon

13   Doctrine of Equivalents.

14           And I don't see a basis for defendants to have

15   reasonably decided that DOE is definitely out of this case.

16   And that is different than what I saw in *Arendi*.

17           And here, and I'll mention it again, plaintiffs

18   served an interrogatory seeking noninfringement contentions

19   from defendants, didn't really get a substantive response to

20   that.  The plaintiffs didn't learn, despite their effort,

21   some of the defendants' noninfringement positions until the

22   defendants' expert report.

23           And so it's reasonable, in this case, that only

24   at that point were the plaintiffs in a position to decide

25   that in the alternative, they were pursuing Doctrine of

1    Equivalents, and with respect to which limitations they were

2    pursuing it, and to then provide more details on their DOE

3    theory.

4              On top of all that, when I apply the *Pennypack*

5    Factors, they, again, here, do not favor striking the

6    supposedly new DOE theories.

7              This is an important argument in the alternative

8    for plaintiffs.  I'm not persuaded it is really a surprise

9    and prejudicial to the defendants.  And to the extent it is

10   prejudicial and surprising to them in the timing in which

11   it arose, I think the defendants largely have to blame

12   themselves for that timing under the circumstances of this

13   case.

14             The plaintiffs rely, for the new DOE theories,

15   on all the same evidence that they had already put in the

16   record and pointed to for literal infringement, and

17   defendants have filed a responsive brief.  No trial date has

18   been set.

19             I fail to see how my decision today is possibly

20   going to throw off the progress in this case and how we move

21   forward.

22             So for all of those reasons, that motion and all

23   three motions to strike are denied.

24             I do need your help on the issue of the reliance

25   on foreign law.

EXHIBIT 14a.1
Plaintiffs' Opposition
to MIL No. 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> HTC Corporation, <br><br> Defendant. | C.A. No. 17-cv-83-GBW <br><br> **JURY TRIAL DEMANDED** <br><br> **UNDER SEAL** |

**PLAINTIFFS' OPPOSITION TO HTC'S UNTIMELY "CONTINGENT" MOTION *IN LIMINE* NO. 1 TO BAR PLAINTIFFS' DAMAGES EVIDENCE**

HTC's MIL should be treated as what it is: an untimely,[1] improper, **and grossly inaccurate** sur-reply to Plaintiffs' MIL 13(a), which asks the Court to enforce its prior order excluding HTC's marking evidence and eliminating its marking defense—an order HTC is refusing to comply with. Specifically, in considering the exact Apple evidence that is the subject of Plaintiffs' MIL, this Court held: "***The Court is not going to permit this untimely-produced evidence to be admitted***." Ex. 8 (2020 MSJ Order) (D.I. 486) at 17–18.[2] And the Court confirmed the implications of that ruling in a subsequent order denying a reconsideration motion filed by an HTC co-defendant. As the Court explained, its MSJ order resulted in the "exclusion of the evidence" and thus **the "elimination of its marking affirmative defense**." Ex. 9 (2021 Order) at 4–5 & n.2.

And critically, in reaching this result, this Court **rejected HTC's exact argument regarding the very BlackBerry licenses** HTC now "contingently" seeks to exclude. As the Court explained:

> [6] At the hearing, Defendants suggested that the Court should admit belated evidence of the Apple products to be consistent with the Court's prior refusal to strike Blackberry licenses that Plaintiffs belatedly produced with opening expert reports. (*See* Tr. 79-81) In denying Defendants' request to strike the late-produced licenses, the Court conducted a *Pennypack* analysis and concluded – based on factors including the lack of evidence Plaintiffs acted in bad faith or with willful disregard of the scheduling order – that the pertinent factors did not support striking. (*See* C.A. No. 17-83 D.I. 329) The considerations presented here are different, including that Defendants did not respond to interrogatories seeking identification of any "unmarked patent article[s]" and did not identify such products until they filed their non-infringement expert's rebuttal report. (D.I. 295 at 36-37; *see also Arctic Cat*, 876 F.3d at 1368)

---

[1] On July 27, 2023, the parties agreed to a detailed schedule governing pretrial exchanges. Ex. 1. HTC, however, has consistently ignored those deadlines, identifying exhibits late, serving disclosures late, and even serving its MILs and MIL oppositions late. *E.g.*, Exs. 2–7. This MIL is no exception. Despite having identified it prior to the September 11 opening MIL deadline, HTC did not serve it until September 22. Indeed, and remarkably, when HTC announced on September 19 that it intended to serve it late because Plaintiffs were moving to exclude evidence that HTC had added to its exhibit list only days before (and *after* the MIL deadline), Plaintiffs objected but ultimately agreed **to HTC's proposal** that both sides would serve any remaining MILs by noon on September 21. Ex. 2 at 1–2. As usual, Plaintiffs complied with that deadline; HTC did not. Ex. 2.

[2] All emphasis in this brief is added.

Ex. 8 (2020 MSJ Order) at 18 n.6. That is dispositive. "Under the law of the case doctrine, when a court 'decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *McDuffy v. Marsico*, 572 F. Supp. 2d 520, 524 (D. Del. 2008). The fact that the Court already ***rejected HTC's exact argument*** thus resolves HTC's MIL.

As a result, HTC's MIL actually serves only to underscore HTC's disregard (and disdain) for this Court's orders and the lengths to which HTC is willing to misrepresent the facts and record in this case. Certainly, HTC fails to mention in its MIL that the Court already expressly rejected its exact argument. Nor does HTC disclose that it was permitted to depose BlackBerry regarding the very licenses it now seeks to exclude. D.I. 334. (In contrast, the Court found the prejudice to Plaintiffs ***could not be cured*** and thus required striking HTC's marking evidence and, ultimately, defense. *See* Ex. 9 (2021 Order) at 4–5 & n.2.) And these omissions are just the tip of the iceberg.

Also false is HTC's representation that Plaintiffs waited years to move to preclude HTC's late-disclosed marking evidence and theories. *See* Mot. at 2. As shown by the Court's 2020 and 2021 Orders excluding exactly such evidence and theories, Plaintiffs plainly did ask the Court to exclude them, and the Court did so ***years ago***—holding (again): "***The Court is not going to permit this untimely-produced evidence to be admitted***." Ex. 8 (2020 MSJ Order) at 17–18.

Also false is HTC's representation that Plaintiffs "have, on numerous occasions, disclosed untimely new theories and evidence" in this case. Mot. at 1. ***This Court has already rejected that exact accusation as untrue***, explaining it was denying various HTC motions to strike because:

> At a high level, it seemed to me that the ***defendants are advocating the view that the plaintiffs in these cases have serially and repeatedly violated both the letter and the spirit of the scheduling orders*** in my case management procedures and the governing legal frameworks, the Federal Rules of Civil Procedure, and case law such as *Pennypack*.
> I, of course, carefully considered what are very serious charges by the defendants, and ***I have ultimately found, based on my careful review of the***

> *materials submitted, that the defendants have simply failed to prove their charges and failed to prove that that is really what is going on here*.

Ex. 10 (Apr. 5, 2021 Hr'g Tr) at 5:3–15. In fact, the Court went on to point out that, in reality, ***it was HTC that had failed to comply with its disclosure obligations***—explaining that, "*[o]ften*, it appeared to me, that arguably there were new disclosures made by defendants' experts in their report." *Id.* at 6:7–15. Indeed, this Court recognized in May that ***HTC was "previously singled out by the Court for belated disclosures*."** Ex. 11 (May 18, 2023 Order) (D.I. 658) at 3–4.[3]

Finally, also false is HTC's representation that it purportedly identified "various version[s] of the iPhone" on May 24, 2019, which was the last day of fact discovery. Mot. at 3. As this Court already has held, HTC "'did not identify ***any*** specific products' until ***after*** fact discovery closed." Ex. 8 (2020 MSJ Order) (D.I. 486) at 17 (emphasis in original). And the Court had good reason to reach that conclusion: ***HTC admitted at the MSJ hearing*** that it never identified specific products during fact discovery. As HTC said: "Now, did we say with specificity the iPhone 3, the iPhone 4 or iPhone 5? ***We didn't do that in our interrogatory response***. Now, BlackBerry did that in July in their interrogatory response; and ***we made that clear in October***." Ex. 12 (MSJ Hr'g Tr.) at 79:5–11. And when asked by the Court "[d]id you identify specific versions of the iPhone" during fact discovery in response to Plaintiffs' marking requests, HTC admitted: "Your Honor, in our [May 24, 2019] supplemental response, ***we did not identify the specific versions*."** *Id*. at 99:7–14.

In sum, the Court already has squarely considered ***and rejected*** HTC's request. The Court thus should deny HTC's MIL. Moreover, the Court should take note of HTC's many (many) misrepresentations and remind HTC of its duty of candor.

---

[3] Also false is HTC's representation that Plaintiffs purportedly admitted that "both sides produced documents late." Mot. at 1. In reality, Plaintiffs said that it was HTC that was "producing new evidence after opening reports had been served," D.I. 320 at 3, and how, in contrast, "[t]hroughout discovery in these cases, ***Plaintiffs have diligently produced responsive materials and (unlike Defendants) have consistently complied with the Court's deadlines*."** *Id*. at 5.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE, S.A.,<br><br>               Plaintiffs,<br><br>      v.<br><br>HTC CORPORATION,<br><br>               Defendant. | C.A. No. 17-cv-83-GBW<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL** |

## <u>DECLARATION OF HUNTER VANCE</u>

I, Hunter Vance, hereby declare and state as follows:

1.    I am over the age of eighteen and, if called as a witness, could competently testify to the matters set forth herein.

2.    I am an attorney at Susman Godfrey, LLP, and counsel to Plaintiffs 3G Licensing, S.A., Koninklijke KPN N.V., and Orange S.A. I am a member in good standing of the State Bar of Texas.

3.    I make this declaration in support of Plaintiffs' Opposition to HTC's Untimely "Contingent" Motion in Limine No. 1 to Bar Plaintiffs' Damages Evidence.

4.    Attached as **Exhibit 1** is a true and correct copy of a July 27, 2023, email from Hunter Vance.

5.    Attached as **Exhibit 2** is a true and correct copy of a September 19, 2023, email from Andres Healy.

6.    Attached as **Exhibit 3** is a true and correct copy of a September 22, 2023, email from Andres Healy.

7. Attached as **Exhibit 4** is a true and correct copy of a September 18, 2023, email from Andres Healy.

8. Attached as **Exhibit 5** is a true and correct copy of a September 20, 2023, email from Philip Ou.

9. Attached as **Exhibit 6** is a true and correct copy of a September 19, 2023, email from Daniel Treviño.

10. Attached as **Exhibit 7** is a true and correct copy of a September 15, 2023, email from Daniel Treviño.

11. Attached as **Exhibit 8** is a true and correct copy of excerpts of this Court's September 29, 2020, Memorandum Opinion.

12. Attached as **Exhibit 9** is a true and correct copy of this Court's February 16, 2021, Memorandum Order.

13. Attached as **Exhibit 10** is a true and correct copy of excerpts from the transcript of an April 5, 2021, hearing in this Court.

14. Attached as **Exhibit 11** is a true and correct copy of excerpts of this Court's May 18 2023, Order.

15. Attached as **Exhibit 12** is a true and correct copy of excerpts from the transcript of an April 17, 2020, hearing in this Court.

16. The above cited exhibits have been highlighted or otherwise marked for emphasis at my direction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED in Houston, Texas this 25st day of September, 2023.

2

*/s/ Hunter Vance*
Hunter Vance

EXHIBIT 1

**From:**    Hunter Vance
**To:**    Alexander Lee; Bruce Yen; Daniel Trevino; Jake Gold; John Shaw; Nathan R. Hoeschen; Philip Ou; Radhesh Devendran; Shashank Chitti; Yar R. Chaikovsky; Andres Healy; Hunter Vance; Joanna Stanley; Lexie White; Melanie Galanti; Michelle Wimmer; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com)
**Subject:**    3GL-HTC Agreed Pretrial Schedule
**Date:**    Thursday, July 27, 2023 4:36:21 PM
**Attachments:**    3GL-HTC Agreed Pretrial Schedule.docx

All,

See the attached agreed pretrial schedule.

**Hunter Vance**| **Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

*3G Licensing, S.A. and Orange S.A. v. HTC Corp.*, C.A. 1:17-cv-00083-GBW (D. Del.)
**AGREED PRETRIAL EXCHANGE SCHEDULE**

| Event | Date |
|---|---|
| 3GL/Orange to provide:<br>• Draft Pretrial Order shell and portions relating to 3GL/Orange's burden of proof (*e.g.*, infringement, damages)<br>• Draft jury instructions (preliminary and final)<br>• Draft voir dire<br>• Draft verdict form | August 11, 2023 by 6 p.m. ET (Friday) |
| Parties exchange:<br>• Trial exhibit lists<br>• Witness lists<br>• Affirmative deposition designations | August 15, 2023 by 6 p.m. ET (Tuesday) |
| Parties exchange:<br>• FTP copies of proposed exhibits | August 16, 2023 by 6 p.m. ET (Wednesday) |
| HTC to provide (edits via redline and clean copies):<br>• Edits to draft Pretrial Order (including statement of uncontested facts and portions relating to HTC's burden of proof (*e.g.*, invalidity))<br>• Edits to draft jury instructions (preliminary and final)<br>• Edits to draft voir dire<br>• Edits to draft verdict form | August 18, 2023 by 6 p.m. ET (Friday) |
| Parties exchange:<br>• Objections to exhibits<br>• Objections to witness lists<br>• Objections and counter-designations, if any, to deposition testimony | August 24, 2023 by 6 p.m. ET (Thursday) |
| 3GL/Orange to provide (edits via redline and clean copies):<br>• Edits to draft Pretrial Order | August 25, 2023 by 6 p.m. ET (Friday) |
| Parties to exchange motions *in limine* topics | August 28, 2023 by 6 p.m. ET (Monday) |

*3G Licensing, S.A. and Orange S.A. v. HTC Corp.*, C.A. 1:17-cv-00083-GBW (D. Del.)
**AGREED PRETRIAL EXCHANGE SCHEDULE**

| Event | Date |
|---|---|
| Parties meet and confer regarding:<br>• Motions *in limine* topics<br>• Pretrial order<br>• Pre-marking and joint exhibits<br>• Voir dire<br>• Jury instructions<br>• Verdict form | August 30, 2023 by 6 p.m. ET (Wednesday) |
| Parties to exchange objections to counter designations, if any, and counter-counter designations | September 1, 2023 by 6 p.m. ET (Friday) |
| Parties to exchange objections, if any, to counter-counter designations | September 8, 2023 by 6 p.m. ET (Friday) |
| 3GL/Orange to provide full draft proposed PTO, Voir Dire, Preliminary Jury Instructions, Final Jury Instructions, and Verdict Form (L.R. 16.3(d)(1)) | September 8, 2023 by 6 p.m. ET (Friday) |
| Parties to exchange motions *in limine* (send via Word for compiling) | September 11, 2023 by 6 p.m. ET (Monday) |
| Parties to exchange:<br>Oppositions to motions *in limine* (send via Word for compiling) | September 18, 2023 by 6 p.m. ET (Monday) |
| HTC to provide final edits to PTO, Voir Dire, Preliminary Jury Instructions, Final Jury Instructions, and Verdict Form (L.R. 16.3(d)(2)) | September 19, 2023 by 6 p.m. ET (Tuesday) |
| Parties meet and confer re final pretrial materials | September 21, 2023 (Thursday) |
| Parties to exchange replies to motions *in limine* (send via Word for compiling) | September 22, 2023 by 6 p.m. ET (Monday) |
| **3GL/Orange files (and emails the Court):**<br>• **Voir Dire, Preliminary Jury Instructions, Final Jury Instructions, and Verdict Form (GBW Form Scheduling Order ¶ 20)** | **September 25, 2023 (Monday)** |
| **3GL/Orange files (and emails the Court):**<br>• **Pretrial Order (GBW Form Scheduling Order ¶ 19)** | **September 27, 2023 (Wednesday)** |
| **Pretrial Conference (Dkt 645)** | **October 4, 2023** |
| **Jury Trial (Dkt 645)** | **October 10, 2023** |

*3G Licensing, S.A. and Orange S.A. v. HTC Corp.*, C.A. 1:17-cv-00083-GBW (D. Del.)
**AGREED PRETRIAL EXCHANGE SCHEDULE**

EXHIBIT 2

| | |
|---|---|
| **From:** | Andres Healy |
| **To:** | Ou, Philip |
| **Cc:** | Hunter Vance; W&C 3G/KPN v. HTC; Chaikovsky, Yar; Nathan R. Hoeschen; John Shaw; SKparalegals@shawkeller.com; Treviño, C. Daniel; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Lexie White; Joanna Stanley; Andres Healy |
| **Subject:** | Re: 3GL/HTC - MILs |
| **Date:** | Tuesday, September 19, 2023 11:04:04 PM |

Phil,

Your assertions are incorrect from start to finish so suffice to say we disagree. Given the liberties HTC takes with the record, further discussions seem unproductive, so we'll instead make our arguments to the Court, including regarding HTC's failure (again) to abide by agreed deadlines.

Andres

> On Sep 19, 2023, at 5:15 PM, Ou, Philip <philip.ou@whitecase.com> wrote:

> EXTERNAL Email
> Hunter,
>
> Your summary of our position is incorrect. Our conditional MIL was based on whether 3GL was filing a MIL to exclude evidence on the basis that it was produced after the close of fact discovery. You indicated you would not move on that basis, so we did not file our conditional MIL.
>
> Now you want to file a MIL to exclude documents on the basis that they were identified after the close of fact discovery in an expert report, in addition to any opinions relating to those documents. That is a motion to strike that 3GL had four years to file. Notably, 3GL did not even bother to depose Dr. Jeffay about his opinions or the evidence he identified in his report you are now seeking to strike. Your MIL as framed is untimely and we similarly object.
>
> Any documents produced after the close of fact discovery and related opinions. The documents should be the ones identified as NDD in objections, but we will consider if there is a narrower scope.
>
> 3GL's strategy to ambush HTC on the eve of trial by seeking to exclude expert opinions and evidence disclosed four years ago, after it decided not to file any dispositive or daubert motions, motions to strike, or even depose HTC's experts, is highly prejudicial and improper.
>
> **Philip Ou** | Partner
> **T** +1 650 213 0300   **M** +1 510 378 4224   **E** philip.ou@whitecase.com
> White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109
>
> **From:** Hunter Vance <HVance@susmangodfrey.com>
> **Sent:** Tuesday, September 19, 2023 5:03 PM
> **To:** Ou, Philip <philip.ou@whitecase.com>; Andres Healy <AHealy@susmangodfrey.com>
> **Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
> **Subject:** RE: 3GL/HTC - MILs
>
> Phil,
>
> Your revisions to the briefing schedule are fine.
>
> To be clear, we object HTC submitting a late MIL. HTC told us on August 28 that it planned to file a MIL "conditioned on whether 3G Licensing and Orange S.A. moves

in limine to preclude HTC from relying on evidence of a failure to mark Apple products."  Obviously, we did move to exclude HTC's untimely marking evidence, yet HTC chose not to file its conditional MIL (or any other MILs by the 9/11 deadline.) Nor have we produced or identified as exhibits any new documents justifying a late MIL, unlike HTC, who only just produced new documents last Friday —after the MIL deadlines—that are the subject of our motion.

Further, your email does not even identify the evidence you say HTC wants to exclude. Is it the documents HTC objected to as "NDD?"

Best,

**Hunter Vance| Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

---

**From:** Ou, Philip <philip.ou@whitecase.com>
**Sent:** Tuesday, September 19, 2023 6:36 PM
**To:** Andres Healy <AHealy@susmangodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Hunter Vance <HVance@susmangodfrey.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP <mfarnan@farnanlaw.com> <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - MILs

EXTERNAL Email
Hunter, Andres:

To follow up on our call, the proposed dates for the briefing are fine, but propose adjusting the times.   You have otherwise only given HTC one business day to respond whereas you have nearly four.

- Plaintiffs serve opening MIL by 9/21 at Noon EST
- HTC serves response by 9/25 at 11 PM EST
- Plaintiffs serve reply by 9/27 at 4 PM EST (to incorporate into 5PM EST Pretrial Order filing.)

In view of the MIL you are not filing, HTC will also file the conditional motion *in limine* HTC previously identified to exclude any documents produced after the close of fact discovery and testimony relating to those documents.  We assume you still oppose, but let us know if you want to further discuss.

Thanks,
Phil

**Philip Ou** | Partner
**T** +1 650 213 0300   **M** +1 510 378 4224   **E** philip.ou@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

**From:** Andres Healy <AHealy@susmangodfrey.com>
**Sent:** Tuesday, September 19, 2023 12:26 PM
**To:** Ou, Philip <philip.ou@whitecase.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Andres Healy <AHealy@susmangodfrey.com>; Hunter Vance <HVance@susmangodfrey.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel

<daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP
(mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna
Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

We'll answer any questions you have on our call. Talk to you then.

**Andres C. Healy | Susman Godfrey LLP**
206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON  •  LOS ANGELES  •  SEATTLE  •  NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Ou, Philip <philip.ou@whitecase.com>
**Sent:** Tuesday, September 19, 2023 12:22 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar
<yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw
<jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel
<daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP
(mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna
Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

<mark>EXTERNAL Email</mark>
Hunter – the only documents that were excluded that were cited in an expert report were on the basis that they
were confidential documents from Qualcomm never produced in this case.  Can you elaborate on what you are
referring to?

Regarding DTX277, we will also be supplementing our exhibit list to include the amended POPR.  The POPR is
addressed by Dr. Jeffay in his expert report and responded to by Dr. Madisetti.  We are not raising 101 of the 091
patent.  It is unclear on what basis you would seek to exclude these, or what Andres means by: "Further, any
attempt to make a prosecution history or disclaimer argument to the jury would be improper."  Please explain in
advance of our meet and confer if you want to discuss it at that time.

Thanks,
Phil

**Philip Ou  |  Partner**
**T**  +1 650 213 0300   **M**  +1 510 378 4224   **E**  philip.ou@whitecase.com
White & Case LLP  |  3000 El Camino Real  |  2 Palo Alto Square, Suite 900  |  Palo Alto, CA 94306-2109
**From:** Hunter Vance <HVance@susmangodfrey.com>
**Sent:** Tuesday, September 19, 2023 12:12 PM
**To:** Ou, Philip <philip.ou@whitecase.com>; Andres Healy <AHealy@susmangodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar
<yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw
<jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel
<daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP
(mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna
Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

Phil,

No, that does not resolve our objection, including for the reasons we detailed below. Plaintiffs have certainly never agreed that any document cited in an expert report is timely (nor did we agree as much "for the KPN trial" as you suggest below. Indeed, as you know, KPN successfully moved to exclude multiple untimely documents that HTC argued should be admitted because HTC's expert cited them.)

We are not available at 5PM EST, but we can discuss at 5:30EST. I will send an invite. We can also discuss our questions below regarding DTX277.

Thanks,

**Hunter Vance| Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

**From:** Ou, Philip <philip.ou@whitecase.com>
**Sent:** Tuesday, September 19, 2023 1:32 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

<mark>EXTERNAL Email</mark>
Hunter,

Each of DTX 284-291 were cited to and disclosed in Dr. Jeffay's non-infringement report:

- DTX284-288
  - Cited at Jeffay Rebuttal Report ¶ 256
- DTX289-291
  - Cited at Jeffay Rebuttal Report ¶ 261

As with exhibits that both parties produced and added to their respective exhibit lists for the KPN trial that were cited to in expert reports but bates numbered versions not previously produced, we did the same for these documents.

We trust that this resolves your present objection on the basis of timing and the motion *in limine*, but if not, we can meet and confer at 5 pm EST today.

Thanks,
Phil

**Philip Ou**  |  Partner
**T**  +1 650 213 0300    **M**  +1 510 378 4224    **E**  philip.ou@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

**From:** Hunter Vance <HVance@susmangodfrey.com>
**Sent:** Tuesday, September 19, 2023 9:28 AM
**To:** Andres Healy <AHealy@susmangodfrey.com>; Ou, Philip <philip.ou@whitecase.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP

([mfarnan@farnanlaw.com](mailto:mfarnan@farnanlaw.com)) <[mfarnan@farnanlaw.com](mailto:mfarnan@farnanlaw.com)>; Lexie White <[lwhite@susmangodfrey.com](mailto:lwhite@susmangodfrey.com)>; Joanna Stanley <[jstanley@SusmanGodfrey.com](mailto:jstanley@SusmanGodfrey.com)>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

Phil,

Given that we have not heard back from HTC regarding DTX 284-291, we understand that HTC will not agree to withdraw those exhibits. We will file our motion in limine.

Best,

**Hunter Vance| Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

---

**From:** Andres Healy <[AHealy@susmangodfrey.com](mailto:AHealy@susmangodfrey.com)>
**Sent:** Tuesday, September 19, 2023 10:25 AM
**To:** Hunter Vance <[HVance@susmangodfrey.com](mailto:HVance@susmangodfrey.com)>; Ou, Philip <[philip.ou@whitecase.com](mailto:philip.ou@whitecase.com)>
**Cc:** W&C 3G/KPN v. HTC <[WC3GKPNvHTC@whitecase.com](mailto:WC3GKPNvHTC@whitecase.com)>; Chaikovsky, Yar <[yar.chaikovsky@whitecase.com](mailto:yar.chaikovsky@whitecase.com)>; Nathan R. Hoeschen <[nhoeschen@shawkeller.com](mailto:nhoeschen@shawkeller.com)>; John Shaw <[jshaw@shawkeller.com](mailto:jshaw@shawkeller.com)>; [SKparalegals@shawkeller.com](mailto:SKparalegals@shawkeller.com); Treviño, C. Daniel <[daniel.trevino@whitecase.com](mailto:daniel.trevino@whitecase.com)>; Brian Farnan <[bfarnan@farnanlaw.com](mailto:bfarnan@farnanlaw.com)>; Michael J. Farnan - Farnan LLP ([mfarnan@farnanlaw.com](mailto:mfarnan@farnanlaw.com)) <[mfarnan@farnanlaw.com](mailto:mfarnan@farnanlaw.com)>; Lexie White <[lwhite@susmangodfrey.com](mailto:lwhite@susmangodfrey.com)>; Joanna Stanley <[jstanley@SusmanGodfrey.com](mailto:jstanley@SusmanGodfrey.com)>; Andres Healy <[AHealy@susmangodfrey.com](mailto:AHealy@susmangodfrey.com)>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

Phil,

We also request to meet and confer regarding HTC's newly disclosed DTX277 exhibit. As you know, HTC sought to rely on that exhibit in support of its 101 motion directed to the 091 patent, which the Court subsequently resolved in Plaintiffs' favor. Further, any attempt to make a prosecution history or disclaimer argument to the jury would be improper. As such, so that we can evaluate whether a MIL is necessary, please explain how HTC intends to use such exhibit.

**Andres C. Healy | Susman Godfrey LLP**
206.505.3843 | [ahealy@susmangodfrey.com](mailto:ahealy@susmangodfrey.com)
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON ● LOS ANGELES ● SEATTLE ● NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Hunter Vance <[HVance@susmangodfrey.com](mailto:HVance@susmangodfrey.com)>
**Sent:** Monday, September 18, 2023 3:20 PM
**To:** Ou, Philip <[philip.ou@whitecase.com](mailto:philip.ou@whitecase.com)>
**Cc:** W&C 3G/KPN v. HTC <[WC3GKPNvHTC@whitecase.com](mailto:WC3GKPNvHTC@whitecase.com)>; Chaikovsky, Yar <[yar.chaikovsky@whitecase.com](mailto:yar.chaikovsky@whitecase.com)>; Nathan R. Hoeschen <[nhoeschen@shawkeller.com](mailto:nhoeschen@shawkeller.com)>; John Shaw <[jshaw@shawkeller.com](mailto:jshaw@shawkeller.com)>; [SKparalegals@shawkeller.com](mailto:SKparalegals@shawkeller.com); Treviño, C. Daniel <[daniel.trevino@whitecase.com](mailto:daniel.trevino@whitecase.com)>; Brian Farnan <[bfarnan@farnanlaw.com](mailto:bfarnan@farnanlaw.com)>; Michael J. Farnan - Farnan LLP ([mfarnan@farnanlaw.com](mailto:mfarnan@farnanlaw.com)) <[mfarnan@farnanlaw.com](mailto:mfarnan@farnanlaw.com)>; Lexie White <[lwhite@susmangodfrey.com](mailto:lwhite@susmangodfrey.com)>; Andres Healy <[AHealy@susmangodfrey.com](mailto:AHealy@susmangodfrey.com)>; Joanna Stanley <[jstanley@SusmanGodfrey.com](mailto:jstanley@SusmanGodfrey.com)>

**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

Phil,

See Plaintiffs' objections to the new exhibits on HTC's list from last Friday.

In particular, note that we have objected to DTX 284-291, which appear to be various third-party website printouts that HTC never produced during the fact discovery period (and indeed that HTC only just produced last Friday, nearly 4.5 years after the fact discovery period closed.) It appears that HTC now intends to have its expert rely on these undisclosed, untimely documents to make noninfringement arguments regarding the alleged operation of the Accused Products.

That is improper and prejudices Plaintiffs given that we never had any opportunity to conduct responsive discovery regarding these third-party printouts. For example, HTC lists what it purports to be printouts from T-Mobile's website (DTX 284-288, 290). Plaintiffs have had no opportunity to conduct discovery on T-Mobile regarding these documents— this is even worse because both parties *did* subpoena T-Mobile during fact discovery, along with other carriers, yet HTC waited until long *after* discovery closed to produce these untimely, unauthenticated website printouts.

Please confirm by tomorrow at **12PM EST** whether HTC will withdraw those exhibits. To the extent HTC refuses, Plaintiffs will file a motion in limine to exclude HTC's untimely documents. If so, here's our proposed briefing schedule. It is necessarily compressed given that HTC waited until just last Friday (after the opening MIL deadline) to produce and list these documents.

- Plaintiffs serve opening MIL by 9/22 at 6PM EST
- HTC serves response by 9/25 at 6PM EST
- Plaintiffs serve reply by 9/27 at 4PM EST (to incorporate into 5PM EST Pretrial Order filing.)

Best,

**Hunter Vance| Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

---

**From:** Treviño, C. Daniel <daniel.trevino@whitecase.com>
**Sent:** Friday, September 15, 2023 4:49 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Ou, Philip <philip.ou@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com
**Subject:** 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

<mark>EXTERNAL Email</mark>

Counsel,

Attached for service is HTC Corporation's supplemental trial exh bit list.  Exhibit nos. 269-305 are new additions.

Linked below are compressed files containing production volumes HTC3G051 & 52 and a PDF/XLS set of the new trial exhibits.

https://amsfs.whitecase.com/ngdox/workspaces/9d1a79a7-63a3-450f-96ea-bd07330ff2f6/99f98e1a-6e20-4ab4-a934-165f217d7012

Please advise if you have any issues accessing the link.

Sincerely,

C. Daniel Treviño

**C. Daniel Treviño**  |  Senior Paralegal
**T**  +1 650 213 0328    **E**  daniel.trevino@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

========================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


========================================================================

========================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


========================================================================

========================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


========================================================================

========================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


========================================================================

================================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


================================================================================

# EXHIBIT 3

| | |
|---|---|
| **From:** | Andres Healy |
| **To:** | Ou, Philip |
| **Cc:** | Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Brian Farnan; Joanna Stanley; Lexie White; Andres Healy; Hunter Vance; Yen, Bruce; Treviño, C. Daniel; Gold, Jake; John Shaw; Nathan R. Hoeschen; Devendran, Radhesh; Chitti, Shashank; Chaikovsky, Yar; Karen Keller; Faasisila, Nikole |
| **Subject:** | RE: HTC - Contingent MIL No. 1 |
| **Date:** | Friday, September 22, 2023 11:00:07 AM |

Phil,

So the record is clear, we object to HTC's late MIL and reserve all rights regarding it.

**Andres C. Healy | Susman Godfrey LLP**

206.505.3843 | ahealy@susmangodfrey.com

401 Union Street | Suite 3000 | Seattle, WA 98101

**HOUSTON ● LOS ANGELES ● SEATTLE ● NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Ou, Philip <philip.ou@whitecase.com>
**Sent:** Friday, September 22, 2023 7:45 AM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Yen, Bruce <bruce.yen@whitecase.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Karen Keller <kkeller@shawkeller.com>; Faasisila, Nikole <nikole.faasisila@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan <bfarnan@farnanlaw.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>; Lexie White <lwhite@susmangodfrey.com>
**Subject:** RE: HTC - Contingent MIL No. 1

<mark>EXTERNAL Email</mark>

Hunter,

Attached is HTC's contingent MIL No. 1.

**Philip Ou** | Partner
**T** +1 650 213 0300   **M** +1 510 378 4224   **E** philip.ou@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

**From:** Hunter Vance <HVance@susmangodfrey.com>
**Sent:** Thursday, September 21, 2023 9:04 AM
**To:** Alexander Lee <alexanderlee@paulhastings.com>; Yen, Bruce <bruce.yen@whitecase.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip <philip.ou@whitecase.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>; Chitti,

Shashank <shashank.chitti@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian
Farnan <bfarnan@farnanlaw.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Andres Healy
<AHealy@susmangodfrey.com>; Lexie White <lwhite@susmangodfrey.com>
**Subject:** HTC - Plaintiffs' MILs

Counsel,

Please see the attached MILs.

Best,

**Hunter Vance**| **Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

========================================================================
This email communication (and any attachments) are confidential and are intended only for the
individual(s) or entity named above and others who have been specifically authorized to receive it. If
you are not the intended recipient, please do not read, copy, use or disclose the contents of this
communication to others. Please notify the sender that you have received this email in error by
replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies
of it. This information may be subject to legal professional or other privilege or may otherwise be
protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


========================================================================

EXHIBIT 4

| From: | Andres Healy |
|-------|--------------|
| To: | Philip.ou@whitecase.com |
| Cc: | Hunter Vance; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Andres Healy |
| Subject: | RE: 3GL/HTC - MIL |
| Date: | Monday, September 18, 2023 5:11:22 PM |
| Attachments: | image001.png |

Phil,

Are we going to move to strike if you serve your oppositions a few hours late? Likely not. But HTC has habitually ignored the pretrial deadlines in this case and it is increasingly prejudicial to our ability to prepare our case. We've been very patient but enough is enough. We reserve all rights.

**Andres C. Healy | Susman Godfrey LLP**

206.505.3843 | ahealy@susmangodfrey.com

401 Union Street | Suite 3000 | Seattle, WA 98101

**HOUSTON ● LOS ANGELES ● SEATTLE ● NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Ou, Philip <philip.ou@whitecase.com>
**Sent:** Monday, September 18, 2023 5:00 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>
**Subject:** RE: 3GL/HTC - MIL

EXTERNAL Email

Hunter -

Are you suggesting you intend to move to strike our response, do not intend to file it with the pre-trial order or ask the Court not to consider it?

If so, let's meet and confer so we can file a motion for leave immediately.

Thanks,
Phil

---

**From:** Hunter Vance <HVance@susmangodfrey.com>
**Date:** Tuesday, Sep 19, 2023 at 5:57 AM
**To:** Ou, Philip <philip.ou@whitecase.com>
**Subject:** RE: 3GL/HTC - MIL

Phil,

While we appreciate the heads up, we agreed to mutual exchanges of all materials at 6PM EST.

**Hunter Vance**| **Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

---

**From:** Ou, Philip <philip.ou@whitecase.com>
**Sent:** Monday, September 18, 2023 4:13 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>
**Subject:** 3GL/HTC - MIL

<mark>EXTERNAL Email</mark>
Hunter,

Giving you a heads up that our team is still finishing up its response to your motion in limine, but we will serve it before the end of the day.

If you want an extra day to serve your reply, no issues.

Thanks,
Phil

**Philip Ou** | Partner
**T** +1 650 213 0300   **M** +1 510 378 4224   **E** philip.ou@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109
**WHITE & CASE**

======================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


======================================================================

======================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies

of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

=============================================================================

# EXHIBIT 5

| From: | Ou, Philip |
|---|---|
| To: | Hunter Vance; Alexander Lee; Yen, Bruce; Treviño, C. Daniel; Gold, Jake; John Shaw; Nathan R. Hoeschen; Devendran, Radhesh; Chitti, Shashank; Chaikovsky, Yar |
| Cc: | Andres Healy; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Joanna Stanley; Lexie White |
| Subject: | RE: HTC - Edits to Pretrial Materials |
| Date: | Wednesday, September 20, 2023 2:40:58 PM |
| Attachments: | 2023-09-19_3GL-HTC DRAFT PTO Exhibit 1 - Uncontested Facts - Plaintiffs" Edits on HTC 8.23 - 9.8 Service.docx |
| | 2023-09-19_3GL-HTC DRAFT PTO Exhibit 3 - HTC"s Statement of Contested Facts (2023-08-23).docx |
| | 2023-09-19_3GL-HTC DRAFT PTO Exhibit 5 - HTC"s Statement of Issues of Law that Remain to be Litigated.docx |
| | 2023-09-19 (no changes)_3GL-HTC DRAFT Proposed Voir Dire - 9.8 Service.DOCX |
| | 2023-09-19_3GL-HTC DRAFT Preliminary Jury Instructions - Plaintiffs" Edits on HTC 8.23 - 9.8 Service.docx |

EXTERNAL Email

Hunter – please see attached.

We noted that in your Witness List, you now list both Brillouette and Thirard as "May Call".  Please confirm whether either or both will be attending the trial live and when Orange will decide who, if anyone, it will call.

**Philip Ou**  |  Partner
**T** +1 650 213 0300   **M** +1 510 378 4224   **E** philip.ou@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

**From:** Hunter Vance <HVance@susmangodfrey.com>
**Sent:** Wednesday, September 20, 2023 10:53 AM
**To:** Alexander Lee <alexanderlee@paulhastings.com>; Yen, Bruce <bruce.yen@whitecase.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip <philip.ou@whitecase.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>
**Cc:** Andres Healy <AHealy@susmangodfrey.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Lexie White <lwhite@susmangodfrey.com>
**Subject:** RE: HTC - Edits to Pretrial Materials

Phil,

Following up on this again. You told us on the meet and confer yesterday that HTC would not serve its edits by the 6PM deadline but would at least serve them yesterday.

Best,

**Hunter Vance**| **Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

**From:** Hunter Vance
**Sent:** Wednesday, September 20, 2023 8:18 AM
**To:** Alexander Lee <alexanderlee@paulhastings.com>; Bruce Yen <bruce.yen@whitecase.com>;

Daniel Trevino <daniel.trevino@whitecase.com>; Jake Gold <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Philip Ou <Philip.ou@whitecase.com>; Radhesh Devendran <radhesh.devendran@whitecase.com>; Shashank Chitti <shashank.chitti@whitecase.com>; Yar R. Chaikovsky <yar.chaikovsky@whitecase.com>
**Cc:** Andres Healy <AHealy@susmangodfrey.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Lexie White <lwhite@susmangodfrey.com>
**Subject:** HTC - Edits to Pretrial Materials

Phil,

We have not received HTC's proposed edits to the pretrial materials, which were due yesterday at 6PM under our agreed schedule. Please send them ASAP. We need time to review given that we are meeting and conferring tomorrow about the final materials to submit to the Court.

Best,

**Hunter Vance**| **Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

===========================================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

===========================================================================================

EXHIBIT 6

| From: | Treviño, C. Daniel |
|---|---|
| To: | Hunter Vance; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Lexie White; Andres Healy; Joanna Stanley |
| Cc: | W&C 3G/KPN v. HTC; Ou, Philip; Chaikovsky, Yar; Nathan R. Hoeschen; John Shaw; SKparalegals@shawkeller.com |
| Subject: | 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits |
| Date: | Tuesday, September 19, 2023 5:32:28 PM |
| Attachments: | 2023-09-19 HTC Supplemental Trial Exhibit List.pdf |
| | 2023-09-19 HTC Supplemental Trial Exhibit List.XLSX |

EXTERNAL Email

Counsel,

Attached for service is HTC Corporation's supplemental trial exhibit list.  Exhibit nos. 306-309 are new additions.

The new trial exhibits are available for download here.

Please advise if you have any issues accessing the link.

Sincerely,

C. Daniel Treviño

**C. Daniel Treviño** | Senior Paralegal
**T** +1 650 213 0328   **E** daniel.trevino@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

================================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

================================================================================

EXHIBIT 7

| | |
|---|---|
| **From:** | Treviño, C. Daniel |
| **To:** | Hunter Vance; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Lexie White; Andres Healy; Joanna Stanley |
| **Cc:** | W&C 3G/KPN v. HTC; Qu, Philip; Chaikovsky, Yar; Nathan R. Hoeschen; John Shaw; SKparalegals@shawkeller.com |
| **Subject:** | 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits |
| **Date:** | Friday, September 15, 2023 4:52:11 PM |
| **Attachments:** | 2023-09-15 HTC Supplemental Trial Exhibit List.pdf |
| | 2023-09-15 HTC Supplemental Trial Exhibit List.XLSX |

<mark>EXTERNAL Email</mark>

Counsel,

Attached for service is HTC Corporation's supplemental trial exhibit list.  Exhibit nos. 269-305 are new additions.

Linked below are compressed files containing production volumes HTC3G051 & 52 and a PDF/XLS set of the new trial exhibits.

https://amsfs.whitecase.com/ngdox/workspaces/9d1a79a7-63a3-450f-96ea-bd07330ff2f6/99f98e1a-6e20-4ab4-a934-165f217d7012

Please advise if you have any issues accessing the link.

Sincerely,

C. Daniel Treviño

**C. Daniel Treviño** | Senior Paralegal
**T** +1 650 213 0328   **E** daniel.trevino@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

=====================================================================
===========
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

=====================================================================
===========

# EXHIBIT 8

# EXHIBIT 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| 3G LICENSING, S.A., and ORANGE S.A., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 17-82-LPS |
| | : | |
| BLACKBERRY LIMITED and BLACKBERRY CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM ORDER

At Wilmington this **16th** day of **February, 2021**:

WHEREAS, on September 29, 2020, the Court issued a Memorandum Opinion (D.I. 323) and Order (D.I. 324) granting in part and denying in part Plaintiffs 3G Licensing, S.A. ("3G") and Orange S.A.'s ("Orange") (collectively, "Plaintiffs") motion for partial summary judgment (D.I. 267) and granting in part and denying in part Defendants BlackBerry Limited and BlackBerry Corporation's (collectively, "BlackBerry") motion for summary judgment (D.I. 272);

WHEREAS, in particular, the Court denied BlackBerry's motion for summary judgment of no pre-suit damages because (among other reasons) BlackBerry's purported evidence that several Apple products were unmarked was not produced in a timely manner (D.I. 323 at 17-18);

WHEREAS, on October 13, 2020, BlackBerry filed a motion for reargument regarding this portion of the summary judgment order and the Court's related exclusion of evidence (*see* D.I. 329);

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, having considered the

1

relevant filings and related materials (*see, e.g.*, D.I. 329, 333), BlackBerry's motion (D.I. 329) is **DENIED**.

1.    "Pursuant to Local Rule 7.1.5, a motion for reconsideration or reargument should be granted only 'sparingly.'" *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 2015 WL 1883960, at *1 (D. Del. Apr. 24, 2015). The decision to grant such a motion lies squarely within the discretion of the district court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990). These types of motions are typically granted only if the Court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. *See Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Brambles*, 735 F. Supp. at 1241. "A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made." *Smith v. Meyers*, 2009 WL 5195928, at *1 (D. Del. Dec. 30, 2009); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993). It is also not an opportunity to "accomplish repetition of arguments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991).

2.    A party may seek reconsideration only if it can show at least one of the following: (i) there has been an intervening change in controlling law; (ii) the availability of new evidence not available when the court made its decision; or (iii) there is a need to correct a clear error of law or fact to prevent manifest injustice. *See Max's Seafood Café by LouAnn, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). In no instance should reconsideration be granted if it would not result in amendment of an order. *See Schering Corp.*, 25 F. Supp. 2d at 295.

3.    BlackBerry contends that the Court committed a clear error that needs to be

corrected in order to prevent manifest injustice. (*See* D.I. 329 at 3) Specifically, BlackBerry contends that "the Court misapprehended the evidentiary record with respect to BlackBerry" by failing to recognize that BlackBerry's discovery disclosures with respect to unmarked products were materially different from that of other Defendants[1] – and, purportedly, were sufficient to meet its obligations under *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). (*Id.* at 1-5) The Court disagrees.

      4.      BlackBerry's May 24, 2019 response to Plaintiffs' marking interrogatory did not identify "specific unmarked products which the alleged infringer believes practice the patent," as *Arctic Cat* requires. 876 F.3d at 1368. Instead, that response merely "identified the Apple License (KPN00103266), which licenses Apple products compliant with WCDMA standards and the deposition of Orange's 30(b)(6) designee regarding the Apple License." (D.I. 329 at 4; *see also* Ex. BQ at 44) Moreover, the May 2019 response was provided on the last day of fact discovery, leaving Plaintiffs with no meaningful opportunity to conduct responsive discovery to attempt to meet their obligation under *Arctic Cat*'s burden shifting framework. Contrary to BlackBerry's suggestion (*see* D.I. 329 at 4), it was not Plaintiffs' burden (at that already late date) to press BlackBerry for more specificity or intuit from a deposition transcript which specific products BlackBerry thought it was disclosing. BlackBerry, as the alleged infringer, bears the initial burden of production, *see Arctic Cat*, 876 F.3d at 1368, and it failed to timely meet that burden. (*See* D.I. 333 at 5) ("[BlackBerry] now has to argue that Plaintiffs should have *inferred* what those specific products were from BlackBerry's reference to the Apple license and Mr. Thirard's testimony. That is not the standard.")

---

[1] "Defendants" are, in addition to BlackBerry, HTC Corporation, Lenovo Holding Co., Inc., Lenovo (United States) Inc., and Motorola Mobility LLC. (D.I. 323 at 1)

3

5.    Further, as the Court observed in its Opinion, it was not until "*after* fact discovery closed," in a July 2, 2019 supplemental interrogatory response, that BlackBerry identified specific products. (D.I. 323 at 17) (citing Ex. BI at 46)  BlackBerry itself relied on this disclosure in its opening summary judgment brief (D.I. 273 at 31) (citing Ex. BI), and the Court did not overlook it.

6.    Plaintiffs did not "expressly disclaim[] any right to evaluate products BlackBerry identified as unmarked in their response to [the] marking interrogatory." (D.I. 329 at 1-2) Instead, on January 25, 2019, Plaintiffs requested that BlackBerry supplement its interrogatory response prior to any depositions – which BlackBerry agreed to do and then failed to do. (*See* D.I. 333 at 6; D.I. 333 Ex. 1 at 1-2; *see also* Ex. BA at 35)  As Plaintiffs write: "Tellingly, BlackBerry expressed no surprise at this request, *which would have served no purpose if BlackBerry actually thought Plaintiffs had disclaimed [their] right to evaluate such products*." (D.I. 333 at 3)  The record demonstrates Plaintiffs were prepared to attempt to meet their burden under *Arctic Cat* if or when BlackBerry timely met its initial burden, but BlackBerry did not do so in a timely manner.

7.    BlackBerry also faults the Court for not undertaking a *Pennypack* analysis to support its statement that it was "not going to permit this untimely-produced evidence to be admitted." (D.I. 323 at 17; *see also id.* at 18 n.6)  Because BlackBerry failed to meet its burden under the specifically-applicable framework of *Arctic Cat*, it was not necessary to fully explicate a *Pennypack* analysis.  In any event, even after reviewing the parties' now fulsome briefing on the *Pennypack* factors, the Court continues to find these factors further support exclusion of BlackBerry's untimely evidence.[2]

---

[2] While BlackBerry's evidence is important, it was not timely produced, and Plaintiffs would be

8.      Additionally, as the Court further held in the Memorandum Opinion, a reasonable juror could find that the unmarked products do not practice the patents-in-suit because "a reasonable juror could find that Defendants have failed to prove the asserted patents are standard-essential." (D.I. 323 at 18) Nothing in BlackBerry's motion shows clear error in this basis for denying BlackBerry's motion for summary judgment of no damages.

9.      BlackBerry's contention that Plaintiffs failed to plead marking also provides no basis for the relief it seeks, for reasons including that BlackBerry has not shown Plaintiffs failed to meet the applicable pleading requirements. *See Lexos Media IP, LLC v. Jos. A. Bank Clothiers, Inc.*, 2018 WL 2684104, at *2 (D. Del. June 5, 2018), *report and recommendation adopted*, 2018 WL 4629184 (D. Del. Sept. 27, 2018) ("[I]f certain products are not yet rightly part of the case (because [the defendant] had not yet met its burden of production to specifically identify them), it stands to reason that [the plaintiff] would not have had to plead facts relating to those products.").

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

unfairly prejudiced if BlackBerry were permitted to satisfy its burden of production only after the close of fact discovery, leaving Plaintiffs with no meaningful opportunity to meet their burden. The only way to cure such prejudice would be to reopen discovery, potentially opening the door to more motions practice and another basis to delay trial. The prejudice from exclusion of the evidence (and elimination of its marking affirmative defense) is the result of BlackBerry's own delay, for which there is no persuasive explanation in the record.

EXHIBIT 10

```
 1                   IN THE UNITED STATES DISTRICT COURT

 2                   IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   3G LICENSING, S.A., KONINKLIJKE
     KPN N.V., and ORANGE S.A.,          : CIVIL ACTION
 5                                        :
                  Plaintiffs,             :
 6   v                                    :
                                          :
 7   HTC CORPORATION and                  :
     HTC AMERICA INC.,                    :
 8                                        :
                  Defendants.             : NO. 17-83-LPS
 9   ----------------------------------
     3G LICENSING, S.A., KONINKLIJKE
10   KPN N.V., and ORANGE S.A.,           : CIVIL ACTION
                                          :
11                Plaintiffs,             :
     v                                    :
12                                        :
     LG ELECTRONICS INC., LG              :
13   ELECTRONICS U.S.A., INC. and LG      :
     ELECTRONICS MOBILECOMM U.S.A., INC., :
14                                        :
                  Defendants.             : NO. 17-85-LPS
15
                                - - -
16
                          Wilmington, Delaware
17                        Monday, April 5, 2021
                          Telephonic Oral Argument
18
                                - - -
19
     BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge
20
                                - - -
21   APPEARANCES:

22
                   FARNAN, LLP
23                 BY:  BRIAN E. FARNAN, ESQ.

24                      and

25                                    Brian Gaffigan
                                      Official Court Reporter
```

```
 1    APPEARANCES:   (Continued)

 2
               SUSMAN GODFREY, L.L.P.
 3             BY:  ANDRES C. HEALY, ESQ.
                    (Dallas, Texas)
 4
                    and
 5
               SUSMAN GODFREY, L.L.P.
 6             BY:  HUNTER VANCE, ESQ.
                    (Houston, Texas)
 7
                         Counsel for Plaintiffs
 8

 9             SHAW KELLER, LLP
               BY:  JOHN W. SHAW, ESQ.
10
                    and
11
               PAUL HASTINGS, LLP
12             BY:  PHILIP OU, ESQ.,
                    YAR R. CHAIKOVSKY, ESQ., and
13                  RADHESH DEVENDRAN, ESQ.
                    (Palo Alto, California)
14
                         Counsel on behalf of HTC Corporation
15                       and HTC America Inc.

16
               MORRIS NICHOLS ARSHT & TUNNELL, LLP
17             BY:  RODGER D. SMITH, II, ESQ.

18                  and

19             BAKER BOTTS, LLP
               BY:  PETER H. KANG, ESQ.
20                  (Palo Alto, California)

21                  and

22             BAKER BOTTS, LLP
               BY:  HARRISON RICH, ESQ.
23                  (Dallas, Texas)

24                       Counsel for LG Electronics Inc.,
                         LG Electronics U.S.A., Inc., and,
25                       LG Electronics MobileComm U.S.A., Inc.
```

1                              - oOo -

2                    P R O C E E D I N G S

3               (REPORTER'S NOTE:  The following telephonic oral

4      argument was held remotely, beginning at 12:38 p.m.)

5               THE COURT:  Good afternoon, everybody.  This is

6      Judge Stark.

7               Who is there for the plaintiffs, please?

8               MR. FARNAN:  Good afternoon, Your Honor.  Brian

9      Farnan on behalf of the plaintiffs.  With me is Andre Healy

10     and Hunter Vance from Susman Godfrey.

11              THE COURT:  Okay.  Thank you.

12              MR. HEALY:  Good afternoon, Your Honor.

13              THE COURT:  Good afternoon.

14              Who is there for the HTC parties?

15              MR. SHAW:  Good afternoon, Your Honor.  It's

16     John Shaw for the HTC parties.  Joining me are Yar

17     Chaikovsky, Philip Ou, and Radhesh Devendran from Paul

18     Hastings.

19              THE COURT:  Okay.  Good afternoon to all of you.

20              And who is there for the LG parties, please?

21              MR. SMITH:  Good afternoon, Your Honor.  It's

22     Rodger Smith at Morris Nichols.  I'm joined by my co-counsel

23     from Baker Botts, Peter Kang and Harrison Rich.

24              THE COURT:  Okay.  Good afternoon to you.

25              Is there anybody else here who wants to make an

1    appearance?

2                    (Pause.)

3                    THE COURT:   Okay.   Thank you.

4              So let me note for the record, and for my

5    court reporter, we're here on two related cases, 3G

6    Licensing SA, et al. versus HTC Corporation.   It's Civil

7    Action No.   17-83-LPS-CJB, and the same plaintiffs versus LG

8    Electronics, Inc., et al., Civil Action No. 17-85-LPS-CJB.

9              And while there are four motions, all motions of

10   the defendants that are set today for argument, I've done a

11   lot of work to get ready for today as it appears all of you

12   have.   And I should note that I did receive earlier today

13   your lengthy slide decks.

14             We are only going to have arguments about one of

15   the four motions.   That's the motion about the foreign law

16   issue.

17             Having carefully reviewed, of course, everything

18   that you've submitted in connection with all four motions, I

19   am able to rule on the three motions to strike.   There are

20   three different, although somewhat related, motions to

21   strike that the defendants have filed, largely making very

22   similar argument.

23             And for the reasons I'm going to explain, I have

24   decided to deny all three of the motions to strike.   And we

25   will not be having argument on them.

1          Let me give you my reasoning on that, and then

2     we will spend our remaining time on the foreign law issue.

3          At a high level, it seemed to me that the

4     defendants are advocating the view that the plaintiffs in

5     these cases have serially and repeatedly violated both the

6     letter and the spirit of the scheduling orders in my case

7     management procedures and the governing legal frameworks,

8     the Federal Rules of Civil Procedure, and case law such as

9     *Pennypack*.

10          I, of course, carefully considered what are very

11     serious charges by the defendants, and I have ultimately

12     found, based on my careful review of the materials

13     submitted, that the defendants have simply failed to prove

14     their charges and failed to prove that that is really what

15     is going on here.

16          Instead, it seems to me that these are very

17     complicated cases involving complex technology.

18          It seems that the plaintiffs tried to flag a

19     lot of the issues that have now become problematic in the

20     defendants' view by serving interrogatories, including,

21     especially, Interrogatory No. 17, I think it's 17 in both of

22     these cases, but the one seeking the defendants' disclosure

23     of their noninfringement contentions, and the defendants

24     chose not to provide particularly fulsome responses to that

25     and other interrogatories.

1        And a lot of what the defendants are arguing

2   in the motions today is that the plaintiffs somehow should

3   be faulted for the timing of certain theories that they

4   have disclosed, but I have failed to see how plaintiffs

5   could have been expected to respond sooner to theories that

6   defendants did not disclose sooner.

7        Often, it appeared to me, that arguably there

8   were new disclosures made by defendants' experts in their

9   report to which plaintiffs chose to fairly respond, which

10  they have a right to do, and plaintiffs probably could have

11  alternatively chosen to throw in motions to strike but they

12  didn't do that.   Instead, they, in part, recognizing, I

13  think, the complexity of the many moving parts in this case,

14  did their best to respond and defendants then largely have

15  responded.

16       It seems to me you all have, over time,

17  disclosed more and more of your case to one another and

18  hopefully you'll be ultimately narrowing disputes as we get

19  to trial, but at least you're disclosing things, you know,

20  as time goes on, but most importantly, not in a way that I

21  think plaintiffs are clearly at fault for or have crossed

22  any lines that would warrant the extreme sanctions that the

23  defendants are seeking of striking.

24       I also have to say that a lot of what the

25  defendants are arguing in their motions to strike seems to

1    me to be premature effort to get me to decide the merits of

2    highly disputed, highly complex factual issues.  That's just

3    a couple of examples in, I'll give you the 17-83 docket

4    numbers, but 17-83 D.I. 563 on 1.  There is a whole

5    paragraph that the defendants have near the beginning of

6    their letter which goes to the debate at issue of, you know,

7    whether the CRC and parity check data theories are new.

8            It's highly disputable, it seems to me, whether

9    the issue -- that is, the issue of whether KPN has shifted

10   to a new theory or not -- whether what Dr. Madisetti

11   discloses on a certain day is materially different and

12   outside the scope and surprising that the defendants or has,

13   in fairness, already been disclosed and should not be any

14   surprise to defendants.  That, itself, is a very disputed

15   question to which there is not a clear and obvious answer in

16   a way that would warrant the, again, the extreme sanction of

17   striking.

18           A similar example, 17-83, D.I. 564 at 1.  The

19   second full paragraph there is all merits argument which

20   are not in this case persuasive as a basis for the relief

21   defendants are seeking.

22           So those are general comments that apply to all

23   three of the motions to strike that I'm denying.  Let me

24   give you a little bit of specifics on each of the three

25   motions.

1    report.

2              So for all those reasons, this motion, too, is

3    denied.

4              Any questions about that, Mr. Rich?

5              MR. RICH:  Your Honor, this is Harrison Rich.  I

6    do not have any questions.  Thank you.

7              THE COURT:  Thank you.  Mr. Healy?

8              MR. HEALY:  No, Your Honor.

9              THE COURT:  Okay.  Thank you all very much.

10   Have a good rest of the day, and everybody stay safe.

11   Bye-bye.

12              (Telephonic oral argument ends at 1:41 p.m.)

13

14       I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

15

16                        /s/ Brian P. Gaffigan
                          Official Court Reporter
17                          U.S. District Court

18

19

20

21

22

23

24

25

# EXHIBIT 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

3G LICENSING, S.A.,
KONINKLIJKE KPN N.V., and
ORANGE, S.A.,

    Plaintiffs,

v.

HTC CORPORATION,

    Defendant.

C.A. No. 17-83-GBW

## **ORDER**

Having reviewed the Proposed Joint Pretrial Order (D.I. 657) submitted by Plaintiff Koninklijke KPN N.V. ("KPN") and Defendant HTC Corporation ("HTC Corp." or "HTC")[1] regarding the jury trial scheduled to begin on June 5, 2023, **IT IS HEREBY ORDERED** that:

1. With respect to KPN's motion *in limine* No. 1, KPN seeks to "preclude HTC from attempting to show that KPN's subjective beliefs can prove either essentiality or a FRAND encumbrance" by, for example, specifically moving to exclude HTC's expert Dr. Kevin Jeffay's opinions on this issue. D.I. 657-13, Ex. 13(a) at 2-3 (citing D.I. 82 (HTC Answer) at 31); *Id.* at 57 (". . . KPN is seeking to exclude Dr. Jeffay's opinion that 'evidence of essentiality' includes, for example, (1) KPN purportedly 'express[ing] its belief in the essentiality of [U.S. Patent No. 6,212,662 ("the '662 patent")] to a third party, [Jeffay Report] at ¶ 596, and (2) purported KPN 'state[ments]' 'that the '662 patent was essential.' *Id.* at ¶ 595. That section of his report (¶¶ 593–606), along with similar arguments from

---

[1] In light of the Court granting HTC's Motion to Sever (D.I. 641), the Court has scheduled a trial between Plaintiffs 3G Licensing, S.A. and Orange, S.A. and Defendant HTC to begin on October 10, 2023. D.I. 645.

1

HTC or its witnesses, are flatly inconsistent with this Court's holdings . . ."). This Court held in this case that "essentiality depends on objective findings, i.e., whether practicing the relevant standard *in fact* infringes the asserted patents and whether non-infringing alternatives *in fact* exist." *See* D.I. 486 at 6-7 (Memorandum Opinion) (citing *Intel Corp. v. Future Link Sys., LLC*, 268 F. Supp. 3d 610-12 (D. Del. 2017)).[2] Although HTC marginalizes this Court's Memorandum Opinion as concerning "unrelated patents of 3G Licensing," D.I. 657-13, Ex. 13(a) at 45, it is nevertheless law of the case, and HTC will not be able to carry its burden on whether the '662 patent is actually essential or FRAND-encumbered solely with evidence of KPN's subjective beliefs. KPN, however, does not explain why it did not move to exclude Dr. Jeffay's opinion before the deadline for *Daubert* motions. *See* D.I. 516. And the Court at this stage cannot conclude that the evidence would be inadmissible for any purpose, such as impeachment. Accordingly, KPN's motion *in limine* No. 1 is **DENIED** without prejudice to KPN making appropriate objections at trial.

2. With respect to KPN's motion *in limine* No. 2, KPN seeks to preclude HTC from using documents HTC did not produce during fact discovery including (1) pleadings in an action between KPN and Motorola Mobility purportedly related to HTC's marking defense, and (2) "non-public Qualcomm documents that were obtained by a *different* defendant in a *different* case and that HTC never obtained for use in this case." D.I. 657-14, Ex. 13(b) at 3. Although HTC does not dispute that it never produced these documents to KPN during fact discovery, which is an untimely disclosure under Federal Rule of Civil Procedure 37(c)(1), HTC argues that its failures were harmless. D.I. 657-14, Ex. 13(b) at 249. This

---

[2] This Memorandum Opinion granted summary judgment in favor of Plaintiff on HTC's FRAND affirmative defenses on patents not at issue in the upcoming trial.

Court disagrees. As for the Motorola pleadings, the Court previously denied HTC's motion for summary judgment of no pre-suit damages noting HTC's failure to disclose those documents—a failure left uncured until HTC added them to its exhibit list. D.I. 657-14, Ex. 13(b), Ex. 2 at 23 ("Further, while HTC now asks the Court to take judicial notice of Motorola Mobility's claim in the related case to having a license from KPN, HTC failed to provide Plaintiffs timely notice of its intent to rely on the documents from the related case, and Plaintiffs have not had a fair opportunity to respond to this argument. This is another reason summary judgment is not appropriate.").[3] As for the non-public Qualcomm documents, although HTC told KPN that it "intend[ed] to serve Qualcomm with a subpoena requesting production of the same documents," HTC does not refute that it did not do so, and did not disclose to KPN that HTC intended to use the Qualcomm documents even when pressed—again, waiting until the pretrial exhibit list stage to identify them. D.I. 657-14, Ex. 13(b), Ex. 8 at 5-6, Ex. 9 at 3. The prejudice and surprise to KPN cannot now be cured. That HTC offers no plausible excuse for its actions—especially after being previously singled out by the Court for belated disclosures[4]—evinces HTC's willingness to flout the discovery rules. HTC does not argue that the Motorola or Qualcomm

---

[3] Although HTC accuses KPN of similarly using unproduced deposition testimony (the "Clarke transcript"), KPN represents that it did produce the Clarke transcript to HTC in this action, rendering HTC and KPN's behavior dissimilar. D.I. 657-14, Ex. 13(b) at 263. Even if the Clarke transcript was problematic, KPN has represented it intends to use the Clarke transcript only if the Court permits HTC to use unproduced Motorola document—which this Court will not do. *Id.*

[4] In addition to admonishing HTC at summary judgment, the Court observed HTC's problematic disclosures in denying HTC's motions to strike. D.I. 657-14, Ex. 13(b), Ex. 1 at 6:7-12 ("Often, it appeared to me, that arguably there were new disclosures made by defendants' experts in their report to which plaintiffs chose to fairly respond, which they have a right to do, and plaintiffs probably could have alternatively chosen to throw in motions to strike but they didn't do that.")

documents are critical to its case. And that HTC resorts to blame-shifting is not persuasive. Pursuant to *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904-05 (3d Cir. 1977), KPN's motion *in limine* No. 2 is **GRANTED** and the Motorola pleadings and Qualcomm documents are excluded.

3. With respect to HTC's motion *in limine* No. 1,[5] HTC seeks to preclude KPN from (1) arguing that acts by non-party HTC America ("HTCA") are evidence of infringement by HTC; and (2) referencing HTCA, or HTCA and HTC, collectively as "HTC" in a "a manner that would impute the acts of HTCA on HTC." D.I. 657-15, Ex. 14(a) at 1 n.1. Although KPN dismissed HTCA from this action, if HTC chooses to reintroduce HTCA into this case by arguing that HTCA (not HTC) makes sales to U.S. customers, KPN will be permitted to introduce evidence that HTCA's role is controlled by HTC such that HTC would remain directly liable for those sales. *See Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1378 (Fed. Cir. 2017) (holding that a party can be "liable for infringement under § 271(a) if it acts through an agent . . . or contracts with another to perform one or more" infringing acts); *F45 Training Pty Ltd. v. Body Fit Training USA Inc.*, C.A. No. 20-1194-WCB, 2022 WL 17177621, at *17 (D. Del. Nov. 17, 2022), *dismissed*, No. 2023-1304, 2023 WL 2965590 (Fed. Cir. Apr. 17, 2023) (explaining that a "party can be held liable for direct infringement if that party directs or controls the infringing activity of another"). The parties do not quarrel over differentiating between the HTC and HTCA entities as appropriate. Accordingly, HTC's motion *in limine* No. 1 is **DENIED**.

---

[5] HTC does not number its motions in *limine*, but included "Defendant HTC Corporation's Motion in Limine to Preclude Argument that Liability of HTC Corporation Can Be Based on the Acts of Non-Party HTC America, Inc." first (as Ex. 14(a)), which the Court construes as motion *in limine* No. 1.

4

# EXHIBIT 12

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                                  - - -
     3G LICENSING, S.A., KONINKLIJKE
 4   KPN N.V., and ORANGE S.A.,          : CIVIL ACTION
                                         :
 5               Plaintiffs,             :
     v                                   :
 6                                       :
     BLACKBERRY LIMITED and              :
 7   BLACKBERRY CORPORATION,             :
                                         :
 8               Defendants.             : NO. 17-82-LPS
     -----------------------------------
 9   3G LICENSING, S.A., KONINKLIJKE
     KPN N.V., and ORANGE S.A.,          : CIVIL ACTION
10                                       :
                 Plaintiffs,             :
11   v                                   :
                                         :
12   HTC CORPORATION and                 :
     HTC AMERICA INC.,                   :
13                                       :
                 Defendants.             : NO. 17-83-LPS
14   -----------------------------------
     3G LICENSING, S.A., KONINKLIJKE
15   KPN N.V., and ORANGE S.A.,          : CIVIL ACTION
                                         :
16               Plaintiffs,             :
     v                                   :
17                                       :
     LENOVO GROUP LTD., LENOVO HOLDING   :
18   CO., INC., LENOVO (UNITED STATES)   :
     INC., and MOTOROLA MOBILITY, LLC,   :
19                                       :
                 Defendants.             : NO. 17-84-LPS
20                                  - - -

21                        Wilmington, Delaware
                         Friday, April 17, 2020
22                  Telephonic Oral Argument Hearing

23                                  - - -

24   BEFORE:      HONORABLE LEONARD P. STARK, Chief Judge

25                                  - - -
```

1    APPEARANCES:

2
                    FARNAN, LLP
3                   BY:  BRIAN E. FARNAN, ESQ.

4                        and

5                   SUSMAN GODFREY, L.L.P.
                    BY:  ANDRES C. HEALY, ESQ.
6                        (Dallas, Texas)

7                        and

8                   SUSMAN GODFREY, L.L.P.
                    BY:  HUNTER VANCE, ESQ.
9                        (Houston, Texas)

10                       and

11                  SUSMAN GODFREY, L.L.P.
                    BY:  JENNA G. FARLEIGH, ESQ.
12                       (Seattle, Washington)

13                           Counsel for Plaintiffs

14

15                  SHAW KELLER, LLP
                    BY:  JOHN W. SHAW, ESQ.
16
                         and
17
                    PAUL HASTINGS, LLP
18                  BY:  YAR R. CHAIKOVSKY, ESQ.,
                         PHILIP OU, ESQ.,
19                       ALEXANDER LEE, ESQ., and
                         RADESH DEVENDRAN, ESQ.
20                       (Palo Alto, California)

21                           Counsel on behalf of HTC Corporation
                             and HTC America Inc.
22

23

24

25

```
 1                    MR. OU:  Good afternoon, Your Honor.  This is

 2       Philip Ou for HTC.  I'm going to handle the next argument on

 3       *Markman*.

 4                    Your Honor, if you have our slides in front of

 5       you, I am starting at slide 12.

 6                    There is no dispute that Apple is a licensee to

 7       use these patents.  We all know that Apple makes handsets.

 8                    Just like the defendants, they work with

 9       carriers who have carrier requirements, just like the

10       handsets.

11                    I won't talk about essentiality because the

12       plaintiffs have made very clear they're not trying to prove

13       infringement of essentiality, but they are trying to prove

14       infringement based on carrier requirements, Your Honor; and

15       Apple's products understandably would follow those carrier

16       requirements in the same way the defendants do, Your Honor;

17       but that is not our -- we all know that under *Arctic Cat*

18       there is a low burden that we have, and that is to identify

19       the product; and we did do, that Your Honor.

20                    And as a result of that, the burden shifts to

21       the plaintiffs to show that they either complied with the

22       marking statute by marking; and there is no evidence that

23       Apple marked or that the Apple products don't need to be

24       marked because they don't practice.  Well, this notion that

25       the Apples don't practice but we infringe is simply not
```

1    credible; but, again, that is their burden of proof and they

2    just haven't shown it.

3            Your Honor, if you go to slide 13, I think the

4    issue is more so the plaintiffs complain about timing.  I

5    don't think that they have really said that we haven't met

6    our burden under *Arctic Cat*.  They just don't like the

7    timing, and they claim prejudice.

8            Well, Your Honor, they were on notice; and if

9    you look at slide 13, we have a timeline here.  We noticed

10   their 30(b)(6) deposition in January of 2019; and for

11   Lenovo/HTC set in February.  We had a marking topic.  Orange

12   agreed to provide the marking deponent.

13           Now, the witness that was supposed to handle

14   marking and whether or not Orange had enforced marking, that

15   was Mr. Thirard.  His deposition was actually scheduled for

16   March.  He was postponed to three days before the close of

17   fact discovery, so we didn't get a chance to ask Mr. Thirard

18   about the Apple license and whether they enforce marking

19   until the very end of that discovery.

20           Three days later, we supplemented our discovery

21   responses.

22           HTC pointed out -- pointed to the deposition and

23   said the product that should have been marked were iPhones

24   marked during the time period.

25           Now, the plaintiff has said that, you know,

1     *Arctic Cat*, that it requires -- it can't be gamesmanship, a

2     fishing expedition.   There is no fishing expedition here.

3     Everyone well understands the product that Apple makes are

4     iPhones.

5                 Now, did we say with specificity the iPhone 3,

6     the iPhone 4 or iPhone 5?  We didn't do that in our

7     interrogatory response.  Now, BlackBerry did that in July

8     in their interrogatory response; and we made that clear in

9     October.  Regardless, the plaintiff was on notice, and they

10    have had notice of specific products under *Arctic Cat,* and

11    the burden has shifted.

12                And, Your Honor --

13                THE COURT:  Mr. Oh.  Yes.  Mr. Ou, can you hear

14    me?  I'm having a little trouble hearing you, and you are

15    speaking a little quickly; so if you could slow down and

16    maybe see if you could be a little closer to the phone

17    perhaps?

18                MR. OU:  Yes, Your Honor.

19                Is this better?

20                THE COURT:  That is, yes.  Thank you.

21                MR. OU:  Okay.  I apologize, Your Honor; and

22    I'll try to slow down.

23                Your Honor, and the issue of timing is

24    particularly suspect in this case because we had a very

25    similar situation come up with regards to the BlackBerry

1    licenses that plaintiff produced in the COURT that you just

2    heard about.

3              Your Honor, if you remember, the defendants

4    filed a motion to strike, Lenovo and HTC; and, Your Honor,

5    in that scenario, those licenses were produced to us on the

6    day of the opening expert reports.  We never had them in

7    fact discovery.

8              If you see there is a timeline on slide 16.  The

9    plaintiff has those licenses back in November.  And I

10   apologize, Your Honor, there is a typo.  It says November

11   6th, '19.  It should be '18.

12             But as Your Honor knows, we didn't get those

13   licenses until opening expert reports.  You denied our

14   motion to strike because there was no prejudice or the

15   prejudice couldn't be cured and you allowed us to take

16   discovery of BlackBerry to address those in the expert

17   reports.

18             It's a similar issue here, Your Honor.  If the

19   plaintiffs felt that there was some prejudice that they

20   didn't have the opportunity to take discovery from Apple,

21   they had every opportunity to do that.

22             You look at the timeline on slide 17, which is a

23   comparison, we actually -- they were on notice of the

24   marking issues far before we were on notice that were going

25   to rely on these BlackBerry licenses.

1          And, Your Honor, when you look at your order,

2     your oral order on slide 15, one of the primary reasons that

3     you denied our motion was that the defendants seek, was the

4     evidence was important.

5          This evidence is absolutely important here

6     because they had a duty to mark under *Arctic Cat;* and they

7     haven't met there burden to refute that to show that Apple

8     doesn't have a duty to mark, Your Honor; and so because of

9     that, and they failed to do that even until today, summary

10    judgment is appropriate.

11         And I think it is clear, Your Honor, the reason

12    why they haven't sought the discovery; because I can't see

13    how there is a credible way that they can allege that our

14    products infringe but that the iPhones, whatever version, do

15    not practice the patent.  The '091 patent, which is simply

16    the infringement read is downgrading from, you know, a video

17    call to voice only; you know, in this COVID pandemic, I use

18    FaceTime all the time; that happens all the time.  I can't

19    see how they can argue that the Apple products don't

20    practice if the defendants' product do.  So they don't have

21    an interest in trying to seek that discovery because I think

22    it will show that they had a duty to mark.

23         Your Honor, so once marking, once summary

24    judgment is met, the damages clock should start at when

25    there is actual notice, Your Honor.  In our brief, we have

```
 1    shown that that should start at the complaint.  The

 2    plaintiffs have pointed to certain notice letters for the

 3    reasons stated in our briefs; and you have the letters in

 4    front of you, Your Honor.  We think all of those letters are

 5    deficient, but I think you can address that.

 6              I'll stop there, Your Honor, if you have any

 7    questions.

 8              THE COURT:  No questions at this time.  Thank

 9    you.

10              We'll hear from plaintiffs.

11              MR. HEALY:  Thank you, Your Honor.  This is

12    Andre Healy on behalf of the plaintiff.  I want to address

13    both of defendants' marking arguments.

14              I just want to briefly sort of encapsulate what

15    the standard is here.  Slide 9 sets forth the Arctic Cat

16    standard.  It is made very clear it is the defendants'

17    burden to -- they have the initial burden of production to

18    identify specific unmarked products that they allege believe

19    practice the patent.  And Arctic Cat was very clear that

20    until they meet that burden of production, the patent holder

21    has no obligation.

22              As Mr. Ou mentioned -- this is at slide 90 --

23    Arctic Cat also made very clear why this burden of

24    production exists:  to protect the patent holder from

25    large-scale fishing expeditions and gamesmanship.
```

1          And we take that very seriously.  We take very

2   seriously the sort of burden and the difficulty it takes to

3   conduct third-party discovery.  And that is why in August of

4   2017, as soon as we were able to serve interrogatories, we

5   served an interrogatory directed to this precise issue.

6          Interrogatory No. 12 is at slide 91 of our

7   demonstrative deck.

8          We asked each defendant to, to the extent that

9   they were going to contend in this case that there was a

10  marking issue under Section 287, to identify the specific

11  products they allege practice the patent, and to state forth

12  their belief as to why it was they believed those products

13  practice the patent; so that we could conduct the discovery

14  we would need to carry our burden once the burden of

15  production has been met.

16         If you look at slide 92, Your Honor; sets forth

17  a simplified timeline for the case; sets forth on the second

18  from the left the date that we served our Section 287 rog.

19         And, quite simply, not a single defendant on

20  this call identified a single specific unpatented product

21  until after fact discovery had closed in May of 2019.

22         In fact, the first party to identify a single

23  specific accused product was BlackBerry which did so in July

24  2nd, 2019; and then Lenovo and HTC didn't identify a single

25  specific product until they served their rebuttal expert

1    report in October of 2019.

2              And I just want to be very clear.  I don't think

3    there is dispute about this.  Mr. Ou, in his presentation a

4    moment ago, said rhetorically, did we identify specific

5    products prior to the close of fact discovery, including in

6    their May supplements?  And in his response, no, we didn't

7    do that; didn't do that until July, BlackBerry; in October,

8    HTC and Lenovo; and that's a problem.

9              If I have no opportunity to conduct any fact

10   discovery, how can I respond to their contention?  And

11   that's the entire point of *Arctic Cat*.  To prevent

12   gamesmanship, it is the burden of the party asserting there

13   is a marking issue to identify the specific accused products

14   so that the other side has an opportunity to conduct

15   discovery.

16             We had no opportunity here, Your Honor.  And I

17   -- if you look at slides 93 and 94 and 95, they set forth

18   for the cascading disclosures that BlackBerry made.

19             July 2nd, 2019 at slide 93 is where they finally

20   identified specific accused products.

21             Slide 94 is BlackBerry's May 24th disclosure.

22   Again, this was the last day of discovery.  If my memory

23   serves correctly, it was the end of the day.

24             And so even if you credited that as an

25   identification of specific accused products, which Mr. Ou

 1   confirmed it was not, we had no opportunity to conduct

 2   discovery; and the entire two years prior to that -- well,

 3   I should say more of a year and-a-half, given the August

 4   service date -- well, actually it was August 2017, so more

 5   than two years prior to that.

 6               Slide 95, this was BlackBerry's response.

 7   Identified nothing, and frankly didn't even state whether

 8   they were asserting there was a marking issue; so we had no

 9   opportunity to conduct the discovery we needed to respond

10   to the contention that BlackBerry is now making.

11               Slides 96 and 97 set forth HTC's responses.

12               Again, slide 96 is the first time that HTC

13   actually identified specific accused products.

14               Slide 97 shows the statement that they made at

15   the end of the day on May 24th, the last day of fact

16   discovery.

17               And slide 98 is Lenovo's response.

18               Unlike HTC and unlike BlackBerry, Lenovo didn't

19   supplement their interrog response in any respect.  I'm not

20   sure how they can claim that Mr. Thirard's testimony was

21   somehow crucial given that they waited an additional five

22   months to disclose for the first time in the rogs they

23   served with their expert reports in October.  But that is

24   the first that we ever heard that they, too, were going to

25   be making this assertion.

1          And, again, that is a very real problem.

2    Because defendant never identified the specific accused

3    products at any point during fact discovery, we never had

4    any opportunity to conduct the discovery we needed to

5    respond.

6          And I want to briefly respond to Mr. Ou's

7    point about what they allege to be plaintiffs' delinquent

8    production.

9          As this Court is well aware, and as it noted

10   in its order, the problem there was that BlackBerry had

11   produced certain documents.  Mr. Lindsay, our expert,

12   because they were received with the Bates number, I assume

13   that they were usable across all the cases.  In fact, there

14   was a miscommunication between counsel and Mr. Lindsay as to

15   whether those documents could also be used with respect to

16   HTC and Lenovo.

17          Inadvertent.  As soon as we realized it was an

18   issue, we reached out to BlackBerry and the third parties

19   and obtained their consent to make the production, and we

20   did so.

21          And, importantly, when defendants articulated

22   that they needed some discovery, we didn't object to that.

23   We said that's fine.

24          They nevertheless moved to strike all of these

25   documents; and the Court denied that motion and allowed them

1   to conduct the discovery; and then they did so.

2          They were allowed an opportunity to conduct the

3   discovery they claimed to need.  We have never had that

4   opportunity.

5          And I want to be very clear as well.  If it was

6   simply an issue of identifying accused products and they're,

7   defendants' disclosures otherwise were sufficient, we would

8   have already requested this opportunity.  Obviously, the

9   current COVID issue complicates things and makes things more

10  difficult, but we would have requested that opportunity.

11         But it's not the only issue with defendants'

12  disclosure; and I want to explain why.

13         If Your Honor would turn to slide 99.

14         This sets forth -- well, you take one step back.

15  *Artic Cat* makes very clear in part of this effort of

16  precluding fishing expeditions and gamesmanship that it is

17  the party asserting there is a marking issue.  It is their

18  obligation to not only identify specific unmarked products

19  but they have to identify products that they believe

20  practice the patent.

21         There's cases, including the *Pavo* case we cite

22  in our brief that states that this isn't something you

23  can't just assert, it's not something you can just state on

24  a whim; you also have to have some degree of admissible

25  evidence to support your assertion.

1          And what defendants have argued here, at least

2     in their brief, was that the iPhones that they have now

3     identified are patent articles because they "comply with the

4     3G and/or LTE standard."  That is in their statement about

5     Statement of Undisputed Fact No. 1.

6          And then they further state that 3G and Orange

7     have and continue to assert that the asserted patents are

8     essential to the 3G and LTE standards.  That is in Statement

9     of Undisputed Fact No. 5.

10         And as we talked about at length today,

11    defendants have repeatedly asserted in this case that they

12    don't believe that any of those patents are essential.

13    Plaintiffs have stated that they are not asserting that

14    those patents are essential.

15         And so here again is another point at which

16    the essentiality issue comes into play; and there is no

17    admissible evidence that the patents actually are essential;

18    and so it is certainly our position that having failed to

19    put forth any admissible evidence on this point, that it is

20    not sufficient for them to put the burden on us to undertake

21    this time consuming and expensive fishing expedition in

22    which we will inevitably -- if these mere contentions are

23    sufficient -- have to reach out to Apple and conduct

24    third-party discovery on them when defendants themselves

25    don't believe the entire crux of their marking allegation.

1              And Mr. Ou, during the argument today,

2    switched up the theory a little bit and said, okay, well,

3    we're not going to rely on the essentiality argument.

4    Instead, we're going to say it's because you have pointed

5    the carrier documentation in your allegations against us;

6    and, therefore, you know, we can also point to the same

7    carrier documentation in the allegations against Apple or,

8    I'm sorry, to support or contentions with respect to the

9    Apple iPhone products.

10             But this really just highlights the problem,

11   Your Honor.  By sheer happenstance in this case, we have

12   conducted -- we obviously conducted a great deal of

13   third-party discovery on each of the carriers:  AT&T,

14   T-Mobile, Verizon, U.S. Cellular, Sprint and others.  And

15   frankly by sheer happenstance, during our attempt to negotiate

16   with U.S. Cellular -- well, I should take one step back.

17             We obtained documents from the carriers.  We

18   also served subpoenas for deposition testimony.  In response

19   to our subpoena for deposition testimony from U.S. Cellular,

20   they provided a declaration outlining the positions.

21             Again, our effort and our intent was to minimize

22   the burden on these third parties; but by sheer happenstance

23   in that declaration, U.S. Cellular volunteered that the

24   specific '818 related carrier requirements that they had

25   that we're relying on in this case, that Apple was excepted

1    from them.   They didn't apply to Apple.

2              And we haven't had an opportunity to flesh that

3    out with them, because again we had no understanding, we

4    were never told that the iPhone products were going to be

5    at issue during fact discovery.   More importantly, we

6    haven't had an opportunity to flesh that out with the other

7    carriers on which, you know, we're relying on that

8    requirement; and so that is substantial prejudice to us.

9              And we certainly, our position is that because

10   defendants have not set forth a credible basis, one

11   supported by actual admissible evidence to support their

12   assertion, that the burden of production has still not been

13   met even taking into account and accepting the late

14   disclosure; and as a result, that summary judgment should be

15   denied.

16             And I realize we're short on time so I'll

17   certainly speed through a few of these slides.

18             If Your Honor is interested, at slides 102

19   through 104, we walk through what it is defendants have

20   actually cited to support their assertion.

21             Slide 102 sets forth a quote from there brief.

22   They cite to Exhibit I at various paragraphs.

23             Slide 103, we identify what those paragraphs

24   are.   They are from a portion of I believe Dr. Jeffay's

25   report.

1                And if you read that, Dr. Jeffay never says

2       that the product, the Apple iPhone products comply with the

3       standard; certainly never says that they comply with the

4       specific standard provisions to which any of the asserted

5       patents have or ever have been declared essential.

6                All he says is that these products were able to

7       be used on the Verizon LTE network; and then even for that

8       assertion, he noted and applied, 103, there are two

9       footnotes.

10               The represented portion of those footnotes are

11      reproduced on slide 104.  And even for those assertions, it

12      was clear from Dr. Jeffay's own report, he is relying on

13      web printouts that he says he obtained from the Wayback

14      Machine.

15               That is not admissible evidence.  It's -- even

16      setting aside the fact that the statements that they point

17      to don't support the fact that these Apple iPhone products

18      practice the patents at all, it is not admissible; and it

19      sort of identifies the issue here, or encapsulate the issue

20      here.

21               It is defendants' burden.  They had a burden to

22      both identify products and identify the basis for their

23      beliefs so we would not undertake an expensive process,

24      bothering third parties and putting burdens on them without

25      a credible basis; and they still haven't identified one; and

1    it is for that reason that we think their motion should be

2    denied.  It is for that reason we have not requested it yet,

3    as of yet, for an opportunity to conduct discovery we need

4    on the Apple iPhone products; and that is why we are here

5    and where we are today.

6              I will say this very briefly.  If the Court

7    obviously disagrees, if the Court believes that they have

8    now met their burden of production, we absolutely would

9    request an opportunity to conduct discovery on the Apple

10   iPhone products.

11             Trial is not until -- currently scheduled

12   until January; and we are conducting discovery in the '662

13   matter, although COVID issue is making it difficult.  So

14   we would certainly asking for that opportunity now, the

15   same opportunity that defendants had and received when we

16   produced four discrete documents in July.

17             And I do just have one last point as far as the

18   pure marking issue.  At the most here, that is slide 105,

19   there is dueling evidence and testimony as to whether these

20   products at issue are patented articles.

21             Again, I mentioned defendants' denial that the

22   patents are essential.  That is certainly evidence in our

23   favor.  And there is also the testimony of plaintiffs'

24   expert that the evidence that defendants cites does not

25   show that any of the identified iPhones practice any of

1   for their notice of their infringement.  I think it's

2   contrary to the law as demonstrated by all the cases that

3   we cite.

4          Unless the Court has any questions, I'll rest on

5   the papers for the remainder of this section.

6          THE COURT:  Right.  Nothing else at this time.

7          Any rebuttal on this motion?

8          MR. OU:  Your Honor.  Philip Ou for HTC.  Very

9   briefly.

10         On the point about burden and prejudice.  The

11  arguments that we just heard I think is the exact opposite

12  of what Mr. Healy argued in regards to the motion to strike

13  the BlackBerry licenses.  What is good for the goose is good

14  for the gander, Your Honor; and I don't think they should be

15  able to or be allowed to have it both ways.

16         On the issue of proving essentiality.  Your

17  Honor, that is not our burden.  Our burden under *Arctic Cat*

18  is to identify the products we believe should have been

19  marked.  And if the plaintiffs are going to prevail and be

20  awarded damages, well, I don't see how they can prove that

21  if we infringe that the Apple iPhone products don't practice

22  the patents.

23         The last point on Your Honor's question as to our

24  disclosure, to be clear, in our supplemental interrogatory

25  responses, this is for HTC, that was during fact discovery.

1    It wasn't just the iPhone.  We said various versions of the

2    iPhone during the relevant time period.  I think that is very

3    different, Your Honor, than saying broadly Lenovo phones.

4    Apple makes iPhones, and those are their flagship phones.

5              Unless Your Honor has any questions, we'll rest on

6    the papers on the rest.

7              THE COURT:  Just on that last point.  You said

8    something to the effect of "various versions of the iPhone."

9    Did you identify specific versions of the iPhone?

10             MR. OU:  Your Honor, in our supplemental

11   response, we did not identify the specific versions.  I'm

12   reading, "including various versions of the iPhones during

13   the relevant time period", which would have been the time

14   period that they had a duty to mark, Your Honor.

15             And so we believe that at least as of that,

16   obviously they certainly know what the time period is where

17   they're alleging damages.  We do think that was sufficient

18   notice; and even if it wasn't, Your Honor, you know, they

19   got the notice later, at least as early as July, and then

20   again in our rebuttal expert reports.

21             The last point, I guess, Your Honor, I want

22   to make is that, you know, the defendants didn't -- the

23   plaintiff didn't stop, for example, from producing discovery

24   even during expert discovery.  For example, in their reply

25   expert report, they relied on and discussed a LG license

1      that just happened.

2                So we think that they had an opportunity to get

3      the discovery, they just didn't want to take it; and we

4      think that that ship has sailed, and summary judgment is

5      appropriate.

6                          THE COURT:  Okay.  Thank you.

7                We'll move on to the next one.

8                          MR. CHAIKOVSKY:  Your Honor, this is Yar

9      Chaikovsky on the '091 101 motion.  Are you ready to

10     proceed?

11                          THE COURT:  Yes.  Go ahead.

12                          MR. CHAIKOVSKY:  Okay.  Your Honor, I'm starting

13     on slide 21 for us.

14                As you can see, this was addressed earlier in

15     the Rule 12 context by Your Honor; and we ended it with an

16     issue as to -- or you provided an order with respect to

17     perhaps the claim construction was needed with respect to

18     the term "automatic;" and that might impact, as you see on

19     slide 24 of what the claims are directed to and whether

20     there is an improvement.

21                I'm focusing on slides 22 and 23.  We see from

22     the case law, you know, from *Chargepoint*, the main focus

23     from the abstract idea inquiry is to focus on the claims

24     themselves; to not import details from the specification,

25     let alone from extrinsic evidence or third-party evidence

# EXHIBIT 14a.2
# Defendant's Reply
# to MIL No. 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3G LICENSING, S.A.; | ) | |
| KONINKLIJKE KPN N.V.; | ) | |
| ORANGE S.A., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 17-cv-00083-GBW |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| HTC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT 14(A): HTC CORPORATION'S REPLY IN SUPPORT OF CONTINGENT MOTION *IN LIMINE* NO. 1 TO BAR PLAINTIFFS' UNTIMELY EVIDENCE**

OF COUNSEL:
Yar R. Chaikovsky
Philip Ou
Bruce Yen
Radhesh Devendran
Shashank Chitti
Jake Gold
WHITE & CASE LLP
3000 El Camino Real, 2 Palo Alto Square
Suite 900,
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213 8158
yar.chaikovsky@whitecase.com
Philip.ou@whitecase.com
bruce.yen@whitecase.com
radhesh.devendran@whitecase.com
shashankchitti@whitecase.com
jakegold@whitecase.com

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendant HTC Corporation*

Plaintiffs' opposition continues a troubling pattern throughout this case of disparaging HTC through unfounded accusations, rhetoric, and inaccurate recitations of the record. In arguing that HTC's contingent motion is untimely, Plaintiffs ignore that it was only in response to Plaintiffs' late attempt to exclude expert opinions and supporting evidence disclosed in HTC's expert report over four years ago. Exhibits 13(b) and (c). In the parties' exchange of motion *in limine* topics, Plaintiffs sought to exclude "documents that HTC did not properly produce before the close of discovery deadline." Ex. A. HTC proposed a contingent motion *in limine*—that if Plaintiffs sought to exclude evidence produced after fact discovery, such exclusion should apply both ways. Ex. B. HTC explained that both sides continued to produce evidence after the close of fact discovery, Plaintiffs never sought to strike any expert opinions or evidence identified by HTC's experts, and that HTC's proposed motion *in limine* was one of equity. Plaintiffs backed down and did not move in *limine* on documents produced after fact discovery (nor did HTC), only moving *in limine* on HTC's marking defense. When HTC amended its exhibit list to add evidence properly disclosed in expert reports[1] (public webpages disclosed in expert report and 3GL's own statements to the PTO), Plaintiffs claimed surprise, prejudice and ambush. But HTC's opinions and evidence were all disclosed in expert reports, Plaintiffs' own expert responded, Plaintiffs never bothered to depose Dr. Jeffay, never moved to strike, and never sought further discovery to mitigate any alleged prejudice. It is Plaintiffs, not HTC, that has lied in wait and now seeks to exclude important expert opinions and evidence it failed to challenge years ago. Ex. C.

---

[1] As explained in HTC's responses to Plaintiffs' motions, Plaintiffs produced dozens of exhibits during the pre-trial disclosure phase, years after discovery closed. They also, at the eleventh hour, seek to exclude expert opinions they never sought to strike under the guise of claim construction; but it is Plaintiffs who are improperly seeking to argue claim construction to the jury. 3GL has the burden to prove infringement, and HTC is entitled to respond. But they have obfuscated what it intends to argue at trial and why it is not improper claim construction.  Ex. D.

# EXHIBIT A

**Ou, Philip**

| | |
|---|---|
| **From:** | Hunter Vance <HVance@susmangodfrey.com> |
| **Sent:** | Monday, August 28, 2023 2:59 PM |
| **To:** | Alexander Lee; Yen, Bruce; Treviño, C. Daniel; Gold, Jake; John Shaw; Nathan R. Hoeschen; Ou, Philip; Devendran, Radhesh; Chitti, Shashank; Chaikovsky, Yar |
| **Cc:** | Andres Healy; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Brian Farnan; Joanna Stanley; Lexie White |
| **Subject:** | 3GL/HTC - Plaintiffs' Motion in Limine Topics |

Counsel,

Please see Plaintiffs' below motion in limine topics. Please let us know your availability on Wednesday for the meet and confer.

- HTC may not present evidence or argument that any Apple product is an unmarked patented article under 35 U.S.C. § 287.
- HTC may not introduce or rely on documents that HTC did not properly produce before the close of discovery deadline.
- HTC may not present evidence or argument disparaging 3G Licensing or its business model, including references to 3G Licensing as a "patent troll," "patent assertion entity," "non-practicing entity," or similar terms, and HTC may not reference 3G Licensing or Sisvel litigation or license activity unrelated to the Asserted Patents.
- HTC may not argue that any of the Asserted Patents is standard-essential and FRAND-encumbered, nor may HTC argue (or elicit testimony suggesting) that any belief by Plaintiffs in the essentiality of the Asserted Patents (1) means any Asserted Patent is actually essential or (2) creates any obligation for Plaintiffs to license any of the Asserted Patent on FRAND terms.

**Hunter Vance| Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

# EXHIBIT B

## Ou, Philip

| | |
|---|---|
| **From:** | Gold, Jake |
| **Sent:** | Monday, August 28, 2023 3:00 PM |
| **To:** | Hunter Vance; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Lexie White; Andres Healy; Joanna Stanley |
| **Cc:** | W&C 3G/KPN v. HTC; Ou, Philip; Chaikovsky, Yar; Nathan R. Hoeschen; John Shaw |
| **Subject:** | 3GL/HTC - HTC's MIL Topics |

Counsel,

Below are HTC's proposed motion in *limine* topics.  HTC may amend its list pending further consideration of pre-trial disclosures and the parties' upcoming meet and confer.

HTC MIL NO. 1: Preclude 3G Licensing (and/or Orange S.A.) from arguing that licenses to the patents-in-suit between 3G Licensing or Orange S.A. and third parties is evidence that HTC infringes or that HTC's alleged infringement is willful.  *See* D.I. 658 at 5-6 (order on HTC's MIL No. 2).

HTC MIL NO. 2: Preclude 3G Licensing and Orange S.A. from referring to Orange S.A. as a Plaintiff in this lawsuit or suggesting that Orange S.A. has any right to sue or to recovery for alleged infringement, other than to explain that Orange S.A. was joined as a "nominal Plaintiff" (to extent Orange S.A. remains a "nominal plaintiff") and what that means, or from referring to 3G Licensing and Orange S.A. collectively as "Plaintiffs".

HTC MIL NO. 3: Preclude 3G Licensing and Orange S.A. from relying on documents produced in other related litigations (but not in this litigation to HTC) or after the close of fact discovery.  Note the 2nd part of this MIL is conditioned on whether 3G Licensing and Orange S.A. moves in *limine* to preclude HTC from relying on evidence of a failure to mark Apple products.

Sincerely,

Jake

**Jake Gold** | Associate
**T** +1 650 213 0300     **E** jake.gold@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

# EXHIBIT C

## Ou, Philip

| | |
|---|---|
| **From:** | Ou, Philip |
| **Sent:** | Tuesday, September 19, 2023 5:16 PM |
| **To:** | 'Hunter Vance'; Andres Healy |
| **Cc:** | W&C 3G/KPN v. HTC; Chaikovsky, Yar; Nathan R. Hoeschen; John Shaw; SKparalegals@shawkeller.com; Treviño, C. Daniel; Brian Farnan; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Lexie White; Joanna Stanley |
| **Subject:** | RE: 3GL/HTC - MILs |

Hunter,

Your summary of our position is incorrect.  Our conditional MIL was based on whether 3GL was filing a MIL to exclude evidence on the basis that it was produced after the close of fact discovery.  You indicated you would not move on that basis, so we did not file our conditional MIL.

Now you want to file a MIL to exclude documents on the basis that they were identified after the close of fact discovery in an expert report, in addition to any opinions relating to those documents.  That is a motion to strike that 3GL had four years to file.  Notably, 3GL did not even bother to depose Dr. Jeffay about his opinions or the evidence he identified in his report you are now seeking to strike.  Your MIL as framed is untimely and we similarly object.

Any documents produced after the close of fact discovery and related opinions.  The documents should be the ones identified as NDD in objections, but we will consider if there is a narrower scope.

3GL's strategy to ambush HTC on the eve of trial by seeking to exclude expert opinions and evidence disclosed four years ago, after it decided not to file any dispositive or daubert motions, motions to strike, or even depose HTC's experts, is highly prejudicial and improper.

**Philip Ou** | Partner
**T** +1 650 213 0300   **M** +1 510 378 4224   **E** philip.ou@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

**From:** Hunter Vance <HVance@susmangodfrey.com>
**Sent:** Tuesday, September 19, 2023 5:03 PM
**To:** Ou, Philip <philip.ou@whitecase.com>; Andres Healy <AHealy@susmangodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - MILs

Phil,

Your revisions to the briefing schedule are fine.

To be clear, we object HTC submitting a late MIL. HTC told us on August 28 that it planned to file a MIL "conditioned on whether 3G Licensing and Orange S.A. moves in limine to preclude HTC from relying on evidence of a failure to mark Apple products."  Obviously, we did move to exclude HTC's untimely marking evidence, yet HTC chose not to file its conditional MIL (or any other MILs by the 9/11 deadline.) Nor have we produced or identified as exhibits any new

documents justifying a late MIL, unlike HTC, who only just produced new documents last Friday—after the MIL deadlines—that are the subject of our motion.

Further, your email does not even identify the evidence you say HTC wants to exclude. Is it the documents HTC objected to as "NDD?"

Best,

**Hunter Vance| Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

**From:** Ou, Philip <philip.ou@whitecase.com>
**Sent:** Tuesday, September 19, 2023 6:36 PM
**To:** Andres Healy <AHealy@susmangodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Hunter Vance <HVance@susmangodfrey.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - MILs

EXTERNAL Email

Hunter, Andres:

To follow up on our call, the proposed dates for the briefing are fine, but propose adjusting the times.   You have otherwise only given HTC one business day to respond whereas you have nearly four.

- Plaintiffs serve opening MIL by 9/21 at Noon EST
- HTC serves response by 9/25 at 11 PM EST
- Plaintiffs serve reply by 9/27 at 4 PM EST (to incorporate into 5PM EST Pretrial Order filing.)

In view of the MIL you are not filing, HTC will also file the conditional motion *in limine* HTC previously identified to exclude any documents produced after the close of fact discovery and testimony relating to those documents.  We assume you still oppose, but let us know if you want to further discuss.

Thanks,
Phil

**Philip Ou**  |  Partner
**T**  +1 650 213 0300   **M**  +1 510 378 4224   **E** philip.ou@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

**From:** Andres Healy <AHealy@susmangodfrey.com>
**Sent:** Tuesday, September 19, 2023 12:26 PM
**To:** Ou, Philip <philip.ou@whitecase.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Andres Healy <AHealy@susmangodfrey.com>; Hunter Vance <HVance@susmangodfrey.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley

<jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

We'll answer any questions you have on our call. Talk to you then.

**Andres C. Healy | Susman Godfrey LLP**
206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON  ●  LOS ANGELES  ●  SEATTLE  ●  NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Ou, Philip <philip.ou@whitecase.com>
**Sent:** Tuesday, September 19, 2023 12:22 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

==EXTERNAL Email==
Hunter – the only documents that were excluded that were cited in an expert report were on the basis that they were confidential documents from Qualcomm never produced in this case.  Can you elaborate on what you are referring to?

Regarding DTX277, we will also be supplementing our exhibit list to include the amended POPR.  The POPR is addressed by Dr. Jeffay in his expert report and responded to by Dr. Madisetti.  We are not raising 101 of the 091 patent.  It is unclear on what basis you would seek to exclude these, or what Andres means by: "Further, any attempt to make a prosecution history or disclaimer argument to the jury would be improper."  Please explain in advance of our meet and confer if you want to discuss it at that time.

Thanks,
Phil

**Philip Ou**  | Partner
**T**  +1 650 213 0300     **M**  +1 510 378 4224     **E**  philip.ou@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

**From:** Hunter Vance <HVance@susmangodfrey.com>
**Sent:** Tuesday, September 19, 2023 12:12 PM
**To:** Ou, Philip <philip.ou@whitecase.com>; Andres Healy <AHealy@susmangodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

Phil,

No, that does not resolve our objection, including for the reasons we detailed below. Plaintiffs have certainly never agreed that any document cited in an expert report is timely (nor did we agree as much "for the KPN trial" as you suggest below. Indeed, as you know, KPN successfully moved to exclude multiple untimely documents that HTC argued should be admitted because HTC's expert cited them.)

We are not available at 5PM EST, but we can discuss at 5:30EST. I will send an invite. We can also discuss our questions below regarding DTX277.

Thanks,

**Hunter Vance**| **Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

**From:** Ou, Philip <philip.ou@whitecase.com>
**Sent:** Tuesday, September 19, 2023 1:32 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

<mark>EXTERNAL Email</mark>
Hunter,

Each of DTX 284-291 were cited to and disclosed in Dr. Jeffay's non-infringement report:

- DTX284-288
  - Cited at Jeffay Rebuttal Report ¶ 256
- DTX289-291
  - Cited at Jeffay Rebuttal Report ¶ 261

As with exhibits that both parties produced and added to their respective exhibit lists for the KPN trial that were cited to in expert reports but bates numbered versions not previously produced, we did the same for these documents.

We trust that this resolves your present objection on the basis of timing and the motion *in limine*, but if not, we can meet and confer at 5 pm EST today.

Thanks,
Phil

**Philip Ou** | Partner
**T** +1 650 213 0300   **M** +1 510 378 4224   **E** philip.ou@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

**From:** Hunter Vance <HVance@susmangodfrey.com>
**Sent:** Tuesday, September 19, 2023 9:28 AM
**To:** Andres Healy <AHealy@susmangodfrey.com>; Ou, Philip <philip.ou@whitecase.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan -

Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

Phil,

Given that we have not heard back from HTC regarding DTX 284-291, we understand that HTC will not agree to withdraw those exhibits. We will file our motion in limine.

Best,

**Hunter Vance**| **Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

---

**From:** Andres Healy <AHealy@susmangodfrey.com>
**Sent:** Tuesday, September 19, 2023 10:25 AM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Ou, Philip <philip.ou@whitecase.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

Phil,

We also request to meet and confer regarding HTC's newly disclosed DTX277 exhibit. As you know, HTC sought to rely on that exhibit in support of its 101 motion directed to the 091 patent, which the Court subsequently resolved in Plaintiffs' favor. Further, any attempt to make a prosecution history or disclaimer argument to the jury would be improper. As such, so that we can evaluate whether a MIL is necessary, please explain how HTC intends to use such exhibit.

**Andres C. Healy | Susman Godfrey LLP**
206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON ● LOS ANGELES ● SEATTLE ● NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Hunter Vance <HVance@susmangodfrey.com>
**Sent:** Monday, September 18, 2023 3:20 PM
**To:** Ou, Philip <philip.ou@whitecase.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw <jshaw@shawkeller.com>; SKparalegals@shawkeller.com; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Andres

Healy <AHealy@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Subject:** RE: 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

Phil,

See Plaintiffs' objections to the new exhibits on HTC's list from last Friday.

In particular, note that we have objected to DTX 284-291, which appear to be various third-party website printouts that HTC never produced during the fact discovery period (and indeed that HTC only just produced last Friday, nearly 4.5 years after the fact discovery period closed.) It appears that HTC now intends to have its expert rely on these undisclosed, untimely documents to make noninfringement arguments regarding the alleged operation of the Accused Products.

That is improper and prejudices Plaintiffs given that we never had any opportunity to conduct responsive discovery regarding these third-party printouts. For example, HTC lists what it purports to be printouts from T-Mobile's website (DTX 284-288, 290). Plaintiffs have had no opportunity to conduct discovery on T-Mobile regarding these documents— this is even worse because both parties *did* subpoena T-Mobile during fact discovery, along with other carriers, yet HTC waited until long *after* discovery closed to produce these untimely, unauthenticated website printouts.

Please confirm by tomorrow at **12PM EST** whether HTC will withdraw those exhibits. To the extent HTC refuses, Plaintiffs will file a motion in limine to exclude HTC's untimely documents. If so, here's our proposed briefing schedule. It is necessarily compressed given that HTC waited until just last Friday (after the opening MIL deadline) to produce and list these documents.

- Plaintiffs serve opening MIL by 9/22 at 6PM EST
- HTC serves response by 9/25 at 6PM EST
- Plaintiffs serve reply by 9/27 at 4PM EST (to incorporate into 5PM EST Pretrial Order filing.)

Best,

**Hunter Vance**| **Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

---

**From:** Treviño, C. Daniel <daniel.trevino@whitecase.com>
**Sent:** Friday, September 15, 2023 4:49 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Brian Farnan <bfarnan@farnanlaw.com>; Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Lexie White <lwhite@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>
**Cc:** W&C 3G/KPN v. HTC <WC3GKPNvHTC@whitecase.com>; Ou, Philip <philip.ou@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; John Shaw

<jshaw@shawkeller.com>; SKparalegals@shawkeller.com
**Subject:** 3GL/HTC - HTC Supplemental Trial Exhibit List and Exhibits

EXTERNAL Email
Counsel,

Attached for service is HTC Corporation's supplemental trial exhibit list.  Exhibit nos. 269-305 are new additions.

Linked below are compressed files containing production volumes HTC3G051 & 52 and a PDF/XLS set of the new trial exhibits.

https://amsfs.whitecase.com/ngdox/workspaces/9d1a79a7-63a3-450f-96ea-bd07330ff2f6/99f98e1a-6e20-4ab4-a934-165f217d7012

Please advise if you have any issues accessing the link.

Sincerely,

C. Daniel Treviño

**C. Daniel Treviño**  |  Senior Paralegal
**T**  +1 650 213 0328     **E**  daniel.trevino@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109


=========================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


=========================================================================

=========================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


=========================================================================

=========================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you

have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


===========================================================================

===========================================================================

This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


===========================================================================

# EXHIBIT D

## Ou, Philip

| | |
|---|---|
| **From:** | Andres Healy <AHealy@susmangodfrey.com> |
| **Sent:** | Monday, September 25, 2023 2:14 PM |
| **To:** | Chaikovsky, Yar; Devendran, Radhesh |
| **Cc:** | Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com); Brian Farnan; Hunter Vance; Treviño, C. Daniel; Yen, Bruce; Gold, Jake; John Shaw; Nathan R. Hoeschen; Ou, Philip; Chitti, Shashank; Joanna Stanley; Lexie White; Andres Healy |
| **Subject:** | RE: [3GL/Orange] HTC - Plaintiffs' MILs |

Sure. Always happy to educate. As just some examples, see the record excerpts cited in our motion. See also the MSJ briefing and the Court's resulting orders.

**Andres C. Healy** | **Susman Godfrey LLP**
206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON** ● **LOS ANGELES** ● **SEATTLE** ● **NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Chaikovsky, Yar <yar.chaikovsky@whitecase.com>
**Sent:** Monday, September 25, 2023 2:10 PM
**To:** Andres Healy <AHealy@susmangodfrey.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan <bfarnan@farnanlaw.com>; Hunter Vance <HVance@susmangodfrey.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Yen, Bruce <bruce.yen@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip <philip.ou@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Lexie White <lwhite@susmangodfrey.com>
**Subject:** RE: [3GL/Orange] HTC - Plaintiffs' MILs

<mark>EXTERNAL Email</mark>
Thanks.   Can you provide the "cursory review of the record" that supports your position?  If it is the clear and simple, please do as we are happy to be educated.

Yar

**Yar Chaikovsky** | Partner
**T** +1 650 213 0320   **E** yar.chaikovsky@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

---

**From:** Andres Healy <AHealy@susmangodfrey.com>
**Sent:** Monday, September 25, 2023 2:08 PM
**To:** Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan <bfarnan@farnanlaw.com>; Hunter Vance <HVance@susmangodfrey.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Yen, Bruce <bruce.yen@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip

<philip.ou@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Lexie White <lwhite@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Subject:** RE: [3GL/Orange] HTC - Plaintiffs' MILs

Yar,

You are incorrect—a reality clear from even a cursory review of the record. In any event, you are obviously are free to make your arguments and we'll be happy to demonstrate why they are incorrect.

**Andres C. Healy | Susman Godfrey LLP**
206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON  ●  LOS ANGELES  ●  SEATTLE  ●  NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

**From:** Chaikovsky, Yar <yar.chaikovsky@whitecase.com>
**Sent:** Monday, September 25, 2023 2:02 PM
**To:** Andres Healy <AHealy@susmangodfrey.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan <bfarnan@farnanlaw.com>; Hunter Vance <HVance@susmangodfrey.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Yen, Bruce <bruce.yen@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip <philip.ou@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Lexie White <lwhite@susmangodfrey.com>
**Subject:** RE: [3GL/Orange] HTC - Plaintiffs' MILs

EXTERNAL Email
Andres-

The Court stated the following in denying our motion:

Defendants' own expert testified that the '091 patent "contemplates **both** automatic **and manual** initiation of a second call."

There is no way to read this other than to say that the claims can be capable of automatic or manual initiation.

So Dr. Madesetti is construing both "call" improperly and acting as his own lexicographer.  And he is limiting the claims to automatic, which has no support from the Court as a claim construction.

Besides these two instances, we are looking to see what other improper claim construction Dr. Madesetti has done.

Regards,

Yar

2

**Yar Chaikovsky** | Partner
**T**  +1 650 213 0320     **E**  yar.chaikovsky@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

---

**From:** Andres Healy <AHealy@susmangodfrey.com>
**Sent:** Monday, September 25, 2023 10:10 AM
**To:** Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan
<bfarnan@farnanlaw.com>; Hunter Vance <HVance@susmangodfrey.com>; Treviño, C. Daniel
<daniel.trevino@whitecase.com>; Yen, Bruce <bruce.yen@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>;
John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip
<philip.ou@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Joanna Stanley
<jstanley@SusmanGodfrey.com>; Lexie White <lwhite@susmangodfrey.com>; Andres Healy
<AHealy@susmangodfrey.com>
**Subject:** RE: [3GL/Orange] HTC - Plaintiffs' MILs

No. Dr. Madisetti will not be doing any claim construction. He will be applying the Court's order,
which – as we explained at length in our MIL (as Radhesh noted below) – "rejected HTC's argument
that 'the '091 Patent should be construed to "not require automatic switching without user
intervention."'"

**Andres C. Healy | Susman Godfrey LLP**
206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON  ●  LOS ANGELES  ●  SEATTLE  ●  NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Chaikovsky, Yar <yar.chaikovsky@whitecase.com>
**Sent:** Monday, September 25, 2023 10:04 AM
**To:** Andres Healy <AHealy@susmangodfrey.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan
<bfarnan@farnanlaw.com>; Hunter Vance <HVance@susmangodfrey.com>; Treviño, C. Daniel
<daniel.trevino@whitecase.com>; Yen, Bruce <bruce.yen@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>;
John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip
<philip.ou@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Joanna Stanley
<jstanley@SusmanGodfrey.com>; Lexie White <lwhite@susmangodfrey.com>
**Subject:** RE: [3GL/Orange] HTC - Plaintiffs' MILs

EXTERNAL Email
So Dr. Madesetti will be construing the claims during trial to be automatic.  That is what I am hearing.   No one has said
the claims are limited to automatic except Madisetti.

Yar

**Yar Chaikovsky** | Partner
**T** +1 650 213 0320   **E** yar.chaikovsky@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

---

**From:** Andres Healy <AHealy@susmangodfrey.com>
**Sent:** Monday, September 25, 2023 10:00 AM
**To:** Chaikovsky, Yar <yar.chaikovsky@whitecase.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan <bfarnan@farnanlaw.com>; Hunter Vance <HVance@susmangodfrey.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Yen, Bruce <bruce.yen@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip <philip.ou@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Lexie White <lwhite@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Subject:** RE: [3GL/Orange] HTC - Plaintiffs' MILs

Yar,

Apologies for not being able to get back to you yesterday, but we already told your team our position. It's also set forth at length in, e.g., Dr. Madisetti's reply report at paragraphs 38-48, which conclude with the statement that "[t]he asserted claims would be understood by one of ordinary skill in the art to require that the initiating of the second call be done automatically by the processor (Claim 1) and videophone (Claim 8)." So no, we are not suggesting that your option 2 is correct.

Thanks.

**Andres C. Healy | Susman Godfrey LLP**
206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON ● LOS ANGELES ● SEATTLE ● NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Chaikovsky, Yar <yar.chaikovsky@whitecase.com>
**Sent:** Monday, September 25, 2023 8:20 AM
**To:** Andres Healy <AHealy@susmangodfrey.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan <bfarnan@farnanlaw.com>; Hunter Vance <HVance@susmangodfrey.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Yen, Bruce <bruce.yen@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip <philip.ou@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Lexie White <lwhite@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Subject:** RE: HTC - Plaintiffs' MILs

EXTERNAL Email
Andres and Hunter—

Following up on this.

Yar

**Yar Chaikovsky** | Partner
**T** +1 650 213 0320    **E** yar.chaikovsky@whitecase.com
White & Case LLP  |  3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

---

**From:** Chaikovsky, Yar <yar.chaikovsky@whitecase.com>
**Sent:** Sunday, September 24, 2023 2:00 PM
**To:** Andres Healy <AHealy@susmangodfrey.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan <bfarnan@farnanlaw.com>; Hunter Vance <HVance@susmangodfrey.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Yen, Bruce <bruce.yen@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip <philip.ou@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Lexie White <lwhite@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Subject:** RE: HTC - Plaintiffs' MILs

Andres-

We are entitled to understand what 3G believes that means.

It seems like the options are:

1) the claims require automatic initiation without user intervention; or
2) the claims must be capable of either automatic OR manual initiation.

In the absence of a response, we assume you are suggesting that the second reading is the proper one.

If you disagree and believe the first option is correct or that another option exists, please inform us today.  Your recitation of Dr. Jeffay's position and the Court order is not clarifying.  The parties efforts here are to narrow the issues.

Your prompt assistance is appreciated.

Thanks.

Yar

Yar R. Chaikovsky
White & Case LLP

---

**From:** Andres Healy <AHealy@susmangodfrey.com>
**Date:** Sunday, Sep 24, 2023 at 11:56 AM
**To:** Devendran, Radhesh <radhesh.devendran@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>, Brian Farnan <bfarnan@farnanlaw.com>, Hunter Vance <HVance@susmangodfrey.com>, Treviño, C. Daniel <daniel.trevino@whitecase.com>, Yen, Bruce <bruce.yen@whitecase.com>, Gold, Jake <jake.gold@whitecase.com>, John

Shaw <jshaw@shawkeller.com>, Nathan R. Hoeschen <nhoeschen@shawkeller.com>, Ou, Philip <philip.ou@whitecase.com>, Chitti, Shashank <shashank.chitti@whitecase.com>, Chaikovsky, Yar <yar.chaikovsky@whitecase.com>, Joanna Stanley <jstanley@SusmanGodfrey.com>, Lexie White <lwhite@susmangodfrey.com>, Andres Healy <AHealy@susmangodfrey.com>
**Subject:** RE: HTC - Plaintiffs' MILs

Radhesh,

Our position is simply what the Court held, which is that the Court rejected HTC's argument and pointed out that HTC's own expert testified that the '091 Patent "contemplates both automatic and manual initiation of a second call." MSJ Opp. at 9-10.

**Andres C. Healy | Susman Godfrey LLP**
206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON  ●  LOS ANGELES  ●  SEATTLE  ●  NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Devendran, Radhesh <radhesh.devendran@whitecase.com>
**Sent:** Friday, September 22, 2023 3:20 PM
**To:** Hunter Vance <HVance@susmangodfrey.com>; Yen, Bruce <bruce.yen@whitecase.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip <philip.ou@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan <bfarnan@farnanlaw.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>; Lexie White <lwhite@susmangodfrey.com>
**Subject:** RE: HTC - Plaintiffs' MILs

<mark>EXTERNAL Email</mark>
Hunter,

Your 13(c) MIL says the Court rejected HTC's argument that "the '091 Patent should be construed to 'not require automatic switching without user intervention.'"  Is 3GL taking the position that the Court's SJ order construed the claims to require automatic initiation of a second call without user intervention?

**Radhesh Devendran**  | Associate
**T**  +1 650 213 0300    **E**  radhesh.devendran@whitecase.com
White & Case LLP | 3000 El Camino Real | 2 Palo Alto Square, Suite 900 | Palo Alto, CA 94306-2109

**From:** Hunter Vance <HVance@susmangodfrey.com>
**Sent:** Thursday, September 21, 2023 9:04 AM
**To:** Alexander Lee <alexanderlee@paulhastings.com>; Yen, Bruce <bruce.yen@whitecase.com>; Treviño, C. Daniel <daniel.trevino@whitecase.com>; Gold, Jake <jake.gold@whitecase.com>; John Shaw <jshaw@shawkeller.com>; Nathan R. Hoeschen <nhoeschen@shawkeller.com>; Ou, Philip <philip.ou@whitecase.com>; Devendran, Radhesh <radhesh.devendran@whitecase.com>; Chitti, Shashank <shashank.chitti@whitecase.com>; Chaikovsky, Yar <yar.chaikovsky@whitecase.com>
**Cc:** Michael J. Farnan - Farnan LLP (mfarnan@farnanlaw.com) <mfarnan@farnanlaw.com>; Brian Farnan <bfarnan@farnanlaw.com>; Joanna Stanley <jstanley@SusmanGodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>; Lexie White <lwhite@susmangodfrey.com>
**Subject:** HTC - Plaintiffs' MILs

Counsel,

Please see the attached MILs.

Best,

**Hunter Vance**| **Susman Godfrey LLP**
713-653-7848 (o) | 404-314-3566 (c)

=============================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity
named above and others who have been specifically authorized to receive it. If you are not the intended recipient,
please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you
have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email
and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be
protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


=============================================================================

=============================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity
named above and others who have been specifically authorized to receive it. If you are not the intended recipient,
please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you
have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email
and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be
protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


=============================================================================

=============================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity
named above and others who have been specifically authorized to receive it. If you are not the intended recipient,
please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you
have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email
and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be
protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


=============================================================================

=============================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity

named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


========================================================================


========================================================================
This email communication (and any attachments) are confidential and are intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning 650-213-0300. Please then delete the email and any copies of it. This information may be subject to legal professional or other privilege or may otherwise be protected by work product immunity or other legal rules. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


========================================================================