IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3G LICENSING, S.A., KONINKLIJKE KPN N.V., and ORANGE S.A., <br><br>                    Plaintiffs, <br>     v. <br><br> HTC CORPORATION, <br><br>                    Defendant. | **Redacted - Public Version** <br><br> C.A. No. 17-083- GBW |

# LETTER TO THE HONORABLE JUDGE GREGORY B. WILLIAMS
## FROM KAREN E. KELLER

OF COUNSEL:
Yar R. Chaikovsky
Philip Ou
Bruce Yen
Radhesh Devendran
Shashank Chitti
Jake Gold
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
(650) 213-0300

Dated: October 3, 2023

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys For Defendant HTC Corporation*

Dear Judge Williams,

Defendant HTC Corporation ("HTC") submits this letter brief in advance of tomorrow's pre-trial conference to bring to the Court's attention two important issues that HTC believes need to be addressed before trial begins on October 10.

Both issues involve recent disclosures made by Plaintiffs 3G Licensing ("3G") and nominal Plaintiff Orange S.A. ("Orange S.A.")[1] which significantly impact the upcoming trial and are highly prejudicial to HTC's trial preparation.

HTC contacted Plaintiffs yesterday morning regarding these issues, but, Plaintiffs were unavailable to meet and confer until this morning.

<u>Late Disclosure of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ 3G and Orange</u>

Since Orange joined the case as a "nominal Plaintiff", HTC has diligently sought to discover what, if any, relevance Orange had to the issues in this case and why it joined as a "nominal Plaintiff." In six years of litigation, no evidence has been produced that explains how Orange is properly joined in this case as a plaintiff under Fed. R. Civ. P. 20(a) (emphasis added below), which requires that:

> (a) PERSONS WHO MAY JOIN OR BE JOINED.
>
>   (1) *Plaintiffs.* Persons may join in one action as plaintiffs if:
>
>     (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; **<u>and</u>**
>
>     (B) any question of law or fact common to all plaintiffs will arise in the action.

Orange has no right to relief under the law; it is not properly joined, does not having standing, and should be dismissed. At most, Orange is the original assignee of the patents-in-suit ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

On October 25, 2017, HTC served the following exemplary RFPs:

> **RFP No. 23**: All license agreements to which any Plaintiff is a party or has an interest concerning or covering, in whole or in part, the Asserted Technology, including but not limited to any license agreement identified in other litigation.

---

[1] Orange joined this lawsuit when 3G filed its First Amended Complaint on April 10, 2017. D.I. 11 at ¶ 7 ("Orange joins this action as a nominal plaintiff only as to those patents, described herein, which it has assigned to 3G Licensing.") Therein, Plaintiffs alleged that 3G had the sole right to assert and recover for any and all infringements. *Id.* at ¶45 ("3G Licensing is the owner by assignment from Orange of the '091 patent and holds all right, title and interest to the '091 patent."); ¶53 ("3G Licensing is the owner by assignment from Orange of the '818 patent and holds all right, title and interest to the '818 patent.").

1

**RFP No. 60**: All Documents relating to any financial interest in or to the Asserted Patents by any Person, including Documents sufficient to identify all persons with such a financial interest, and the nature of such financial interest.

**RFP No. 61**: All Documents relating to any financial interest in or to this litigation by any Person, including Documents sufficient to identify all persons with such a financial interest, and the nature of such financial interest.

In response, 3G and Orange produced ████████████████████████████████████████████████████████████████

HTC deposed Orange and 3G ████████████████ For example, 3G's corporate representative David Muus testified:



Ex. B, April 10, 2019 Tr. at 315:11-316:6.

Fact discovery closed on May 24, 2019 and 3G's damage expert, Mr. Lindsay, issued his opening report on July 17, 2019, including ████████████████████████████████████████

2



Last Friday, however, Plaintiffs produced ▮▮▮▮▮ They stated:

> We learned for the first time late Wednesday that ▮▮▮▮▮ We are thus producing them pursuant to our ongoing obligations. To be clear, however, given the timing of this production, Plaintiffs do not intend to introduce or reference these documents at trial in any way unless HTC first opens the door by, for example, ▮▮▮▮▮

Ex. C (Sept. 29, 2023 E-mail); Ex. D and E (attached agreements).



does not cure the substantial prejudice to HTC because it contradicts the evidence actually disclosed in the case, which HTC, and its experts, have relied on for years, and in its preparation for trial.

Plaintiffs' failure to disclose these ▮▮▮▮▮ until ten days before trial is a gross violation of their obligations under Fed. R. Civ. P. 26 and warrants sanctions under Fed. R. Civ. P. 37. *W.L. Gore & Assoc. v. C.R. Bard, Inc.*, 231 F. Supp. 19, 20 (D. Del. Feb. 8, 2017) (continuing trial and granting-in-part fees motion based on late discovered evidence).

Orange should be dismissed from the case[2], and the jury should be instructed that Orange is not a proper Plaintiff to this case and has no rights to assert or to recover for any alleged infringement. *IOENGINE LLC v. Interactive Media Corp.*, C. A. No. 14-1571-GMS, 2017 U.S. Dist. LEXIS 758, *3 n. 2, (D. Del. Jan. 4, 2017), citing *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1367, 1368 (Fed. Cir. 2003) ("It is well-established that any party, and even the court *sua sponte*, can **_raise_** the issue of **_standing_** for the first **_time_** at any stage of the litigation, including on appeal.) (emphasis in original); *see also Ajinomoto Co. v. Archer-Daniels-Midland Co.*, C.A. No. 95-218-SLR, 1998 U.S. Dist. LEXIS 3833 (D. Del. Mar. 13, 1998) (ruling on the issue of standing after being raised for the first time in a post-trial brief).

---

[2] To be clear, HTC does not object to Orange's participation in the trial as a third-party and original assignee of the patents-in-suit. However, it would be legal error for 3G to present Orange as a co-plaintiff in this case when it has alleged, throughout this case, that 3G (and not Orange) is the owner by assignment from Orange of the asserted patents and holds all right, title and interest.

3G L's Abandonment of the '564 Patent on the Eve of Trial and Continued Reliance on the Orange-Broadcom Agreement

HTC seeks to preclude 3G from relying on a license agreement between ▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌ that cannot be relied upon without 3G introducing new, never disclosed, expert opinions or discussing a patent that it has now dropped from the case. The latter would be confusing to the jury, highly prejudicial, and should be precluded under F.R.E. 403. And there is no dispute that 3G's technical expert, Dr. Madisetti, did not offer any opinions that the ▌▌▌▌▌ ▌▌▌▌▌ is technically comparable to either of the remaining patents-in-suit. Ex. G, April 17, 2020 Hearing Tr. at 75:8-14 ("COURT:…Have your technical experts opined on the comparability of, say, the '091 and '818 patents?... COUNSEL: … It is not in their reports, Your Honor."). HTC could not have raised this issue sooner, as it arose from 3G's recent decision to drop U.S. Patent No. 7,933,564 ("'564 Patent"). D.I. 686 at 2-3, n. 3.

For background, 3G's damages expert, Mr. Lindsay, relies on the ▌▌▌▌▌▌▌▌, among other license agreements, to arrive at his base royalty of ▌▌▌▌▌▌. Without the ▌▌▌▌▌▌▌▌, there is no support for the ▌▌▌▌▌ as each of the other licenses Mr. Lindsay relies on only support ▌▌▌. Mr. Lindsay relied on a discussion with 3G's technical expert, Dr. Madisetti, to establish the technical comparability of the agreement. D.I. 486 at 19-20. Dr. Madisetti, however, only provided an opinion that the ▌▌▌▌▌▌▌▌ was technically comparable to the *'564 Patent*. Ex. F (Madisetti Report only discussing technical comparability to '564 Patent). Federal Circuit law is clear that licenses relied on by the patentee in proving damages must be sufficiently comparable to the hypothetical license at issue. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872-873 (Fed. Cir. 2010).

HTC previously filed a *Daubert* motion to preclude 3G from relying on the ▌▌▌▌▌▌▌▌ as technically comparable to the '818 and '091 patents. D.I. 351 at 8-9. The Court denied the motion, reasoning that "it will be for the jury to resolve any dispute about the technical comparability of the agreement, including assessing Defendants' expert opinions about it." D.I. 19-20. But with the '564 Patent out of the case, no expert—without going beyond their expert reports—will be talking about the technical comparability of the ▌▌▌▌▌▌▌▌ unless 3G intends to either (1) talk about how it is technically comparable to a patent it asserted for six years but abandoned on the eve of trial (the '564 Patent) or (2) introduce new, never disclosed opinions that the ▌▌▌▌▌ ▌▌▌▌ is technically comparable to the '818 or '091 patents. Neither should be allowed. Indeed, the Court previously recognized this as a problem for trial during the hearing on HTC's *Daubert* motion. Ex. G at 73:23-76:5 ("COURT: But isn't that a problem then?  If you[r] [*sic*] technical experts are not going to be able [make] that opinion, because presumably there would be a meritorious objection that it wasn't adequately disclosed prior to trial, how could it possibly be okay for Mr. Lindsay to hearsay it in?"). Now that the '564 Patent has been dropped, the ▌▌▌▌▌ ▌▌▌▌▌ has no relevance or nexus to this case and should be excluded.

HTC submits that the admissibility of the ▌▌▌▌▌▌▌▌ is an important evidentiary issue that should be resolved before trial as whether 3G can rely on it impacts HTC's preparation of its opening statement and cross-examination of 3G and Orange's witnesses.

4

Respectfully submitted,

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)

cc:Clerk of the Court (by CM/ECF & Hand Delivery)
All counsel of record (by CM/ECF & Email)

# EXHIBIT A-F
# Redacted in their Entirety

# EXHIBIT G

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                   IN AND FOR THE DISTRICT OF DELAWARE

 3                                 - - -

    3G LICENSING, S.A., KONINKLIJKE
 4  KPN N.V., and ORANGE S.A.,             : CIVIL ACTION
                                           :
 5               Plaintiffs,               :
    v                                      :
 6                                         :
    BLACKBERRY LIMITED and                 :
 7  BLACKBERRY CORPORATION,                :
                                           :
 8               Defendants.               : NO. 17-82-LPS
    ---------------------------------------
 9  3G LICENSING, S.A., KONINKLIJKE
    KPN N.V., and ORANGE S.A.,             : CIVIL ACTION
10                                         :
                 Plaintiffs,               :
11  v                                      :
                                           :
12  HTC CORPORATION and                    :
    HTC AMERICA INC.,                      :
13                                         :
                 Defendants.               : NO. 17-83-LPS
14  ---------------------------------------
    3G LICENSING, S.A., KONINKLIJKE
15  KPN N.V., and ORANGE S.A.,             : CIVIL ACTION
                                           :
16               Plaintiffs,               :
    v                                      :
17                                         :
    LENOVO GROUP LTD., LENOVO HOLDING      :
18  CO., INC., LENOVO (UNITED STATES)      :
    INC., and MOTOROLA MOBILITY, LLC,      :
19                                         :
                 Defendants.               : NO. 17-84-LPS
20                                 - - -

21                            Wilmington, Delaware
                             Friday, April 17, 2020
22                        Telephonic Oral Argument Hearing

23                                 - - -

24  BEFORE:      HONORABLE LEONARD P. STARK, Chief Judge

25                                 - - -
```

```
 1    analyses.  He analyzed the FRAND rate and he analyzed what
 2    the rate would be in the absence of an actual limitation on
 3    damages.
 4              Now, I'm sure both sides will present to the
 5    jury some disputed testimony over whether the parties would
 6    have actually viewed this differently.  I appreciate that
 7    the other side may want to argue to the jury as I tried to
 8    explain during the FRAND section that even in the absence of
 9    an actual limitation on FRAND, they would have expected a
10    FRAND license.  They can make that argument.  We'll point
11    to the evidence and they may have their own evidence on
12    that.  But that's the argument that we foresee Mr. Lindsay
13    making.
14              THE COURT:  So do you envision, since
15    Mr. Lindsay did the analysis under both assumptions, FRAND
16    and not FRAND, that both of those would come into evidence?
17              MR. VANCE:  Absolutely, Your Honor.  I think the
18    critical understanding of Mr. Lindsay's methodology is that
19    he began with comparable licenses that he understands were
20    negotiated under the assumption of FRAND and then made
21    adjustments based on the economic circumstances of these
22    cases.  So, yes, Your Honor, both rates would come in.
23              THE COURT:  All right.  And then on the
24    technical comparability with respect to the Orange
25    agreement.  I see where Mr. Lindsay said he spoke to other
```

```
 1    technical experts, but is there anything in the record
 2    where those technical experts themselves opined about the
 3    technical comparability for any patent other than the --
 4    which was the '056, I think?
 5              Go ahead.
 6              MR. VANCE:  Yes, the '564 patent, Your Honor.
 7              THE COURT:  Ah.
 8              MR. VANCE:  What Mr. Lindsay did is he said he
 9    had conversations with the technical experts as part of
10    preparing his report.  He spoke to them about the background
11    of the technology, about the patents themselves, about
12    comparison to other comparable licenses.  He specifically
13    discussed his understanding of the technology at issue in
14    the comparable license that the defendants are pointing to
15    and his understanding of the technology in each of the
16    asserted patents; and that based on his discussions with the
17    experts, he understood they had equivalent value.  So that
18    is what he would be relying on.
19              THE COURT:  Right.  Well, respond to the
20    argument that that sounds like he might be getting into
21    evidence, essentially hearsay, that those technical experts
22    are not themselves directly going to opine on.  Is that a
23    fair characterization of the record?
24              MR. VANCE:  I think not necessarily quite.
25    Certainly, the defendants, to the extent that they want to
```

```
 1    raise the argument that what Mr. Lindsay learned from the
 2    technical experts isn't enough.  They can make that
 3    argument.  They can tell the jury here is what the record --
 4    here is what the technical expert told you.  We don't think
 5    that is enough.  They can make that argument, but that is a
 6    weight issue, Your Honor.
 7              THE COURT:  All right.  I appreciate that; and
 8    I think I'm not being clear.  Have your technical experts
 9    opined on the comparability of, say, the '091 and '818
10    patents?
11              MR. VANCE:  I apologize, Your Honor.  I want to
12    make sure I answer your question clearly.  I didn't quite
13    follow.
14              It is not in their reports, Your Honor.
15              THE COURT:  Meaning do you acknowledge then that
16    it would be outside the scope of what they have disclosed
17    for them to come to this trial and give such an opinion?
18              MR. VANCE:  I think to the extent that opinion
19    comes up and is necessary at trial, it would be Mr. Lindsay
20    describing his understanding from the technical experts.
21              THE COURT: Okay.  But isn't that a problem then?
22    If your technical experts are not going to be able to face
23    that opinion, because presumably there would be a meritorious
24    objection that it wasn't adequately disclosed prior to trial,
25    how could it possibly be okay for Mr. Lindsay to hearsay it
```

1    in?

2             MR. VANCE:  I suppose we just disagree, Your

3    Honor.  We think it is appropriate for Mr. Lindsay to opine

4    on his understanding based on the conversations with the

5    technical experts.

6             THE COURT:  Okay.  Thank you.

7             Any rebuttal?

8             MR. MOORE:  Your Honor, no.  The only point I

9    would make, Your Honor hit what I was going to say on the

10   Orange license; but I did want to address on the BlackBerry

11   expert issue that is on their slide 79.

12            As I said, it's not that we contend for all

13   three patents that there is no issue of comparability, so we

14   don't -- at least in *Daubert*, we don't contest to the '564,

15   but it's for the other two, as Your Honor recognizes.

16            And then, secondarily, for at least for Lenovo

17   and HTC, Mr. Martinez wouldn't be testifying at trial, so

18   there would be no evidence, that our experts did not use

19   that particular Orange license in their own analysis to come

20   up with their own baseline unit ranges.

21            So that is all I have in rebuttal, Your Honor.

22            THE COURT:  Okay.  Anything further on that one?

23            MR. VANCE:  Nothing further, Your Honor.

24            THE COURT:  All right.  Then we can move on to

25   the next one.