## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

3G LICENSING, S.A.,
KONINKLIJKE KPN N.V., and
ORANGE, S.A.,

                        Plaintiffs,

    v.

HTC CORPORATION,

                        Defendant.

C. A. No. 17-cv-83-GBW

### MEMORANDUM OPINION

Before the Court is HTC Corporation's ("HTC") request that the Court construe three (3)

terms found in the claims of U.S. Patent No. 7,995,091 (the "'091 patent"). D.I. 696. HTC further

requests that the Court construe whether the claims of the '091 patent cover only automatic

embodiments or whether the claims cover both manual and/or automatic embodiments. *Id.* The

Court has reviewed the parties' briefing, D.I. 696 and D.I. 709, and held a hearing on October 6,

2023. The Court construes the three (3) terms at issue as set forth below.[1]

## I.    LEGAL STANDARDS

"'[T]he claims of a patent define the invention to which the patentee is entitled the right to

exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation

omitted); *Aventis Pharms. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013)

(same). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*,

415 F.3d at 1324. The Court is free to attach the appropriate weight to appropriate sources "in

light of the statutes and policies that inform patent law." *Id.* The ultimate question of the proper

---

[1] On October 6, 2023, the Court entered an Order, D.I. 712, providing the Court's construction of the claim terms "call", "second call", and "initiating a second call" as well as the Court's construction that the claims of the '091 patent cover both manual and/or automatic embodiments and are not limited to only automatic embodiments. This Memorandum Opinion sets forth the Court's analysis in more detail.

construction of a patent is a question of law, although "subsidiary factfinding is sometimes

necessary." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326–27 (2015); *see Markman

v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("the construction of a patent . . . is

exclusively within the province of the court.").

"The words of a claim are generally given their ordinary and customary meaning as

understood by a person of ordinary skill in the art when read in the context of the specification and

prosecution history." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir.

2012) (citing *Phillips*, 415 F.3d at 1313); *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358

(Fed. Cir. 2016) (similar). The "'only two exceptions to this general rule'" are (1) when a patentee

defines a term or (2) disavowal of "'the full scope of a claim term either in the specification or

during prosecution.'" *Thorner*, 669 F.3d at 1365 (citation omitted).

The Court "'first look[s] to, and primarily rel[ies] on, the intrinsic evidence,'" which

includes the claims, written description, and prosecution history and "'is usually dispositive.'"

*Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1340 (Fed. Cir. 2020) (citation

omitted). "[T]he specification ' . . . is the single best guide to the meaning of a disputed term.'"

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016) (citation

omitted). "'[T]he specification may reveal a special definition given to a claim term by the

patentee that differs from the meaning it would otherwise possess.' When the patentee acts as its

own lexicographer, that definition governs." *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 796

(Fed. Cir. 2019) (quoting *Phillips*, 415 F.3d at 1316). However, "'[the Court] do[es] not read

limitations from the embodiments in the specification into the claims.'" *MasterMine Software,

Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1310 (Fed. Cir. 2017) (citation omitted)). The "written

description . . . is not a substitute for, nor can it be used to rewrite, the chosen claim language." *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

The Court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370; *Cont'l Cirs.*, 915 F.3d at 796 (same). The prosecution history may "'demonstrat[e] how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution . . . ." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1377 (Fed. Cir. 2021) (quoting *Phillips*, 415 F.3d at 1317).

The Court may "need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 574 U.S. at 331. "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980; *Phillips*, 415 F.3d at 1317 (same). Extrinsic evidence may be useful, but it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Cont'l Cirs.*, 915 F.3d at 799 (internal quotation marks and citations omitted). However, "[p]atent documents are written for persons familiar with the relevant field . . . . Thus resolution of any ambiguity arising from the claims and specification may be aided by extrinsic evidence of usage and meaning of a term in the context of the invention." *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1119 (Fed. Cir. 2002); *see Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 899 (2014) (explaining that patents are addressed "to those skilled in the relevant art").

## II.    CONSTRUCTION OF DISPUTED TERMS

The following three (3) terms are in dispute, require construction, and are construed as set forth below for the following reasons:

### a. "call"

| Term No. | Claim Term | Plaintiffs' Construction | Defendant's Construction | Court's Construction |
|---|---|---|---|---|
| 1 | "call" | "communication of specific media between mobile stations" | "communication between mobile stations" | "communication of audio and/or video data between mobile stations" |

Both parties' constructions contend that a call is a "communication" that occurs "between mobile stations." Thus, the parties only dispute what the "communication" must contain to be a "call." 3G proposes that a "call" consists of a communication of "specific media" while HTC proposes that any communication suffices. *See* D.I. 696 at 9; D.I. 709 at 2.

First, the Court looks to the claim language. The term is used in the first claim of the '091 patent below:

1.  A videophone responsive to the discontinuation of an in progress mixed media telecommunications call, the videophone comprising:

    > a radio frequency (RF) interface configured to communicate via a radio telecommunications network;

    > a transmitter configured to transmit data carrying at least a first and second media to a remote videophone during a first call; and

    > a processor in communication with the RF interface configured to receive an indication, via the RF interface, that the transmission of data to the remote videophone in the first call is being discontinued, the processor further being configured to, in response to the indication, initiate a second call to the remote videophone, the second call not supporting the second media.

    > '091 patent at claim 1.

Paragraph 2 of Claim 1 shows that "data" is transferred during a call and that data includes "at least a first and second media." *Id.* Claim 7, a dependent claim of claim 1, describes an

embodiment wherein the "first and second media correspond to audio and video image media respectively." *Id.*

In describing the preferred embodiment, the specification states that a "communication" is, for example, a "mix of audio, video, data, and control signals." *Id.* at 7:37-7:38. The specification also states that "media" can include "voice and video" and that "the types of traffic with which the invention is mainly concerned are voice (audio) and video data." *Id.* at 1:33, 5:55-5:56. Moreover, in describing the benefits of the present invention, the specification states that "a mixed media, particularly audio/video, data transmission solution which does not require significant modification of the communications infrastructure itself" is "desirable." *Id.* at 1:47-1:50.

Thus, the Court finds that a call requires the communication of media from a first videophone to a second videophone. *See id.* at claim 1. The Court further finds that "media" consists of audio data, voice data, or both. *See id.* While the specification describes audio and video data as examples of media, the plain language of "call" requires, at least, the transmission of voice or video data. *See id.* This is in accord with the parties' positions at the claim construction hearing, where both parties explained that transmission of control signals alone does not constitute a call. 3G further explained that a text message also does not constitute a call because, while a text transmits data, a text lacks audio or video data.

Accordingly, the Court construes "call" as a "communication of audio and/or video data between mobile stations."

### b. "second call"

| Term No. | Claim Term | Plaintiffs' Construction | Defendant's Construction | Court's Construction |
|----------|------------|--------------------------|--------------------------|----------------------|

| 2 | "second call" | Plain and ordinary meaning, which requires only that the second call be a "call that includes different media than the first call" | "separate call that is initiated only after receiving the indication to discontinue the first call" | "a separate call or a call that includes different media than the first call" |
|---|---|---|---|---|

The parties dispute whether a second call, as contemplated by the patent, must (1) initiate only after an indication that the first call is to be discontinued, (2) contain media different from the media of the first call, and (3) be a "separate" call from the first.

3G argues the plain and ordinary meaning of second call requires that the call contain different media than the first. D.I. 709.

First, the Court looks to the claim language. Paragraph 3 of Claim 1 claims (A) "a transmitter configured to transmit data carrying at least a first and second media to a remote videophone during a first call", and (B) a "processor in communication with the RF interface configured to…initiate a second call to the remote videophone, the second call not supporting the second media." '091 patent at claim 1. Thus, in claim 1, the first call contains at least a first and second media and the second call does not support the second media. *Id*. Therefore, a second call may contain media differing from the first.

Next, HTC argues that the second call must be separate from the first call. D.I. 696. In support, HTC points to Figures 1, 2, and 4. *Id*. at 6. HTC states that Figure 1 shows a first voice call being released after a second video call is initiated while the first call is on hold. *Id*. Figure 2 shows a video call being released before a voice call to the same number. *Id*. Figure 4 shows a voice call being put on hold while a video call is initiated. *Id*. HTC contends that, in each figure, the second call is initiated separately from the first call. *Id*. HTC further contends that beginning

the second call results in either the termination of the first call or the first call being put on hold. *Id*. at 7.

In contrast, 3G contends that the claims cover, but do not require, embodiments where the first and second call are separate. D.I. 709. In support 3G characterizes Figure 4, for example, as showing an embodiment where the audio and visual calls are not separate. *Id*. at 5. Figure 4 describes an initial audio call upgraded to a video call. '091 patent at 8:65-9:10. There, a caller activates a dialing routine on his or her videophone. *Id*. This establishes an audio call between the caller and recipient. *Id*. Then, to initiate a video call during the audio communication, the caller can push a softkey which puts the current audio call on hold, initiates a data call, and launches the video call interface. *Id*.

The Court finds that the '091 patent covers embodiments where the first call is separate from the second call. For example, in Figure 2, there is a "release" of the first call before the "setup" and "answer" of the second call takes place. *Id*. at FIG. 2.

However, the Court further finds that the patent is not limited to embodiments where the first and second calls are "separate" calls. As a threshold matter, HTC's proposed limitation is not reflected in the claim language. *See id*. at claim 1. The claims state only that there is a first and second call, and that these calls contain different media. *Id*. The specification does not clearly disclaim that scope. *See id*. For example, Figure 4 shows an audio call upgraded to a video call. *Id*. at FIG. 4. Figure 4 also shows that an audio call can be reverted to voice only when a user either does not initially consent to the video call or consents to the video call but later chooses to revert to a voice call. *Id*. The specification describes that "during a video call, the speakerphone is preferably always active and audio is transmitted between the phones from the time that the data call is established" and that "the recipient or the caller may suspend the video part of the call" or

7

"revert to voice only." *Id.* at 10:43-10:45, 10:48-10:49. Thus, because the initial audio call is not released when the video part of the call is added, the Court finds that Figure 4 shows a first and second call with different media where the first and second call are not separate. *See id.* at FIG. 4.

Accordingly, the Court construes "second call" as "a separate call or a call that includes different media than the first call."

### c. "initiating a second call"

| Term No. | Claim Term | Plaintiffs' Construction | Defendant's Construction | Court's Construction |
|----------|------------|--------------------------|--------------------------|----------------------|
| 3 | "initiating a second call" | Plain and ordinary meaning, which requires "sending signaling to establish a second call" | "making a second call" | "sending signaling sufficient to establish a second call, if answered" |

The parties dispute whether initiation of the second call requires answering of the second call. HTC argues that initiation and answering are used differently in the patent, and accordingly, possess different meanings. D.I. 696. 3G contends that the specification teaches that the answering step is subsumed within the initiation step. D.I. 709.

The claims do not clearly resolve the question, and so the Court next considers the specification. *See* '091 patent at claims 1-4. The specification states that, referring to Figure 1, "a caller initiates a standard voice call (steps a[] to d) in Fig. 1)." *Id.* at 7:53. 3G argues this statement means step a through step d must be performed to initiate a call. D.I. 709 at 9. However, the specification thereafter states that a second call occurs at step e. '091 patent at 7:57-7:60. At step e, the caller "switches to video mode" which is done by "putting the call on hold and initiating a second [] call to the same number." *Id.* Then, the "recipient's videophone" presents "the

subscriber with the option to either switch to video mode or remain in voice mode" and, at step h, the "recipient chooses to consent to video mode." *Id.* at 7:63-7:65. Last, the call is answered at step i. *Id.*

Thus, the second call is initiated at step e but that call is not answered until step i. *Id.* Accordingly, the specification shows that "answering" the second call is not part of "initiating" the second call. The statement upon which 3G relies, i.e. that "a caller initiates a standard voice call (steps a[] to d) in Fig. 1)" is consistent with this interpretation. *Id.* at 7:53. Step a through step d of Figure 1 show the first call being both "initiated" and "answered," rather than only initiation of the call. *See id.* at FIG. 1. Step a through step c show the initiation of the first call, and step d shows the answer of the first call. *Id.*

Initiation of the call also requires pre-call signaling. *See id.* The specification states that, referring to Figure 1, "a caller initiates a standard voice call (steps a[] to d) in Fig. 1)" and that Figure 1 is an example of the call set-up procedure. *Id.* In Figure 1, step a through step c depict the "Calling Mobile" sending information to the "Called Mobile" prior to the call being answered at step d. *Id.* at FIG 1. And, if the call is answered, this signaling must be "sufficient" to establish the call because the initiation step immediately precedes the answer of the call. *Id.*

Thus, the call must be initiated before it is answered, and the initiation of the call must involve sufficient signaling to establish the call. *See id.* Accordingly, the Court construes "initiating a second call" as "sending signaling sufficient to establish a second call, if answered."

d.  **"Whether the patent covers both manual and automatic embodiments or only automatic embodiments."**

| Term No. | Claim Term | Plaintiffs' Construction | Defendant's Construction | Court's Construction |
|---|---|---|---|---|

| 4 | Whether the patent covers only automatic embodiments or both manual and automatic embodiments. | The patent covers only automatic embodiments | The patent covers both manual and automatic embodiments | The patent covers both manual and automatic embodiments |
|---|---|---|---|---|

The parties dispute whether the claims of the '091 patent cover both automatic and manual embodiments or whether the patent is limited to manual embodiments.

3G argues that the patent covers only automatic embodiments because the processor in claim 1 must be "configured to" initiate a second call in response to a specific indication. D.I. 709 at 9-10. 3G cites *INVT SPE LLC v. Int'l Trade Comm'n*, where the Federal Circuit held that "a computer-implemented claim drawn to a functional capability requires some showing that the accused computer-implemented device is programmed or otherwise configured, without modification, to perform the claimed function when in operation." 46 F.4th 1361, 1365 (Fed. Cir. 2022).

The Court need not decide whether the claims of the '091 are configuration-type or capability-type claims. *See ParkerVision, Inc. v. Qualcomm Inc.*, 903 F.3d 1354 (Fed. Cir. 2018) (articulating a distinction between configuration-type and capability-type claims). Even if the Court construes the claims as capability-type claims, such a construction does not inherently exclude manual embodiments. A videophone could be configured such that it performs the claimed function—automatically initiating a second call—while also allowing for manual initiation.

In fact, the specification contemplates manual initiation of a second call. *See* '091 patent at FIG. 4. Figure 4 teaches that a video call can be downgraded to an audio call when a user

10

chooses to revert the call. *Id.* At oral argument, 3G stated that this reversion would constitute a "second call" because of the different channels which the videophone uses to conduct audio and video calls. Moreover, the specification describes that an "object of the invention" is to "provide a videophone interface and a method of operating [the] same which addresses ... human factors issues relevant to combined video and audio communication." *Id.* at 1:61-1:65.

In any event, a patentee can "expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." *Thorner*, 669 F.3d at 1367. 3G did not clearly disclaim manual embodiments. *See* '091 patent. Accordingly, the Court finds that the specification covers both automatic and manual embodiments.

## V.   CONCLUSION

The Court will construe the disputed claim terms as described above. The Court has issued an Order consistent with this Memorandum Opinion. *See* D.I. 712.

Date: October 20, 2023

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE