IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

3G LICENSING, S.A.,
KONINKLIJKE KPN N.V., and
ORANGE, S.A.,

                Plaintiffs,

    v.

HTC CORPORATION,

                Defendant.

C. A. No. 17-cv-83-GBW

## MEMORANDUM ORDER

Before the Court is Defendant HTC Corporation's ("HTC") Motion for Alternate Security. *See* D.I. 775. For the reasons stated below, HTC's Motion is granted-in-part and denied-in-part.

**I.    LEGAL STANDARDS**

    **A.    Stay By Superseadeas Bond**

Rule 62(d) of the Federal Rules of Civil Procedure provides for a stay by supersedeas bond if an appeal is taken. The stay takes effect when the court approves the bond. "The purpose of the supersedeas bond under Rule 62(d) is to preserve the status quo during the pendency of an appeal and protect the winning party from the possibility of loss resulting from the delay in execution. The bond in whatever form should generally be sufficient in amount to satisfy the judgment, plus interest and costs." *Evergreen Community Power LLC v. Riggs Distler & Co., Inc.*, No. 10–728, 2012 WL 3781538, at *2 (E.D.Pa., Aug. 31, 2012) (citations omitted).

    **B.    Application and Proof of Foreign Law**

Federal Rule of Civil Procedure 44.1 controls determinations of foreign law in federal court. It provides:

1

> A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Fed.R.Civ.P. 44.1. This rule provides courts with broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so. *See Carey v. Bahama Cruise Lines*, 864 F.2d 201, 205 (1st Cir.1988) ("[Rule] 44.1 empowers a federal court to determine foreign law on its own, but does not oblige it to do so."); *Bartsch v. Metro–Goldwyn–Mayer, Inc.*, 391 F.2d 150, 155 n. 3 (2d Cir.1968) (Friendly, J.) (same).

The parties therefore generally carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case. *See Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 221 (7th Cir.1996) (holding that party waived conflicts of law issue because it failed to fulfill its obligation under Rule 44.1 "to provide the district court with 'reasonable notice' of his intention to raise an issue of foreign law."); Restatement (Second) Conflict of Laws § 136 cmt. f (1971) ("[T]he party who claims that the foreign law is different from the local law of the forum has the burden of establishing the content of the foreign law."). Where parties fail to satisfy either burden the court will ordinarily apply the forum's law. *See Walter v. Netherlands Mead N.V.*, 514 F.2d 1130, 1137 n. 14 (3d Cir.1975); *see also Banco de Credito Indus. v. Tesoreria General*, 990 F.2d 827, 837 (5th Cir.1993) ("When the parties have failed to conclusively establish foreign law, a court is entitled to look to its own forum's law in order to fill any gaps.").

## II. DISCUSSION

Following a jury verdict in 3G's favor, the Court entered final judgment against HTC for a sum of $8,967,207.03 along with pre- and post-judgment interest (the "Final Judgment"). *See* D.I. 765.

Thereafter, HTC filed a motion (1) for leave to secure the judgment via an escrow account or with the Court, and (2) to stay execution of the judgment pending resolution of the post-trial motions. HTC also asked the Court to reduce the security that HTC must post to secure the judgment by 20% because of 3G's alleged Taiwanese tax obligations. *See* D.I. 775.

The Court indicated that it would grant HTC's motion to secure the judgment with the Court after the Court determined the specific amount required to secure the judgment ("the total required security amount"). *See* D.I. 790. Having reviewed HTC's Motion for Alternative Security (D.I. 775), the related briefing (D.I. 776, D.I. 771, D.I. 785), and having heard oral argument on the appropriate total required security amount, the Court has calculated the total required security amount and denies HTC's Motion to reduce the total required security amount by 20%.

### A. The Court Finds That HTC Has Not Shown That The Final Judgment Is Subject To The Taiwanese Income Tax Act.

HTC contends that 3G will ultimately recover only 80% of the Final Judgment because of 3G's alleged income tax liability under the Taiwanese Income Act (the "Act"). HTC contends that the Act imposes a 20% income tax obligation on 3G and that it is HTC's responsibility to withhold that tax on 3G's behalf. Thus, HTC seeks leave from the Court to post only 80% of the Final Judgment as security since (as 3G will allegedly never receive the other 20% of the Final Judgment) that amount is sufficient to satisfy the judgment. For the reasons stated below, the

Court finds that HTC has not met its burden to show that a judgment in 3G's favor for patent damages issued by a U.S. court is income that is subject to withholding under the Act.

"The Act requires a local company making payments to a foreign company, without a permanent establishment or business agent in Taiwan, to withhold from such payments the income tax imposed upon such payments and payable by the foreign company." *Powertech Tech. Inc. v. Tessera, Inc.*, 2014 WL 2538973, at *2 (N.D. Cal. June 5, 2014). The Final Judgment requires HTC (a Taiwanese company) to make a payment to 3G (a non-Taiwanese company that does not operate in Taiwan). As such, HTC contends that it must withhold 20% of any payment it makes to 3G.

Article 88 of the Act states that a tax withholder shall withhold a tax-payers' income tax when the tax payer is a profit-seeking enterprise that (1) has no permanent establishment or business agent within the territory of the Republic of China, and (2) has income within the territory of the Republic of China. *See* D.I. 776, Ex. B (the "Act"). Article 88 then enumerates what categories of income are subject to withholding, such income including "the income paid to a foreign profit-seeking enterprise having no fixed place of business or business agent within the territory of the Republic of China." *Id.*

HTC contends that a foreign profit-seeking enterprise's income as-defined by Article 8 is also subject to withholding. D.I. 785 at 7. Article 8 defines "income from sources in the Republic of China." Act, Art. 8. The Court doubts that all such income is subject to withholding because Article 88, not Article 8, enumerates what income is subject to withholding. *See id.*, Art. 88 ("For a taxpayer having any income of the following categories, the tax withholder involved shall withhold tax..."). However, because the Court finds that a judgment for patent damages issued

4

by a U.S. court is not income as defined by either Article, the Court will assume, without deciding, that "income from sources in the Republic of China" is also subject to withholding.

The Court is not convinced that a judgment for patent damages issued by a U.S. court is income under Article 8 or Article 88 of the Act. For a payment to qualify as income under those Articles, the foreign company receiving that payment must either (1) possess an interest in Taiwanese property, or (2) conduct business with a Taiwanese company or governmental agency. *See* Act, Arts. 8, 88. For example, "[r]emuneration for services" is income under Article 8 if the services were "rendered within the territory of the Republic of China." *Id.* Similarly, "[r]ent[] obtained from lease of property" is considered income under Article 8 if the property is "situated within the territory of the Republic of China." *Id.* And, under Article 88, salary paid by a Taiwanese company to an individual outside of the territory of the Republic of China is subject to withholding. *Id.*

3G, however, did not acquire an interest in Taiwanese property or conduct business with a Taiwanese entity when it sued HTC. Instead, 3G sued HTC in a United States court for infringement of United States patents based on acts that occurred in the United States. Accordingly, the only connection that 3G has to Taiwan is that HTC (a Taiwanese company) infringed 3G's patents. The Court is not convinced that 3G subjected itself to the Act by suing a Taiwanese company outside of Taiwan for acts that occurred outside of Taiwan.

As such, the Court is not convinced by HTC's argument that the Final Judgment is income that is subject to withholding under Article 8, Section 11 of the Act. That Section of the Act defines income from "sources in the Republic of China" as "any other income obtained within the territory of the Republic of China." *Id.* However, 3G has no presence in Taiwan and sued HTC in the United States. If the Final Judgment is executed in the United States, 3G will receive the

5

Final Judgment within the United States—not the territory of the Republic of China. As HTC noted in its Reply, 3G would likely receive "income within the territory of the Republic of China" if it seeks to enforce the Final Judgment in a Taiwanese court. At this time, however, 3G has not chosen to do so. Accordingly, the Court finds that the Final Judgment is not subject to withholding under Article 8, Section 11 of the Act.

The cases cited by HTC in support of its position are distinguishable and do not compel a different result. *Powertech Tech. Inc. v. Tessera, Inc.*, 4:10–cv–00945–CW, 2014 WL 2538973 (N.D. Cal. June 5, 2014), concerned enforcement of a settlement agreement, not a judgment. *Id.* at 1-3. Thus, the court in that case never considered whether the Act would apply to a jury verdict award for patent damages. Instead, because the parties in that case (a Taiwanese company and a non-Taiwanese company) had agreed to allow the Taiwanese company to deduct taxes from some payments under that agreement, the court in that case interpreted the parties' agreement to determine how the parties had intended to allocate that tax burden. Thus, because *Powertech* turned on the application of traditional contract principles—rather than whether a judgment for patent damages issued by a U.S. court is subject to the Act's withholding requirements—the Court finds that *Powertech* is distinguishable from the instant action.

The Court is also not convinced that *Ozkaptan v. Citigroup, Inc.*, 20-CV-747 (JMF), 2020 WL 6546239 (S.D.N.Y. Nov. 6, 2020), compels a different result. In that case, an employee who had been employed in the United Kingdom up until the termination of his employment successfully arbitrated a wrongful termination claim against his former employer. *Id.* at 1-2. The employer withheld a portion of the Award to account for the employee's income taxes after the United Kingdom tax authorities informed it that the Award was earnings under United Kingdom law. *Id.* Thereafter, the employee filed suit in the U.S. to confirm the award and compel the employer to

pay the Award in full. The court in that case found that ordering the employer to pay the employee the withheld amount would, contrary to public policy, require the company to violate United Kingdom tax law. *Id.* Accordingly, the court in that case construed the Award to allow withholding and found that the employer had paid the Award in full. *Id.* at 4.

The Court finds that *Ozkaptan* is distinguishable for two (2) reasons. First, the instant action is not an arbitration. Thus, unlike arbitration awards awarded under the New York Convention, public policy is not a ground to modify the Final Judgment. *Cf. Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (explaining that under the New York Convention a court may decline to recognize or enforce an arbitration award for public policy reasons.) Also, in *Ozkaptan*, the employee in that case had been employed in the United Kingdom until he was wrongfully terminated. Thus, the court's decision in that case to apply the law of the United Kingdom was supported by (1) the employee's presence in that forum, and (2) the fact that the conduct giving rise to the employee's claim occurred in the United Kingdom. In the instant case, however, 3G does not do business in Taiwan or with HTC. Accordingly, the Court is not convinced under the circumstances that 3G has subjected itself to Taiwanese law.

As the party seeking to apply foreign law, HTC bears the burden to show that Taiwanese law applies. *See Bel–Ray Co., Inc. v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir.1999). For the reasons stated above, the Court finds that HTC has failed to do so. Thus, the Court denies HTC's motion to reduce the total required security amount by 20%.

    **B.**     **The Court Finds That The Total Required Security Amount is $10,515,641.49.**

Following the jury verdict, the Court entered judgment in favor of 3G and against HTC for damages in the amounts of: (i) $7,228,042.13 for infringement of the '091 Patent; (ii) $943,968.05 for infringement of the '818 Patent with respect to the Verizon Accused Products; (iii) $795,196.85

7

for infringement of the '818 Patent with respect to the Google Fi Accused Products; (iv) pre-judgment interest at the Treasury Bill rate, compounded quarterly, based on the quarter in which each infringing sale was made; and (iv) post-judgment interest, computed daily and compounded annually, at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the entry of final judgment. D.I. 765. The Court entered that judgment on November 27, 2023, which as of the date of this Order was 141 days ago.

Pre-judgment interest equaled $1,250,179.00 through September 30, 2023, and accrued at $1,510.00 per day until the date that the Final Judgment was entered, November 27, 2023. From HTC's presentation at oral argument on the appropriate total required security amount, the Court understands that the applicable weekly average interest rate for the post-judgment interest is 5.255%. Thus, post-judgment interest accrues at the rate of: ($10,304,966.03 * 5.255%) / 365 days, which equals $1,483.63 per day.

Accordingly, the Court calculates the total required security amount as follows:

| Damages Award | $7,228,042.13 + $943,968.05 + $795,196.85 = $8,967,207.03 |
|---|---|
| Pre-Judgment Interest | $1,250,179 + $1,510 x 58 days (i.e. $87,580) = $ 1,337,759.00 |
| Post-Judgment Interest | $1,483.63 x 142 days = $210,675.46 |
| Total | $10,515,641.49 |

Thus, as of April 16, 2024, the total required security amount that the Court will order HTC to deposit with the Court is $10,515,641.49.

8

### III. CONCLUSION

\* \* \*

WHEREFORE, at Wilmington this 17th day of April, 2023, **IT IS HEREBY ORDERED** that:

1. HTC's Motion to post funds sufficient to secure the judgment with the Court is **GRANTED**.

2. HTC's Motion to stay execution of the judgment is **GRANTED**.

3. HTC's Motion to reduce the security by 20% of the Final Judgment is **DENIED**.

4. HTC shall, within 14 days of the date of this Order, pay into the Registry of the Court $10,515,641.49. The amounts to be held in the Registry of the Court pursuant to this order of the Court shall remain in the Registry of the Court until HTC has paid the judgment for fees and costs, or until after all appeals (if any) have been ruled upon.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

9